## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

JILL BABCOCK,                                          CLASS ACTION
JAIME JUNIOR,                                          JURY DEMAND
and ASHLEY JACOBSON, on
behalf of themselves and all others similarly situated,

     PLAINTIFFS,

                                                CASE No.:

-vs-                                                  JUDGE:

STATE OF MICHIGAN,
COUNTY OF WAYNE,
CITY OF DETROIT,
WAYNE COUNTY BUILDING AUTHORITY,
DETROIT BUILDING AUTHORITY,
DETROIT-WAYNE JOINT BUILDING AUTHORITY,
and
HINES, out-of-state corporation authorized to do business in Michigan

     DEFENDANTS, Jointly and Severally.
_____/
MICHAEL W. BARTNIK (P32534)
Law For Baby Boomers, PLLC
Attorney for Plaintiffs
41000 Woodward Ave Ste 350
Bloomfield Hills Michigan 48304
(248) 608-3660 Telephone
(248) 218-9588 Facsimile
Michaelbartnik@protonmail.com
www.michaelbartnik.com
_____/

### CLASS ACTION CIVIL and DISABILITY RIGHTS COMPLAINT FOR INJUNCTIVE and OTHER RELIEF

Plaintiffs, by and through their attorney MICHAEL W. BARTNIK, state the following:

### INTRODUCTORY STATEMENT

1. This is an action to enforce the civil rights of persons with disabilities against the State of

   Michigan and certain of its political subdivisions which have repeatedly and continuously

   harmed Plaintiffs by denying to them their fundamental civil rights to equal access to the

Defendants' buildings and facilities, and to the services, amenities, programs, activities, and civic responsibilities as enjoyed by other persons in the buildings and facilities owned, leased, and operated jointly and severally by the Defendants for the Defendant governments' executive, legislative, judicial and administrative review functions.

2. Defendants' most palpable, egregious, and pernicious violation is their incessant failure to have accessible toilets readily and equally available in their buildings for disabled members of the public who "need to use the facilities now" in order to actually "use the government facility" to access the Defendants' services, amenities, programs, and activities, and to exercise the Plaintiffs' civic responsibilities and civil rights.

3. But Defendants' flagrant transgressions extend to other building components, such as non-compliant entrances and exits; exterior doors; sidewalks, ramps, and approaches; parking and drop-offs; stairways; routes of access; interior doors; service counters; emergency protocols; signage and other information; and other violations enumerated below.

4. These are not merely "minor" inconsistencies or failures. They are clear violations of federal and state laws which interfere with Plaintiffs' fundamental equal rights to access.

5. Defendants have long been aware of their obligations and their violations for decades,

   a. since at least July 1, 1966, when the Barrier Free Design Act became law in Michigan, MCL 125.1351 et. seq., fully applicable to governments for public facilities, MCL 125.1353, and establishing the Barrier Free Design Board for enforcement, MCL 125.1355; R408.30101 et. seq. Mich Admin Code, effective 1974 for new construction and 1975 for alterations,

   b. or since August 12, 1968, when the Architectural Barriers Act first mandated that "physically handicapped persons will have ready access to, and use of" Federal

buildings and facilities and those built or leased with federal financing, 42 U.S.C. § 4151 and 42 U.S.C. § 4152,

c.   or since 1972 when the Michigan Uniform Construction Code Act 230 of 1972 specifically defined "barrier free design" for "persons with disabilities" MCL 125.1502a (d) and (z),

d.   or since April 12, 1973, when Sidewalks: Persons with Disabilities Act 8 of 1973 became law in Michigan, MCL 125.1361,

e.   or since 1973 when Congress passed the Rehabilitation Act of 1973, section 504 prohibiting discrimination, and later, section 502 to establish the Access Board to enforce the Architectural Barriers Act of 1968.,

f.   or since 1976 when both the Elliott-Larsen Civil Rights Act and the Michigan Persons With Disabilities Civil Rights Act became law in Michigan, which mandated that Defendants "shall accommodate a person with disability" and that "full and equal utilization of public accommodations, public services, and educational facilities without discrimination because of a disability is guaranteed by this act and is a civil right", MCL 37.1102,

g.   or since July 26, 1990, when the Americans with Disabilities Act was signed, and thereafter amended in 2008, effective January 1, 2009,

h.   or since July 26, 1991, when 28 CFR Part 35 was published, applicable to Title II nondiscrimination on the basis of disability in State and Local Government Services,

i.   or June 22, 1999, when the Supreme Court issued *Olmstead v. LC*, 527 US 581 (1999).

j.   or since 2003 when the City of Detroit entered a settlement agreement with the US Department of Justice to correct numerous violations of the Americans with Disabilities Act that has been largely ignored by the City, Department of Justice Settlement Number 204-37-284 at https://archive.ada.gov/detroitmi.htm. (Downloaded November 28, 2022).

k.   or May 17, 2004, when the Supreme Court issued *Tennessee v Lane*, 541 U.S. 509 (2004),

l.  or September 15, 2010, when 2010 Title II ADA Regulations were published, effective March 15, 2011, as to State and Local Governments,

m.  or since September 15, 2021, when the Michigan Construction Code was updated to adopt and more clearly conform section 403.3.1 of the 2018 International Plumbing Code that toilet rooms in public buildings shall comply with the accessibility requirements and ". . .the public shall have access to the required toilet facilities at all times that the building is occupied."

n.  and more fundamentally, since the enactment of the various Bill of Rights and Civil Rights Amendments to the U.S. Constitution and provisions of the Michigan Constitution of 1963.

6.  Due to Defendants' extensive, long-standing, willful, deliberate, and intentional (or grossly negligent and willfully indifferent) violations of these Federal and State laws, and Defendants' continuous and intentional patterns, practices, and policies of active illegal discrimination, these Plaintiffs have been injured and denied access to basic and necessary governmental functions and services.

7.  Plaintiffs request this Court to take such actions as necessary and proper through declaratory judgment, injunctive relief, and damages to compel these Defendants to comply with the provisions of these and related laws.


**FEDERAL JURISDICTION**

8.  This Court has original jurisdiction under 28 U.S.C. § 1331 over matters contained in this complaint including Title II of the Americans with Disabilities Act 42 U.S.C. § 12133, and Sections 502 and 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 792 and § 794.

9.  This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiffs' state law claims, because they are so related to the federal question claims that they form part of the same case or controversy.

10. Defendants do not have governmental immunity in these matters.

## VENUE

11. Plaintiffs reside in the Eastern District of Michigan.

12. Defendants are located within the Eastern District of Michigan, and Defendant State of Michigan is also located in the United States Western District of Michigan.

13. Venue is proper in the City of Detroit of the United States District Court of the Eastern District of Michigan.

## PARTIES PLAINTIFF

14. Each Plaintiff has been injured by Defendants and otherwise has standing including as

   a. a "qualified individual with a disability" under applicable Federal laws including 42 U.S.C. § 12131 (2),

   b. a "person with a disability", and a "person with disabilities", Michigan Persons With Disabilities Civil Rights Act MCL 37.1103 (h),

   c. a "person in a wheelchair or other persons with physical disabilities", Michigan Sidewalks: Persons with Disabilities Act MCL 125.1361,

   d.  and being "physically limited" under the Michigan Architectural Barriers Act MCL 125.1351 (f).

15. Plaintiff Jill Babcock is a citizen and resident of the City of Detroit, the County of Wayne, and the State of Michigan.

16. Plaintiff Jill Babcock has several physical disabilities and impairments including *inter alia* a type of Ataxia, a progressive neurological disorder that affects her strength, agility,

balance, gait, motor skills, bladder control and speech. These impairments of her bladder and kidney functions, strength, fatigue, and mobility require her to use a wheelchair, scooter, or other mobility device to navigate, and as a matter of personal health, also require her to have prompt, if not immediate access to accessible toilets throughout the day and outside her home, to avoid additional injury and harm.

17. Plaintiff Jaime Junior is a citizen and resident of the City of Detroit, the County of Wayne, and the State of Michigan.

18. Plaintiff Jaime Junior has several physical disabilities including *inter alia* Cerebral Palsy and Osteoarthritis. She is dependent on power wheelchairs and scooters for mobility, and she cannot access, or has difficulty accessing buildings and facilities without fully compliant streets and sidewalks, entrances into the buildings, free and clear paths and accessible doors within the buildings, fully compliant toilet rooms and toilets, and other accessible features including as described in this complaint.

19. Plaintiff Ashley Jacobson is a citizen and resident of Whitmore Lake, the County of Washtenaw, and the State of Michigan.

20. Ashley Jacobson has several physical disabilities and impairments including *inter alia* impairments of her bladder, spine, joints, and immune system. Specifically, she is diagnosed with Systemic Lupus Erythematosus, Interstitial Cystitis, and Endometriosis. These impairments affect her strength, balance, restroom needs, dexterity, fine and gross motor skills, and the ability to stand for long periods of time, which often requires her to use a cane or wheelchair.  She also consistently utilizes other medical devices, catheters for personal use and bladder treatments, equipment, and mobility aids as her symptoms necessitate.

21. Each in her own way, all three Plaintiffs want to be fully engaged in their communities outside of the four walls of their homes. Each of them also actively advocates for disability rights for themselves and for other persons with disabilities, in their own professional and volunteer circles.

22. Plaintiff Jaime Junior is a disability rights activist, including *inter alia*, at the Disability Network Wayne County, as an Associate Fellow with the Pulse Institute, as member of the Michigan Developmental Disabilities Council advisory group with the State of Michigan, as a Leadership Education in Neuro-Developmental Disabilities Fellow with MI-DDI at Wayne State University, as a trained independent facilitator with the Michigan Developmental Disabilities Institute at Wayne State University and the Michigan Disability Rights Coalition, and as a peer mentor at Detroit Wayne Integrated Health Network.

23. Plaintiffs Jill Babcock and Ashley Jacobson are attorneys licensed by the State of Michigan to practice law anywhere in the State.

24. Plaintiff Jill Babcock practices law and uses her legal background in her capacity as a volunteer community advocate and disability rights activist, including as a Council Member of the Michigan State Bar Section on Elder Law and Disability Rights, and she is also employed by the City of Detroit in the Department of HRD focusing on Accessible Housing. The lack of access described in this complaint interferes with her ability to engage in these activities effectively.

25. Plaintiff Ashley Jacobson is a disability rights lawyer and vocational rehabilitation counselor, who provides disability services to clients in both contexts throughout the state at Jacobson Law & Advocacy, PLLC and Adaptive Inclusion, LLC.

26. As residents and citizens, Jill Babcock, Jaime Junior, and Ashley Jacobson are fully and equally entitled as any other person without impairments, to equally access any of the government buildings at issue, and to equally access any of the services, programs, and activities contained or conducted in those buildings by the State of Michigan, the County of Wayne, and the City of Detroit.

27. As a direct result of Defendants violating the laws at issue, Plaintiffs have been injured by being deprived of their rights under law.  Unlike able-bodied persons, for example and not limitation:

    a.  Plaintiffs are not able to gain simple access into these buildings when the Defendants repeatedly and collectively fail to comply with the laws governing the approaches, parking, ramps, entrances, and entrance doors into the buildings.

    b.  Plaintiffs are not able to maneuver within the buildings when Defendant repeatedly and collectively fail to have space for Plaintiffs and their wheelchairs in public meeting rooms, fail to have internal doors that are light enough to allow Plaintiffs to open them and to keep them open while driving their wheelchairs into the respective offices or public meeting halls, or fail to have service counters and document shelves at the mandatory heights.

    c.  Plaintiffs cannot access toilet rooms and toilets and lavatories when Defendants repeatedly and collectively refuse to follow mandatory laws on accessible facilities including by locking toilet rooms and otherwise refusing to have fully accessible toilet rooms, toilet stalls, toilet, and lavatories.

28. In addition to denying Plaintiffs equal participation in their voluntary and other community activities, Defendants' collective refusal to comply with the law makes it

difficult or impossible for disabled persons to make a living when their jobs require Plaintiffs to go into public buildings and facilities to conduct business.

29. Plaintiff Jaime Junior is required to attend public meetings and to visit the various public offices in Defendants' buildings throughout the metropolitan Detroit area and in the State buildings in the Lansing area.  The lack of access described in this complaint interferes with her ability to do her job or to do it effectively.

30. Plaintiff Ashley Jacobson makes her living and supports herself and her family as an attorney including by going into courts, juvenile facilities, and municipal, county, and State offices and facilities throughout the State of Michigan. As a direct result of Defendants not complying with these laws, she has lost work, continuing business opportunities, and money damages because of her inability to, or additional difficulties to, gain access to the Defendants' buildings and the services, programs, and activities therein. The lack of access described in this complaint interferes with her ability to do her job or to do it effectively.

31. Each Plaintiff is entitled to, qualified to, and otherwise able to use the services which are being denied due to Plaintiffs' disabilities but for the Defendants' actions and inactions, and their intentional or willful disregard of the Defendants' obligations under State and Federal laws.  U.S. Const. Amend. I (freedoms of speech, assembly, redress of grievances), U.S. Const. Amend. V (life, liberty, or property shall not be deprived without due process of law), U.S. Const. Amend. VI (assistance of counsel), U.S. Const. Amend. VII (right to jury), U.S. Const. Amend. IX (enumeration of certain rights shall not be construed to deny others retained by the people), U.S. Const. Amend. XIV, § 1 (privileges and immunities, due process, equal protection) and § 5 (Congressional

powers to enforce Amend. XIV), U.S. Const. Amend. XV, XIX, and XXVI (rights to vote), Michigan Const. 1963, Art. I, § 2 (equal protection, non-discrimination), Michigan Const. 1963, Art. I, § 5 (freedom of speech), Michigan Const. 1963, Art. I, § 13 (right to conduct suits in proper person or by counsel), Michigan Const. 1963, Art. I, § 14 (right to jury trial), Michigan Const. 1963, Art. I, § 17 (right to due process of law), Michigan Const. 1963, Art. I, § 23 (enumeration of certain rights not construed to deny or disparage other rights retained by the people).

32. Each Plaintiff has been denied rights, services, or accommodations by Defendants because of Plaintiffs' disabilities.

33. The Defendants have treated each Plaintiff adversely due to the Plaintiffs' disability or disabilities.

34. Joinder of Plaintiffs' claims against these common Defendants is proper, including but not limited to similarity of facts and claims, and for reasons of judicial economy.

35. Each Plaintiff is a "qualified individual with a disability" who, without the removal of architectural, communication, or transportation barriers, has been denied and is being denied equal access to the receipt of essential services, or participation in the programs or activities provided by the Defendants. 42 U.S.C. § 12131 (2).

36. Each Plaintiff has been denied barrier-free access to the buildings and facilities at issue and as required by Federal and State laws.

37. Each Plaintiff is a "person with a disability" and is "guaranteed . . . as a civil right" the "full and equal utilization of public accommodations, public services, and educational facilities without discrimination because of a disability." MCL 37.1102 and MCL 37.1103 (h).

38. Each Plaintiff has been discriminated against and suffered injury from the Defendants and is fully representative of a class of injured persons with mobility and incontinence impairments and other disabilities.

39. The class of similar persons are so numerous, and their claims under the facts and laws so similar, that combining their claims with the Plaintiffs' claims into a class action for injunctive and declaratory judgment serves the interest of the class, and the judicial economy interests of the courts and of the Defendants.

## PARTIES DEFENDANT

40. Defendants under Federal laws are "public entit(ies)" as defined by Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 (1) (A) and (B).

41. Defendants under Michigan laws are "agencies of state and local government" MCL 125.1361, and "persons" or "entities" which "shall accommodate a person with a disability for purposes of employment, public accommodation, public service, education, or housing unless the person demonstrates that the accommodation would impose an undue hardship." MCL 37.1102 (2) and MCL 37.1103 (g) and (i).

42. None of these Defendants can demonstrate any difficulty or hardship whatsoever, much less "undue hardship" as a defense to the relief requested.

43. Defendant State of Michigan has been a state and political subdivision of the United States of America since January 26, 1837, and was previously part of the Northwest Territory and Ordinance as of 1787. Const. 1963, Art. I, § 1, Eff. Jan. 1, 1964. It is a public entity. 42 U.S.C. § 12131 (1) (A).

44. Defendant County of Wayne is a political subdivision of the State of Michigan, with an elected county executive, board of supervisors, sheriff, treasurer, county clerk, register of deeds, and prosecuting attorney.  Const. 1963, Art. VII, § 1, Eff. Jan. 1, 1964.  It is a public entity. 42 U.S.C. § 12131 (1) (A) and (B). The county seat is Detroit.

45. Defendant City of Detroit is an incorporated municipality and political subdivision of the State of Michigan, with an elected mayor, city council, city clerk, police commissioner, and city treasurer.  Const. 1963, Art. VII, § 21, Eff. Jan. 1, 1964.  It is a public entity. 42 U.S.C. § 12131 (1) (A) and (B).

46. Defendant State of Michigan has one court of justice. Const. 1963, Art. VI, § 1, Eff. Jan. 1, 1964; Am. Init., approved Nov. 6, 2018, Eff. Dec. 22, 2018.

47. Defendant State of Michigan is specifically charged under the United States Constitution, Amend XIV, § 1 and § 5, *Tennessee v Lane*,  541 U.S. 509 (2004), and the Constitution of the State of Michigan, Const. 1963, Art. VI, § 1, Art VI, § 7, with providing fully accessible courts for all judicial proceedings and other manifestations of that process including the courtrooms, chambers, clerk's offices, the jury assembly rooms, the jury boxes, the jury rooms, lock-ups and detention areas, and all ancillary facilities; also, The ADA and ADAAG created by the US Access Board, most recently amended 2015 and delineates specifications for these facilities.

48. Together with the State, Defendants County of Wayne and City of Detroit are also specifically charged with providing the services described in the preceding paragraphs within their respective bailiwicks, and the State, County, and City are all severally and jointly responsible for funding all expenses, capital improvements, and the necessary costs of state and federal requirements established by state and federal laws, of the Third

Judicial Circuit Court, the Wayne County Probate Court, the Thirty Sixth District Court of the City of Detroit. MCL 600.9947, MCL 600.9945, MCL 600.837, MCL 600.550, MCL 600.425.

49. Defendants State, County, and City, and the other non-Defendant counties and municipalities with similar facilities and defects as discussed in this complaint, jointly or severally, have complete control over the streets and highways, sidewalks and curbs, and improved areas adjacent to and leading to the buildings and facilities at issue within their respective bailiwicks.

50. Defendant Wayne County Building Authority is a public body corporate established by the County of Wayne pursuant to State law, MCL 123.951 and MCL 123.957, with certain enforcement powers pursuant to the Construction Act and Building Codes, and with authority over approval, design, construction, and maintenance of space, buildings, structures, improved areas, and public facilities used, occupied, owned, or leased as lessor or lessee by the County of Wayne within certain areas of the Coleman A. Young Municipal Center, and, upon information and belief, outside of the Coleman A. Young Municipal Center, including but not limited to the buildings described below.  It is a public entity. 42 U.S.C. § 12131 (1) (B).

51. Defendant Detroit Building Authority is a public body corporate established by the City of Detroit pursuant to State law, MCL 123.951 and MCL 123.957, with certain enforcement powers pursuant to the Construction Act and Building Codes, and with authority over approval, design, construction, and maintenance of space, buildings, structures, improved areas, and public facilities used, occupied, owned, or leased as lessor or lessee by the City of Detroit within certain areas of the Coleman A. Young

Municipal Center, and, upon information and belief, outside of the Coleman A. Young

Municipal Center, including but not limited to the Frank Murphy Hall Of Justice, the

Thirty Sixth District Court, and other buildings described below.  It is a public entity. 42

U.S.C. § 12131 (1) (B).

52. Defendant Detroit-Wayne Joint Building Authority is a public body corporate established

by the City of Detroit and by the County of Wayne pursuant to State law, MCL 123.952

and MCL 123.957, to construct, own and manage the Coleman A. Young Municipal

Center located at the foot of Woodward at East Jefferson in the City of Detroit, 2

Woodward Avenue, Detroit Michigan. Its primary tenants currently include the executive

and legislative branches of government and certain elected officials for the City of

Detroit, for the County of Wayne, Wayne County's Third Judicial Circuit and Probate

Counts, the Clerks for the City of Detroit and the County of Wayne, other offices of the

City and County, and at least one retail food and sundries shop.  It has authority over

approval, design, construction, operation, and maintenance of all the space, building(s),

structure(s), improved areas, and public facility occupied, owned, or leased as either

lessor or lessee within the Coleman A. Young Municipal Center.  It is a public entity. 42

U.S.C. § 12131 (1) (B).

53. Defendant Hines is a privately held foreign corporation authorized to conduct business in

the State of Michigan and is involved in the management and redevelopment of two of

the buildings at issue.

54. Defendant Hines was hired in 2005 by Defendant Detroit-Wayne Joint Building

Authority to manage the Coleman A. Young Municipal Center on behalf of the

Defendants. Hines asserts on its website that it has cut the facility's annual operating

budget from over $15,000,000 to under $8,800,000, while implementing several capital

improvements, and earning several national industry recognitions awards.  However,

Hines fails to publicly assert it has made any capital improvements or received any

awards to make the facility accessible.

55. Defendant Hines is also involved in another building at issue: according to its website, in

2008 ". . . Hines was hired by Wayne County as the development manager for the

Guardian Building redevelopment in Detroit. In addition to providing tenant construction

oversight, Hines also managed improvements to the base building systems and interior

improvements on 12 levels totaling 200,000 square feet of this 39-story, 500,000-square-

foot office building. . . ."  Defendant Wayne County is the prime tenant with its both its

Executive Offices and its legislative branch, the Wayne County Commission. Defendant

City of Detroit's Detroit Economic Growth Corporation is also a prime tenant.


## DEFENDANTS HAVE INJURED EACH OF THE PLAINTIFFS

56. Pursuant to the Federal and State Constitutions cited, Plaintiffs are each entitled to, and in

need of the services and participation in the programs or activities provided by one or

more of the Defendants in their buildings described below, including by way of example

and not by limitation, to physically attend in their own person:

   a. to be engaged in, be integrated into, and be part of the community, including for

   example and not by limitation, *Olmstead v. L. C*., 527 U.S. 581 (1999), and 28

   CFR § 35.130 General prohibitions against discrimination.

   b. to attend and participate in the public meetings of the legislative, executive,

   administrative, and judicial bodies of the Defendants.

    c.  to lobby, instruct, and meet with their representatives, the elected officials, and the other officers and employees of the Defendants, and with other citizens engaged in the same activities.

    d.  to engage in free speech.

    e.  to peaceably assemble and protest.

    f.  to petition for redress of grievances.

    g.  to consult for the common good.

    h.  to review and examine in person all public records including as to property, zoning and land use, buildings, marriages, businesses, elections and campaigns, administrative hearings and appeals, and the judicial branch.

    i.  to register to vote.

    j.  to apply for, receive, and return absentee ballots.

    k.  to vote.

    l.  to file to run for public office or seek volunteer appointments.

    m.  to file for and receive permits or licenses.

    n.  to pay or to contest taxes, assessments, exemptions, and fees.

    o.  to monitor the actions of these governments as they pertain to their own affairs as well as to the general welfare and public good.

    p.  to be called to jury duty, to participate in jury pools, and to serve on juries.

    q.  and to observe and to participate in the services of the judicial branch and of the administrative hearings and appeals departments of the Defendants.

57. Plaintiff Ashley Jacobson is engaged in the private practice of law to earn a living and to conduct a profitable business in the State of Michigan.  As such, and to conduct such practice and business on her own behalf and on behalf of her clients, she too must have immediate, in-person physical access, in the same extent as any other attorney licensed by the State of Michigan, to all the above services, programs and activities, and to other services, programs and activities such as by way of example and not limitation:

    a.  to attend to and conduct depositions, discovery, negotiations, investigations, and other meetings in all branches of the Defendants, and in the administrative review sections of the legislative and executive branches, and in the Defendants' judicial branches.

    b.  to also attend hearings, trials, and appeals in the Defendants' judicial branches and in the administrative hearings and appeals sections of the Defendants' legislative and executive branches.

    c.  to meet with clients or witnesses who are confined in the Juvenile Center or in the lock-ups of either the City or the Sheriff.

    d.  to meet and interact with Judges, administrative hearing judges or officers, and their staff, and other attorneys or parties.

    e.  and all such other services, programs, activities and matters as needed or useful or advantageous to meet the needs of her clients and to fulfil her fiduciary and advocacy duties.

58. Plaintiffs Jill Babcock and Ashley Jacobson and similar class members suffering incontinence and other conditions affecting their kidneys, urinary system, bowel system, or gastro-intestinal system, also have been harmed physically and medically by the Defendants' malfeasance and nonfeasance:

    a.  Holding urine or feces too long in the body is painful.

    b.  Holding urine or feces too long or repeatedly, depletes muscle control over the bladder and defecation functions, and increases the risk of dangerous infections including urinary tract infections, or exacerbating existing medical conditions.

    c.  Urinating or defecating in one's clothing further increases the risk of dangerous infections, rashes, discomfort, and exacerbations.

    d.  One can hold urine and feces only to a point, beyond which there is urinary incontinence or fecal incontinence, *i.e.,* partial to full loss of control causing leakage of urine and feces.

CLASS ACTION COMPLAINT

e.  Leaking urine or feces occurs on the way to the toilet rooms, and especially when there is not an accessible route to the toilet rooms.

f.  Leaking urine or feces even occurs in the toilet rooms and in the toilet stalls while trying to get into a toilet stall or to transfer onto the toilet, where not properly accessible under the federal and state laws, thereby aggravating all the above.

g.  Urinating or defecating in one's clothing, even if using incontinence aids, is humiliating.

h.  Incontinence entails a risk of criminal charges. Urinating or defecating in any public area is a misdemeanor under State law and most municipal ordinances, punishable by fines or jail or both.  In some municipalities in Michigan, it is a civil infraction, with civil penalties but a lesser burden of proof. Also, State criminal law remains enforceable even in those jurisdictions.

i.  All the above stigmatizes any person beyond infancy.

59. Plaintiffs rely on disability-accessible, barrier-free buildings and restrooms as a citizen, an attorney, or an activist or advocate.  As a result of Defendants' unwillingness to provide the mandatory accessibility measures, these Plaintiffs face discriminatory barriers impeding their respective equal use and access of these buildings in a manner comparable to that of their nondisabled peers.

a.  By way of example and not limitation, there is only one nominally accessible, publicly open, toilet for each gender in the Coleman A. Young Municipal Center.

b.  It is in the basement of the 14-story East Tower of the Center, and services that Tower and the adjacent 20-story West Tower.

    c.   It takes up to 20 or more minutes to get from one of the 14 to 20 floors at and above grade into an elevator and then to proceed to the only (partially) accessible toilet (one per gender) in the basement of the East Tower of the building.

    d.   On occasion, during events at the auditorium on the 13th floor of the East Tower, Defendants will open to the public a small, nominally accessible toilet room in that lobby, one for each gender.

    e.   This barrier occurs in other buildings in the State, where there is only one toilet room per gender in a multi-story or a multi-tower, Article II public building, including for example and not limitation, the Mackinac County and Oakland County combined government and court tower buildings.

60. A basic human right is to access the toilet and lavatory with dignity, in a safe toilet room for sanitation and hygiene, for example and not limitation

    a.   "The right to sanitation entitles everyone to have physical and affordable access to sanitation, in all spheres of life, that is safe, hygienic, secure, and socially and culturally acceptable and that provides privacy and ensures dignity." Human Rights to Water and Sanitation | UN-Water (unwater.org), https://www.unwater.org/water-facts/human-rights-water-and-sanitation (downloaded November 28, 2022).

    b.   Former Special Rapporteur on the Human Right to Water and Sanitation Catarina de Albuquerque states that access to sanitation is one of the "underlying determinants of health and contributors to individual dignity and public welfare…":

        The rights to water and sanitation cover the majority of the needs of good hygiene. With respect to the water requirements of good hygiene, General

Comment No. 15 states that access to sufficient water for domestic purposes includes access to water for hygiene purposes, the provision of appropriate storage facilities and hygiene in food preparation. With respect to the right to sanitation, the hygiene requirements are that the latrine should be easy to clean and should contain facilities for hand washing. The right to health also covers the underlying determinants of health, including access to water and sanitation", Discussion Box 3.10, page 141, Caterina De Albuquerque, United Nations Special Rapporteur on the Human Right to Safe Drinking Water and Sanitation, https://www.ohchr.org/sites/default/files/Documents/Issues/Water/Bookon GoodPractices_en.pdf (downloaded November 28, 2022).

61. The Defendants' refusal to comply with the laws on disability-accessible restrooms causes physical demands on Plaintiff Ashley Jacobson, as she is required to travel quite far to find the next accessible restroom stall.  She risks falling and is unable to use necessary equipment because of the lack of physical space and mobility bars in the stalls.  Ashley has had to turn down cases in these buildings, which not only affects her financially, but emotionally as she must consider the inequality she faces as a disabled attorney and explain it to clients who seek her services in those buildings.  Additionally, she must spend time considering and compensating for building inaccessibility in ways her nondisabled peers do not.  The violations of disability rights inflicted by Defendants has caused and will continue to cause her physical, financial, and emotional harm until appropriately remedied.

62. Defendants' other violations relating to free and clear access to and within the buildings also harms the Plaintiffs, by denying to them the same rights as non-disabled persons, for example and not limitation:

    a. Michigan is the automotive capital of the world, and its citizens demand and calibrate travel and parking time by the minutes to drive to a location and the steps to walk to a building or destination within a building or complex, however,

Defendants have repeatedly failed to make available to Plaintiffs the mandatory number and type of fully accessible parking near their public facilities.

    i. For example at the State's complex in Lansing with the Michigan Hall of Justice at one end, Michigan State Administrative Office Buildings on a concrete plaza over a massive parking garage, the Michigan Capitol, and then the Anderson Legislative Office Building and George W. Romney Office Building, there are no accessible parking spots or insufficient spots available on the streets closest to the Supreme Court Building, or the State Capitol or the Legislative and Executive Buildings, and many of the curb-cuts are deficient on slope, materials, direction and safety.

  b. Once at or inside the building, Plaintiffs and other persons with mobility impairments must continuously struggle to proceed up non-existent, or decrepit, or poorly designed ramps and curb cuts, and then struggle to open doors which are heavy or lack openers, or openers which do not work or are poorly marked or badly located, for example.

63. These and other violations of disability rights inflicted by Defendants have caused and will continue to cause other economic harm and professional harm to

  a. Plaintiff Jaime Junior as a professional advocate for disabilities.

  b. Plaintiffs Jill Babcock and Ashley Jacobson as licensed attorneys in government and private practice, as well as in the general exercise and advancement of their skills, experiences, wisdom, and standing in the legal profession.

  c. Other persons with similar or other employment or professions who have disabilities including mobility and continence impairments.

64. These and other violations of disability rights inflicted by Defendants have caused and will continue to cause emotional distress, humiliation, delay, inconvenience, and other harm to Plaintiffs and other individuals with disabilities including mobility and continence impairments.

65. Applying the recognized concept of intersectionality in civil rights and discrimination, Defendants' repeated, collective discrimination in these matters causes and continue to cause even greater harm to all three Plaintiffs who are women, to Plaintiff Jaime Junior who is also a Black woman, and to similarly situated class members.

66. Defendants are jointly and severally liable for these injuries and compensatory damages for economic harm, and damages for emotional distress, humiliation, delay, inconvenience, and other harm to Plaintiffs and the class members for violations stated herein, and without regard to Defendants' attempts to allocate or isolate responsibility between or among themselves or others.

67. Plaintiffs and similarly situated class members are entitled to punitive damages from Defendants for their common patterns, practices, and policies of repeated and intentional, or willfully indifferent, violations of the Federal and State laws at issue.

### DEFENDANTS REPEATEDLY VIOLATE FEDERAL AND STATE DISABILITY LAWS DIRECTLY CAUSING HARM TO PLAINTIFFS AND INTERFERING WITH THEIR RIGHTS, INCLUDING AT THESE BUILDINGS AND FACILITIES

68. Each Defendant has, and all Defendants in concert have, repeatedly and oftentimes continuously failed to comply with the laws of the United States and of the State of Michigan to make their physical spaces fully accessible to Plaintiffs and to other persons with disabilities to enable Plaintiffs and other persons with disabilities to have barrier-

free access and equal opportunity with other residents and citizens to fulfill their

participatory obligations as citizens such as by paying taxes, voting, attending public

meetings, and performing jury duty, and to also enable Plaintiffs to have equal access to

the services and amenities provided by the Defendant governments. Const. 1963, Art. I, §

2, Eff. Jan. 1, 1964.

69. Defendants supply these services, programs, and activities to the public in the buildings

described below, and in so doing are obligated to make these services, programs, and

activities fully and equally accessible to all persons including the Plaintiffs and other

persons who have physical restrictions, in barrier-free buildings and facilities.

70. Defendant State of Michigan individually or with the applicable county or municipality,

controls, owns, leases, operates, and funds or supervises as to all the buildings and

operations described below, and as to similar facilities and operations throughout the

State, including for example but not limited to the county offices and court buildings for

Delta, Ingham, Kent, Livingston, Mackinac, Macomb, Oakland, and Washtenaw

Counties.

71. Each of the other Defendants owns, leases, operates, manage, or otherwise has joint

authority and control with the other Defendants, and is jointly and severally responsible

and liable for accessibility compliance and violations at the Coleman A. Young

Municipal Center, and at the Guardian Building.

72. Except for Detroit-Wayne Joint Building Authority and Hines, each of the other

Defendants also owns, leases, or operates, has joint control with the other Defendants,

and is jointly and severally responsible and liable for accessibility compliance and

violations at the following Defendants' facilities:

a. the Frank Murphy Hall of Justice,

b. the Wayne County 36th District Court-Detroit Courthouse,

c. the Lincoln Hall of Juvenile Justice,

d. the Wayne County Circuit Court Family Court and Friend of the Court Division Offices and Courtrooms located in the Penobscot Building, as lessees,

e. the Wayne County Register of Deeds and the Wayne County Treasurer's Office located at 400 Monroe, as lessees, and

f. the Criminal Justice Center under construction on East Warren Avenue.

***VIOLATIONS AT THE STATE CAPITOL, MICHIGAN HALL OF JUSTICE, GEORGE W. ROMNEY BUILDING and ANDERSON HOUSE OFFICE BUILDING***

73. There are multiple violations at the Michigan Supreme Court Hall of Justice, including by way of example and not limitation,

a. At one or more of the public streets immediately adjacent to the Court Hall of Justice, there is insufficient pedestrian access for persons with disabilities, for example the pedestrian ramps are not fully compliant, there are not enough accessible parking spaces, and any such "accessible" parking spaces are not fully compliant and are too far from the entrances to the Hall of Justice.

b. There are no signs, or insufficiently visible signs directing persons with disabilities around the imposing staircases at the east façade of the building.

c. The revolving door entrances to the building are not sufficiently graded or accessible to persons with disabilities.

d. There are no parking or drop-off areas on the streets on the west, north, or south facades which are closest to the Hall of Justice.

    e.   The nominally accessible parking spaces in the parking lot are too far from the entrances to the Hall of Justice.

74. The George W. Romney Building, 111 S. Capitol, Lansing, Michigan, and the Anderson House Office Building, 124 N. Capitol, Lansing, Michigan which include the Governor's Office, certain other executive branch public offices, and certain public offices of State Senators and State Representatives, and are deficient including by way of example and not limitation:

    a.   Various curb cuts on the surrounding streets of Ottawa, Washington, and Capitol are not the proper width or grade, or use paving bricks instead of solid smooth pavement with compliant raised, tactile ramp inserts, or are cut at dangerous angles into the street or other cross walks.

    b.   Insufficient accessible parking areas for the public on the streets, and those that exist are next to curbs, are dangerous and cannot be used by the drivers or passengers, without the person with disability having to maneuver into oncoming traffic to get to the curb cuts and sidewalks.

    c.   No visibly marked, compliant accessible drop-off areas.

75. The Michigan State Capitol, including by way of example and not limitation:

    a.   wheelchair accessible entrance is through the basement, which itself is visibly infested by rodents, and then requires overly extensive journeys within the building to various elevators in the basement to proceed to the public areas, legislative offices, and meeting rooms.

    b.   insufficient accessible parking or drop off areas for the public, including no such areas on any of the surrounding streets immediately adjacent to the Capitol.

### *VIOLATIONS AT THE COLEMAN A. YOUNG MUNICIPAL CENTER*

76. Construction on the Coleman A. Young Municipal Center began in 1951 and was completed in 1954.  It was then known as the "City-County Building".   It was renamed following the 1997 death of Hon. Coleman A. Young, a State Senator, a Civil Rights Leader, the first elected African American Mayor of one of the largest cities in the country, and at 20 years the longest serving elected Mayor of the City of Detroit.

77. The Center is iconic.  It is a nationally recognized, architecturally significant, municipal government structure.

    a. It comprises 745,000 square feet in two office towers, with the West Tower at 20-stories (often called the "Court Tower"), and the East Tower at 14-stories (often called the "City Tower").

    b. The towers are connected by a common lobby, a common basement connected via tunnel, a bridged section on each floor above grade, and the roof.

    c. Most of these areas are open to the public.

    d. It serves an annual population of visitors and employees of over 1 million people per year, or over 4,000 per business day.

    e. With the 2020 Census describing 19% of the City of Detroit population having a recognized disability, 760 individual, daily visitors and employees of the building are likely to have a disability recognized under Federal and State laws.

78. The Center is a "public facility" as defined by Act 1 of 1966, MCL 125.1351(g).

79. From initial construction until today, the Center has served multiple governmental purposes for the executive functions of the City and County, for the Legislative function of the City and of the County, for the elected officials including at various times the Sheriff of the County, and Treasurers and Clerks of the City and County, and for the Judicial function of various County Courts of the unified State of Michigan Court System.

80. From initial construction until today, The Center fails to comply with the "barrier free design" requirements of Act 1 of 1966, MCL 125.1351(b) for persons who are

"physically limited" as defined by MCL 125.1351(f), and fails to comply with the
Architectural Barriers Act, the Rehab Act of 1973, and the Americans with Disabilities
Act as amended and the related regulations, including as follows:

a.  Only the Detroit-Wayne Joint Building Authority has conducted the mandatory
    access report, attached as Exhibit B, and incorporated in its entirety here by
    reference. Conducted by a third-party vendor, DLZ, it reports multiple violations,
    including inaccessible toilets and toilet rooms, entrances into the building, lack of
    emergency evacuation equipment in the stairwells, heavy glass doors at interior
    offices, improper or non-existent signage, and protrusions into the route of travel
    in the hallways and even in the stairwells.

b.  Additionally, except in the basements, all the toilet rooms in the 14-story East
    Tower and many of the women's toilet rooms in the 20-story West Tower, are
    illegally closed to the public. On occasion the toilet rooms at the 13th floor
    auditorium are open during events.

c.  The detention areas on the 20th floor do not have accessible toilets.

d.  This Center is comparable to a 34-story office tower, if both towers were stacked,
    and yet it has only two, purportedly accessible, public toilets for persons with
    disabilities, and those are in the basement of the East Tower.

e.  There is insufficient accessible parking and no drop off areas on Jefferson or
    Beaubien.

f.  Other than one emergency skid observed on the first-floor stairwell, there are no
    emergency skids for impaired persons to evacuate the building in the event of an
    emergency. Defendants fail to include impaired persons in fire evacuation drills,

and there are no emergency evacuation procedures published or indicated on any signs in the building for persons with disabilities.

g.   The parking, drop-off, and entrance on Larned have been updated, yet is not done correctly, for example and not limitation, a poorly sloped ramp, without properly placed railings, leading to a central revolving door which is not large enough for wheelchairs, requiring persons with wheeled devices or canes or walkers, to cross in front of able-bodied persons to get to the purportedly accessible entrance doors.

h.   The drinking fountains were also recently updated, yet they violate the guidelines and laws by protruding into the route of travel which is required to be "unobstructed".

81. Additionally, upon information and belief, beginning in 1954, the Joint Building Authority entered one or more leases of the property back to the City of Detroit and to the County of Wayne for initial period or periods "not to exceed 50 years". MCL 123.958.

82. Said leases will have expired no later than 2004.

83. Pursuant to the Barrier Free Act, upon entering into any new lease or rental agreement of the Center after June 30, 1974, Defendants were required ("shall") to bring the entire Center "into compliance (to 'meet the barrier free design requirements contained in the state construction code') before a lease or rental agreement is renewed." MCL 125.1351 (g) (ii).

84. Additionally, on multiple occasions after initial construction up through and including the present time, and specifically from and after July 20, 1975, the building, structure, and improved areas of the Center have been altered without fulfilling the requirements of barrier free construction, including for example but not limitation:

a.  Alterations to the only two "handicap" toilet stalls in the building, located in the basement of the two-tower skyscraper consisting of 14 Floors on the East Tower and 20 Floors on the West Tower.

b.  Alterations to certain other toilet rooms and toilet stalls.

c.  Alterations to office space on the 12th Floor of the East Tower to establish the physical location for the so called "office of disability rights" specifically targeting persons with disabilities.  Sadly, this office is not compliant, for example and without limitation it has a glass door that is too heavy and lacks the damage plate at the bottom to prevent wheelchair damage.

d.  Alterations to the 13th Floor of the East Tower including the large auditorium for government and other public meetings.

e.  Alterations to other floor(s) of the East Tower including the public areas of the offices of the elected Mayor and the Offices of the City Council and its elected Members.

f.  Alterations to the City Council Rooms for public "Meeting of the Whole" and of adjacent public City Council Member offices.

g.  Alterations to the ground level offices of the East Tower by altering, removing, and rearranging marble and glass walls, counters, and other physical areas of the public space for interaction between the public and the government.

h.  Alterations to other public areas of the structure and building and improved areas to either remove, expand, or modify public offices of other departments which have moved into and out of the building, including for example the Register of Deeds and Treasury functions of the County have been relocated to 400 Monroe,

with such space in the Coleman A. Young Municipal Center then becoming occupied by other County or City departments.

i.   Alterations to the ground floor and the second floor for security purposes following the terrorist attack on other skyscrapers in 2001.

j.   Alterations to the 13th Floor of the West Tower for the relocation or installation of "bond" company and "legal newspaper" offices and/or desks and/or enclosed rooms on the court floors.

k.   Placement and removal of foreclosure desks and other counters on main floor and elsewhere in the Center.

l.   Alterations to the transition bridges on each floor from one tower into the other.

m.   The removal of the full-service public and employee cafeteria in the basement.

n.   Alterations to the East Tower to incorporate an enclosed bridge (or skyway) from the second floor across the parking lot and Randolph Street to the adjacent Millender Center, which included erecting an exterior staircase to the East Tower without any elevator or lift, failing to install accessible entrances on the first and second floors, and failing to install accessible security gates, as well as other violations.

o.   Alterations to remove and replace all the elevators in or about 1991.

p.   Alterations to the entrance ramps and entrances at all four ground floor entrances, including but not limited to a reconstruction of a non-compliant wheelchair ramp at the north entrance, instead of properly grading the ramp, changing the doors, and installing accessible automatic door openers to make the entire area accessible.

q.  Alterations to the parking areas adjacent to the East Entrance, the North Entrance, and the public street portions of the North and the South Entrance, without adding sufficient accessible parking or accessible drop-off areas.

r.  Alterations to the building for LEED certification and national awards.

s.  Alterations to revamp the foundations, plumbing and drainage, install a new bicycle plaza at west entrance, and install new security parking berms and other security at East entrance.

t.  Alteration and installation of a non-compliant and often non-functional lift elevator between the mezzanine of the Probate Court and other public areas of the Probate Court.

85. None of these alterations have complied with the mandatory requirements of Act 1 of 1966, MCL 125.1352(2)(b) that the entire public facility shall meet the barrier free design requirements of the state construction code.

86. Also, the alterations have not complied with the mandatory requirements of Act 1 of 1966, MCL 125.1352(2)(a) that full compliance is necessary in both (A) the area affected by the alteration, and (B) "the areas necessary to provide a continuous and unobstructed route of travel to and from the affected areas from and including the nearest entrance".

87. None of the alterations, construction, or reconstruction of the streets, driveways, curbs, sidewalks, ramps, railings, or intersections between pedestrian and motorized lines of travel, on or adjacent to the building, structure and improved areas are constructed in a manner that has the required grading or other requirements to accommodate Plaintiffs or other persons with wheelchairs or other physical disabilities, in violation of Act 8 of 1973, Sidewalks; Persons With Disabilities, MC 125.1361.

88. Despite these laws being in effect for decades, despite the mandatory lease provisions and compliance required by MCL 123.958, and despite Defendants' knowledge of the readily available, now routine, design and construction standards for compliance with disability laws, the Defendants have spent money and made improvements to the various buildings and facilities, but have not spent any, or sufficient, money or made the required improvements or upgrades as to accessibility at issue in this case.

89. Collectively and individually, Defendants have repeatedly, and knowingly and intentionally (or with willful and ignorant disregard of the facts and law) engaged in a pattern, practice, and policy of discriminating against Plaintiffs and other persons with mobility and incontinence impairments, in violation of their obligations under state and federal laws cited in this complaint.

90. Due to the "double I formation" within the central corridor on the "east-west axis" of each Tower, combined with the two separate, central, vertically stacked tubes for elevators, plumbing, electrical, internet, HVAC, and other maintenance access located within each Tower of the structure, and the nature and sequence of construction or reconstruction of the structure and of the sidewalks, parking areas and grounds surrounding the structure, at the present time as of the year 2022 C.E., all of these alterations yield a situation in which the entire public building and improved areas collectively do not comply either with the mandatory barrier-free requirements of Michigan Barrier Free Design Act, Michigan Construction Code, Sidewalks; Persons With Disabilities Act 8, Persons With Disabilities Civil Rights Act, nor with the Federal 1991 ADA Accessibility Guidelines, 2010 ADA Standards for Accessible Design,

Architectural Barriers Act of 1968, Section 504 of the Rehabilitation Act of 1973, and Title II of the Americans with Disabilities Act.

91. Each such failure has deprived Plaintiffs of their civil rights, thereby injuring them, including physically, financially, and professionally, and causing emotional distress, humiliation, embarrassment, delay, and inconvenience.

## *VIOLATIONS AT THE FRANK MURPHY HALL OF JUSTICE*

92. The Frank Murphy Hall of Justice, formerly Recorders Court Building, has multiple violations, including by way of example and not limitation:

   a. on information and belief, does not have accessible toilets or toilet rooms on each floor.

   b. on information and belief, does not have an accessible toilet facility in each of the lock-ups.

   c. fails to properly maintain the concrete ramp(s) into the building.

   d. does not have sufficient accessible parking or accessible vehicles and passenger drop off areas.

## *VIOLATIONS AT THE THIRTY SIXTH DISTRICT COURT*

93. The Thirty Sixth District Court for the City of Detroit has multiple violations, including by way of example and not limitation:

   a. does not have accessible entrances into the facility.

   b. does not have accessible parking or drop off areas.

c. has an "accessibility office" located on the upper floors instead of immediately upon entering on the first floor.

### *VIOLATIONS AT THE LINCOLN JUVENILE JUSTICE CENTER*

94. The Lincoln Juvenile Justice Center has multiple violations, including by way of example and not limitation:

a. does not have enough accessible toilets or toilet rooms.

b. does not have accessible entrances into the facility, except for example at the employee-only entrance which is only available through a gated employee parking lot at the back of the building complex.

c. does not have accessible parking or drop off areas.

d. and upon information and belief, does not have accessible residency or holding areas for the juveniles, either at the Lincoln Juvenile Justice Center or the offsite locations.

### *VIOLATIONS AT THE NEW CRIMINAL JUSTICE CENTER*
### *UNDER CONSTRUCTION ON EAST WARREN*

95. The Criminal Justice Center on East Warren, which is under construction, and upon information and belief has multiple violations, including by way of example and not limitation, and upon information and belief:

a. failure to conduct accessibility and compliance analysis and reports.

b. failure to publish and make readily available to the public, the accessibility and compliance analysis and report.

    c.   failure to have or plan for accessible parking lots, sidewalks, or drop off areas,

          instead displaying on its website architectural drawings which show an absence of

          curb-cuts, a sweeping exterior staircase without ramps displayed, and an absence

          of railing and signage.

    d.   does not have or plan for fully accessible entrances within facility, displaying a

          sweeping lobby staircase to upper levels without displaying handicap access or

          proper signage to the elevators.

    e.   does not have or plan for accessible parking or drop off areas.

### VIOLATIONS AT THE COUNTY EXECUTIVE AND LEGISLATIVE OFFICES AND CITY OF DETROIT OFFICES IN THE GUARDIAN BUILDING

96. Wayne County Executive Offices, Wayne County Commission Offices and Auditorium, and City of Detroit's Detroit Economic Growth Corporation are located on the upper floors of the Guardian Building, another iconic, architecturally significant skyscraper in Downtown Detroit. According to Defendant Hines, the applicable space comprises 200,000 square feet of the 500,000 square foot building. The Guardian Building with these major occupants, has multiple violations, including by way of example and not limitation:

    a.   It does not have accessible entrances on either Griswold or Congress, thereby

          requiring Plaintiffs essentially to go to the "backdoor" on Larned:

          i.   any person with a mobility disability cannot use the major entrances on

              Griswold and Congress which have uniformed door attendants, awnings,

              and wind-protective screens in the winter, but instead must proceed

              downhill on Griswold, without the support of an attendant or railings, and

without the proper sloping, to the sole, nominally accessible entrance on Larned, which is exposed to the weather and wind off of the Detroit River and has no awning, wind-screen, or attendants, to proceed to an interior lift which may or may not be attended or operational.

ii. This also deprives Plaintiffs equal access to the commercial and retail lobbies of the building which able-bodied persons can access from the Griswold and Congress entrances.

iii. It also does not have accessible parking or drop-off areas, including specifically at the Larned entrance which has no standing or no parking and is a full traffic lane. There is parking on Congress and Griswold, but none of it is accessible and there is no drop-off area, even though Defendants encourage and allow private vendors to operate valet parking in travel lanes of Congress and Griswold in front of the Penobscot, Ford, and Buhl Buildings.

iv. It also does not have proper notices or signs on Larned, Congress, or Griswold, nor on Woodward adjacent to the Capital One Café Buildings, to alert the public to the nearest accessible entrances.

b. Once inside, the main stairway to the commercial and retail lobbies of the building are not fully accessible to Plaintiffs, even though they are fully accessible to other able-bodied visitors to the Defendants' offices.

c. It does not have fully accessible toilet rooms or toilets.

### *VIOLATIONS AT THE COUNTY REGISTER OF DEEDS AND OTHER PUBLIC OFFICES IN THE 400 MONROE STREET BUILDING*

97. Certain County Register of Deed and City and County Treasurer Offices are located on the upper floors of the 400 Monroe Street Building and have multiple violations, including by way of example and not limitation:

    a.  does not have fully accessible entrances within the multi-use commercial building.

    b.   does not have proper notices or signs Monroe or Beaubien, to alert the public to the nearest accessible entrances.

    c.  does not have accessible toilets or toilet rooms.

    d.  does not have any accessible parking or drop off areas, including specifically at the Monroe or Beaubien entrances which have no standing or no parking for disability access, and are full traffic lanes.

### *VIOLATIONS AT THE FRIEND OF THE COURT AND FAMILY COURT OFFICES AND COURTROOMS IN THE PENOBSCOT BUILDING*

98. Certain County Court operations are located on the upper floors of one of the three tower buildings comprising the Penobscot Building, where there are multiple violations, including by way of example and not limitation:

    a.  does not have any accessible parking or drop off areas, instead either forbidding parking or allowing only paid "valet" parking services.

    b.  does not have proper notices or signs on Fort, Shelby, Congress, or Griswold to alert the public to the nearest accessible entrances.

    c.  does not have ready access to the stair lift or elevators to the Griswold lobby from the Congress and Fort Street entrances.

d.  does not have fully accessible toilets or toilet rooms.

e.   does not have fully accessible referee and meeting rooms.

### *VIOLATIONS AT THE DELTA COUNTY AND COURT BUILDING*

99. The Delta County Government and Court building has accessible toilets and accessible entrance; however, it also has other major violations, including by way of example and not limitation:

a.  does not have enough accessible parking or drop off areas, including that there is no blue striped space between the only two accessible spaces in the parking lot, and the only accessible parking space on the street is at a curb immediately adjacent to a light pole which partially blocks the space.

b.  there is a door separating the lavatories from the toilets in the men's room.

c.  does not have accessible jury boxes in the Circuit Courtroom(s).

### *VIOLATIONS AT THE KENT COUNTY AND COURT BUILDINGS BUILDING*

100.   The Kent County Offices and Court Center has multiple violations, including by way of example and not limitation:

a.  does not have fully accessible toilets or toilet rooms,

b.  does not have fully accessible or sufficient street parking,

c.  does not have sufficient signage or drop off areas.

d.  does not have evacuation equipment on the upper floors.

### *VIOLATIONS AT THE LIVINGSTON COUNTY*
### *AND COURT BUILDINGS*

101.    The Livingston County Court has two locations, one in Brighton and one in

Howell, with multiple violations, including by way of example and not limitation:

    a.   does not have fully accessible toilets or toilet rooms in Howell.

    b.   does not have a fully accessible entrance wide enough in Howell.

    c.   does not have fully accessible or sufficient parking.


### *VIOLATIONS AT THE CITY OF ST. IGNACE MUNICIPAL BUILDING*

102.    The City of St. Ignace Municipal Building, 396 N. State Street, partially funded

by the State of Michigan, is a 2-story building located on a hill overlooking Lake Huron

and East Moran Bay, and has multiple violations, including by way of example and not

limitation:

    a.   There is no accessible parking on the upper street level which contains the public

        entrance to the public municipal offices, and instead has parking for "employees

        only" or for "officials only".

    b.   The only accessible parking spaces for the building are on the lower street level,

        which is the police station, and that parking is not fully compliant.

    c.   The purportedly accessible entrance for persons with disabilities is either an

        exterior lift from the lower street level to the upper street level, which is not

        monitored, or a poorly maintained bridge from Underhill Street which does not

        have sufficient turn-around space at the doorway.

### *VIOLATIONS AT THE MACKINAC COUNTY AND COURT BUILDING*

103.    The Mackinac County Offices and Court Building has multiple violations, including by way of example and not limitation:

    a.  does not have accessible toilets or toilet rooms on any of the upper floors.

    b.  does not have a fully accessible entrance into facility: the exterior door to the purportedly accessible exterior elevator below grade, is locked, can only be opened by the deputy on duty at the first-floor interior security gate, and there is no communication device or signage to indicate whether that deputy is readily available.

    c.  does not have enough accessible parking or drop-off areas.

    d.  the only accessible toilet room in the original Court Tower is not fully accessible,

    e.  does not have proper evacuation equipment in the stairwells of the upper floors of the original Court Tower.

### *VIOLATIONS AT THE MACOMB COUNTY AND COURT BUILDINGS*

104.    The Macomb County Court has multiple violations, including by way of example and not limitation:

    a.  does not have enough accessible parking or drop off areas and does not maintain the parking or drop off areas it designates as accessible.

    b.  does not have proper evacuation equipment in the stairwells of the upper floors of the original Court Tower.

### *VIOLATIONS AT THE OAKLAND COUNTY AND COURT BUILDINGS*

105.     The Oakland County Offices and Court complex at 1200 North Telegraph has multiple violations, including by way of example and not limitation:

    a.   does not have accessible toilets or toilet rooms on any of the upper floors of the original Court Tower.

    b.   does not have proper signage or directions to the only accessible toilet in the original Court Tower on the ground floor.

    c.   the only accessible toilet room in the original Court Tower is not fully accessible.

    d.   does not have proper evacuation equipment in the stairwells of the upper floors of the original Court Tower.

### *VIOLATIONS AT THE WASHTENAW COUNTY AND COURT BUILDING*

106.     The Washtenaw County Court has multiple violations, including by way of example and not limitation:

    a.   does not have accessible toilets or toilet rooms.

    b.   does not have accessible entrances into the facility.

    c.   the door opener button for a public entrance to the building is blocked by garbage containers.

    d.   does not have accessible parking or drop off areas.

107.     Each of the public entity Defendants has received Federal funding, including Pandemic Relief funds and Build Back Better funds.

108.     Except for the referenced self-assessment by the Detroit-Wayne Joint Building

Authority, and upon information and belief, a 2008 self-assessment audit by the State,

none of the Defendants has commissioned or completed any of the initial mandatory self-

assessments, or the annual reports, as to the physical limitations in any of the facilities.

109.     Upon information and belief, each of the Defendants has failed to allocate or

spend any such money for the needed improvements discussed in this complaint.

110.     Moreover, during the current, nearly 3-year pandemic, Defendants have

completely failed to take advantage of the closed and semi-closed building status of many

of these buildings to make the facilities accessible as required by Federal and State law.

111.     Each Defendant knows or should know of their individual and collective failures

to correct these deficiencies, including specifically failures of the City to comply in good

faith with even the bare minimum of agreements with the United States Department of

Justice over 10 years ago, and more recently, beginning in January 2020 Defendants City,

County, Detroit-Wayne Joint Building Authority and Hines failing to cooperate in good

faith to resolve the issues raised via community ad hoc committee. Meetings were finally

held in October and November 2021, and January 2022, and then abruptly and

unilaterally cancelled by Defendants in February 2022. (See Exhibit A, agenda circulated

before the meetings were cancelled).

112.     Defendants City, County, Hines, and City and County Building Departments have

ignored repeated complaints about the public meeting areas for Detroit City Council, and

the public 13th-floor auditorium as to how to make them accessible to the public, or to

speakers who have physical disabilities, including such basic items as having adequate

aisleways, seating areas, ramps, or rails.

113.     Defendants repeated failures evidence their pattern, practice, and policy of illegal discrimination.

## *CAUSES OF ACTION COUNT I FEDERAL LAW VIOLATIONS*

114.     Plaintiffs re-allege and incorporate by reference the allegations set forth in all the preceding paragraphs.

115.     Individually and collectively, Defendants have repeatedly and continuously discriminated against Plaintiffs and similarly disabled persons in violation of the U.S. Constitution and Federal law including but not limited to the Federal Architectural Barriers Act, §502 and §504 of the Rehabilitation Act of 1973, Title II of the Americans with Disabilities Act of 1990 as amended 2008 and applicable regulations, *Olmstead v LC*, *supra.* and *Tennessee v Lane*, *supra.*.

## *CAUSES OF ACTION COUNT II STATE LAW VIOLATIONS*

116.     Plaintiffs re-allege and incorporate by reference the allegations set forth in all the preceding paragraphs.

117.     Individually and collectively, Defendants have repeatedly and continuously discriminated against Plaintiffs and similarly disabled persons in violation of the Michigan Constitution and laws of the State of Michigan including but not limited to the Michigan Barrier Free Design Act, Michigan Uniform Construction Code and applicable International Building Codes, Michigan Sidewalks: Persons With Disabilities Act, Michigan Persons With Disabilities Civil Rights Act, Elliott-Larsen Civil Rights Act, and related provisions of the Michigan Administrative Code and regulations.

### *CAUSES OF ACTION COUNT III DAMAGES*

118.      Plaintiffs re-allege and incorporate by reference the allegations set forth in all the preceding paragraphs.

119.      Defendants' actions and inaction constitute continuing discrimination in violation of the 29 U.S.C. § 794 (a) Rehabilitation Act of 1973, Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12131 et seq., Article III of Michigan's Persons With Disabilities Civil Rights Act (PWDCRA), Mich. Comp. Laws § 37.1101, and applicable sections of the Elliott-Larsen Civil Rights Act, Mich. Comp. Laws § 37.2101.

120.      Plaintiffs and similarly situated individuals with disabilities have been harmed and continue to be harmed by Defendants' continuous and repeated refusal to make their buildings and facilities readily accessible to and usable by persons with disabilities, and Plaintiffs and similarly situated individuals with disabilities are entitled to damages including compensatory damages, and damages for emotional distress, humiliation, delay, and inconvenience, including under 29 U.S.C. §  794a(a)(2) and (b), 42 U.S.C. § 12133 and MCL 37.1606.

### *CAUSES OF ACTION COUNT IV PUNITIVE DAMAGES*

121.      Plaintiffs re-allege and incorporate by reference the allegations set forth in all the preceding paragraphs.

122.      Defendants each know their obligations under the laws at issue in this case.

123.      Defendants have each spent money on other improvements without spending money to fulfill their obligations under the laws at issue in this case.

124.     Defendants' actions and inaction, individually and in concert with each other, are intentional, or willfully indifferent violations of the laws at issue in this case.

125.     Defendants' actions, individually and in concert, constitute unlawful patterns, practices, and policies of discrimination.

126.     Plaintiffs and similarly situated individuals have been harmed by Defendants intentional or willfully indifferent discrimination.

127.     Defendants are liable for punitive damages under Federal and State laws, including the Rehabilitation Act of 1973, and MCL 37.1606.

### *JURY DEMAND*

128.     Plaintiffs demand a trial by a jury of their peers as to their claims for damages and any other claim to which they may be entitled to a jury.

### *RELIEF REQUESTED*

WHEREFORE, Plaintiffs request this Court grant relief including the following:

a.  Declare and find that Defendants are jointly and severally liable to Plaintiffs and other similarly disabled persons under the Federal and State laws discussed above.
b.  Certify this case as a class action.
c.  Enter a preliminary order compelling Defendant State to survey its counties and other jurisdictions whose court buildings and buildings for public executive and legislative functions are not barrier-free and equally accessible, and to join such counties and jurisdictions as party Defendants.
d.  Enter declaratory and injunctive relief compelling Defendants to comply with the disability laws by making their buildings barrier-free and equally accessible to able-bodied and disabled persons.
e.  Enter continuing injunctive relief and maintain jurisdiction in this case until such time as all Defendants demonstrate to this Court they have made the changes needed to fully comply with this Court's orders and the applicable laws described.

f.  Enter judgment against Defendants for compensatory damages including for economic losses and for emotional distress, humiliation, embarrassment, delay, and inconvenience, in amounts according to the proofs.

g.  Enter judgment against Defendants for punitive damages in amounts necessary to deter Defendants' future intentional and willfully indifferent violations of the law.

h.  Award attorneys' fees, costs, and expenses against Defendants and to Plaintiffs.

i.  Award such other relief to which Plaintiffs and similarly situated persons are entitled.

**Respectfully submitted this _6th day_ of December 2022,**

**Plaintiffs, on behalf of themselves and all others similarly situated,
by their attorney,**

*/s/ Michael W. Bartnik*_____
**MICHAEL W. BARTNIK (P32534)**
**Law For Baby Boomers, PLLC**
**41000 Woodward Ave Ste 350**
**Bloomfield Hills Michigan 48304**
**(248) 608-3660 Telephone**
**(248) 218-9588 Facsimile**
**Michaelbartnik@protonmail.com**
**www.michaelbartnik.com**