# COLEMAN A. YOUNG MUNICIPAL CENTER

## Americans with Disabilities Act Accessibility Compliance Review Report



Prepared for:

## Detroit-Wayne Joint Building Authority



## FEBRUARY 2021

Prepared by:



Project No. 1942.7050.00

# TABLE OF CONTENTS

Executive Summary ........................................................................................................... iii

**1.0    Introduction and Overview** ............................................................................. 1

1.1    Introduction ............................................................................................ 1
1.2    Evaluation Overview ............................................................................... 2
1.3    Legislative Background & Applicability .................................................. 4
1.4    Facility Access versus Program Access .................................................. 4
1.5    Undue Burden .......................................................................................... 6
1.6    ADA Self-Evaluation and Transition Plan Requirements ....................... 6
1.7    Self-Evaluation and Transition Plan Completion .................................... 7

**2.0    ADA Compliance Evaluation** ........................................................................... 8

2.1    Facility Exterior Barriers ......................................................................... 8
2.2    Common Building Elements .................................................................... 9
2.3    Office Tower ........................................................................................... 10
2.3    Court Tower ............................................................................................ 18

**3.0    Discussion & Recommendations** ................................................................. 26

3.1    Exterior and Building Access ................................................................ 26
3.2    Building Signage .................................................................................... 26
3.3    Accessible Public Restrooms ................................................................ 30
3.4    Auditorium ............................................................................................. 30
3.5    Doors and Door Hardware .................................................................... 33
3.6    Drinking Fountains ................................................................................ 35
3.7    Protruding Objects ................................................................................ 36
3.8    Service Counters and Information Desks ............................................. 37
3.9    Miscellaneous ....................................................................................... 38

**4.0    Conclusions** ..................................................................................................... 39

4.1    Items for Further Action ....................................................................... 39
4.2    Conclusion ............................................................................................. 40

**5.0    Definitions** ....................................................................................................... 41

# FIGURES

Figure 1 – Vicinity map of the Coleman A. Young Municipal Center in downtown Detroit.

Figure 2 – Location of the Coleman A. Young Municipal Center in downtown Detroit.

Figure 3 – Project area of the CAYMC.

# APPENDICES

Appendix A – Summary and Detailed List of ADA Non-Compliant Items.

Appendix B – Floor plans for the Office and Court Towers with limits of review.

# List of Abbreviations/Acronyms

ABA – Architectural Barriers Act of 1968

ADA – Americans with Disabilities Act of 1990

AED – Automated Electronic Defibrillator

ALD – Assistive Listening Devices

ALS – Assistive Listening System

ADAAG – 1991 ADA Accessibility Guidelines

ADASAD – 2010 ADA Standards for Accessible Design

CAYMC – Coleman A. Young Municipal Center

CFR – Code of Federal Regulations

DWJBA – Detroit-Wayne Joint Building Authority

DOJ – U.S. Department of Justice

FEC – Fire Extinguisher Cabinet

ISA – International Symbol of Accessibility

PAR – Pedestrian Access Route

PCA – Pedestrian Circulation Area

RA – Rehabilitation Act of 1973

ROW – Right-of-Way

SETP – Self-Evaluation and Transition Plan

UFAS – Uniform Federal Accessibility Standards

## Executive Summary

The Americans with Disabilities Act (ADA) is a comprehensive Federal civil rights statute enacted in 1990. Comprised of five major parts, or "titles", the ADA's stated purpose was to provide a "clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities". Estimates of the U.S. Census Bureau show that over 20% of city of Detroit residents have a disability, with over 45.8% of senior citizens age 65 or older have a disability.

The Detroit-Wayne Joint Building Authority (DWJBA) owns and manages the Coleman A. Young Municipal Center (CAYMC), which was constructed in the 1950s. The CAYMC is comprised of two 'towers' – a 14-story office tower and 20-story court tower. The primary tenants include the executive and legislative branches of government for the City of Detroit, Wayne County's Third Judicial Circuit and Probate Courts, and the Clerks for the City of Detroit and Wayne County. The buildings share a common lobby through which all persons must enter and be screened by security personnel. The two towers are connected by common corridors on several levels. A skywalk on Level 2 of the Office Tower bridges over Randolph Street to the east to the Millender Center, People Mover Station, and the Renaissance Center. Access from the public sidewalk is provided on all four sides of the building, with public entrances from Woodward Avenue on the west, E. Jefferson to the south, and Larned Street to the north. The east entrance off Randolph Street is for employees only. No public parking is provided on the site, with limited private parking located to the east off Randolph Street, which is reserved for members of the executive, legislative, and judicial branches and their designated appointees.

The DWJBA contracted with DLZ Michigan, Inc., for the evaluation of ADA compliance of the CAYMC in public circulation areas outside and within the facility, the public accessible restrooms in the lower level of the Office Tower (which are accessible from the Court Tower also), the Auditorium on Level 13 of the Office Tower, and preparation of this report. Previous evaluations of ADA compliance within the towers were completed in 2007 and 2014. This report outlines the necessary corrective actions and steps required to meet 2010 ADA Standards for Accessible Design (ADASAD) and Title II of the ADA. This report does not include an evaluation of any tenant areas or other facilities under the control of the DWJBA, nor does it include an evaluation of policies and procedures required of all Title II entities. As such, this report should not be considered in any way to meet the requirements of Title II for a Transition Plan, but this report would be integral to the self-evaluation requirement of Title II needed to prepare a Transition Plan. The DWJBA should strive to ensure that all customers are able to access all tenant spaces accessible to the public and promptly investigate any concerns or complaints raised according to procedures that are recommended to be developed. Additionally, the DWJBA should include budgetary allotments to make required improvements that will eventually make all facilities fully accessible as part of either stand-alone projects whose primary goal is improving accessibility or as part of other renovations at the CAYMC.

This evaluation was limited to public areas of the CAYMC, including exterior pedestrian access routes to public and employee entrances, the lower level accessible restrooms, building entrances, interior hallways and other circulation spaces, drinking fountains, elevators, stairways, Auditorium, and signage. The decision to exclude areas of the facility that are either open to the public (e.g., service lobbies) or restricted to employees does not obviate the need of the respective responsible parties (City of Detroit, or Wayne County) to ensure full accessibility is provided, consistent with the requirements of Title I and/or Title II of the ADA. No review was performed of policies and procedures as would typically be done as part of a comprehensive ADA self-evaluation and preparation of a transition plan. Discussion of future investigations and studies that may be needed, including review of policies and procedures, is included in Section 4.

The content and recommendations contained in this report are the opinion of DLZ staff based on our interpretation of relevant statutes and guidelines and scope of the project as described in contracting documents. Neither the content nor delivery of the content is, or shall be deemed to be, legal advice or a legal opinion. The information provided is not a substitute for professional legal advice.

# 1.0   Introduction and Overview

## 1.1   Introduction

The Americans with Disabilities Act of 1990 (ADA), enacted on July 26, 1990, is a Federal civil rights statute, under the jurisdiction of the United States Department of Justice (DOJ), which provides civil rights protection to qualified individuals with disabilities in the areas of employment, public accommodations, state and local government services, transportation, and telecommunications. The law states its purpose is "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities". Similar protections are provided by Section 504 of the Rehabilitation Act of 1973. The ADA was signed into law by President George Bush on July 26, 1990, extending civil rights protections to individuals with physical or mental disabilities in the following areas:

1. **Title I** – Employment (all employers with 15 or more employees)
2. **Title II** – Public Services (state and local government)
3. **Title III** – Public Accommodations and Services operated by Private Entities
4. **Title IV** – Telecommunications
5. **Title V** – Miscellaneous

The DWJBA would be classified as a "public entity" pursuant to Title II of the ADA and is also required to comply with Title I, which requires state and local government entities to practice non-discrimination in all parts of the employment process. Title II requires state and local governments to make their programs and services accessible to persons with disabilities. This requirement extends not only to physical access at government facilities, programs, and events, but also to policy changes that state and local governmental entities must make to ensure that all people with disabilities can take part in, and benefit from, the programs and services of state and local governments.

The ADA regulations [ref. *U.S. DOJ, 28 CFR Part 35, Subpart A, 35.105 and 35.150(a) and (d)*] require state and local governments to conduct a self-evaluation of their programs and services to identify barriers to access. One of the fundamental reasons for performing the self-evaluation is to identify potential problems before they occur and minimize the potential for complaints. By identifying the policies, programs, services, and activities that do not comply, the DWJBA can take action to remove those barriers to ensure that they are not discriminating against individuals with disabilities. Title II of the ADA stipulates that the Title II entities are required to perform six administrative responsibilities as part of the transition plan process:

1. Publicize the name and contact information of the designated ADA Coordinator responsible to oversee compliance [28 CFR 35.107 (a)]
2. Administer and write a self-evaluation of the programmatic barriers in services offered by the local government and provide an opportunity to interested persons, including individuals with disabilities or organizations representing individuals with disabilities, to participate in the self-evaluation process by submitting comments on the transition plan [28 CFR 35.105}
3. Publicize and inform applicants, participants, and beneficiaries of the policy of non-discrimination on the basis of disability related to City services, programs, and activities [28 CFR 35.106]
4. Establish a complaint/grievance procedure to respond to complaints of non-compliance from the public [28 CFR 35.107 (b)]
5. Develop a transition plan if structural changes are necessary for achieving program accessibility [28 CFR 35.150 (a) and (d)]
6. Retain the self-evaluation and provide it for public inspection for three years [28 CFR 35.105 (c)]

**CAYMC ADA Compliant Evaluation**
**ADA Accessibility Review Report**

## 1.2    Evaluation Overview

DLZ Michigan, Inc., was contracted by the DWJBA to perform a review of public circulation spaces within and outside of the CAYMC for compliance with the 2010 ADA Standards for Accessible Design (ADASAD). The CAYMC is located in downtown Detroit (Figure 1). All new construction and alterations undertaken after March 15, 2012, are subject to ADASAD. The facility, or portions of the facility, included in this



**Figure 1. Vicinity map of the Coleman A. Young Municipal Center in downtown Detroit.**

evaluation may not be required to meet ADASAD standards until an alteration is undertaken and would, for the most part, currently be required to meet the 1991 ADA Accessibility Guidelines (ADAAG). In many cases, ADASAD clarified areas where ADAAG was vague or was silent on important accessibility matters. There are changes in ADASAD that both increased and decreased various dimensional and other requirements for accessibility. The prioritization of items noted as not meeting ADASAD in Appendix A considers both the amount of deviation from the ADASAD standard and compliance with ADAAG. For example, the reach height for light switches changed from a range of 9-54" in ADAAG (Section 4.2) to 15-48" in ADASAD (Section 308). A light switch higher than 54" is a higher priority (in most cases) than a light switch at 48-54". In other instances, ADASAD is less stringent. ADAAG allowed a door to close from 70 degrees open position to 3" from the latch in only 3 seconds, where ADASAD is from 90 degrees open to 12 degrees from the latch in 5 seconds. Many standards in ADASAD are new and not addressed well or at all in ADAAG, including protruding objects, recessed doors, door surfaces, vision lights, door maneuvering clearances, heights for stair risers, heights for spout outlets for standing person drinking fountains, requirement for door pulls on both sides of toilet compartment doors, depth of urinal

**CAYMC ADA Compliant Evaluation**
**ADA Accessibility Review Report**

projection from the wall, reduced clear space above stall grab bars, requirement for a bench in changing/locker rooms, etc. DLZ utilized the ADASAD as the benchmark for the ADA evaluation, and the DWJBA has the option of applying either the 1991 ADAAG or the ADASAD when determining compliance of the facility. However, as noted in the ADASAD Guidance, public entities that choose to comply with the 2010 ADASAD in lieu of the 1991 ADAAG prior to the required compliance dates in the rule must apply that standard to the entire facility. A standard may not be applied to a portion of a facility and a different standard elsewhere in the same facility. DLZ recommends application of ADASAD since it provides the highest and best level of accessibility to all persons with disabilities and improvements that were made have been reviewed in detail by the Access Board.

Facility audits were limited to public circulation areas of the CAYMC, including exterior pedestrian access routes to public and employee entrances, the lower level accessible restrooms, building entrances, interior hallways and other circulation spaces, drinking fountains, elevators, stairways, Auditorium, and signage and door hardware to tenant spaces. No tenant spaces occupied by either city of Detroit or Wayne County were included in the evaluation, whether open to the public or not, and no employee-only areas were included in the evaluation. The review performed by DLZ at the CAYMC partially meets the requirements of item 2 of the administrative responsibilities above. See Figure 2 for the location of the CAYMC and the surrounding area. The project limits included exterior improved areas outside the public right-of-way (ROW) to building entrances and interior spaces as described previously.



**Figure 2. Location of the Coleman A. Young Municipal Center in downtown Detroit**.

This report documents conditions of areas of the CAYMC that were reviewed in February 2020 for compliance with the 2010 ADASAD. The specific areas of the facility that were evaluated was based on information provided by DWJBA and direct observations of public circulation spaces by DLZ staff. Areas reviewed are detailed in the discussion, along with areas that were excluded and reason for exclusion if appropriate.

## 1.3    Legislative Background & Applicability

The discussion below is a brief summary of the various provisions of the Title II statute and not intended to encompass the full complexity of Title II or applicable standards and guidelines. Public entities have been subject to many of the non-discrimination provisions contained in the ADA since 1990. Significant precursory legislation to the ADA includes the Architectural Barriers Act of 1968 (ABA) and Section 504 of the Rehabilitation Act of 1973 (RA).

Congress' first significant effort to address discrimination on the basis of disability was its enactment of the ABA, which provided that all buildings constructed, altered, leased, or financed by the U.S. Government shall be accessible to, and usable by, individuals with physical disabilities.

Section 504 of the Rehabilitation Act states: "*No otherwise qualified individual with a disability in the United States shall, solely by reason of his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive Agency*". It also requires Federal agencies to provide accessible programs and facilities.

The ADA was modeled on Section 504 and applies to state and local government entities, public accommodations, public transportation, and commercial establishments. The key points of understanding the ADA are:

- The ADA is fundamentally civil rights legislation. This legislation protects the rights of people with disabilities in employment, transportation, public accommodation, and access to services offered by the public.
- The ADA addresses facility access and access to programs and services. Buildings are required to be accessible and the activities that are offered inside and outside those buildings also must be accessible.
- Outdoor recreation standards as they relate to ADA for a variety of facilities were included in the ADASAD. Standards for amusement rides, boating and fishing facilities, exercise machines and equipment, golf and miniature golf facilities, and play areas, went into effect on March 15, 2012, for all new or altered facilities. An extension for swimming/wading pools and spas in existing facilities was granted and went into effect on January 31, 2013.

Governmental entities must ensure effective communication, including the provision of necessary auxiliary aids and services, so that individuals with disabilities can participate in civic functions. Public entities are not required to take actions that would result in undue financial and administrative burdens. However, they are required to make reasonable modifications to policies, practices, and procedures where necessary to avoid discrimination, unless they can demonstrate that doing so would fundamentally alter the nature of the service, program, or activity being provided.

One important way to ensure that Title II's requirements are being met is through self-evaluation, which is required by the ADA regulations. Self-evaluation enables local governments to pinpoint the facilities, programs, and services that must be modified or relocated to ensure that they are complying with Title II requirements of the ADA. A public entity that employs 50 or more employees must perform and retain its self-evaluation for a minimum of three (3) years.

## 1.4    Facility Access versus Program Access

The ADA addresses two types of accessibility:

- Facility accessibility
- Program accessibility

Facility accessibility requires that a building or structure be physically accessible. Individuals with disabilities cannot be provided access to programs, services, and activities if a building is inaccessible. Program accessibility includes facility accessibility, but also means that a person with a qualified disability receives the same benefits from a program or service and has an equal opportunity to participate as any other participant. The ADA requires all programs to be accessible but no programs were included within the scope of work for this project.

The regulation implementing Title II, 28 CFR Part 35 (as amended September 15, 2010) contain two "safe harbor" provisions:

- Under the first "safe harbor" provision, elements of existing facilities that already comply with either the 1991 ADA Standards or Uniform Federal Accessibility Standards (UFAS) are not required to comply with the 2010 ADA Standards unless they were altered on or after March 15, 2012. As noted in ADASAD Chapter 2, all areas of newly designed and constructed buildings and facilities and altered portions of existing buildings and facilities must comply with the requirements of ADASAD. For alterations that affect, or could affect, the usability of or access to a primary function area of a facility, the area of the alteration and restrooms, telephones, and drinking fountains serving the altered area must be made accessible to the maximum extent feasible unless those alterations are disproportionate to the overall cost and scope of the alteration. The criteria for determining disproportionality is to be established by the Attorney General. An example and additional advisory language is included in 202.4. Alterations in a portion of a facility does not require that all non-compliant items in that facility be brought up to ADASAD.
- Under the second "safe harbor" provision elements comprising a path of travel to an altered primary function area are not required to comply with the ADASAD merely as the result of an alteration to a primary function area, provided those elements comply with the 1991 ADA Standard or UFAS.

There is some flexibility with regard to program accessibility. Not every building (or each part of every building) needs to be accessible. Structural modifications are required only when there is no alternative available for providing program access. DWJBA and CAYMC tenants are required to provide program access for all facilities, regardless of the date of construction, which means that programs, services, and activities, when viewed in their entirety, are readily accessible to and usable by individuals with disabilities.

When choosing a method of providing program access, DWJBA should give priority to the one that results in the most integrated setting appropriate to encourage interaction among all users, including individuals with disabilities.  In accordance with Title II program accessibility requirements, the DWJBA is required to:

- Provide equal access to programs, services, and activities as provided to other members of the community. [28 CFR 35.130(a)-(b)(1) (vii)]
- Provide programs, services and activities in an integrated setting, unless separate or different measures are necessary to ensure equal opportunity. [28 CFR 35.130(b)(2); (d)]
- Absorb any costs necessary to ensure nondiscriminatory treatment, such as making modifications required to provide program accessibility or providing qualified interpreters. [28 CFR 35.130(f)]
- Allow a person with a disability to participate in a program, service, or activity regardless of disability. [28 CFR 35.130(g)]
- Eliminate unnecessary eligibility standards or rules that deny individuals with disabilities an equal opportunity to enjoy programs, services or activities unless necessary for the provisions of the program, service or activity. [28 CFR 35.130(b)(8)]

- Modify policies, practices, or procedures that deny equal access to individuals with disabilities [28 CFR 35.130(b)(7)]
- Furnish auxiliary aids and services when necessary to ensure effective communication. [28 CFR 35.160(b)(1)-(2)]
- Provide appropriate signage and structural communication to inform and alert individuals with visual, mobility, and hearing disabilities. [28 CFR 35.163]
- Eliminate physical barriers to programs, services, and activities by remodeling existing facilities, constructing new facilities, or moving programs, services or activities to an accessible location. [28 CFR 35.150(b)(1)]
- Ensure that newly constructed or altered buildings and facilities are free of physical and communication barriers that restrict accessibility of people with disabilities. [28 CFR 35.151]

## 1.5     Undue Burden

DWJBA does not have to take any action that it can demonstrate would result in a fundamental alteration in the nature of a program or activity, would create a hazardous condition for other people, or would represent an undue financial and administrative burden. A fundamental alteration is a change to such a degree that the original program, service, or activity is no longer the same. For example, assume a community sponsors college-level classes that may be used toward a college degree. To be eligible to enroll, an individual must have either a high school diploma or a General Educational Development certificate ("G.E.D"). If someone lacks a diploma or G.E.D. because of a cognitive disability, it is unlikely that the community would have to alter the requirement to provide equal access. Modifying the rule would change the class from college level to something less than college level and would fundamentally alter the original nature of the class.

The determination that an undue financial burden would result must be based on an evaluation of all resources available for use in a program. For example, if a barrier removal action is judged unduly burdensome, the DWJBA must consider other options for providing access that would ensure that individuals with disabilities receive the benefits and services of the program or activity.

## 1.6     ADA Self-Evaluation and Transition Plan Requirements

The purpose of an ADA Self-Evaluation and Transition Plan (SETP) is to document a Title II entity's review of access to facilities, programs, services, and activities by individuals with disabilities to determine if there are any discriminatory or potentially discriminatory practices, policies, or procedures. This report only partially meets the requirements for Title II entities, as the scope of the project included only an architectural barriers review of limited public areas of the CAYMC, with no reviews of tenant spaces, at other DWJBA facilities, or review of non-architectural barriers. In accordance with the Title II requirements for self-evaluation, to complete a compliant SETP the DWJBA would need to:

1) Identify all of the public programs, activities, and services at all facilities under their ownership and control. [28 CFR 35.105(a)]
2) Review all the policies and practices that govern the administration of the programs, activities, and services at all facilities. [28 CFR 35.105(a)]

If structural changes are identified to provide program accessibility as part of the self-evaluation, the ADA identifies specific elements to be included in the transition plan. At a minimum, the elements of the transition plan are:

1) A list of the physical barriers in DWJBA facilities that limit the accessibility of its programs, activities, or services to individuals with disabilities. [28 CFR 35.150 (d)(3)(i)]

2)  A detailed outline of the methods to be utilized to remove these barriers and make the facilities accessible. [28 CFR 35.150 (d)(3)(ii)]
3)  The schedule for taking the necessary steps to achieve compliance with Title II of the ADA. If the time period for achieving compliance is longer than one year, the plan should identify the interim steps that will be taken during each year of the transition period. [28 CFR 35.150 (d)(3)(iii)]
4)  The name of the official responsible for the plan's implementation. [28 CFR 35.150 (d)(3)(iv)]

## 1.7     Self-Evaluation and Transition Plan Completion

A work plan and method to assess DWJBA-owned and operated facilities, programs, policies, services, and activities for compliance with the ADA will be needed and implemented to complete a fully compliant ADA SETP for all DWJBA facilities. The work plan would need to include:

- Facility audits (interior and exterior), including facilities within the public right-of-way
- Self-evaluation of all DWJBA programs, services, and activities
- Public outreach to advocacy groups
- Facilitate designating an ADA Coordinator
- Develop grievance procedures
- Identify required/suggested training for staff
- Prioritize facilities improvements for accessibility
- Develop a compliant Transition Plan
- Public involvement
- Adoption of relevant standards for construction/modifications to facilities

This report only partially fulfills the SETP requirements of Title II entities, with the limits of the scope of the investigation previously noted. All the recommendations in this report for structural solutions to improve the opportunity of access to all individuals utilizing the facilities are subject to review, revision, and approval of the DWJBA and their staff.

## 2.0   ADA Compliance Evaluation

This section summarizes the review of the CAYMC and describes the scope of the evaluation and limitations of the review. The evaluation was performed during February 2020. Items that were deemed to not meet the 2010 ADASAD are fully noted in Appendix A with a short description of the variance, impact on accessibility, and priority for corrective action. Given that the construction date of the facility pre-dates March 15, 2012, the date when the ADASAD became the enforceable standard for alterations and new construction, a majority of the features are required to meet the 1991 ADAAG; however, this review was performed utilizing the ADASAD as the applicable standard for all facilities. The ADASAD standards provide the greatest level of accessibility and any renovations to the facilities would have to meet these new standards.

In some cases, recommended corrective actions and cost estimates cannot be made with the information available. Examples may include changes to walls that may be load bearing and require structural analysis, compliance with other building codes, need for work that is hidden (e.g., plumbing work within walls, installation of blocking for grab bars, etc.). If that is the case, the reason for the inability to make a recommendation, including additional information that may be required, is noted.

CAYMC staff provided guidance on the uses of the facility and which areas required compliance review as either public or employee common use areas. Details about specific issues to be addressed are included in the Appendix A, including priority and cost for corrective action, along with photographs that within the body of this report that illustrate common issues. Photos are labeled with corresponding non-compliant items from the adjacent listing. The discussion is split between the Office Tower and Court Tower, with the common shared 1st level public lobby prior to security checkpoints being separate.

### 2.1     Facility Exterior Barriers

The CAYMC exterior facilities (see Figure 3) are limited to public pedestrian access routes (PAR) and from the public sidewalk to the building entrances. This includes limited sidewalks and transit pickup in the circular drive and a ramp at the Larned Street entrance. Note that a compliant accessible route outside



Figure 3 – Project area of the CAYMC.

of the ROW is required to be 36" in continuous width with maximum 5% running slope and 2% cross slope. Expansive areas of sidewalks, such as the plaza on the Woodward Avenue side of the building, were evaluated to ensure a compliant accessible route is present. Not all routes may comply.

CAYMC ADA Compliant Evaluation
ADA Accessibility Review Report

The parking lot on the Randolph Street side is restricted to city and county officials. There is no other parking on the CAYMC site. Parking is provided on some adjacent streets and surface and structured parking. Transit service is provided on the Larned Street side via a circular drive. Access to building entrances on all four sides is provided from the public sidewalk, with the Randolph Street entrance being limited to employees. The Larned Street entrance is the only one not at the same general elevation as the adjacent public sidewalk and provides access via stairs and a ramp. All four building entrances include power-assisted door openers.

**Evaluation Results**

1.  The employee parking lot provides a total of 44 numbered, assigned spaces, none of which are marked as accessible. Based on the parking count, 2 accessible spaces with access aisle would be required, including 1 that meets requirements for van-accessible spaces. Since spaces are assigned, consider the potential future need of providing compliant accessible spaces for an assigned user that becomes disabled and the necessary re-assignment of spaces to be compliant with ADASAD.

2.  The ramp at the Larned Street entrance is compliant with all requirements for ramps and handrails.

3.  A sloped access route that is less than 5% running slope on the Larned Street side east of the entrance, which connects to the Randolph Street entrance, has a cross slope of up to 2.8% (2% max. allowed). This accessible route could potentially be used by members of the public that mistakenly go to the employee-only Randolph Street entrance and are directed to the public Larned Street entrance.

4.  The longitudinal slope at the power-assisted door control outside of the E. Jefferson Avenue is 2.4% (2% max.).

5.  The exterior power-assisted door controls at the E. Jefferson Avenue, Woodward Avenue, and Randolph Street entrances have the button recessed within barriers on each side. The narrow width of the barriers and depth of the recess may make it difficult for some persons with upper mobility impairments to operate the controller. The visibility of the power-assisted door controllers at all entrances except Randolph St. is low due to small size of the International Symbol of Accessibility (ISA) and loss of paint from the face. The Randolph St. entrance has a wall sign.








## 2.2 Common Building Elements

The main entry level (Level 1 for all entrances) provides access for the public from all except the Randolph St. entrance, which is limited to employees. Members of the public entering the building have limited areas in a shared hallway and lobby within which to review information or wait for companions prior to going through a security screening process, including metal detector and x-ray equipment. Security checkpoints are provided at both towers. Common building elements include stairways and interior elements of elevators that are not unique to an individual floor.

**Evaluation Results**

1.  None of the public building exit doors provide both visual and tactile letters with Braille identifying the doors as a building egress or exit.

2. None of the five (5) stairwells have compliant handrails. Handrails lack the required extensions at the top and bottom and the height above the stair nosing to the gripping surface is below 34-38" required. This is not required to be corrected until the stairs are altered.

   

3. The stair nosings in all five (5) stairwells extend over the riser at a 90 degree angle, which creates a potential for a user's foot to catch and cause them to lose their balance. ADA standards require 30 degree maximum angle. This is not required to be corrected until the stairs are altered but is a safety item to consider.



4. Signage within the pre-security area informing the public that the accessible restrooms are available only in the lower level is of varied quality and desired location.

## 2.3    Office Tower

Non-compliant items found within the Office Tower are noted below, with separation by common use spaces and building level. Where issues are identified only at specific levels, those levels are identified and where there are unique spaces (i.e., lower level accessible restrooms, Level 13 Auditorium), the discussion and listing of non-compliant items found includes the specific level and/or room. Details and the location of specific non-compliant items are provided in Appendix A.

**Common Use Spaces**
There are limited common elements in the Office Tower that have unique aspects by level, including signage at elevators and stairways, specific stairwell and elevator information for the Office Tower (some of which may be found on every level), and employee-only entrance off Randolph Street.



**Evaluation Results**

1. The employee exit door at Randolph Street does not provide signage with both visual and tactile letters with Braille identifying the doors as a building egress or exit.
2. Service desks and information stands provide a height above 36" max. required for verbal interaction. Certain security stations are exempt but should be considered to be lowered also to provide interaction with members of the public that are in a wheelchair.
3. Signage at most stairway access points is limited within public corridors to a visual ('EXIT') sign that is illuminated, with no sign that includes visual and tactile text, Braille, and stairway pictogram at stairwell access doors. Some stairs have limited signage but do not include all features.



CAYMC ADA Compliant Evaluation
ADA Accessibility Review Report









4. Panic bars on nearly all stairwell access doors protrude into the doorway opening 4-1/2" to 5" (4" max. allowed).

5. Access at all three (3) stairwells is limited on Level 1 due to doors being locked, and the existing hardware within the stairwells is non-compliant throughout (except Level 1), requiring depressing a button with the thumb and grabbing and pulling the handle with the remaining fingers. Hardware should be operable with a single, closed fist.

6. Within stairwells, there is no compliant signage at each access door indicating the building level that includes visual and tactile text and Braille. If present, signage is visual text only and located on the door.

7. The access doors to the emergency communication equipment within all elevators have non-compliant opening hardware. Users are required to insert their finger or other object into an opening in the door and pull, which would be difficult for someone with limited dexterity to do.

8. Signage on both sides of the jamb of all elevators has signage with compliant elements (visual and tactile number and Braille) but the Braille is separated from the bottom of the sign by less than 3/8" minimum required.

9. Level 1 signage at the jambs of all elevators lacks the required tactile star for the main exit discharge level. It is provided on the interior control panel but not on the outside of both jambs as required.





10. Existing elevator floor indicator numbers that are 10 or higher are comprised of 2 individual signs rather than a single sign. This results is excessive separation of the Braille elements. For example, at level 14, there is a '1' and '4' sign rather than a '14'. The Braille provided is technically the correct number but there is a minor issue with spacing when using numbering in this format.

11. The numbering of the elevators that is provided in the lobby could be potentially confusing to some members of the public, as the Elevator # and floor numbers are often in close proximity. Consider modifying the location of the elevator number labels to be less conspicuous (advisory only).



12. There is one (1) wheelchair evacuation chair provided in the Office Tower, located at Level 1 of only a single stairwell (3 total stairwells present).

13. Signage within the Office Tower informing the public that the accessible restrooms are available only in the lower level is of varied quality and location.



**Examples of good location placement for informational/directional signage for accessible restrooms at the Level 1 Office Tower elevators, the Lower Level Office Tower Elevators, and Lower Level Men's non-accessible restroom in the Court Tower (Item 13).**



**Examples of poor location placement and non-descript nature of visual signage for informational/directional signage for accessible restrooms well to the side of the Court Tower elevators, at the Level 1 Office Tower stairway corridor, and Level 1 Office Tower corridor pillar en route to building exit (Item 13).**

14. Signage at non-accessible restrooms on all levels, whether open to the public or designated for employees only, is typically absent or not compliant and not all restrooms provide information about the location of public or accessible public restrooms.



15. Doors to access all three (3) stairwells on all levels require excessive force to open (>5 lbs. of force) and/or close too quickly and adjusting the closers should be attempted to correct deficiencies.

16. Light switches located within public corridors, where provided, is typically above 48" high maximum required by 2010 ADA Standards. All switches found did meet the 54" maximum permitted by the 1991 standards.

**Public restrooms at Court Tower Lower Level and an upper level with deficient or no signage and no informational sign indicating the location of accessible restrooms.**

17. Doors to janitor closets (typically 3-4 per level) and storage near Stair D on all levels typically have knob hardware that requires tight grasping and twisting.

18. Fire extinguisher cabinets (FEC) located throughout the Office Tower often are protruding objects, though there are some that are located in a corner or otherwise not within the circulation area.



19. Many FECs are mounted at a height that would put the glass-breakage hammer (if placed on top of the cabinet as was observed in some locations) and handle of the extinguisher above 48". If moved, ensure compliant location and height.

    

20. The Fire Warden Call Boxes at Stair C and/or near the elevators on most levels have a handle that protrudes.

 

## Building Levels

The Office Tower includes diverse uses on the various levels. The lower level includes the only accessible public restrooms in the entirety of the facility. There are few public offices in the lower level, being primarily employee spaces, loading dock, etc. Other building levels include a variety of office uses for city and county government, with the Auditorium used for most public meetings being located on Level 13. Access to all elevators and stairwells is available from most

levels, with noted exception of Stair E and Elevator 16. There is no access to public areas from the lobby of Stair E/Elevator 16 at Levels 4, 5, 8, 9, 10, 11, and 14, and no access to public areas on Level 14 by Stair C or D. A connection between the Office Tower and Court Tower is available to the public on the Lower Level, Levels 1-10 and Level 12. Details of non-compliance issues are provided in Appendix A. Floor plans showing the limits of the public area evaluations are included in the appendix.

**Evaluation Results**

21. In addition to the common protruding objects above, there are unique protruding objects in the Office Tower at the following locations:
    a. The corridor at LL-06 has a bleeding control kit, lock boxes, and time clock that are protruding objects (typically 5-7" protrusion between 39" and 47").
    b. At Room 408 there is a television monitor on the wall that protrudes 5-1/2" at 58-1/2".
    c. Counter at corridor in Room 900A protrudes 16-1/4" at 38".



22. The maneuvering clear space on the pull side of access doors to Stair C and D is less than the minimum 18" required at the Lower Level.

23. Signage throughout the Office Tower at permanent spaces is often missing, in the wrong location, and/or does not include all required information. The required clear space at the signs on the latch pull side is also sometimes obstructed by FECs or other objects.



Examples of common signage issues (from left to right – non-compliant signage and obstructed clear space where sign should be located, door with paper visual sign and room number above the door, and visual signage etched/attached to glass with room number above the door (Item 23). Compliant signage would include visual and tactile letters with Braille located on the latch side wall adjacent to the door with an 18"x18" clear space at the sign outside of the door swing. Signs can be placed on the door only on the push side of the door. Many doors have no signage identifying the space beyond, with or without a room number sign above the door (Item 23).

24. There are a compliant number and type of drinking fountains on most levels but the 'standing' user fountains original to the building have numerous non-compliance issues. The 'wheelchair' user

fountain alcove is too shallow and it is a protruding object where provided (LL and Levels 2-11 and 13-14).



Examples of drinking fountains original to the building. Most have compliant height bubbler for standing user compliance (38-43") though some are less than 38" high. The biggest compliance issues with these fountains is the shallow depth from the rear wall to the bubbler (15" min. required). This shallow depth makes it difficult to use and can be a hazard due to users hitting their head on the back wall (Item 24).



Examples of wheelchair user drinking fountains with bottle fillers that have been recently installed. Most have compliant height bubbler for wheelchair user compliance (36" max.) but some were installed with less than 27" knee space below and need to be reinstalled. The biggest compliance issues with these fountains is that they all protrude into the pedestrian circulation area since they were installed in original alcoves that are too shallow (Item 24).

25. Level 1 and 12 provide 2 drinking fountains each but neither meets wheelchair requirements for bubbler height or knee space and also have several other compliance issues for standing users.

26. Level 13 provides 3 drinking fountains, 2 of which are standing user height fountains original to the building have numerous non-compliance issues.

27. The wheelchair accessible fountain on Levels 2, 4, and 9 is mounted too low (most are 33"± bubbler), providing less than the minimum required knee space below of 27" and on Level 13 is mounted too high at 37" bubbler height. All need to be remounted to provide 27" min. knee space and 36" maximum bubbler height.

28. Working surfaces and/or service windows at Room 900A are above 34"/36" required for working surfaces/service counter for verbal interaction only.

29. The accessible Men's restroom in the Lower Level has the following issues:

    a. non-compliant signage that provides only ¼" spacing between Braille and textile letters above (3/8" min. req'd). The sign is located to the right of the open doorway, consider signage on both sides of open doorways to restrooms.

    b. the top lip of the lowest urinal is at 17-1/2" high (17" max. req'd).

c.  the sinks provide only 5" deep knee space at 27" above the floor (8" min. req'd).
d.  the wheelchair stall door provides no handle on the inside (handles required on both sides).
e.  the toilet paper dispenser is located 5" above the side grab bar in the wheelchair stall (12" clear space required above).
f.  the baby changing station protrudes more than 4" into the wheelchair clear space adjacent to the toilet.
g.  the hand dryer protrudes from the wall more than 4" into the circulation area within the room.
h.  the restroom has no ambulatory accessible stall, which is required when there are 6 or more total combined urinals and toilets (8 present in this restroom).



30.  The accessible Women's restroom in the Lower Level has the following issues:
a.  non-compliant signage that provides only ¼" spacing between Braille and textile letters above (3/8" min. req'd). The sign is also located to the left of the open doorway, consider signage on both sides of open doorways to restrooms.
b.  the sinks provide only 5-1/2" deep knee space at 27" above the floor (8" min. req'd).
c.  the wheelchair stall door provides no handle on the inside (handles required on both sides) and the door is not self-closing (spring hinge needs to be replaced).
d.  the toilet paper dispenser is located 4-1/4" above the side grab bar in the wheelchair stall (12" clear space required above).
e.  the baby changing station protrudes more than 4" into the wheelchair clear space adjacent to the toilet.
f.  the hand dryer protrudes from the wall more than 4" into the circulation area within the room.
g.  operation of the sanitary napkin/tampon machine requires grasping and twisting.



31.  The Skywalk power-assisted door on Level 2 exerts a high amount of force when closing and cannot be held open manually. Also, the door could not be operated manually during the evaluation, which could be an issue in a power outage.

32. The corridor access to the Skywalk accessible door on Level 2 is only 44" wide (48" min. req'd for latch side approach to a door with a closer). The door also lacks prominent signage as the accessible route.



33. Main hallway double doors at public corridors connecting the Office Tower and Court Tower are typically locked in the open position. Doors have glass typically located only 6" above the floor on the push side (10" min. required) on Levels 3, 6 (3 sets), and 13. These doors could have the glass broken by a wheelchair footrest.

   

34. The coat rack and shelf in the side hallway to the Auditorium on Level 13 are at 55" and 64", respectively (48" max. required).

35. The Auditorium on Level 13 has the following issues:

   a. Signage in the main exterior hallway indicates "HANDICAP ACCESSIBLE" with the ISA, tactile letters, and Braille, which provides no other information about what is accessible or where. Informational signage only require visual text and should include more information. Signage also should not include the wording "handicap".

   b. There is no directional signage for the location of the wheelchair access into the auditorium via the side hallway and door.

   c. The short ramp at the side door between the entry and wheelchair seating on the main floor has no handrails as required.

   d. Handrails present at the 4 sets of stairs from the hallway up to the auditorium level are not all full length on both sides of the stairs and do not provide the required 12" extension at the top parallel to the floor or 1 tread width (11" min.) past the bottom.



   e. Based on seating capacity, both the 1991 and 2010 Standards require installation of an Assistive Listening System (ALS) in this assembly area with appropriate number and types of Assistive Listening Devices (ALD) and signage indicating the presence of the ALS. The 1991 ADAAG required a minimum of receivers equal to 4% (23 total) of the total number of seats, where 2010

ADASAD also requires 23 ALDs, 6 of which must be hearing aid compatible. There is currently no ALS in place.

f. Based on seating capacity (over 500 but less than 600) of both the 1991 and 2010 Standards, 7 total wheelchair spaces with adjacent companion seats are required but only 5 are provided. Two (2) of the existing spaces were blocked by a camera stand at the time of the evaluation.

  

g. The public lectern height angles from 36" at the front to 44" at the rear and does not permit direct sight lines to officials on the upper level to persons in a wheelchair. It also protrudes more than 4" at 27" into the circulation area.

h. The staff area lectern height angles from 42-1/2" at the front to 46" at the rear and does not permit direct sight lines to the public for persons in a wheelchair.

i. The knee space below the staff tables is only 25-1/2" (27" minimum required).

j. The knee space below the commissioner's desks on the upper level is only 25-1/4" (27" min.).

k. The only access to the commissioner's upper level is via a set of steps on either end. The steps lack handrails on both sides as required and there is no access to persons in a wheelchair to this level. The width of the access may be an issue when altered, depending on the corrective action implemented (36" min. width required). Clear space on the upper level is somewhat limited for circulation but adequate if wheelchair space provided on one end.

   

## 2.3    Court Tower

Non-compliant items found within the Court Tower are noted below, with separation by common use spaces and building level. Where issues are identified only at specific levels, those levels are identified and where there are unique spaces, the discussion and listing of non-compliant items found includes the specific level and/or room. In most cases, where there are similar issues in the Court Tower that are similar to those in the Office Tower, photos of examples found are not included. Details and the location of specific non-compliant items are provided in Appendix A.

## Common Use Spaces

There are limited common elements in the Court Tower that have unique aspects by level, including signage at elevators and stairways, and specific stairwell and elevator information for the Court Tower (some of which may be found on every level).

## Evaluation Results



1. Service desks and information stands provide a height above 36" max. required for verbal interaction. Certain security stations are exempt but should be considered to be lowered also to provide interaction with members of the public that are in a wheelchair.
2. Informational directory kiosk and wall monitor to the west of the main lobby security area are protruding objects.



3. Signage at many public hallway doors leading to the stairway access points is limited to a visual ('EXIT') sign that is illuminated, with no sign that includes visual and tactile text, Braille, and stairway pictogram at stairwell access doors.
4. The room number of hallway stairway foyer entry doors (-03 for Stair A and -05 for Stair B) are sometimes duplicated at other locations (e.g., 805 is both Payroll and stairway foyer access door).
5. Most stairs are accessed from the public hallway via a door leading to a small foyer, which includes the stairway access door and often 1 or more other doors without signage. Some of these hallway doors include signage on the door about the non-stair space access beyond that could be confusing to the public.



Examples of hallway doors accessing the stairway foyer that include information about other spaces also accessed from the foyer. Rooms 203 to Stair A & Room 205 to Stair B (left photo) are two of the few doors with visual text that a stairway is beyond the hallway access door. Door 1303 is the access from the corridor to the Stair A foyer but includes visual signage for Judge Braxton (center 2 photos). Photo on the right shows a typical stairway foyer in the Office Tower, with the stair access door and 1 or more other doors with or without signs (Item 5).

6.  Panic bars on nearly all stairwell access doors protrude into the doorway opening 4-1/2" to 5" (4" max. allowed).

7.  Access at all both (2) stairwells at Level 1 is limited due to doors being locked, and the existing hardware within the stairwells is non-compliant throughout, requiring depressing a button with the thumb and grabbing and pulling the handle with the remaining fingers. Hardware should be operable with a single, closed fist.



8.  Access to both stairwell hallway access doors on Level 3 is partially obstructed by adjacent office doors propped open, which at least partially block the access to the hallway door hardware.

9.  Within stairwells, there is no compliant signage at each access door indicating the building level that includes visual and tactile text and Braille. If present, signage is visual text only and located on the door.

10. The access doors to the emergency communication equipment within all elevators have non-compliant opening hardware. Users are required to insert their finger or other object into an opening in the door and pull, which would be difficult for someone with limited dexterity to do.

11. Signage on both sides of the jamb of all elevators has signage with compliant elements (visual and tactile number and Braille) but the Braille is separated from the bottom of the sign by less than 3/8" minimum required.

12. Level 1 signage at the jambs of all elevators lacks the required tactile star for the main exit discharge level. It is provided on the interior control panel but not on the outside of both jambs as required.

13. Existing elevator floor indicator numbers that are 10 or higher are comprised of 2 individual signs rather than a single sign. This results is excessive separation of the Braille elements. For example, at level 14, there is a '1' and '4' sign rather than a '14'. The Braille provided is technically the correct number but there is a minor issue with spacing when using numbering in this format.

14. The numbering of the elevators that is provided in the lobby could be potentially confusing to some members of the public, as the Elevator # and floor numbers are often in close proximity. Consider modifying the location of the elevator number labels to be less conspicuous (advisory only).





15. There two (2) wheelchair evacuation chair provided in the Court Tower, located at Level 1 and Level 13 for the two (2) stairwells.

16. Signage within the Court Tower informing the public that the accessible restrooms are available only in the lower level of the Office Tower is of varied quality and location.

17. Room signage to permanent spaces throughout most levels of the Court Tower is typically non-compliant for information provided, lack of tactile features and/or Braille, improper location, other non-compliant features, or missing entirely. Courtroom doors include only visual text facing hallway

traffic or in visual text on the door, with no tactile letters or Braille. Signage to non-accessible restrooms on all levels, whether open to the public or designated for employees only, is typically absent or not compliant and not all restrooms provide information about the location of public or accessible public restrooms.



Examples of various non-compliant signage at courtrooms in the Court Tower (Item 17). Visual text signage is circled where it is present. Note the amount of visual text signage on many courtroom doors.



Examples of public and/or employee-only restroom with non-compliant or missing signage (Item 17).

**CAYMC ADA Compliant Evaluation**
**ADA Accessibility Review Report**



Examples of City and County offices with non-compliant signage, often it is visual text only with a room number sign above the door or as part of the other text on the wall/door. Some rooms have compliant signage located too far from the door. Room number is circled where it is present (Item 17).



Examples of non-compliant visual text only signage provided on doors (Item 17).

18. The stairway access doors from the main hallway have latch side clear space within the stairway foyer of less than 18" minimum required (often as little as 2") at Stair A access on Levels LL, 2, 3, 9,

10, 11, 12, 13, 14, 15, 16, 17, 18, and 19 and at Stair B access on Levels LL, 2, 9, 10, 11, 12, 14, 15, 16, 17, 18, and 19.



19. Doors to access both (2) stairwells on all levels require excessive force to open (>5 lbs. of force) and/or close too quickly and adjusting the closers should be attempted to correct deficiencies.
20. Light switches located within public corridors, where provided, at typically above 48" high maximum required by the 2010 ADA Standards. All switches found did meet the 54" maximum permitted by the 1991 standards.
21. Fire extinguisher cabinets (FEC) located throughout the Court Tower often are protruding objects. In some stairway foyers, there are non-permanent obstructions at FECs that are cane-detectable.
22. Many FECs are mounted at a height that would put the glass-breakage hammer (if placed on top of the cabinet as was observed in some locations) and handle of the extinguisher above 48". If moved, ensure compliant location and height.



23. Vending machines available primarily in the Lower Level have operable parts above 48" (advisory only, contact vendor to correct).

## Building Levels

The Court Tower includes a variety of uses on the various levels, including courtrooms and offices related to court operations. Floor plans showing the limits of the public area evaluations are included in the appendix. A variety of office uses for city and county government are also contained in portions of the Court Tower, including both the City and County Clerks. Access to all elevators and stairwells is available from most levels. A connection between the Office Tower and Court Tower is available to the public on the Lower Level, Level 1-10 and 12. Details of noted non-compliance issues presented are provided in Appendix A.

**Evaluation Results**

24. In addition to the common protruding objects above, there are unique protruding objects in the following locations:
    a. At Stair B lobby on Level 2 there is a hand sanitizer dispenser on the wall that protrudes 5" at 39-1/2".
    b. Fire alarm controls at Stair B on Levels 3, 6, 15,  protrudes 4-1/4" at 55-1/2" to 56-1/4".
    c. Fire alarm control box at Stair B on Level 5, 8 protrudes 7" at 44" to 45-1/2".
    d. Card reader at the wheelchair lift alcove near Room 1307 protrudes more than 4".
    e. Fire warden box at Stair B on Level 14 protrudes 5-1/2" at 45".
    f. Countertop height at payment window at Room 1907 is 41" high (36" max.).
    g. Hand sanitizer dispenser at Stair B protrudes 5" at 39-1/2".
    h. AED near the Court Tower elevators protrudes 6" at 51".



25. Signage throughout the Office Tower at permanent spaces is often missing, in the wrong location, and/or does not include all required information. The required clear space at the signs on the latch pull side is also sometimes obstructed by FECs or other objects.

26. There are is typically only one (1) drinking fountain on most levels. A 'standing' user fountain original to the building which has numerous non-compliance issues is present on levels LL, 4, 5, 7, 8, 10, 12, and 14. Level 1 has two of these standing user fountains. A 'wheelchair' user fountain is the only height provided on Levels 2, 3, 6, 9, 11, 13, 15, 16, 17, 18, and 19.  Wheelchair fountains are provided on Levels 2, . All wheelchair accessible drinking fountains protrude into the circulation area of the hallways.

27. The wheelchair accessible fountain on Levels 2, 4, 6, 9, 11, 13, 15, 16, 17, 18, and 19 is mounted too low (most are 33"± bubbler), providing less than the minimum required knee space below of 27". All need to be remounted to provide 27" min. knee space and 36" maximum bubbler height.

28. Stairway in main public hall on Level 10 has the following issues:
    a. Handrail extensions at the top and bottom are less than 12" min. at the top parallel to the ground and 1 tread depth at the bottom (11" min.).
    b. Handrails are mounted at 31-1/2" to 33" high (34-38" req'd.).
    c. Stair nosings extend over the riser at a 90 degree angle, which creates a potential for a user's foot to catch and cause them to lose their balance. ADA standards



require 30 degree maximum angle. This is not required to be corrected until the stairs are altered but is a safety item to consider.

29. Stairway in main public hall on Level 12 has stair nosings that extend over the riser at a 90 degree angle, which creates a potential for a user's foot to catch and cause them to lose their balance. ADA standards require 30 degree maximum angle. This is not required to be corrected until the stairs are altered but is a safety item to consider.

30. Stairway in main public hall at Room 1307 has the following issues:



   a. Handrail extensions at the top and bottom are less than 12" min. at the top parallel to the ground and 1 tread depth at the bottom (11" min.).
   b. Handrails are mounted at 31-1/2" to 33" high (34-38" req'd.).
   c. Stair nosings extend over the riser at a 90 degree angle, which creates a potential for a user's foot to catch and cause them to lose their balance. ADA standards require 30 degree maximum angle. This is not required to be corrected until the stairs are altered but is a safety item to consider.

31. Main hallway double doors at public corridors connecting the Office Tower and Court Tower are typically locked in the open position. Doors have glass typically located only 6" above the floor on the push side (10" min. required) on Levels 3 (2 sets) and 6. These doors could have the glass broken by a wheelchair footrest.

# 3.0   Discussion & Recommendations

The accessibility review of the CAYMC, as limited by the scope of the work, identified a number of issues that should be addressed, both when improvement projects are implemented as well as stand-alone projects intended to remove barriers or remove safety hazards. Section 2.0 above provides a brief description of the items noted for the facilities which fail to meet the requirements of ADASAD (and ADAAG where relevant). Details about the facility and items to address are included in Appendix A, along with priority for corrective action and estimated cost. Some costs cannot be determined due to additional investigation needed that is beyond the scope of this investigation. Below is an overall summary with descriptions and photographs or figures from the ADASAD of some of the common issues encountered at the CAYMC, along with options and recommendations for corrective action. Issues which have little or no impact on accessibility may not be discussed but are included in Appendix A.

## 3.1   Exterior and Building Access

Overall, accessibility outside and into the building is very good. All four of the building entrances have an accessible route to them and power-assisted door openers. There are minor issues found that should be addressed, including:

- Correcting the noted deficiencies at the clear space of the E. Jefferson Avenue power-assisted door opener. It is highly usable currently but should be made compliant when the sidewalk is reconstructed.
- The sloped access route east of the Larned Avenue entrance should also be addressed when reconstructed. The only likely time this accessible route would be used is when the public inadvertently goes to the employee-only entrance at Randolph Street and is instructed to go to the public entrance on Larned. Consider instituting a policy with building security to allow a disabled person that is not an employee but accidentally attempts to gain access at Randolph to be screened there rather than directed to a public entrance. It is also recommended that signage be placed at the sidewalk leading from E. Jefferson Avenue to the Randolph Street entrance instructing the public to enter the building at E. Jefferson. The sign should be conspicuously placed in a location to avoid backtracking.
- The power-assisted door operators at the public entrances should be made more conspicuous with signage similar to that found at Randolph. Also, the power-assisted door operator buttons at the entrances at E. Jefferson, Woodward, and Randolph need to be made operable with a closed fist. Either the plates on the side of the buttons should be removed or the buttons made to extend beyond the front of the plates.
- Provide accessible parking in the employee lot as needed for employee accommodation.



## 3.2   Building Signage

A large facility such as the CAYMC needs to provide the public with information about the programs and services offered within. As noted in Section 2, various room signage throughout both towers is present, with very few situations where that signage is compliant. In addition, directional and informational signage is provided throughout the towers without apparent regard for considering the desired message intended to be communicated. In many cases, the amount of information and number of signs is

overwhelming and detracts from their intended goal. In other situations, the information on signage and/or their location could be improved dramatically to convey the desired message intended.

Some of the issues noted with signs is due to issues with features of the sign not being compliant with requirements for characteristics such as the spacing of Braille from adjacent text or the bottom of the sign (elevators, accessible restrooms) or signs not being located in the correct location. Signage with tactile features (tactile letters and Braille) are required to be placed on the latch side wall at a compliant height outside of the door swing with a level clear space at the sign. Signs can only be placed on the door itself if the door opens in and has a closer but no hold-open device on the door. There are many doors that have a lock on the closer or fold-down rubber foot that would preclude placement of signs on those doors. Details of signage requirements can be seen on figures below. Taking this into consideration, the following recommendations should be considered:



**Figure 703.3.2**
**Position of Braille**



**Figure 703.4.1**
**Height of Tactile Characters Above Finish Floor or Ground**



**Figure 703.4.2**
**Location of Tactile Signs at Doors**

- All doors that are an emergency egress discharge, including Level 1 exits, are required to have signage with tactile letters and Braille. These signs should also be placed at all stairwell access doors, though the information contained on the example sign to the right can also be portrayed in the recommended signage for stairways (see "EXIT" sign to the right).



- All doors immediately outside of stairwells in both towers should have signage installed adjacent to the latch side that includes the stair pictogram with visual and tactile letters and Braille with an "EXIT" message (see Sign 1a example). In the Court Tower, if hallway doors accessing the foyer at the stairwell door are to remain in place, a similar sign should be placed in the main hallway adjacent to the latch side of the door as well but without "EXIT" (Sign 1b).

- The Lower Level of the Office Tower provides the only accessible restrooms within the entire CAYMC that are open to the public. Signage throughout the building is highly varied in regard to how effectively this information is conveyed. Some locations where informational/directional signs are provided regarding the location of the accessible restrooms is entirely appropriate (e.g., at Lower Level Office Tower elevator lobby). Other places within the building where informational signs are provided, they are either not in a highly visible location, are similar in color to other signs, and/or include only text. The signage recommended within the CAYMC to inform the public



about the location of the accessible restrooms needs to include the ISA pictogram with appropriate visual text such as 'Accessible Restrooms on Lower Level' or similar (see Sign 2). No tactile letters or Braille is needed on directional signage. Consider using a consistent color blue sign at all locations, including replacing existing directional signs in the Lower Level. These signs (similar to Sign 2) should be provided at the following locations:

- o   Post mounted sign at the security screening checkpoints on Level 1 and the Skywalk on Level 2 of the Office Tower.
- o   At all elevator call buttons on Level 1 on both sides of the elevator lobby/hall. Since all persons entering the building must go through security screening and then proceed to the elevators this would provide the opportunity for signs to be observed by everyone.
- o   At all public non-accessible restrooms throughout the entire facility.
- o   Within elevator cars in a conspicuous location. A smaller sign can be considered within elevator cars given the distance to the viewer.
- o   Select locations within long hallways in the facility that are removed from elevator lobbies.

- •   Place signage similar to Sign 3 on both sides of both Lower Level elevator lobbies that includes directional information and is blue in color. The goal should be to get people into the Lower Level and then inform them of the location of the restrooms with a directional arrow sign (Sign 3).

- •   Provide compliant signage at all non-accessible restrooms. In addition to Sign 2 or similar sign, a sign that includes the gender pictogram appropriate with tactile and visual text and Braille should be provided. The color of non-accessible restroom signage could be considered to be a color other than blue to differentiate. Ensure that visual and tactile elements of signs for restrooms for use by employees only includes appropriate information. Examples to consider for both employee and non-employee restrooms are shown.



- •   Existing signage at the accessible restrooms in the Lower Level of the Office Tower has minor issues with spacing of Braille from adjacent text. Consider replacing those signs with blue signs to maintain a consistent theme throughout the facility.
- •   Signage inside of stairwells at all doors should be provided adjacent to the latch side that includes tactile characters and Braille indicating the floor level to communicate to persons with vision loss the floor level accessed by each door. See Sign 4 example, many options exist. Ensure the signage within stairwells is placed outside of the door swing and at a compliant height.
- •   Signage at elevators needs to include compliant signage on both jambs of all elevators, including signs with visual and tactile numbers and Braille. Signs

at Level 1 must also include a tactile star (Braille for the star is not required but shown on Sign 5 example). For floors on upper levels 10 and above, ensure the signs provided meet all requirements of 407.2.3.1 and relevant sections of 703.





Figure 407.2.3.1
Floor Designations on Jambs of Elevator Hoistway Entrances

- Provide compliant signage at all doors in the CAYMC that includes visual and tactile letters and Braille. The ADASAD does not require any specific information be provided and is often the room number. While that complies with requirements, it is unlikely that persons needing the non-visual information on signage will know the room number of all places they may need to access. Directories and other information signage is not required to be provided in any format other than visual text, making it difficult for the vision impaired to potentially know which room number they need to access. Consideration should be given to providing the actual use at each room rather than simply the room number. Room numbers could still be provided at all locations as visual text if desired. If a particular office were to relocate, the tactile sign for the user could be moved with them. An example compliant sign is provided as Sign 6, though tactile features could be provided for the informational element also or instead of the room number. For example, currently the Jury Assembly Room is in the Court Tower Room 301. Signage location is unusual since it is a double door but one leaf was open at the time of the evaluation. If this leaf is open at all times, the sign in this location can be placed on the inactive leaf. The sign could include tactile letters and Braille



that states either/both "Jury Assembly", "Room 311", or "311 Jury Assembly". The last option would make the sign obsolete if Jury Assembly were relocated to a different room number. "Jury Assembly" would be understood by anyone that can read the tactile features and be moved with the use to a different location in the future. "Room 311" requires knowledge that Jury Assembly is in Room 311. It is recommended that a master signage plan be developed for both towers for all permanent spaces. Signage plans should include room signage and directional/informational signs for the public. A consistent theme should be considered for similar type signs (blue for accessible features, non-blue for other restrooms, perhaps different shape or color for city and county, etc.). Signs should be developed that include all the information and other items required by ADASAD 703. Sign proofs should be reviewed by someone familiar with ADA requirements for signage prior to fabrication, and the location of each sign should be specified and approved to ensure compliance. Many of the existing signs throughout the building should be removed, though some locations may benefit from additional visual and/or informational signs.

## 3.3      Accessible Public Restrooms

As discussed earlier, the only restrooms that are wheelchair-accessible and open to the public are
located on the Lower Level of the Office Tower. Section 3.2 provides recommendations for signage at all
restrooms within the CAYMC and directional and informational signage within the facility as well. The
items noted below are the recommendations for the existing accessible restrooms to correct
deficiencies noted during the facilty evaluation, in addition to other recommendations to investigate
options to provide additional accessible restrooms for the public. It is extremely unusual for a facility of
this size to have only 1 wheelchair accessible restroom for each gender.

- The entry to both existing accessible restrooms is an open doorway. As part of the signage plan that
  is recommended for consideration, new restroom signage should be placed on both sides of open
  doorways at restrooms. This is primarily to reduce the
  potential for a blind person to inadvertently wander into
  the wrong gender restroom. 
- Provide the required hardware on all wheelchair stalls,
  including compliant handles on both sides of the door
  and in the Women's restroom provide a functioning
  spring hinge that auto-closes the wheelchair stall door.
- Relocate the toilet paper dispenser within the
  wheelchair stall to a compliant location relative to both
  the front of the toilet and outside of clear spaces above
  and below the grab bar (areas in yellow to right).
- Explore a different location to place the Baby Changing Stations in both restrooms that is not
  located within the wheelchair stall. Ensure compliance with protruding objects in new location.
- Provide a cane-detectable object below protruding hand dryers.
- In the Women's restroom, replace the tampon dispensing machine with one that has compliant
  hardware. Existing hardware requires grasping and twisting to operate.
- The Men's restroom has a total of 8 combined urinals/toilets but no ambulatory accessible stall is
  provided. An ambulatory stall is required when there are 6 or more fixtures. Provide a compliant
  ambulatory stall in an existing stall by providing all required features, including 35-37" width and 60"
  minimum depth, 32" wide entry door with outswinging door, grab bars on both side walls, and other
  features as stipulated in ADASAD 604.
- Explore options available to provide additional accessible public restrooms throughout both towers.
  A partial evaluation was done during previous studies, which looked simply at modifying 2 existing
  stalls into a wheelchair accessible stall. A much more detailed investigation is needed, as spot checks
  of some existing non-accessible restrooms that were unlocked found fairly significant issues in
  addition to lack of a wheelchair stall. The investigation also needs to include an evaluation of fixture
  count requirements to meet current building codes, as well as other options that would accomplish
  the same goal of providing accessible restrooms such as adding family/unisex restrooms instead of
  modifying existing multi-user spaces. This would require evaluation of using existing space near
  existing plumbing infrastructure.

## 3.4      Auditorium

Access to the meetings conducted by the boards and commissions that use the Auditorium, as well as
compliance with communication requirements for persons with hearing loss, are essential to permit
persons with disabilities to be fully involved in their government. The Auditorium, located on Level 13 of
the Office Tower, was renovated in 2009 prior to the effective date of the 2010 ADASAD and therefore

required to meet 1991 ADAAG requirements. The differences between the standards have little bearing on the issues identified during the compliance evaluation. Some of the issues that follow are the result of either design and/or construction error, misinterpretation of the ADA standards and requirements for assembly areas, or decisions made during the renovation process that DLZ is not aware of and resulted in the non-compliance. Recommendations for the Auditorium include:

- Existing signage indicating "HANDICAP ACCESSIBLE" should be removed due to both the use of the work "HANDICAP" and the fact that the signs provide no useful information for a space that should be assumed to be accessible. Replace signage with directional signage that includes the ISA and directional arrow pointing towards the side entrance (see Sign 7). Note that directional signage is intended to be entirely visual, tactile features and Braille are not required. Signage should be placed at the entrance from the elevator lobby hallway as well as at all stairs.



- The ramp on the accessible route from the side entrance to the wheelchair seating area has a compliant running slope of 6.2%. However, ramps with vertical elevation changes that exceed 6" (which this one far exceeds) are required to have handrails on both side. There are no handrails provided at this ramp. Handrails are required at this location by both the 1991 and 2010 standards, which are nearly identical with the requirements of ramps and handrails. The required handrail will obstruct one of the access points to the staff level, though the accessible access for staff is on the opposite side of the room. Installation of the required handrails is likely the least costly option to make the ramp comply. Another option would be reconstruction of the main floor level to reduce the running slope in the area of the existing ramp to less than 5%. There is available space to accomplish this but is more disruptive and likely more costly than the addition of handrails.

- Handrails provided at the four (4) sets of stairs from the hallway to the public seating area in the Auditorium have handrails that are not compliant. Existing handrails are not all full length of the stairs on both sides and none have the required extensions at the top and bottom of the stairs. The 1991 and 2010 standards both require handrails on both sides of stairs with extensions. The 1991 standards are more stringent with the requirements of bottom extensions (see comparison figures below). Installation of compliant handrails is not in itself a daunting task, however there are areas where the extensions will impact other features of the space. As shown on photos for Item 35d in Section 2.3, bottom extensions in some locations will obstruct access to doors for storage.



NOTE:
X is the 12 in minimum handrail extension required at each top riser.
Y is the minimum handrail extension of 12 plus the width of one tread that is required at each bottom riser.

**ADAAG Figure 19**



Note: X = tread depth

**ADASAD Figure 505.10.3
Bottom Handrail Extension at Stairs**

The height of some handrails is also an issue that will need to be addressed with the installation of new handrails. The top of gripping surfaces of handrails is required to be 34-38" above stair nosings

by both sets of ADA standards. Ensure that new handrails meet all requirements of ADASAD 505. It is recommended that the stair to the far right side when entering from the elevator lobby be corrected first, since there are no issues with conflicts at storage doors or incomplete sections of wall. The two sets of stairs in the center have doors to storage rooms on both sides at the bottom and the stairs on the far end have handrails on one side that are not the full length but have no issues with doors at the bottom landing. Signage similar to Sign 8 should be placed on the wall facing the elevator lobby doors directing the public to this set of stairs as the accessible stairs until all stairs can be made compliant. The signage should be blue in color and include the stair pictogram and directional arrow pointing towards with stair with visual text, with no tactile text or Braille required.



- Assembly areas are required to provide an Assistive Listening System (ALS). An ALS is an amplification system that uses a transmitter and receivers to provide access for the hearing-impaired. Assembly areas are defined in both ADAAG and ADASAD and include public meeting rooms. There are minor differences in the requirements of the two standards. ADAAG 4.33.6 requires an ALS only if the space has individual fixed seats (which the Auditorium has), where ADASAD 219 requires an ALS in all courtrooms, rooms with audio amplification, and where audible communication is 'integral to the use of the space'. Both standards require an ALS in the Auditorium. There are minor differences in the standards regarding the number and type of receivers or Assistive Listening Devices (ALD) [see ADAAG 4.1.3(19)(b) and ADASAD Table 219.3). The number of receivers required is dependent on the capacity of the seating in the assembly area. Based on the seating capacity of 553, both standards require 23 ALDs, with ADASAD requiring that a minimum of 6 of those be hearing aid compatible. Where an ALS is provided as required, signage is required to inform persons of their availability. Signs must meet the requirements of ADASAD 703.5 and include the International Symbol of Accessibility for Hearing Loss (see Figure 703.7.2.4). DWJBA should investigate the options available for purchase and installation of an ALS that is compatible with the existing audio system. Signage should be placed outside the space that continues the blue accessible theme suggested in the building, with signage including the proper pictogram symbol and information about where ALDs can be obtained.



**Figure 703.7.2.4**
**International Symbol of Access for Hearing Loss**

- Assembly areas are also required by ADAAG and ADASAD to provide accessible wheelchair locations. The number of spaces is dependent on the seating capacity, with both standards requiring 7 compliant wheelchair spaces [see ADAAG 4.1.3(19)(a) and ADASAD Table 221.2.1.1). Compliant spaces are required by both ADAAG and ADASAD to provide 66" minimum width for 2 wheelchair spaces that are side-by-side for front or rear approach (see ADAAG Figure 46 and ADASAD Figure 802.1.2) and have a fixed companion seat next to each wheelchair space. ADASAD allows a single wheelchair space be provided that is 36" minimum width for front or rear approach. There are currently three (3) areas in the Auditorium that are provided for wheelchair seating. One nearest the accessible entrance and ramp is less than 66" but more than 36" and can accommodate one (1) space. The other locations are more than 66" wide and can accommodate two (2) spaces each, providing a total of 5 compliant spaces. However, at the time of the evaluation, the spaces furthest from the accessible entrance were obstructed by a camera stand. Signage at designated companion seats should be provided similar to Sign 9. Explore options

available to provide an additional two (2) compliant wheelchair spaces with companion seating and relocate the camera that obstructs the existing wheelchair seating area.



- The public lectern is too high and does not allow a wheelchair user from the public to address the elected/appointed officials and provide clear sight lines to all members. Consider providing either an adjustable height lectern or remove the lectern and provide a table with 27" minimum knee space and 28-34" high surface that the microphone can be placed. The existing lectern also protrudes into the circulation area of the space.
- The only access to the upper level used by officials is via 3-4 steps at either end. There are no handrails provided at either stair and the width of the stairs may not provide the minimum 36" clearance between handrails if provided. More important, there is no access provided to an official in a wheelchair. This should have been included in the most recent alteration of the space per ADAAG 4.3.8, which states that an accessible route with changes in level over ½ inch are required to provide a ramp, elevator, or platform lift that meets requirements and that an accessible route does not include stairs, steps, or escalators. Explore options for providing access to a wheelchair to the upper level, which is likely to include a compliant ramp with handrails and modification to existing casework to provide required clearances. Both sides have doors to consider in the solution.
- The lectern at the staff level facing the public seating is too high and does not allow a wheelchair user to address the public and provide clear sight lines in all directions. Consider providing a lectern that provides a maximum height of 36".
- The knee space below both the desk for the officials at the upper level and tables at the staff level are too low at 25-1/2" (27" minimum required). At least one space in both locations should have minimum height knee space of 27" minimum, with working surfaces being 28-34" height.

### 3.5    Doors and Door Hardware

The DWJBA is responsible for only a small percentage of the doors and hardware within public circulation areas. Doors to areas such as stairways and limited exempt spaces (janitor closets, etc.) are examples. Doors to areas utilized by the city or county for their operations are the responsibility of those respective entities. There were a significant of doors with issues noted in both towers for all three entities with responsibility. Issues that are the responsibility of DWJBA are detailed in Appendix A. Some have minimal impact on accessibility where others can essentially be a barrier to a number of persons with various disabilities. Recommendations to address deficiencies can be applied to doors thoruhgout the facility but below are those that are directly related to spaces under DWJBA responsibility:

- Ensure that all doors have the required clear space on the latch side to permit wheelchair users to be able to exit. ADASAD 404.2.4.1 (see table on next page) typically requires 18" minimum clearance

on the pull side of the door and 12" on the push side if the door has a closer and a latch. These clearances may need to be larger if the approach to the door is not from the front (see also Figure 404.2.4.1). Noted locations identified during the evaluation include within some stairwells and stairway foyers of the Court Tower. A wheelchair user that may mistakenly enter these spaces could be trapped within due to inadequate clear space. Some doors that have compliance issues can be made compliant by removing the closer and/or latch if feasible or removing the door entirely if not a fire door. In some cases, clearances may not be possible without significant work being done to the door frame and adjacent walls. In those locations, a power door opener can be the most feasible option but should be done only in the absence of other options.

**Table 404.2.4.1 Maneuvering Clearances at Manual Swinging Doors and Gates**

| Type of Use | | Minimum Maneuvering Clearance | |
|---|---|---|---|
| Approach Direction | Door or Gate Side | Perpendicular to Doorway | Parallel to Doorway (beyond latch side unless noted) |
| From front | Pull | 60 inches (1525 mm) | 18 inches (455 mm) |
| From front | Push | 48 inches (1220 mm) | 0 inches (0 mm)[1] |
| From hinge side | Pull | 60 inches (1525 mm) | 36 inches (915 mm) |
| From hinge side | Pull | 54 inches (1370 mm) | 42 inches (1065 mm) |
| From hinge side | Push | 42 inches (1065 mm)[2] | 22 inches (560 mm)[3] |
| From latch side | Pull | 48 inches (1220 mm)[4] | 24 inches (610 mm) |
| From latch side | Push | 42 inches (1065 mm)[4] | 24 inches (610 mm) |

1. Add 12 inches (305 mm) if closer and latch are provided.
2. Add 6 inches (150 mm) if closer and latch are provided.
3. Beyond hinge side.
4. Add 6 inches (150 mm) if closer is provided.

- Doors at most janitor closets and other exempted spaces (mechanical/electrical closets, etc.), storage doors at the Auditorium, and stairwells provide door knobs or other hardware that violates ADASAD 309.4 due to not being operable with one hand and/or require tight grasping, pinching, or twisting of the wrist that are difficult for many persons with upper body impairments to operate (see ADASAD Advisory 404.2.7. required to be operable with one hand and not require simultaneous hand and finger movements (Advisory 404.2.7). ADAAG 4.13.9 has similar requirements. Lever-operated mechanisms are preferable at all locations.

> **309.4 Operation.** *Operable parts* shall be operable with one hand and shall not require tight grasping, pinching, or twisting of the wrist. The force required to activate *operable parts* shall be 5 pounds (22.2 N) maximum.

> **Advisory 404.2.7 Door and Gate Hardware.** Door hardware that can be operated with a closed fist or a loose grip accommodates the greatest range of users. Hardware that requires simultaneous hand and finger movements require greater dexterity and coordination, and is not recommended.

- Panic hardware on doors at stairwells of both towers typically protrude 4-1/2" to 5-1/2" into the clear door space (4" maximum allowed). In some cases minor adjustments can be made to make the hardware comply and meet all codes. Some locations may need to have a different style panic bar installed with less than 4" protrusion.
- Elevator emergency communication door panel has no hardware, with a flush door panel covering that has a small slot on one end. To open, a user must be able to insert a finger into the slot and pull, which is not compliant. Explore options to provide a compliant access at all elevators.

- Many doors have non-compliant closing speed and operating force. Doors are required to close slowly enough and require a low operating force so wheelchair and other disabled users can enter rooms. Doors are required to close from full open (90 degrees) to 12 degrees from the latch in 5 seconds minimum or from 70 degrees open to closed in 1.5 seconds for spring hinges. Opening force cannot exceed 5 pounds of force to open. Door closers can often be adjusted to comply with both standards, though many times closers are worn and need to be replaced. There are many doors where removal of the closer could also be considered.

- Some disabled persons must push on doors with their wheelchairs or walker to assist in opening them. ADAAG requires a kick plate on doors that 16" high above the bottom of the door (A4.13.09) where ADASAD 404.2.10 requires the bottom 10" of the push side of doors to have a smooth surface, with any cavities created by added kick plates being capped. Issues that were found to require corrective action are glass doors within main hallway corridors that typically have glass at 6" high. In most cases, the least costly option is to add a 10" minimum high kick plate to the push side of the doors and ensuring that the cavity created by the kick plate is capped. It may be desirable to put a kick plate on the pull side as well if aesthetics is an issue. There are a variety of options available commercially for the doors in question. There are some exceptions but this is a potential safety issue that should be considered given the relatively low cost to address. It may also be possible to remove these door entirely and remove the issue.

### 3.6     Drinking Fountains

ADAAG assumes that it would be a combination hi-lo type, with spout at 36" maximum height with 27" minimum knee space and other requirements and one spout accessible to those who have difficultly bending or stooping, with no dimensions provided (see ADAAG 4.15). ADASAD requires that if one fountain is provided that there must be two (hi-lo or 2 separate), one each for wheelchair user (with 36" maximum bubbler height, 27" minimum knee space, and other requirements – see ADASAD 602) and standing user that has a bubbler height of 38-43" (see ADASAD 602.7). Both standards require that if there are more than two per floor, 50% must each meet one of the requirements (wheelchair or standing user). The standards require compliance by floor, but since connectivity to the public is not always readily available between the towers each floor of each tower is treated separately. This does not result in significant differences overall since most levels of the Office Tower have 2 fountains and the Court Tower only 1 fountain. Levels of the Office Tower that have issues with a compliant number and/or type of fountain are Levels 1 and 12, which have 2 fountain that are both type one described below, with no wheelchair accessible model (see Section 2.2, Items 24-27 for details). The Court Tower has many more issues, as there is only 1 fountain on most levels (see Section 2.3, Items 26 and 27 for details).

Drinking fountains within the Office and Court Towers are typically comprised of two (2) different types. The first type is original to the building construction, are at least partially recessed into the wall, and have a bubbler height near 38", though some are lower. None of the fixtures original to the building meet requirements for spout location minimum of 15" from the vertical support (ADASAD 602.5) and many fail to have a minimum 4" water stream height (602.6). This combination introduces issues with users having to lean far in to get to the water stream with very little headroom being provided. Knee space below standing user fountains is not needed. In several locations in both towers, the height is lower than 38" and introduces additional potential for head injury due to the need to lean over further. All of these original fountains need to be replaced with compliant self-standing water coolers or wall-mounted fountains that are compliant with all requirements, including being cane-detectable below.

The second type fountain present are recently installed combination fountain and bottle filler placed in the location of former original fixtures. These fountains were intended for use by wheelchair users by

providing a bubbler height of 36" maximum above the floor and knee space below that is not available at the original fountains. Unfortunately, the alcove in which these new fountains have been placed are too shallow and all of them are protruding objects. Some were installed with knee space below that is less than 27" and need to be adjusted to meet requirements. One option for the protrusion issue is to install cane-detectable railings on the side as necessary (see examples below).



Examples of artificial alcoves constructed at protruding drinking fountains.

## 3.7    Protruding Objects

According to both ADAAG 4.4 and ADASAD 307, an object that extends into the pedestrian circulation area (PCA) 4" or more between 27" and 80" is considered a protrusion, with the exception that handrails can protrude up to 4-½" and post-mounted objects are allowed to protrude up to 12". This is because a person with a vision impairment, particularly those using a cane, cannot detect objects in the protruding zone before running into them. There are several examples of protruding objects in both towers that present a potential hazard, including:

- Wall-mounted hand dryers in restrooms
- Fire extinguisher cabinets (FEC)
- Automated Electronic Defibrillator (AED)
- Information kiosks and wall-mounted monitors
- Hand sanitizer dispensers
- Fire warden boxes
- Fire alarm controls
- Card readers and time clocks
- Shelves, coat racks, or service counters



**Figure 307.2
Limits of Protruding Objects**

It is recommended that they all be corrected as soon as possible, as some can be a safety hazard to all pedestrians, but particularly those with vision loss. Temporary or semi-permanent solutions exist to correct some of the protrusions. Permanent objects such as trash receptacles that are cane-detectable can be added below or adjacent to some items. Some items can be lowered to under 27" above the floor to be cane-detectable if allowed by code or moved outside of the PCA. Many locations where FECs protrude have other locations nearby that the FEC could be moved to such as a corner that is not within the PCA (see examples of non-protruding items below) but care needs to be taken to ensure the device is at a compliant height and is not located within any door clear space. If the relocation of items such as FECs or AED units takes them out of clear view, add a sign visible from the PCA to identify the location of the devices. The fire warden call boxes have a plastic handle that protrudes, which could easily be replaced with a flush-mounted plate that extends beyond the door. An option for items on walls that cannot be moved, such as fire alarm controls, wall-mounted monitors, etc., is a cane-detectable rail placed parallel to the ground below 27" (see photo to the right of example at a wall-mounted monitor in an airport).

   

Examples of typical objects that often protrude but do not here due to placement in a corner outside the PCA.

### 3.8    Service Counters and Information Desks

There are some service counters/information desks, mainly on Level 1, that have a surface higher than the 28-34" allowed for a working surface or 36" maximum allowed for verbal interaction allowed by ADASAD 904.4. A portion of each service desk (36" minimum width) should be lowered to 36" maximum height (34" maximum preferable to provide a compliant working surface) when the office spaces are

altered. Until that time, an alternate working surface should be provided (e.g., table with 27" knee underclearance) or clipboards provided as an alternate accommodation.

### 3.9    Miscellaneous

There are a number of additional items to address provided in Appendix A. Not all are discussed below, but a few worth emphasizing include:

- The Level 2 Office Tower Skywalk power door has issues to address. The corridor access to the power door operator is too narrow at 44" (48" minimum required). The door is highly usable and this is not the more problematic issue present. At the time of the evaluation, the door upon closing did so with excessive force that could not be stopped. This could cause injury to a disabled person that is caught in the doorway when the door closes. In addition, the door could not be opened manually. In the event of a power outage, there would be no way to operate the door for a person unable to utilize the revolving doors. Explore options, which should include adjusting or replacing the existing power door operator.

- There were issues noted at several locations where stairs and handrails are not compliant within stairwells and at hallways connecting multiple levels of the towers (Court Tower Level 13 and Court Level 11/Office Level 10). Handrails can be important for persons that are able to use steps but need assistance. Explore options to provide compliant handrails at proper height and with required extensions at the top and bottom. One set of stairs, located at Level 12, has compliant handrail extensions (see photo to right). As noted in Section 2.2, Items 3 and 28c, and Section 2.3, Items 28c, 29, and 30c, stair nosings project over the risers at a 90 degree angle. This is a common issue at older buildings and commonly addressed by installation of stair tread covers that reduce the angle as well as provide a non-slip surface. There are many different covers available, see example photo to the right.

- There were a total of three (3) wheelchair evacuation chairs observed within stairwells of the facility. A chair was on Level 1 of both towers and Level 13 of the Court Tower. DWJBA is to be commended for providing these important pieces of equipment that are used to evacuate persons in wheelchairs down the stairs in the event of an emergency (e.g., fire) where the elevators are shut down. Consider reviewing existing emergency evacuation plans (not included within the scope of this project review) to ensure that procedures are in place to communicate the need for evacuation chairs. Consider the best locations to place the chairs, which is not at Level 1. It is much easier to move the chair down the stairwells to assist with evacuation than to carry them up the stairwells. There are no ADA requirements for these devices. It is recommended that all floor captains or fire wardens be made aware of the location of chairs and that chairs currently in place on Level 1 be moved to Level 13 of the Office Tower and a higher level in the Court Tower. When considering placement within the Court Tower, determine the levels with the highest occupancy loads. Additional chairs could be considered to cover all 5 stairwells, though Stairs A and B in the Court Tower and Stairs C and D in the Office Tower are close to one another. Consider perhaps an additional chair at Stair E, which is somewhat isolated on many levels.

## 4.0    Conclusions

The information presented in this report provides the results of a limited review of the CAYMC and, in many cases, notes corrective actions that can be taken to improve accessibility. The items listed in Appendix A, along with the body of this report, will ensure compliance with ADASAD once implemented. Appendix A includes a number of items that need to be corrected to provide access to persons with disabilities, with the total cost exceeding $390,000. There are some items which could not have costs provided for various reasons and the cost estimate does not include additional investigations for other code compliance issues, structural engineering, design, etc.

### 4.1     Items for Further Action

Moving forward, DLZ recommends the following actions be taken by DWJBA, in addition to those already mentioned above, to ensure maximum accessibility can be provided to patrons to the various facilities and programs offered within additional facilities, or areas of facilities, that are the responsibility of the DWJBA.

1.  Evaluate and prioritize the corrective actions that can be implemented at low cost and effort and have a significant impact on improving accessibility. This would include any number of additional investigations to provide more accessible public restroom facilities, improved signage, etc.
2.  If not already in place, CAYMC should appoint an ADA Coordinator and develop, adopt, and publish grievance procedures which provides for the prompt and equitable resolution of complaints alleging any action that would be prohibited by the ADA. An ADA Complaint Form should be prepared and provided upon request. A grievance procedure should be developed and made available, with a notice of where it is available for both the public and employees to access. Centralized record keeping of complaints and tracking of complaint resolution will help DWJBA to regularly update its compliance efforts, and plan for additional compliance implementation. The ADA Coordinator should ensure that records are kept of all ADA-related complaints, including informal items brought to their attention, requests for accommodation, etc.
3.  Work towards meeting the full requirements of Title II in performance of a compliant self-evaluation for all DWJBA facilities and preparation of a compliant Transition Plan, including comprehensive review of policies and procedures and public outreach.
4.  DWJBA should provide additional and on-going training for staff regarding the requirements of the ADA and accommodations that provide equal access to programs, services, and activities. The ADA Coordinator should have formal training on Title I and II requirements. This policy should be included in all personnel manuals. Ensure that an adequate number of trained staff is available to assist guests with special needs.
5.  A thorough review of all DWJBA publications should be completed to ensure that they are provided in the most accessible format possible to enhance readability and reduce the number of requests for accommodation. Sample guidance can be found from the American Printing House for the Blind, Inc. (www.aph.org/).

In addition to the areas of the CAYMC that are the responsibility of the DWJBA, there are significant areas and items within the CAYMC that are under the jurisdiction of the city of Detroit and Wayne County that were not included in this review. Non-compliant features within these spaces can have as much of an impact on access to programs as the issues described within this report. Access to courts and other city and county programs and facilities, if not compliant with requirements of ADA Title II, can expose these entities to complaints regarding discrimination. It is estimated that less than 25% of the areas required to be accessible to the public and employee common-use areas were part of this compliance evaluation.

## 4.2      Conclusion

DWJBA is committed to providing equal opportunities for persons with disabilities at the CAYMC. This is evidenced by their efforts to have this inventory performed and some of the recent alterations that have been completed. Staff charged with building maintenance and renovations should review the results of this inventory closely and develop plans for making necessary improvements, both in the near term and beyond. In addition, additional investigation is needed in several areas to ensure continuation of services and the phasing of the necessary improvements to meet budgetary constraints. Having an individual available that is familiar with ADA standards and ways to provide access to facilities is invaluable in not only improving access for the public, but also protecting DWJBA by reducing complaints and the time it requires to resolve them and reducing the potential for liability, no matter how small the reduction.

Appendix A includes a detailed description of items identified during the investigation and assigns a priority and estimated cost for corrective action. There are a number of items that cannot have an estimated cost for corrective action provided due to the need for additional investigation to make the item compliant. Examples include investigating options for additional public accessible restrooms and fixture count requirements of existing plumbing codes. Other issues recommended for further study, such as a master signage plan, can result in highly variable costs based on the signs that are selected.

## 5.0   Definitions

The words, phrases and definitions summarized below are included in the ADA. Refer to the ADA 28 CFR 36.104 and or ADASAD 106 for full definitions. A list of common terms and definitions are included below.

**1991 Standards**:  the 1991 ADA Accessibility Guidelines (ADAAG).

**2010 Standards**:  the 2010 ADA Standards for Accessible Design (ADASAD), which consist of the 2004 ADAAG and requirements contained in Subpart D.

**Access Board**: an independent Federal agency devoted to accessibility for people with disabilities. The Access Board developed the accessibility guidelines for the ADA and provides technical assistance and training on these guidelines.

**Accessible**: refers to a site, facility, work environment, service, or program that is easy to approach, enter, operate, participate in, and/or use safely and with dignity by a person with a disability.

**Affirmative Action (AA)**: a set of positive steps that employers use to promote equal employment opportunity and to eliminate discrimination. It includes expanded outreach, recruitment, mentoring, training, management development and other programs designed to help employers hire, retain and advance qualified workers from diverse backgrounds, including persons with disabilities. Affirmative action means inclusion, not exclusion. Affirmative action does not mean quotas and is not mandated by the ADA.

**Alteration:** A change to a building or facility that affects or could affect the usability of the building or facility or portion thereof. Alterations include, but are not limited to, remodeling, renovation, rehabilitation, reconstruction, historic restoration, resurfacing of circulation paths or vehicular ways, changes or rearrangement of the structural parts or elements, and changes or rearrangement in the plan configuration of walls and full-height partitions. Normal maintenance, reroofing, painting or wallpapering, or changes to mechanical and electrical systems are not alterations unless they affect the usability of the building or facility.

**Americans with Disabilities Act (ADA)**: a comprehensive, Federal civil rights law that prohibits discrimination against people with disabilities in employment, state and local government programs and activities, public accommodations, transportation, and telecommunications.

**ADA Standards for Accessible Design (ADASAD)**: consist of the 2004 ADAAG and requirements contained in Subpart D with scoping and technical requirements (dated September 15, 2010) to be applied during the design, construction, and alteration of buildings and facilities covered by Titles II and III of the ADA to the extent required by regulations issued by Federal agencies, including the DOJ and the Department of Transportation (DOT). All new construction and alterations after March 15, 2012, are required to meet these standards.

**Assembly Area:** a building or facility, or portion thereof, used for the purpose of entertainment, educational or civic gatherings, or similar purposes. For the purposes of these requirements, assembly areas include, but are not limited to, classrooms, lecture halls, courtrooms, public meeting rooms, public hearing rooms, legislative chambers, motion picture houses, auditoria, theaters, playhouses, dinner theaters, concert halls, centers for the performing arts, amphitheaters, arenas, stadiums, grandstands, or convention centers.

**Assistive Listening System (ALS):** an amplification system utilizing transmitters, receivers, and coupling devices to bypass the acoustical space between a sound source and a listener by means of induction loop, radio frequency, infrared, or direct-wired equipment.

**Auxiliary Aids and Services**: under Titles II and III of the ADA, includes a wide range of services and devices that promote effective communication or allows access to goods and services. Examples of auxiliary aids and services for individuals who are deaf or hard of hearing include qualified interpreters, note takers, computer-aided transcription services, written materials, telephone handset amplifiers, assistive listening systems, telephones compatible with hearing aids, closed caption decoders, open and closed captioning, telecommunications devices for deaf persons (TDDs), videotext displays, and exchange of written notes. Examples for individuals with vision impairments include qualified readers, taped texts, audio recordings, Braille materials, large print materials, and assistance in locating items. Examples for individuals with speech impairments include TDDs, computer terminals, speech synthesizers, and communication boards.

**Circulation Path**: an exterior or interior way of passage provided for pedestrian travel, including, but not limited to, walks, hallways, courtyards, elevators, platform lifts, ramps, stairways, and landings.

**Civil Rights Act of 1991**: Federal law that capped compensatory and punitive damages under Title I of the ADA for intentional job discrimination. The law also amended the ADA's definition of an employee, adding "with respect to employment in a foreign country, such term includes an individual who is a citizen of the United States."

**Common Use**: interior or exterior circulation paths, rooms, spaces, or elements that are not for public use and are made available for the shared use of two or more people.

**Complaint**: a written statement, alleging violation of the ADA, which contains the complainant's name and address and describes the alleged discriminatory action in sufficient detail to inform them of the nature and date of the alleged violation. It shall be signed by the complainant or by someone authorized to do so on his or her behalf. Complaints filed on behalf of classes or third parties shall describe or identify (by name, if possible) the alleged victims of discrimination.

**Covered Entity**: under the ADA, "covered entity" is an entity that must comply with the law. Under Title I, covered entities include employers, employment agencies, labor organizations, or joint labor-management committees. Under Title II, covered entities include state and local government instrumentalities, the National Railroad Passenger Corporation, and other commuter authorities, and public transportation systems. Under Title III, covered entities include public accommodations such as restaurants, hotels, grocery stores, retail stores, etc., as well as privately owned transportation systems.

**Cross Slope:** the grade that is perpendicular to the direction of pedestrian travel.

**Curb Line:** a line at the face of the curb that marks the transition between the curb and the gutter, street, or highway.

**Curb Ramp:** a ramp that cuts through or is built up to the curb. Curb ramps can be perpendicular or parallel, or a combination of parallel and perpendicular ramps.

**Detectable Warning**: a standardized surface feature built in or applied to walking surfaces or other elements to warn of hazards on a circulation path.

**Direct Threat**: a significant risk to the health or safety of others that cannot be eliminated by reasonable accommodation.

**Disability**: with respect to an individual, means a physical or mental impairment that substantially limits one or more of the major life activities of such individual; a record of such an impairment; or being regarded as having such an impairment.

**Discrimination**: denying a person with disabilities the opportunity to participate in or benefit from any program or activity receiving federal financial assistance.

**Employer**: a person engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year, and any agent of such person, except that, for two years following the effective date of this subchapter, an employer means a person engaged in an industry affecting commerce who has 25 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding year, and any agent of such person. Exceptions: The term "employer'' does not include the United States, a corporation wholly owned by the government of the United States, or an Indian tribe; or a bona fide private membership club (other than a labor organization) that is exempt from taxation under section 501(c) of Title 26 [the Internal Revenue Code of 1986].

**Equal Employment Opportunity Commission (EEOC)**: the Federal agency charged with enforcing Title I of the ADA.

**Essential Job Functions**: the fundamental job duties of the employment position that the individual with a disability holds or desires. The term "essential functions" does not include marginal functions of the position.

**Equal Employment Opportunity**: an opportunity to attain the same level of performance or to enjoy equal benefits and privileges of employment as are available to an average similarly-situated employee without a disability.

**Existing Facility**: refers to buildings that were constructed before the ADA went into effect. A public building constructed before the effective date of Title II does not have to be fully accessible unless the removal of barriers, including structural ones, is readily achievable.

**Facility:** all or any portion of buildings, structures, improvements, elements, and pedestrian or vehicular routes located in the public right-of-way.

**Grade Break:** the line where two surface planes with different grades meet.

**Job Analysis**: a formal process in which information about a specific job or occupation is collected and analyzed.

**Job Description**: a detailed summary, usually written, of the major components of a job. A typical job description consists of six major components: essential job functions, knowledge and critical skills, physical demands, environmental factors, the roles of the ADA and other Federal laws such as the Occupational Safety Health Act, and any explanatory information that may be necessary to clarify job duties or responsibilities.

**Job Related and Consistent with Business Necessity**: standard used to determine whether a qualification standard or employment policy concerns an essential aspect of the job and is required to meet the needs of the business.

**Pedestrian Access Route (PAR):**  a continuous and unobstructed path of travel provided for pedestrians with disabilities within or coinciding with a pedestrian circulation path.

**Pedestrian Circulation Area (PCA):**  an exterior or interior area provided for pedestrian travel and circulation.

**Private entity:** means a person or entity other than a public entity.

**Public Entity**: entities that must comply with Title II. The term is defined as: any state or local government; any department, agency, special purpose district, or other instrumentality of a state or local government; or certain commuter authorities as well as Amtrak. It does not include the Federal government.

**Ramp**: a walking surface that has a running slope steeper than 1:20 (5.0%).

**Readily Achievable**: easily accomplishable and able to be carried out without much difficulty or expense. In determining whether an action is readily achievable, factors to be considered include nature and cost of the action, overall financial resources and the effect on expenses and resources, legitimate safety requirements, impact on the operation of a site, and, if applicable, overall financial resources, size, and type of operation of any parent corporation or entity. Under Title III, public accommodations must remove barriers in existing facilities if it is readily achievable to do so.

**Reasonable Accommodation**: under Title I, a modification or adjustment to a job, the work environment, or the way things usually are done that enables a qualified individual with a disability to enjoy an equal employment opportunity. Reasonable accommodation is a key non-discrimination requirement of the ADA.

**Reasonable Program Modifications**: if an individual's disabilities prevent them from performing the essential functions of the program or activity, it is necessary to determine whether reasonable program modifications would enable these individuals to perform the essential functions of the program or activity.

Reasonable program modification is any change in a program or activity, or in the way things are customarily done, that enables an individual with a disability to enjoy equal program opportunities. Accommodation means modifications or adjustments:

- To a registration or application process to enable an individual with a disability to be considered for the program or activity;
- To the program or activity environment in which the duties of a position are performed so that a person with a disability can perform the essential functions of the program or activity; and
- That enables individuals with disabilities to enjoy equally the benefits of the program or activity as other similarly situated individuals without disabilities enjoy.

Modification includes making existing facilities and equipment used by individuals readily accessible and usable by individuals with disabilities. Modification applies to known disabilities only. Modification is not required if it changes the essential nature of a program or activity for the person with a disability, it creates a hazardous situation, adjustments or modifications requested are primarily for the personal benefit of the individual with a disability, or it poses an undue burden on the City.

**Restricted Entrance**: an entrance that is made available for common use on a controlled basis but not public use and that is not a service entrance.

**Running Slope:** the grade that is parallel to the direction of pedestrian travel.

**Safe Harbor:** elements of existing facilities that already comply with either the 1991 ADA Standards or UFAS are not required to comply with the 2010 ADA Standards unless they were altered on or after March 15, 2012 and elements comprising a path of travel to an altered primary function area are not required to comply with the 2010 ADA Standard merely as the result of an alteration to a primary function area, provided those elements comply with the 1991 ADA Standard or UFAS.

**Service Animal**: any dog that is individually trained to do work or perform tasks for the benefit of an Individual with a disability, including a physical, sensory, psychiatric, intellectual, or other mental disability. Other species of animals, whether wild or domestic, trained or untrained, are not service animals for the purposes of this definition. The work or tasks performed by a service animal must be directly related to the Individual's disability. Examples of work or tasks include, but are not limited to, assisting Individuals who are blind or have low vision with navigation and other tasks, alerting Individuals who are deaf or hard of hearing to the presence of people or sounds, providing non-violent protection or rescue work, pulling a wheelchair, assisting an individual during a seizure, alerting Individuals to the presence of allergens, retrieving items such as medicine or the telephone, providing physical support and assistance with balance and stability to individuals with mobility disabilities, and helping persons with psychiatric and neurological disabilities by preventing or interrupting impulsive or destructive behaviors. The crime deterrent effects of an animal´s presence and the provision of emotional support, well-being, comfort, or companionship do not constitute work or tasks for the purposes of this definition. See the 2010 ADA requirements for Service Animals.

**Service Entrance**: an entrance intended primarily for delivery of goods or services**.**

**Tactile**: an object that can be perceived using the sense of touch.

**Title V of the Rehabilitation Act of 1973**: title of the law that prohibits discrimination on the basis of a disability by the Federal government, Federal contractors, by recipients of Federal financial assistance, and in Federally conducted programs and activities.

**Undue Burden**: means significant difficulty or expense. In determining whether an action would result in an undue burden, factors to be considered include –

(1) The nature and cost of the action needed under this part;
(2) The overall financial resources of the site or sites involved in the action; the number of persons employed at the site; the effect on expenses and resources; legitimate safety requirements that are necessary for safe operation, including crime prevention measures; or the impact otherwise of the action upon the operation of the site;
(3) The geographic separateness, and the administrative or fiscal relationship of the site or sites in question to any parent corporation or entity;
(4) If applicable, the overall financial resources of any parent corporation or entity; the overall size of the parent corporation or entity with respect to the number of its employees; the number, type, and location of its facilities; and
(5) If applicable, the type of operation or operations of any parent corporation or entity, including the composition, structure, and functions of the workforce of the parent corporation or entity.

**Undue Hardship**: with respect to the provision of an accommodation under Title I of the ADA, significant difficulty or expense incurred by a covered entity, when considered in light of certain factors. These factors include the nature and cost of the accommodation in relationship to the size, resources, nature, and structure of the employer's operation. Where the facility making the accommodation is part of a larger entity, the structure and overall resources of the larger organization would be considered, as well as the financial and administrative relationship of the facility to the larger organization. Employers do not have to provide accommodations that cause an undue hardship.

**U.S. Department of Justice**: Federal agency that is responsible for enforcing Titles II and III of the ADA.

**U.S. Department of Transportation**: Federal agency that enforces nondiscrimination in public and private transportation. Nondiscrimination includes access to public bus, train and paratransit, as well

as privately operated bus and shuttle transportation. The ADA does not cover air transportation, which is subject to the Air Carrier Access Act.

**Vertical Surface Discontinuities:** vertical differences in level between two adjacent surfaces.

## Appendix A – Summary and Detailed List of ADA Non-Compliant Items

| COLEMAN A. YOUNG MUNICIPAL CENTER FACILITY SUMMARY | | | | |
|---|---|---|---|---|
| Name & Location | Low Priority | Medium Priority | High Priority | Total Site Cost |
| Exterior Areas and Interior Common Spaces | $1,000 | $2,600 | $1,500 | $5,100 |
| Office Tower | $69,150 | $122,300 | $14,600 | $206,050 |
| Court Tower | $81,960 | $99,800 | $0 | $181,760 |
| TOTALS | Low Priority $152,110 | Medium Priority $224,700 | High Priority $16,100 | Total Cost $392,910 |

All cost estimates for facilities are based on a single unified bid with 2018 estimated costs. Bidding in a different manner or different time period will require adjustments to the probable project costs. All items indicated as 'TBD' require further evaluation for feasibility due to historical, topographical, or structural concerns that require additional investigation. Costs for TBD items will be in addition to costs above.

# Building Exterior and Interior Common Spaces Pre-Security

| Exterior | | |
|---|---|---|
| Description | Priority | Estimated Cost |
| Employee Parking Lot | | |
| *44 spaces provided including 0 designated as accessible. Total of 2 accessible spaces required (1 van space).* | | |
| *Provide Required Barrier-Free Parking Closest to Accessible Entrance and Provide Compliant Curb Ramp* | Low | $400 |
| Notes: Parking in the employee lot off Randolph St. is limited to specific administrative employees and all spaces are numbered and assigned. Until such time that an employee with an assigned parking space in this lot requires accommodation, no changes are needed. When accommodation is needed, a compliant accessible space will need to be provided closest to the employee entry door. This should be considered an employee accommodation given the access limitations and use of the assigned parking. Federal Guideline: 208, 502 | | |
| Accessible Routes | | |
| *Provide Compliant Accessible Routes* | Medium | $400 |
| Notes: The sloped walkway on the Larned Street side located between the Larned and Randolph entrances has a cross slope of 2.8% (2% max.). This is highly usable by most persons and would likely only be necessary for use as an accessible route for members of the public that mistakenly go to the Randolph employee-only entrance. Reconstruct the walk when the area is reconstructed, in the interim provide a directional sign at the sidewalk from E. Jefferson to the Randolph St. entrance indicating the entrance is for employees only and the public should be directed to the E. Jefferson entrance. A sign should also be placed at the Larned side directing the public to the public sidewalk on Larned as the accessible route. The cost is for 2 signs as noted. Federal Guideline: 216.3, 703.5 | | |
| *Provide Level Clear Space* | Low | $600 |
| Notes: The clear space at the exterior power door opener on E. Jefferson Avenue has a running slope of 2.4% (2.08% max.). This is highly usable but should be addressed when sidewalks are reconstructed to ensure a level 30"x48" space is provided at all push button operators. Federal Guideline: 305.2, 305.3, | | |

| Description | Priority | Estimated Cost |
|---|---|---|
| *Provide Compliant Power-Assisted Door Controls and Signage* | High | $1,200 |
| Notes: The signage at all 3 public entrances for power door controls are very small and have lost paint, resulting in them blending in with the railings. The push button controlling the doors is recessed between 2 plates at all entrances except Larned and could be difficult for some persons with upper body impairments to operate. Provide signage with the ISA that is visually obvious (similar to that used at Randolph) at all power door operators and either remove the plates on each side or add a button extension to extends beyond the face of the plates to allow for activation with a closed fist. Cost is for 3 signs and retrofit of 3 buttons. Federal Guideline: 309.4, 703.7.2.1 | | |
| **Interior** | | |
| **Common Use Spaces** | | |
| Entry Doors | | |
| *Provide Means of Egress Signage* | High | $300 |
| Notes: Illuminated visual "EXIT" is only sign provided at all 3 public building exits. Tactile letter and Braille sign required on interior wall adjacent to doors. Federal Guideline: 216.4, 703 | | |
| Stairways | | |
| *Provide Compliant Handrails (when stairs are altered)* | Low | TBD |
| Notes: Handrail extensions are less than 12" as required at the top and bottom landings. Handrail height varies and is typically 31-1/2" to 33" (34-38" req'd.). Since the stairs are the emergency egress route, they are required to comply. Explore options, including adding extensions. Federal Guideline: 210.1, 505 | | |
| *Consider Modifications to Stair Nosings (when stairs are altered)* | Low | TBD |
| Notes: The stair nosings project 90 degrees from the riser, which creates a potential trip hazard due to the high angle catching the trailing toe of persons ascending the stair. Nosings that project beyond risers are required to have the underside of the leading edge curved or beveled at 30 degree max. slope. Since the stairs are the emergency egress route, they are required to comply. Least costly and least impacting alternative would be stair nosing covers. Federal Guideline: 210.1, 504 | | |
| Common Public Circulation Spaces Pre-Security | | |
| *Protect Protruding Objects* | Medium | $200 |
| Notes: Floor plan directory information kiosk protrudes 17" at 37" (4" max. between 27"-80") near E. Jefferson Avenue entrance. Provide permanent, cane-detectable object on each side. Federal Guideline: 307.2 | | |
| *Protect Protruding Objects* | Medium | $200 |
| Notes: Wall mounted directory monitor protrudes 5" at 36-1/2" (4" max. between 27"-80") near E. Jefferson Avenue entrance. Provide permanent, cane-detectable object on each side. Federal Guideline: 307.2 | | |
| *Provide Accessible Service Counter or Alternate Accommodation* | Medium | $900 |

| Description | Priority | Estimated Cost |
|---|---|---|
| Notes: Information stand entrance security station to east of security checkpoint is at 46-3/4" height (36" max. req'd. for verbal interaction). Federal Guideline: 227.3, 904.4 | | |
| *Provide Accessible Service Counter or Alternate Accommodation* | Medium | $900 |
| Notes: Information stand near E. Jefferson Avenue entrance is at 41-45" height (36" max. req'd. for verbal interaction). Federal Guideline: 227.3, 904.4 | | |
| | | |
| Facility Total: | | $5,100 |
| | | |

**General Notes:**

1. Common spaces pre-security includes all hallways within both towers that can be access from the 3 public entrances prior to security screening.

2. There are a total of 5 stairwells, A & B are in the Court Tower and C-E are in the Office Tower. Items within stairwells are considered common elements since they are not unique to any floor. Issues with elevators are discussed for each tower separately.

# Office Tower

| Common Use Spaces | | |
|---|---|---|
| **Description** | **Priority** | **Estimated Cost** |
| Stairwells | | |
| *Provide Improved Stairway Signage* | Medium | $18,000 |
| Notes: Signage at entry doors to all 3 stairwells in both towers is typically limited to visual, lighted "EXIT" signs in corridors at access doors to stairwell access vestibules. No wall signage is typically provided that includes visual and tactile letters indicating the presence of the stairwell access/egress beyond and stairway pictogram. Addition of signs in the hallway at access doors, in addition in some cases to the actual stairwell access doors within the vestibule, especially when multiple doors are present in the vestibule, would improve safety and communication for visually impaired persons. In the event of a fire, the 5 stairwells are the most likely means of egress when the elevators shut down. Federal Guideline: 216.4.1, 703 | | |
| *Provide Compliant Panic Bars* | Low | $4,500 |
| Notes: Panic hardware at all stairwell access doors typically protrude into the clear door opening 4-1/2" to 5". Explore option of making adjustment to controls so protrusion is 4" or less. Cost assumes adjustments can be made. Federal Guideline: 404.2.3 | | |
| *Provide Compliant Floor Designation Signage* | Low | $9,000 |
| Notes: Floor designation signage within the stairwells that includes visual and tactile letters and Braille is not provided. Existing signage is visual text only and if provided is located on the door. Provide compliant signage at all doors adjacent to the door latch side wall. Federal Guideline: 407.2.3.1 | | |
| Entry Doors | | |
| *Provide Means of Egress Signage* | High | $100 |
| Notes: Illuminated visual "EXIT" is only sign provided at Randolph building exit. Tactile letter and Braille sign required on interior wall adjacent to doors. Federal Guideline: 216.4, 703 | | |
| Elevators | | |
| *Provide Compliant Emergency Communication Equipment Door Hardware* | Medium | $700 |
| Notes: Access to the emergency communication equipment is via a door that has no elevated way to operate. A small opening to the side of the door is present which a user would insert their finger and pull to open. Within the compartment, ensure that all phones provide a tactile symbol and Braille adjacent to the emergency communication device. The Braille in some compartments is damaged. Federal Guideline: 308, 407.4.9, 703.2 | | |

| Description | Priority | Estimated Cost |
|---|---|---|
| *Provide Compliant Elevator Hoistway Signage* | Low | $27,000 |
| Notes: Braille on hoistway signs is typically separated from the corresponding text and/or bottom of the sign by 1/8" (3/8" min. req'd.). When replaced, ensure hoistway signs on level 10 and above are a single sign rather than individual integers  (e.g., "11" is currently two "1" signs rather than a single "11"). This results in minor issues with Braille spacing. Provide compliant signs on both jambs of all 9 elevators. Federal Guideline: 407.2.3.1 | | |
| *Consider Modifying Elevator Number Signage (Advisory)* | Low | N/A |
| Notes: All elevators are numbered, with the elevator number often provided in the hallway outside the elevator. This could be confusing to some members of the public, who may see conflicting information with the floor designation signage. Consider relocating elevator designation signage or making it either less conspicuous or include "Elevator #" or similar visual text. Federal Guideline: n/a | | |
| **Lower Level** | | |
| Signage | | |
| *Provide Compliant Room Signage* | Medium | $1,000 |
| Notes: There are several permanent spaces with non-compliant signage. Non-compliance issues typically include lack of tactile letters, lack of Braille, Braille separation from text or bottom of sign of less than 3/8", serif fonts, low contrast visual text, and/or signage in non-compliant location, including non-accessible public and employee restrooms. Signage at these should include tactile and visual letters and Braille, pictogram, and not include the ISA. Each non-accessible restroom should include a directional/informational sign providing the location of accessible restrooms. Federal Guideline: 216.2, 703 | | |
| Common Hallway Circulation Spaces | | |
| *Lower Light Switch or Provide Occupancy Sensor* | Low | N/A |
| Notes: Electrical switches typically over 48" max ht. allowed by ADASAD but up to 54" allowed by 1991 ADAAG. Correct when altered. Federal Guideline: 308.2 | | |
| *Protect Protruding Objects* | Low | $300 |
| Notes: Bleeding control kit protrudes 7" at 43-3/4", lock box protrudes 9" at 39-3/8", and time clock protrudes 5-3/4" at 47" (4" max. between 27"-80") in corridor near LL-8. Provide permanent, cane-detectable object below each. Federal Guideline: 307.2 | | |

| Description | Priority | Estimated Cost |
|---|---|---|
| Drinking Fountains | | |
| *Provide Compliant Drinking Fountains* | Medium | $1,200 |
| Notes: Recessed fixtures meet bubbler height requirement (38-43") for standing user but often have low water stream height (less than 4" min.) and have only 3-1/2" depth from bubbler to rear wall (15" min. req'd.), providing inadequate headroom for users. These existing fixtures are original to 1950s building construction. Explore options of replacing original fixtures with compliant fountain to meet requirements for number and types. Cost assumes new standing user free-standing fountain added and existing fountains taken out of service. Cost assumes minimal plumbing/installation issues. Federal Guideline: 211, 602 | | |
| *Protect Protruding Objects* | Medium | $200 |
| Notes: The wheelchair-accessible drinking fountain near LL-40 extends beyond the shallow alcove and protrudes 10" at 27". Provide permanent, cane-detectable barriers on both sides of fountain. Federal Guideline: 307.2 | | |
| Men's Public Restroom | | |
| *Provide Compliant Signage* | Medium | $200 |
| Notes: The existing signage has only 1/4" spacing from the Braille to the bottom of the sign (3/8" min. req'd.). Federal Guideline: 703.3.2 | | |
| *Provide Compliant Depth Knee Space Below Sink* | Medium | $250 |
| Notes: The sink provides only 5" depth knee space below the sink at 27" height (8" min. req'd.). Reposition the protective cover below. Federal Guideline: 306.3.3 | | |
| *Provide Required Stall Hardware* | Medium | $100 |
| Notes: No handles are provided on the inside of the stall door, are required on both sides. Federal Guideline: 213.3, 604.8, 404.2.7 | | |
| *Provide Required Grab Bar Clear Space* | Low | $50 |
| Notes: Toilet paper dispenser located 5" above side grab bar (12" clear space required). Relocate dispenser. Federal Guideline: 604.5 | | |
| *Reposition Baby Changing Station* | Medium | $100 |
| Notes: Station located within wheelchair clear space in stall protrudes 5-1/2" (4" max.). Provide different model or relocate elsewhere within restroom outside of circulation area or protect with permanent cane-detectable object below. Federal Guideline: 307.2, 604.8.1.1 | | |
| *Protect Protruding Objects* | Low | $100 |
| Notes: Hand dryer protrudes 7" at 46-1/2" (4" max. between 27-80"). Provide permanent, cane-detectable object below. Federal Guideline: 307.2 | | |

| Description | Priority | Estimated Cost |
|---|---|---|
| *Provide Compliant Ambulatory Stall* | Medium | $1,750 |
| Notes: Restroom has 6 or more combined toilet/urinal fixtures (8 total) but has no ambulatory stall. Provide compliant ambulatory stall that is 35-37" width with 32" min. door opening, outswinging door, and grab bars on both side walls. Federal Guideline: 231.3, 404.2, 604.5, 604.8, 609.3 | | |
| Women's Public Restroom | | |
| *Provide Compliant Signage* | Medium | $200 |
| Notes: The existing signage has only 1/4" spacing from the Braille to the bottom of the sign (3/8" min. req'd.). Sign is located to the left of the entryway (required on the right for open doorways). Federal Guideline: 703.3.2 | | |
| *Provide Compliant Depth Knee Space Below Sink* | Medium | $250 |
| Notes: The sink provides only 5-1/2" depth knee space below the sink at 27" height (8" min. req'd.). Reposition the protective cover below. Federal Guideline: 306.3.3 | | |
| *Provide Required Stall Hardware and Replace Spring Hinge* | Medium | $100 |
| Notes: No handles are provided on the inside of the stall door, are required on both sides. Stall door is not self-closing. Federal Guideline: 213.3, 604.8, 404.2.7 | | |
| *Provide Required Grab Bar Clear Space* | Low | $50 |
| Notes: Toilet paper dispenser located 4-1/4" above side grab bar (12" clear space required). Relocate dispenser. Federal Guideline: 604.5 | | |
| *Reposition Baby Changing Station* | Medium | $100 |
| Notes: Station located within wheelchair clear space in stall protrudes 5-1/2" (4" max.). Provide different model or relocate elsewhere within restroom outside of circulation area or protect with permanent cane-detectable object below. Federal Guideline: 307.2, 604.8.1.1 | | |
| *Protect Protruding Objects* | Low | $100 |
| Notes: Hand dryer protrudes 7" at 46-1/2" (4" max. between 27-80"). Provide permanent, cane-detectable object below. Federal Guideline: 307.2 | | |
| *Provide Compliant Controls* | Low | $300 |
| Notes: Operable parts of tampon dispenser requires grasping and twisting. Provide dispenser with compliant controls. Federal Guideline: 309.4 | | |
| Doors | | |
| *Provide Compliant Hardware* | Medium | $1,350 |
| Notes: There are estimated to be at least 3 doors to janitor closets that have knob or other non-compliant hardware that requires grasping and twisting to operate. Federal Guideline: 309.4 | | |
| *Adjust Door Closer - Stairway C, D, & E* | Low | $1,350 |
| Notes: Closing speed is under 5 second minimum and/or operating force required to open door exceeds 5 lbs. Cost is for new closer, assuming adjustment will not work. Federal Guideline: 404.2.8.1, 404.2.9 | | |

| Description | Priority | Estimated Cost |
|---|---|---|
| *Provide Maneuvering Space on Pull Side of Door - Stairway C & D* | Low | $2,000 |
| Notes: The clear space adjacent to the latch on the pull side of the stairwell access doors C & D is 2" and 12-1/2", respectively. Consider options, which may include reversing the door swing if space is available. Cost estimated that assumes door swing is reversed from left to right or right to left as appropriate, this may not be possible in some locations (door would swing into circulation path of stairs in some cases). Cost may vary. Priority is low other than at Level 1 discharge for emergency exit.<br>Federal Guideline: 404.2.4.1 | | |
| **Level 1** | | |
| Signage | | |
| *Provide Compliant Room Signage* | Medium | $2,200 |
| Notes: There are several permanent spaces with non-compliant signage. Non-compliance issues typically include lack of tactile letters, lack of Braille, Braille separation from text or bottom of sign of less than 3/8", serif fonts, low contrast visual text, and/or signage in non-compliant location, including non-accessible public and employee restrooms. Signage at these should include tactile and visual letters and Braille, pictogram, and not include the ISA. Each non-accessible restroom should include a directional/informational sign providing the location of accessible restrooms.<br>Federal Guideline: 216.2, 703 | | |
| *Provide Compliant Restroom Signage* | Medium | $600 |
| Notes: Provide compliant signage at all non-accessible restrooms (public or employee). Signage should include tactile and visual letters and Braille, pictogram, and not include the ISA. Each non-accessible restroom should include a directional/informational sign providing the location of accessible restrooms. | | |
| Common Hallway Circulation Spaces | | |
| *Lower Light Switch or Provide Occupancy Sensor* | Low | N/A |
| Notes: Electrical switches typically over 48" max ht. allowed by ADASAD but up to 54" allowed by 1991 ADAAG. Correct when altered.<br>Federal Guideline: 308.2 | | |
| *Provide Compliant Elevator Hoistway Signage* | Medium | $1,800 |
| Notes: Hoistway signs on Level 1 at all elevators lack a tactile star, which is required on both jambs at the main building entry level. Provide a compliant sign on both jambs of all 9 elevators.<br>Federal Guideline: 407.2.3.1 | | |
| *Protect Protruding Objects* | Low | $100 |
| Notes: Fire warden phone box handle protrudes 5-1/2" at 57 and 58-1/2" (4" max. between 27"-80") at Stair C and near elevators. Consider providing alternate hardware that does not extend into circulation path.<br>Federal Guideline: 307.2 | | |
| *Protect Protruding Objects* | Low | $100 |

| Description | Priority | Estimated Cost |
|---|---|---|
| Notes: Fire extinguisher cabinet protrudes 7" at 39-1/2" (4" max. between 27"-80") in corridor court tower Women's public restroom. Provide permanent, cane-detectable object below each or relocate outside of circulation area. Note also that height of access hammer and extinguisher should be at 48" high max. Federal Guideline: 307.2, 308 | | |
| *Provide Accessible Service Counter or Alternate Accommodation* | Medium | $900 |
| Notes: Service counter at Randolph St. entrance security station to east of security checkpoint is at 46-3/4" height (36" max. req'd. for verbal interaction). Federal Guideline: 227.3, 904.4 | | |
| Drinking Fountains | | |
| *Provide Compliant Drinking Fountains* | Medium | $1,600 |
| Notes: Two total drinking fountains provided, one at Stair D meets bubbler height requirement (38-43") for standing user and other at Stair C meets neither standard. There is no wheelchair accessible drinking fountain. These existing fixtures original to 1950s building are slightly different in configuration than other in the building (see LL for typical) with 6-3/4" from rear wall to bubbler but same issues noted above exist. Cost assumes new hi-lo drinking fountains added to Office Tower corridor and existing fountains taken out of service. Cost assumes minimal plumbing/installation issues. Federal Guideline: 211, 602 | | |
| Doors | | |
| *Provide Compliant Hardware* | Medium | $1,350 |
| Notes: All stairwell doors at this level have non-compliant access hardware but the doors are locked and operable only from the inside. Replace the thumb and handle type opener with type operable with single closed fist (e.g., lever). Federal Guideline: 309.4 | | |
| *Provide Compliant Hardware* | Medium | $1,350 |
| Notes: There are estimated to be at least 3 doors to janitor closets that have knob or other non-compliant hardware that requires grasping and twisting to operate. Federal Guideline: 309.4 | | |

| Description | Priority | Estimated Cost |
|---|---|---|
| *Adjust Door Closer - Stairway C, D, & E* | Low | $1,350 |
| Notes: Closing speed is under 5 second minimum and/or operating force required to open door exceeds 5 lbs. Cost is for new closer, assuming adjustment will not work.<br>Federal Guideline: 404.2.8.1, 404.2.9 | | |
| **Level 2** | | |
| Signage | | |
| *Provide Compliant Room Signage* | Medium | $2,500 |
| Notes: There are several permanent spaces with non-compliant signage. Non-compliance issues typically include lack of tactile letters, lack of Braille, Braille separation from text or bottom of sign of less than 3/8", serif fonts, low contrast visual text, and/or signage in non-compliant location, including non-accessible public and employee restrooms. Signage at these should include tactile and visual letters and Braille, pictogram, and not include the ISA. Each non-accessible restroom should include a directional/informational sign providing the location of accessible restrooms.<br>Federal Guideline: 216.2, 703 | | |
| Common Hallway Circulation Spaces | | |
| *Lower Light Switch or Provide Occupancy Sensor* | Low | N/A |
| Notes: Electrical switches typically over 48" max ht. allowed by ADASAD but up to 54" allowed by 1991 ADAAG. Correct when altered.<br>Federal Guideline: 308.2 | | |
| *Protect Protruding Objects* | Low | $50 |
| Notes: Fire warden phone box handle protrudes 5-1/2" at 58-1/2" (4" max. between 27"-80") at Stair C. Consider providing alternate hardware that does not extend into circulation path.<br>Federal Guideline: 307.2 | | |
| *Protect Protruding Objects* | Low | $100 |
| Notes: Fire extinguisher cabinet protrudes 7" at 48" and 41-1/2" (4" max. between 27"-80") near Room 204 and across from Stair D, respectively. Provide permanent, cane-detectable object below each or relocate. Note also that height of access hammer and extinguisher should be at 48" high max.<br>Federal Guideline: 307.2, 308 | | |
| Skywalk Access | | |
| *Provide Compliant Maneuvering Clearance at Accessible Door* | Low | $4,000 |
| Notes: Narrow access corridor to power-assisted door is only 44" wide (48" min. req'd. for latch side approach to door with closer). Door is highly usable and low priority, consider improvements when vestibule to skywalk is altered.<br>Federal Guideline: 404.2.4.1 | | |

| Description | Priority | Estimated Cost |
|---|---|---|
| *Adjust Door Closer* | Medium | $2,500 |
| Notes: The door closer exerts a high amount of force when closing and could be a hazard to a disabled user that delayed entering/exiting. The door does not appear to be capable of being operated manually, which brings into question accessibility during a power failure. Explore options for adjusting the power assisted door operator and replace if necessary with newer model that complies. Cost assumes replacement. Federal Guideline: 404.2.4.1 | | |
| Drinking Fountains | | |
| *Provide Compliant Drinking Fountains* | Medium | $1,600 |
| Notes: Total of two (2) drinking fountains provided. Wheelchair fountain at Stair C has only 26-3/4" knee space below (27" min. req'd.). Recessed fixture near Room 208 meets bubbler height requirement (38-43") for standing user. These existing fixtures original to 1950s building construction have typical issues noted above and in notes at end. Cost assumes new standing user free-standing fountain added at Room 208 fountain and existing fountain taken out of service and wheelchair fountain is re-hung to provide 36" max. bubbler height (existing is 32-3/4") and 27" min. knee space. Cost assumes minimal plumbing/installation issues. Federal Guideline: 211, 602 | | |
| *Protect Protruding Objects* | Medium | $200 |
| Notes: The wheelchair-accessible drinking fountain near Stair C extends beyond the shallow alcove and protrudes 10" at 27". Provide permanent, cane-detectable barriers on both sides of fountain. Federal Guideline: 307.2 | | |
| Doors | | |
| *Provide Compliant Hardware* | Medium | $1,800 |
| Notes: There are estimated to be at least 3 doors to janitor closets and storage room at Stair D that have knob or other non-compliant hardware that requires grasping and twisting to operate. Federal Guideline: 309.4 | | |
| *Adjust Door Closer - Stairway C, D, & E* | Low | $1,350 |
| Notes: Closing speed is under 5 second minimum and/or operating force required to open door exceeds 5 lbs. Cost is for new closer, assuming adjustment will not work. Federal Guideline: 404.2.8.1, 404.2.9 | | |

| Description | Priority | Estimated Cost |
|---|---|---|
| **Level 3** | | |
| Signage | | |
| *Provide Compliant Room Signage* | Medium | $3,000 |
| Notes: There are several permanent spaces with non-compliant signage. Non-compliance issues typically include lack of tactile letters, lack of Braille, Braille separation from text or bottom of sign of less than 3/8", serif fonts, low contrast visual text, and/or signage in non-compliant location, including non-accessible public and employee restrooms. Signage at these should include tactile and visual letters and Braille, pictogram, and not include the ISA. Each non-accessible restroom should include a directional/informational sign providing the location of accessible restrooms. Federal Guideline: 216.2, 703 | | |
| Common Hallway Circulation Spaces | | |
| *Lower Light Switch or Provide Occupancy Sensor* | Low | N/A |
| Notes: Electrical switches typically over 48" max ht. allowed by ADASAD but up to 54" allowed by 1991 ADAAG. Correct when altered. Federal Guideline: 308.2 | | |
| *Protect Protruding Objects* | Low | $50 |
| Notes: Fire warden phone box handle protrudes 5-1/2" at 58-3/4" (4" max. between 27"-80") at Stair C. Consider providing alternate hardware that does not extend into circulation path. Federal Guideline: 307.2 | | |
| *Protect Protruding Objects* | Low | $100 |
| Notes: Fire extinguisher cabinet protrudes 7" at 39-3/4" and 42-1/4" (4" max. between 27"-80") near Room 310 and 336, respectively. Provide permanent, cane-detectable object below each or relocate. Note also that height of access hammer and extinguisher should be at 48" high max. Federal Guideline: 307.2, 308 | | |
| Drinking Fountains | | |
| *Provide Compliant Drinking Fountains* | Medium | $1,200 |
| Notes: Recessed fixture near Stair C/Room 308 meets bubbler height requirement (38-43") for standing user. These existing fixtures original to 1950s building construction have typical issues noted above and in notes at end. Cost assumes new standing user free-standing fountain added and existing fountain taken out of service. Cost assumes minimal plumbing/installation issues. Federal Guideline: 211, 602 | | |
| *Protect Protruding Objects* | Medium | $200 |
| Notes: The wheelchair-accessible drinking fountain near Stair D/Room 318 extends beyond the shallow alcove and protrudes 10" at 27". Provide permanent, cane-detectable barriers on both sides of fountain. Federal Guideline: 307.2 | | |

| Description | Priority | Estimated Cost |
|---|---|---|
| Doors | | |
| *Provide Compliant Hardware* | Medium | $1,800 |
| Notes: There are estimated to be at least 3 doors to janitor closets and storage room at Stair D that have knob or other non-compliant hardware that requires grasping and twisting to operate. Federal Guideline: 309.4 | | |
| *Adjust Door Closer - Stairway C, D, & E* | Low | $1,350 |
| Notes: Closing speed is under 5 second minimum and/or operating force required to open door exceeds 5 lbs. Cost is for new closer, assuming adjustment will not work. Federal Guideline: 404.2.8.1, 404.2.9 | | |
| *Provide Kick Plate on Push Side of Door* | Low | $220 |
| Notes: The double doors in the hallway from Office Tower to Court Tower provide only 6" to glazing (10" min. smooth req'd.) on door. Provide kick plate with filler on push side of both doors. Federal Guideline: 404.2.10 | | |
| **Level 4** | | |
| Signage | | |
| *Provide Compliant Room Signage* | Medium | $2,900 |
| Notes: There are several permanent spaces with non-compliant signage. Non-compliance issues typically include lack of tactile letters, lack of Braille, Braille separation from text or bottom of sign of less than 3/8", serif fonts, low contrast visual text, and/or signage in non-compliant location, including non-accessible public and employee restrooms. Signage at these should include tactile and visual letters and Braille, pictogram, and not include the ISA. Each non-accessible restroom should include a directional/informational sign providing the location of accessible restrooms. Federal Guideline: 216.2, 703 | | |
| Common Hallway Circulation Spaces | | |
| *Lower Light Switch or Provide Occupancy Sensor* | Low | N/A |
| Notes: Electrical switches typically over 48" max ht. allowed by ADASAD but up to 54" allowed by 1991 ADAAG. Correct when altered. Federal Guideline: 308.2 | | |
| *Protect Protruding Objects* | Low | $50 |
| Notes: Fire warden phone box handle protrudes 5-1/2" at 58-1/2" (4" max. between 27"-80") at Stair C. Consider providing alternate hardware that does not extend into circulation path. Federal Guideline: 307.2 | | |
| *Protect Protruding Objects* | Low | $100 |
| Notes: Fire extinguisher cabinet protrudes 7" at 46" near Room 418 seating and Room 406. Provide permanent, cane-detectable object below or relocate. Note also that height of access hammer and extinguisher should be at 48" high max. Federal Guideline: 307.2, 308 | | |

| Description | Priority | Estimated Cost |
|---|---|---|
| *Protect Protruding Objects* | Low | $50 |
| Notes: Television monitor at Room 408 protrudes 6-1/4" at 63" near Room 408. Provide permanent, cane-detectable object below. Federal Guideline: 307.2, 308 | | |
| Drinking Fountains | | |
| *Provide Compliant Drinking Fountains* | Medium | $1,600 |
| Notes: Total of two (2) drinking fountains provided. Wheelchair fountain at Stair D/Room 420 has only 26-1/2" knee space below (27" min. req'd.). Recessed fixture near Stair C/Room 404 meets bubbler height requirement (38-43") for standing user. These existing fixtures original to 1950s building construction have typical issues noted above and in notes at end. Cost assumes new standing user free-standing fountain added at existing recesses fountain and existing fountain taken out of service and wheelchair fountain is re-hung to provide 36" max. bubbler height (existing is 32-3/4") and 27" min. knee space. Cost assumes minimal plumbing/installation issues. Federal Guideline: 211, 602 | | |
| *Protect Protruding Objects* | Medium | $200 |
| Notes: The wheelchair-accessible drinking fountain near Stair D extends beyond the shallow alcove and protrudes 10" at 27". Provide permanent, cane-detectable barriers on both sides of fountain. Federal Guideline: 307.2 | | |
| Doors | | |
| *Provide Compliant Hardware* | Medium | $1,800 |
| Notes: There are estimated to be at least 3 doors to janitor closets and storage room at Stair D that have knob or other non-compliant hardware that requires grasping and twisting to operate. Federal Guideline: 309.4 | | |
| *Adjust Door Closer - Stairway C, D, & E* | Low | $1,350 |
| Notes: Closing speed is under 5 second minimum and/or operating force required to open door exceeds 5 lbs. Cost is for new closer, assuming adjustment will not work. Federal Guideline: 404.2.8.1, 404.2.9 | | |
| **Level 5** | | |
| Signage | | |
| *Provide Compliant Room Signage* | Medium | $2,300 |
| Notes: There are several permanent spaces with non-compliant signage. Non-compliance issues typically include lack of tactile letters, lack of Braille, Braille separation from text or bottom of sign of less than 3/8", serif fonts, low contrast visual text, and/or signage in non-compliant location, including non-accessible public and employee restrooms. Signage at these should include tactile and visual letters and Braille, pictogram, and not include the ISA. Each non-accessible restroom should include a directional/informational sign providing the location of accessible restrooms. Federal Guideline: 216.2, 703 | | |

| Description | Priority | Estimated Cost |
|---|---|---|
| Common Hallway Circulation Spaces | | |
| *Lower Light Switch or Provide Occupancy Sensor* | Low | N/A |
| Notes: Electrical switches typically over 48" max ht. allowed by ADASAD but up to 54" allowed by 1991 ADAAG. Correct when altered. Federal Guideline: 308.2 | | |
| *Protect Protruding Objects* | Low | $50 |
| Notes: Fire warden phone box handle protrudes 5-1/2" at 58-1/2" (4" max. between 27"-80") at Stair C. Consider providing alternate hardware that does not extend into circulation path. Federal Guideline: 307.2 | | |
| *Protect Protruding Objects* | Low | $100 |
| Notes: Fire extinguisher cabinet protrudes 7" at 40-1/2" near access doorway to Court Tower hallway and at Room 502 seating. Provide permanent, cane-detectable object below or relocate. Note also that height of access hammer and extinguisher should be at 48" high max. Federal Guideline: 307.2, 308 | | |
| Drinking Fountains | | |
| *Provide Compliant Drinking Fountains* | Medium | $1,200 |
| Notes: Recessed fixture near Stair C meets bubbler height requirement (38-43") for standing user. These existing fixtures original to 1950s building construction have typical issues noted above and in notes at end. Cost assumes new standing user free-standing fountain added and existing fountain taken out of service. Cost assumes minimal plumbing/installation issues. Federal Guideline: 211, 602 | | |
| *Protect Protruding Objects* | Medium | $200 |
| Notes: The wheelchair-accessible drinking fountain near Room 500 extends beyond the shallow alcove and protrudes 10" at 27". Provide permanent, cane-detectable barriers on both sides of fountain. Federal Guideline: 307.2 | | |
| Doors | | |
| *Provide Compliant Hardware* | Medium | $1,800 |
| Notes: There are estimated to be at least 3 doors to janitor closets and storage room at Stair D that have knob or other non-compliant hardware that requires grasping and twisting to operate. Federal Guideline: 309.4 | | |
| *Adjust Door Closer - Stairway C, D, & E* | Low | $1,350 |
| Notes: Closing speed is under 5 second minimum and/or operating force required to open door exceeds 5 lbs. Cost is for new closer, assuming adjustment will not work. Federal Guideline: 404.2.8.1, 404.2.9 | | |

| Description | Priority | Estimated Cost |
|---|---|---|
| **Level 6** | | |
| Signage | | |
| *Provide Compliant Room Signage* | Medium | $3,100 |
| Notes: There are several permanent spaces with non-compliant signage. Non-compliance issues typically include lack of tactile letters, lack of Braille, Braille separation from text or bottom of sign of less than 3/8", serif fonts, low contrast visual text, and/or signage in non-compliant location, including non-accessible public and employee restrooms. Signage at these should include tactile and visual letters and Braille, pictogram, and not include the ISA. Each non-accessible restroom should include a directional/informational sign providing the location of accessible restrooms. Federal Guideline: 216.2, 703 | | |
| Common Hallway Circulation Spaces | | |
| *Lower Light Switch or Provide Occupancy Sensor* | Low | N/A |
| Notes: Electrical switches typically over 48" max ht. allowed by ADASAD but up to 54" allowed by 1991 ADAAG. Correct when altered. Federal Guideline: 308.2 | | |
| *Protect Protruding Objects* | Low | $50 |
| Notes: Fire warden phone box handle protrudes 5-1/2" at 58" (4" max. between 27"-80") at Stair C. Consider providing alternate hardware that does not extend into circulation path. Federal Guideline: 307.2 | | |
| Drinking Fountains | | |
| *Provide Compliant Drinking Fountains* | Medium | $1,200 |
| Notes: Recessed fixture near Stair C meets bubbler height requirement (38-43") for standing user. These existing fixtures original to 1950s building construction have typical issues noted above and in notes at end. Cost assumes new standing user free-standing fountain added and existing fountain taken out of service. Cost assumes minimal plumbing/installation issues. Federal Guideline: 211, 602 | | |
| *Protect Protruding Objects* | Medium | $200 |
| Notes: The wheelchair-accessible drinking fountain near Stair D extends beyond the shallow alcove and protrudes 10" at 27". Provide permanent, cane-detectable barriers on both sides of fountain. Federal Guideline: 307.2 | | |
| Doors | | |
| *Provide Compliant Hardware* | Medium | $1,800 |
| Notes: There are estimated to be at least 3 doors to janitor closets and storage room at Stair D that have knob or other non-compliant hardware that requires grasping and twisting to operate. Federal Guideline: 309.4 | | |

| Description | Priority | Estimated Cost |
|---|---|---|
| *Adjust Door Closer - Stairway C, D, & E* | Low | $1,350 |
| Notes: Closing speed is under 5 second minimum and/or operating force required to open door exceeds 5 lbs. Cost is for new closer, assuming adjustment will not work. Federal Guideline: 404.2.8.1, 404.2.9 | | |
| *Provide Kick Plate on Push Side of Door* | Low | $440 |
| Notes: The double doors in the hallway at both ends of elevator lobby hallway provide only 6" to glazing (10" min. smooth req'd.) on door. Provide kick plate with filler on push side of both doors. Federal Guideline: 404.2.10 | | |
| *Provide Kick Plate on Push Side of Door* | Low | $220 |
| Notes: The double doors in the hallway at hallway near Room 614 provide only 6" to glazing (10" min. smooth req'd.) on door. Provide kick plate with filler on push side of both doors. Federal Guideline: 404.2.10 | | |
| **Level 7** | | |
| Signage | | |
| *Provide Compliant Room Signage* | Medium | $3,100 |
| Notes: There are several permanent spaces with non-compliant signage. Non-compliance issues typically include lack of tactile letters, lack of Braille, Braille separation from text or bottom of sign of less than 3/8", serif fonts, low contrast visual text, and/or signage in non-compliant location, including non-accessible public and employee restrooms. Signage at these should include tactile and visual letters and Braille, pictogram, and not include the ISA. Each non-accessible restroom should include a directional/informational sign providing the location of accessible restrooms. Federal Guideline: 216.2, 703 | | |
| Common Hallway Circulation Spaces | | |
| *Lower Light Switch or Provide Occupancy Sensor* | Low | N/A |
| Notes: Electrical switches typically over 48" max ht. allowed by ADASAD but up to 54" allowed by 1991 ADAAG. Correct when altered. Federal Guideline: 308.2 | | |
| *Protect Protruding Objects* | Low | $50 |
| Notes: Fire warden phone box handle protrudes 5-1/2" at 58" (4" max. between 27"-80") at Stair C. Consider providing alternate hardware that does not extend into circulation path. Federal Guideline: 307.2 | | |
| *Protect Protruding Objects* | Low | $50 |
| Notes: Fire extinguisher cabinet protrudes 7" at 45-3/4" near Stair E. Provide permanent, cane-detectable object below or relocate. Note also that height of access hammer and extinguisher should be at 48" high max. Federal Guideline: 307.2, 308 | | |

| Description | Priority | Estimated Cost |
|---|---|---|
| Doors | | |
| *Provide Compliant Hardware* | Medium | $1,800 |
| Notes: There are estimated to be at least 3 doors to janitor closets and storage room at Stair D that have knob or other non-compliant hardware that requires grasping and twisting to operate. Federal Guideline: 309.4 | | |
| *Adjust Door Closer - Stairway C, D, & E* | Low | $1,350 |
| Notes: Closing speed is under 5 second minimum and/or operating force required to open door exceeds 5 lbs. Cost is for new closer, assuming adjustment will not work. Federal Guideline: 404.2.8.1, 404.2.9 | | |
| Drinking Fountains | | |
| *Provide Compliant Drinking Fountains* | Medium | $1,200 |
| Notes: Recessed fixture near Stair D meets bubbler height requirement (38-43") for standing user. These existing fixtures original to 1950s building construction have typical issues noted above and in notes at end. Cost assumes new standing user free-standing fountain added and existing fountain taken out of service. Cost assumes minimal plumbing/installation issues. Federal Guideline: 211, 602 | | |
| *Protect Protruding Objects* | Medium | $200 |
| Notes: The wheelchair-accessible drinking fountain near Stair C extends beyond the shallow alcove and protrudes 10" at 27". Provide permanent, cane-detectable barriers on both sides of fountain. Federal Guideline: 307.2 | | |
| **Level 8** | | |
| Signage | | |
| *Provide Compliant Room Signage* | Medium | $3,400 |
| Notes: There are several permanent spaces with non-compliant signage. Non-compliance issues typically include lack of tactile letters, lack of Braille, Braille separation from text or bottom of sign of less than 3/8", serif fonts, low contrast visual text, and/or signage in non-compliant location, including non-accessible public and employee restrooms. Signage at these should include tactile and visual letters and Braille, pictogram, and not include the ISA. Each non-accessible restroom should include a directional/informational sign providing the location of accessible restrooms. Federal Guideline: 216.2, 703 | | |
| Common Hallway Circulation Spaces | | |
| *Lower Light Switch or Provide Occupancy Sensor* | Low | N/A |
| Notes: Electrical switches typically over 48" max ht. allowed by ADASAD but up to 54" allowed by 1991 ADAAG. Correct when altered. Federal Guideline: 308.2 | | |

| Description | Priority | Estimated Cost |
|---|---|---|
| *Protect Protruding Objects* | Low | $50 |
| Notes: Fire warden phone box handle protrudes 5-1/2" at 58-1/2" (4" max. between 27"-80") at Stair C. Consider providing alternate hardware that does not extend into circulation path. Federal Guideline: 307.2 | | |
| *Protect Protruding Objects* | Low | $100 |
| Notes: Fire extinguisher cabinet protrudes 7" at 40-1/2" and 37-1/4" near Assessor exit/Stair C and seating for the Assessor, respectively. Provide permanent, cane-detectable object below or relocate. Note also that height of access hammer and extinguisher should be at 48" high max. Federal Guideline: 307.2, 308 | | |
| Drinking Fountains | | |
| *Provide Compliant Drinking Fountains* | Medium | $1,200 |
| Notes: Recessed fixture near Stair D is only 37" (38-43" for standing user) and provides no headroom. These existing fixtures original to 1950s building construction have typical issues noted above and in notes at end. Cost assumes new standing user free-standing fountain added and existing fountain taken out of service. Cost assumes minimal plumbing/installation issues. Federal Guideline: 211, 602 | | |
| *Protect Protruding Objects* | Medium | $200 |
| Notes: The wheelchair-accessible drinking fountain near Room 808 extends beyond the shallow alcove and protrudes 10" at 27". Provide permanent, cane-detectable barriers on both sides of fountain. Federal Guideline: 307.2 | | |
| Doors | | |
| *Provide Compliant Hardware* | Medium | $1,800 |
| Notes: There are estimated to be at least 3 doors to janitor closets and storage room at Stair D that have knob or other non-compliant hardware that requires grasping and twisting to operate. Federal Guideline: 309.4 | | |
| *Adjust Door Closer - Stairway C, D, & E* | Low | $1,350 |
| Notes: Closing speed is under 5 second minimum and/or operating force required to open door exceeds 5 lbs. Cost is for new closer, assuming adjustment will not work. Federal Guideline: 404.2.8.1, 404.2.9 | | |

| Description | Priority | Estimated Cost |
|---|---|---|
| **Level 9** | | |
| Signage | | |
| *Provide Compliant Room Signage* | Medium | $2,800 |
| Notes: There are several permanent spaces with non-compliant signage. Non-compliance issues typically include lack of tactile letters, lack of Braille, Braille separation from text or bottom of sign of less than 3/8", serif fonts, low contrast visual text, and/or signage in non-compliant location, including non-accessible public and employee restrooms. Signage at these should include tactile and visual letters and Braille, pictogram, and not include the ISA. Each non-accessible restroom should include a directional/informational sign providing the location of accessible restrooms. Federal Guideline: 216.2, 703 | | |
| Common Hallway Circulation Spaces | | |
| *Lower Light Switch or Provide Occupancy Sensor* | Low | N/A |
| Notes: Electrical switches typically over 48" max ht. allowed by ADASAD but up to 54" allowed by 1991 ADAAG. Correct when altered. Federal Guideline: 308.2 | | |
| *Protect Protruding Objects* | Low | $50 |
| Notes: Fire warden phone box handle protrudes 5-1/2" at 58-1/2" (4" max. between 27"-80") at Stair C. Consider providing alternate hardware that does not extend into circulation path. Federal Guideline: 307.2 | | |
| *Protect Protruding Objects* | Low | $100 |
| Notes: Fire extinguisher cabinet protrudes 7" at 40-1/2" and 37-1/4" near Room 910 and at Friend of the Court, respectively. Provide permanent, cane-detectable object below or relocate. Note also that height of access hammer and extinguisher should be at 48" high max. Federal Guideline: 307.2, 308 | | |
| *Provide Accessible Service Counter or Alternate Accommodation* | Medium | $900 |
| Notes: Service counter at Room 900A FOC service windows is at 45" height (36" max. req'd. for verbal interaction). Federal Guideline: 227.3, 904.4 | | |
| *Provide Accessible Working Surface* | Medium | $600 |
| Notes: Work surface countertop at Room 900A is at 39-1/2" (34" max.) above the floor. Provide alternate working surface (small table) that has 34" max. height and 27" min. knee space below for wheelchair users. Federal Guideline: 226.1, 902.2 | | |
| *Protect Protruding Objects* | Low | $100 |
| Notes: Work surface countertop at Room 900A protrudes 16-1/4" at 38" (4" max. between 27"-80"). Provide permanent, cane-detectable barriers on both sides. Federal Guideline: 307.2 | | |

| Description | Priority | Estimated Cost |
|---|---|---|
| Drinking Fountains | | |
| *Provide Compliant Drinking Fountains* | Medium | $1,600 |
| Notes: Wheelchair fountain at Stair C has only 26-3/4" knee space below (27" min. req'd.). Recessed fixture near Stair C meets bubbler height requirement (38-43") for standing user. These existing fixtures original to 1950s building construction have typical issues noted above and in notes at end. Cost assumes new standing user free-standing fountain added at existing recesses fountain and existing fountain taken out of service and wheelchair fountain is re-hung to provide 36" max. bubbler height (existing is 32-3/4") and 27" min. knee space. Cost assumes minimal plumbing/installation issues. Federal Guideline: 211, 602 | | |
| *Protect Protruding Objects* | Medium | $200 |
| Notes: The wheelchair-accessible drinking fountain near Stair C extends beyond the shallow alcove and protrudes 10" at 27". Provide permanent, cane-detectable barriers on both sides of fountain. Federal Guideline: 307.2 | | |
| Doors | | |
| *Provide Compliant Hardware* | Medium | $1,800 |
| Notes: There are estimated to be at least 3 doors to janitor closets and storage room at Stair D that have knob or other non-compliant hardware that requires grasping and twisting to operate. Federal Guideline: 309.4 | | |
| *Adjust Door Closer - Stairway C, D, & E* | Low | $1,350 |
| Notes: Closing speed is under 5 second minimum and/or operating force required to open door exceeds 5 lbs. Cost is for new closer, assuming adjustment will not work. Federal Guideline: 404.2.8.1, 404.2.9 | | |
| **Level 10** | | |
| Signage | | |
| *Provide Compliant Room Signage* | Medium | $2,500 |
| Notes: There are several permanent spaces with non-compliant signage. Non-compliance issues typically include lack of tactile letters, lack of Braille, Braille separation from text or bottom of sign of less than 3/8", serif fonts, low contrast visual text, and/or signage in non-compliant location, including non-accessible public and employee restrooms. Signage at these should include tactile and visual letters and Braille, pictogram, and not include the ISA. Each non-accessible restroom should include a directional/informational sign providing the location of accessible restrooms. Federal Guideline: 216.2, 703 | | |
| Common Hallway Circulation Spaces | | |
| *Lower Light Switch or Provide Occupancy Sensor* | Low | N/A |
| Notes: Electrical switches typically over 48" max ht. allowed by ADASAD but up to 54" allowed by 1991 ADAAG. Correct when altered. Federal Guideline: 308.2 | | |

| Description | Priority | Estimated Cost |
|---|---|---|
| *Protect Protruding Objects* | Low | $50 |
| Notes: Fire warden phone box handle protrudes 5-1/2" at 58" (4" max. between 27"-80") at Stair C. Consider providing alternate hardware that does not extend into circulation path.<br>Federal Guideline: 307.2 | | |
| *Protect Protruding Objects* | Low | $100 |
| Notes: Fire extinguisher cabinet protrudes 7" at 41" and 42-1/4" near Room 1004 and near Chief Financial Officer office, respectively. Provide permanent, cane-detectable object below or relocate. Note also that height of access hammer and extinguisher should be at 48" high max.<br>Federal Guideline: 307.2, 308 | | |
| Drinking Fountains | | |
| *Provide Compliant Drinking Fountains* | Medium | $1,200 |
| Notes: Recessed fixture near Chief Financial Officer office meets bubbler height requirement (38-43") for standing user. These existing fixtures original to 1950s building construction have typical issues noted above and in notes at end. Cost assumes new standing user free-standing fountain added and existing fountain taken out of service. Cost assumes minimal plumbing/installation issues.<br>Federal Guideline: 211, 602 | | |
| *Protect Protruding Objects* | Medium | $200 |
| Notes: The wheelchair-accessible drinking fountain near Stair D extends beyond the shallow alcove and protrudes 10" at 27". Provide permanent, cane-detectable barriers on both sides of fountain.<br>Federal Guideline: 307.2 | | |
| Doors | | |
| *Provide Compliant Hardware* | Medium | $1,800 |
| Notes: There are estimated to be at least 3 doors to janitor closets and storage room at Stair D that have knob or other non-compliant hardware that requires grasping and twisting to operate.<br>Federal Guideline: 309.4 | | |
| *Adjust Door Closer - Stairway C & D* | Low | $900 |
| Notes: Closing speed is under 5 second minimum and/or operating force required to open door exceeds 5 lbs. Note that Stairway E is not accessible from public corridor. Cost is for new closer, assuming adjustment will not work.<br>Federal Guideline: 404.2.8.1, 404.2.9 | | |

| Description | Priority | Estimated Cost |
|---|---|---|
| **Level 11** | | |
| Signage | | |
| *Provide Compliant Room Signage* | Medium | $1,800 |
| Notes: There are several permanent spaces with non-compliant signage. Non-compliance issues typically include lack of tactile letters, lack of Braille, Braille separation from text or bottom of sign of less than 3/8", serif fonts, low contrast visual text, and/or signage in non-compliant location, including non-accessible public and employee restrooms. Signage at these should include tactile and visual letters and Braille, pictogram, and not include the ISA. Each non-accessible restroom should include a directional/informational sign providing the location of accessible restrooms. Federal Guideline: 216.2, 703 | | |
| Common Hallway Circulation Spaces | | |
| *Lower Light Switch or Provide Occupancy Sensor* | Low | N/A |
| Notes: Electrical switches typically over 48" max ht. allowed by ADASAD but up to 54" allowed by 1991 ADAAG. Correct when altered. Federal Guideline: 308.2 | | |
| *Protect Protruding Objects* | Low | $50 |
| Notes: Fire warden phone box handle protrudes 5-1/2" at 58-1/2" (4" max. between 27"-80") at Stair C. Consider providing alternate hardware that does not extend into circulation path. Federal Guideline: 307.2 | | |
| *Protect Protruding Objects* | Low | $100 |
| Notes: Fire extinguisher cabinet protrudes 7" at 40-1/2" and 42" near Stair E and Stair C, respectively. Provide permanent, cane-detectable object below or relocate. Note also that height of access hammer and extinguisher should be at 48" high max. Federal Guideline: 307.2, 308 | | |
| Drinking Fountains | | |
| *Provide Compliant Drinking Fountains* | Medium | $1,200 |
| Notes: Recessed fixture near Stair C is only 37-1/2" high, which does not meet requirement (38-43") for standing user. These existing fixtures original to 1950s building construction have typical issues noted above and in notes at end. Cost assumes new standing user free-standing fountain added and existing fountain taken out of service. Cost assumes minimal plumbing/installation issues. Federal Guideline: 211, 602 | | |
| *Protect Protruding Objects* | Medium | $200 |
| Notes: The wheelchair-accessible drinking fountain near Stair D extends beyond the shallow alcove and protrudes 10" at 27-1/4". Provide permanent, cane-detectable barriers on both sides of fountain. Federal Guideline: 307.2 | | |

| Description | Priority | Estimated Cost |
|---|---|---|
| Doors | | |
| *Provide Compliant Hardware* | Medium | $1,800 |
| Notes: There are estimated to be at least 3 doors to janitor closets and storage room at Stair D that have knob or other non-compliant hardware that requires grasping and twisting to operate. Federal Guideline: 309.4 | | |
| *Adjust Door Closer - Stairway C, D, & E* | Low | $1,350 |
| Notes: Closing speed is under 5 second minimum and/or operating force required to open door exceeds 5 lbs. Cost is for new closer, assuming adjustment will not work. Federal Guideline: 404.2.8.1, 404.2.9 | | |
| **Level 12** | | |
| Signage | | |
| *Provide Compliant Room Signage* | Medium | $3,000 |
| Notes: There are several permanent spaces with non-compliant signage. Non-compliance issues typically include lack of tactile letters, lack of Braille, Braille separation from text or bottom of sign of less than 3/8", serif fonts, low contrast visual text, and/or signage in non-compliant location, including non-accessible public and employee restrooms. Signage at these should include tactile and visual letters and Braille, pictogram, and not include the ISA. Each non-accessible restroom should include a directional/informational sign providing the location of accessible restrooms. Federal Guideline: 216.2, 703 | | |
| Common Hallway Circulation Spaces | | |
| *Lower Light Switch or Provide Occupancy Sensor* | Low | N/A |
| Notes: Electrical switches typically over 48" max ht. allowed by ADASAD but up to 54" allowed by 1991 ADAAG. Correct when altered. Federal Guideline: 308.2 | | |
| *Protect Protruding Objects* | Low | $50 |
| Notes: Fire warden phone box handle protrudes 5-1/2" at 58-1/2" (4" max. between 27"-80") at Stair C. Consider providing alternate hardware that does not extend into circulation path. Federal Guideline: 307.2 | | |
| *Protect Protruding Objects* | Low | $50 |
| Notes: Fire alarm control box protrudes 4-1/4" at 55-1/2" (4" max. between 27"-80") at Stair E. Provide permanent cane-detectable object below. Federal Guideline: 307.2 | | |
| *Protect Protruding Objects* | Low | $100 |
| Notes: Fire extinguisher cabinet protrudes 7" at 40-1/4" and 40-1/2" near Room 1204 and Stair E, respectively. Provide permanent, cane-detectable object below or relocate. Note also that height of access hammer and extinguisher should be at 48" high max. Federal Guideline: 307.2, 308 | | |

| Description | Priority | Estimated Cost |
|---|---|---|
| Drinking Fountains | | |
| *Provide Compliant Drinking Fountains* | Medium | $1,600 |
| Notes: Recessed fixtures near Room 1200 and Stair D both meet bubbler height requirement (38-43") for standing user. There is no wheelchair accessible fountain provided as required. The existing fixtures original to 1950s building construction have typical issues noted above and in notes at end. Cost assumes new hi-lo drinking fountains added to Office Tower corridor and existing fountains taken out of service. Cost assumes minimal plumbing/installation issues. Federal Guideline: 211, 602 | | |
| Doors | | |
| *Provide Compliant Hardware* | Medium | $1,800 |
| Notes: There are estimated to be at least 3 doors to janitor closets and storage room at Stair D that have knob or other non-compliant hardware that requires grasping and twisting to operate. Federal Guideline: 309.4 | | |
| *Adjust Door Closer - Stairway C, D, & E* | Low | $1,350 |
| Notes: Closing speed is under 5 second minimum and/or operating force required to open door exceeds 5 lbs. Cost is for new closer, assuming adjustment will not work. Federal Guideline: 404.2.8.1, 404.2.9 | | |
| **Level 13** | | |
| Signage | | |
| *Provide Compliant Room Signage* | Medium | $3,900 |
| Notes: There are several permanent spaces with non-compliant signage. Non-compliance issues typically include lack of tactile letters, lack of Braille, Braille separation from text or bottom of sign of less than 3/8", serif fonts, low contrast visual text, and/or signage in non-compliant location, including non-accessible public and employee restrooms. Signage at these should include tactile and visual letters and Braille, pictogram, and not include the ISA. Each non-accessible restroom should include a directional/informational sign providing the location of accessible restrooms. Federal Guideline: 216.2, 703 | | |
| Common Hallway Circulation Spaces | | |
| *Lower Light Switch or Provide Occupancy Sensor* | Low | N/A |
| Notes: Electrical switches typically over 48" max ht. allowed by ADASAD but up to 54" allowed by 1991 ADAAG. Correct when altered. Federal Guideline: 308.2 | | |
| *Protect Protruding Objects* | Low | $50 |
| Notes: Fire warden phone box handle protrudes 5-1/2" at 58-1/2" (4" max. between 27"-80") at Stair C. Consider providing alternate hardware that does not extend into circulation path. Federal Guideline: 307.2 | | |

| Description | Priority | Estimated Cost |
|---|---|---|
| *Protect Protruding Objects* | Low | $100 |
| Notes: Fire extinguisher cabinet protrudes 7" at 42" and 40-1/2" near Stair E and Stair D, respectively. Provide permanent, cane-detectable object below or relocate. Note also that height of access hammer and extinguisher should be at 48" high max.<br>Federal Guideline: 307.2, 308 | | |
| *Protect Compliant Coat Rack and Shelving* | Low | $100 |
| Notes: The coat rack in the hall adjacent to the auditorium has hangers at 55" and shelf above at 64" height (48" max.). Provide alternate coat hook and shelf that is within required reach ranges.<br>Federal Guideline: 308 | | |
| Drinking Fountains | | |
| *Provide Compliant Drinking Fountains* | Medium | $2,200 |
| Notes: Recessed fixtures near Stair C and Stair D both meet bubbler height requirement (38-43") for standing user. The new bottler filler wheelchair accessible fountain provided near Stair E has the bubbler height at 37" (36" max.). The existing fixtures original to 1950s building construction have typical issues noted above and in notes at end. Cost assumes 1 new hi-lo drinking fountain added to replace original fixtures in main elevator lobby corridor having bubbler heights of 36" max. with 27" knee space below and 38-43", existing fountains taken out of service, artificial alcove provided to prevent new fountain from being a protruding object, and new fountain near Stair E is adjusted so bubbler height is 36" max. with 27" min. knee space below. Recommendation to provide both height drinking fountains in public elevator corridor is due to location of other wheelchair fountain near Stair E, which is remote from most public circulation and presence of public assembly space (Auditorium) commonly accessed by the public. Cost assumes minimal plumbing/installation issues.<br>Federal Guideline: 211, 602 | | |
| *Protect Protruding Objects* | Medium | $200 |
| Notes: The wheelchair-accessible drinking fountain near Stair E is not located in an alcove and protrudes 19" at 30-1/2". Provide permanent, cane-detectable barriers on both sides of fountain.<br>Federal Guideline: 307.2 | | |
| Doors | | |
| *Provide Compliant Hardware* | Medium | $3,600 |
| Notes: There are estimated to be at least 3 doors to janitor closets and storage room at Stair D, 4 storage room doors at the Auditorium, and 1 door within the Auditorium that have knob or other non-compliant hardware that requires grasping and twisting to operate.<br>Federal Guideline: 309.4 | | |
| *Adjust Door Closer - Stairway C & D* | Low | $900 |
| Notes: Closing speed is under 5 second minimum and/or operating force required to open door exceeds 5 lbs. Cost is for new closer, assuming adjustment will not work. Note that Stairway E door complies but is at limit for both parameters, consider adjustments/replacement.<br>Federal Guideline: 404.2.8.1, 404.2.9 | | |

| Description | Priority | Estimated Cost |
|---|---|---|
| *Provide Kick Plate on Push Side of Door* | Low | $220 |
| Notes: The double doors in the hallway from elevators to Auditorium provide only 6" to glazing (10" min. smooth req'd.) on door. Provide kick plate with filler on push side of both doors.<br>Federal Guideline: 404.2.10 | | |
| Auditorium | | |
| *Provide Directional/Informational Signage* | Medium | $550 |
| Notes: There are several signs on the wall in the hallway that indicate "HANDICAP ACCESSIBLE". Those signs include the ISA and visual text as required, but also include tactile letters and Braille, which are not needed. Remove existing signs that include insensitive wording "HANDICAP" and replace with directional signage including the ISA and directional arrow pointing in the direction of the hallway accessing the accessible entrance. A sign should be placed at all non-accessible entrances with stairs. Cost is for 4 new directional signs and removal of existing outdated verbiage signs.<br>Federal Guideline: 216.3, 703.5, 703.7.2.1 | | |
| *Provide Compliant Wheelchair Access Ramp* | High | $2,500 |
| Notes: Access to the public wheelchair seating area at the side door requires use of a ramped walkway with 6.3% slope. Slopes over 5% require compliant landings at the top and bottom (which are present) and handrails on both sides. There are no handrails provided as required and ramp does not qualify for exception permitted adjacent to seating in assembly areas. This ramp is on the wheelchair accessible route and required to fully comply. Explore options, which could include modifications to the accessible route to reduce the slope to less than 5%, which would eliminate ramp requirements, or installation of compliant handrails. Cost is estimated for installation of basic handrails attached to the full wall and partially free-standing and attached to the floor and wall on the other. Costs will vary based on option selected and finishes.<br>Federal Guideline: 221, 802.1 | | |
| *Provide Compliant Stair Handrails* | Medium | TBD |
| Notes: Handrails on stair access from the main hallway to the auditorium are not compliant. Stairs near DWJBA offices is not the full length of the stairs on one side and none of the existing handrails provide the required 12" extension past the top step and parallel to the ground and bottom extension equal to at least 1 full tread depth (11" min.). Compliant handrail extensions at two sets of stairs would partially block doors to storage areas. Explore options to provide compliant handrails on all stairs. Cost cannot be determined without further study of options and finishes desired.<br>Federal Guideline: 505 | | |
| *Provide Wheelchair and Companion Spaces* | High | $4,000 |

| Description | Priority | Estimated Cost |
|---|---|---|
| Notes: The seating capacity of the Auditorium is approximately 572. The 2010 standards require 6 wheelchair spaces with adjacent companion seat for 500 spaces plus 1 additional for every fraction of 150 above 500 (total of 7 in this location required - NOTE: the 1991 Standards in place when the auditorium was altered in 2009 required 6 wheelchair and companion spaces for 500 plus 1 additional for each 100 above 500). There is currently up to 5 compliant wheelchair and companion seats available on the main level only, 2 of which were blocked at the time of the compliance review by a video camera stand. Explore options to modify seating to provide a total of 7 compliant spaces with adjacent companion seat. A single space must be 36" min. width, side-by-side spaces must be 33" min. width each. Existing single space is 52" and two double spaces are 72", providing excess space to layout seat reconfiguration to be compliant. Cost assumes reconfiguration and potential need to disassemble 1-2 seats to provide adequate space.<br>Federal Guideline: 221, 802.1 | | |
| *Provide Assistive Listening Devices and Signage* | High | $8,000 |
| Notes: There is no Assistive Listening System (ALS) in place nor Assistive Listening Devices (ALD) for persons with hearing loss to check out to allow them to participate and understand what is transpiring at meetings. Per table 219.3, an assembly area with 572 seats is required to provide 23 ALD receivers, 6 must be hearing-aid compatible. Explore the options available for purchase of ALS and ALDs that are compatible with audio system in place and also purchase and install required signage with the International Symbol for Hearing Loss to indicate the presence of an ALS and indicate where ALDs can be obtained. Cost is for signs in hallway at each entrance, 1 within the room on a wall facing the audience, and a compliant ALS and ALDs.<br>Federal Guideline: 219.2-219.3, 216.10, 703.7.2.4, 706.1 | | |
| *Provide Compliant Height Public Lectern* | Medium | $800 |
| Notes: Existing lectern for the public to address officials is angled from 36" height at front to 44" height at rear and does not allow sight lines to officials by user in a wheelchair. Provide lower height unit with working surface no higher that 34" and max. 36" height. Existing lectern also protrudes into the accessible route 6" at 33-3/4" high. Ensure new lectern is either free-standing or is cane-detectable at or below 27" on both sides.<br>Federal Guideline: 802, 902 | | |
| *Provide Compliant Height Staff Area Lectern* | Medium | $800 |
| Notes: Existing lectern for staff or others to address the public is angled from 42-1/2" height at front to 48" height at rear and does not permit sight lines to public seating area by user in a wheelchair. Provide lower height unit with working surface no higher that 34" and max. 36" height.<br>Federal Guideline: 802, 902 | | |
| *Provide Compliant Staff Working Surface* | Medium | $400 |
| Notes: Staff work tables have only 25-1/2" knee space below (27" min.). Provide compliant table.<br>Federal Guideline: 305 | | |

| Description | Priority | Estimated Cost |
|---|---|---|
| *Provide Compliant Access to Seating for City/County Officials* | Medium | TBD |
| Notes: Access to the upper seating area designated for city and county officials is provided on each side by 4 steps. The steps have no handrails and there is no compliant access to the raised area for a person in a wheelchair. Explore options to provide compliant access, which is possible only with a ramp of a length that may not fit within the space considering other items. Provide compliant handrails on stairs that are not converted, which must provide 36" wide clear space between inside of handrails (may not fit within existing configuration). Cost cannot be determined due to unknown issues that need to be investigated further to provide access and is likely to change depending on options available and option that is selected. Knee space below the officials working surfaces is at 25-1/4".<br><br>Federal Guideline: 206.2.4, 305, 504, 505 | | |
| **Level 14** | | |
| Signage | | |
| *Provide Compliant Room Signage* | Medium | $1,300 |
| Notes: There are several permanent spaces with non-compliant signage. Non-compliance issues typically include lack of tactile letters, lack of Braille, Braille separation from text or bottom of sign of less than 3/8", serif fonts, low contrast visual text, and/or signage in non-compliant location, including non-accessible public and employee restrooms. Signage at these should include tactile and visual letters and Braille, pictogram, and not include the ISA. Each non-accessible restroom should include a directional/informational sign providing the location of accessible restrooms.<br>Federal Guideline: 216.2, 703 | | |
| Common Hallway Circulation Spaces | | |
| *Lower Light Switch or Provide Occupancy Sensor* | Low | N/A |
| Notes: Electrical switches typically over 48" max ht. allowed by ADASAD but up to 54" allowed by 1991 ADAAG. Correct when altered.<br>Federal Guideline: 308.2 | | |
| *Protect Protruding Objects* | Low | $50 |
| Notes: Fire extinguisher cabinet protrudes 7" at 46-1/2" near Census Detroit office. Provide permanent, cane-detectable object below or relocate. Note also that height of access hammer and extinguisher should be at 48" high max.<br>Federal Guideline: 307.2, 308 | | |
| *Provide Compliant Ramp (ADVISORY)* | N/A | N/A |
| Notes: Access to employee only area next to Room 1430 is provided by a metal ramp with a slope of 14.0%. Rise exceeds 6", requiring max. slope of 8.33% with exceptions for areas with space limitations. Confirm access to this employee area can be provided in another location.<br>Federal Guideline: 405 | | |

| Description | Priority | Estimated Cost |
|---|---|---|
| Doors | | |
| *Provide Compliant Hardware* | Medium | $2,250 |
| Notes: There are approximately 5 doors to permanent spaces that have knob or other non-compliant hardware that requires grasping and twisting to operate. Replace hardware on doors to spaces accessed by public with lever-type, followed by hardware on doors to employee-only areas. Federal Guideline: 309.4 | | |
| *Adjust Door Closer - Stairway E* | Low | $450 |
| Notes: Closing speed is under 5 second minimum and/or operating force required to open door exceeds 5 lbs. Cost is for new closer, assuming adjustment will not work. Federal Guideline: 404.2.8.1, 404.2.9 | | |
| | | |
| **Facility Total:** | | $206,050 |
| | | |

**General Notes:**

1. The only restrooms evaluated within the facility are the accessible public restrooms located in the lower level of the Office Tower. Members of the public in the Court Tower can access the restrooms by taking the elevator to the Lower Level and using the common connecting corridor between the Court Tower and Office Tower. There are additional restrooms within the Office and Court Towers, some of which are open to the public, but have limited accessibility and were not reviewed.

2. Room signage tactile letters and Braille, if present, typically includes information about the room number. Many doors include multiple redundant, non-compliant signs. Special signage required at all restrooms that includes all required elements, it is also recommended that gender pictograms be provided and directional signage with the ISA and text description of the location of accessible restrooms at all non-accessible restrooms.

3. Drinking fountains are required to have compliant numbers and types by floor. Even though some levels of the Office and Court Towers are connected, for purposes of this evaluation each Tower will be treated as a separate facility by level. There are 2 typical types, including those original to the building that are recessed partially into the wall and usually have bubbler height compliant for a standing user but there is inadequate depth headroom (only 3-1/2") for ease of use and compliance with 15" min. depth from rear wall to bubbler. The other type are recently added wheelchair user with bottle filler that have been placed in former recessed fountain locations. Several of these fountains have been installed too low and do not provide the min. 27" knee space below. All protrude 10" into the circulation area and need to have an artificial alcove provided to protect them (fountains currently with bottom below 27" will not be protrusions until they are raised but list above includes provision of alcove).

4. Note that the height of the hammer used to break the glass at most FECs is too high if hammer is placed on top of cabinet and height of extinguisher handle to remove it are both typically above 48" even where the FEC is not protruding. The height of all FECs should be reviewed and adjusted as needed, ensuring compliant height and placement outside of the circulation areas of all hallways.

# Court Tower

| Common Use Spaces | | |
|---|---|---|
| Description | Priority | Estimated Cost |
| Stairwells | | |
| *Provide Improved Stairway Signage* | Medium | $16,800 |
| Notes: Signage at entry doors to both stairwells is typically limited to visual, lighted "EXIT" signs in corridors at access doors to stairwell access vestibules, though some doors have non-compliant signage on the door. No wall signage is typically provided that includes visual and tactile letters indicating the presence of the stairwell access/egress beyond and stairway pictogram. Addition of signs in the hallway at access doors, in addition in some cases to the actual stairwell access doors within the vestibule, especially when multiple doors are present in the vestibule, would improve safety and communication for visually impaired persons. In the event of a fire, the stairwells are the most likely means of egress when the elevators shut down. Federal Guideline: 216.4.1, 703 | | |
| *Provide Compliant Panic Bars* | Low | $4,200 |
| Notes: Panic hardware at all stairwell access doors typically protrude into the clear door opening 4-1/2" to 5". Explore option of making adjustment to controls so protrusion is 4" or less. Cost assumes adjustments can be made. Federal Guideline: 404.2.3 | | |
| *Provide Compliant Floor Designation Signage* | Low | $8,400 |
| Notes: Floor designation signage within the stairwells that includes visual and tactile letters and Braille is not provided. Existing signage is visual text only and if provided is located on the door. Provide compliant signage at all doors adjacent to the door latch side wall. Federal Guideline: 407.2.3.1 | | |
| Elevators | | |
| *Provide Compliant Emergency Communication Equipment Door Hardware* | Medium | $900 |
| Notes: Access to the emergency communication equipment is via a door that has no elevated way to operate. A small opening to the side of the door is present which a user would insert their finger and pull to open. Within the compartment, ensure that all phones provide a tactile symbol and Braille adjacent to the emergency communication device. The Braille in some compartments is damaged. Federal Guideline: 308, 407.4.9, 703.2 | | |

| Description | Priority | Estimated Cost |
|---|---|---|
| *Provide Compliant Elevator Hoistway Signage* | Low | $29,400 |
| Notes: Braille on hoistway signs is typically separated from the corresponding text and/or bottom of the sign by 1/8" (3/8" min. req'd.). When replaced, ensure hoistway signs on level 10 and above are a single sign rather than individual integers  (e.g., "11" is currently two "1" signs rather than a single "11"). This results in minor issues with Braille spacing. Provide compliant signs on both jambs of all 7 elevators.<br>Federal Guideline: 407.2.3.1 | | |
| *Consider Modifying Elevator Number Signage (Advisory)* | Low | N/A |
| Notes: All elevators are numbered, with the elevator number often provided in the hallway outside the elevator. This could be confusing to some members of the public, who may see conflicting information with the floor designation signage. Consider relocating elevator designation signage or making it either less conspicuous or include "Elevator #" or similar visual text.<br>Federal Guideline: n/a | | |
| **Lower Level** | | |
| Signage | | |
| *Provide Compliant Room Signage* | Medium | $2,300 |
| Notes: There are several permanent spaces with non-compliant signage. Non-compliance issues typically include lack of tactile letters, lack of Braille, Braille separation from text or bottom of sign of less than 3/8", serif fonts, low contrast visual text, and/or signage in non-compliant location, including non-accessible public and employee restrooms. Signage at these should include tactile and visual letters and Braille, pictogram, and not include the ISA. Each non-accessible restroom should include a directional/informational sign providing the location of accessible restrooms.<br>Federal Guideline: 216.2, 703 | | |
| Common Hallway Circulation Spaces | | |
| *Protect Protruding Objects* | Low | $100 |
| Notes: Fire extinguisher cabinet protrudes 7" at 39-1/2" (4" max. between 27"-80") in corridor court tower Women's public restroom. Provide permanent, cane-detectable object below each.<br>Federal Guideline: 307.2 | | |
| *Provide Compliant Vending Machine Reach Height* | Low | N/A |
| Notes: Most vending machines have operable parts above 48" max. allowed. Work with vendors supplying equipment to provide compliant machines.<br>Federal Guideline: 308 | | |
| Doors | | |
| *Adjust Door Closer - Stairway A & B* | Low | $900 |
| Notes: Closing speed is under 5 second minimum and/or operating force required to open door exceeds 5 lbs. Cost is for new closer, assuming adjustment will not work.<br>Federal Guideline: 404.2.8.1, 404.2.9 | | |

| Description | Priority | Estimated Cost |
|---|---|---|
| *Provide Maneuvering Space on Pull Side of Door - Stairway A & B* | Low | $2,000 |
| Notes: The clear space adjacent to the latch on the pull side of the stairwell access doors A & B is 16-1/2" and 15-3/4", respectively. Consider options, which may include reversing the door swing if space is available. Cost estimated that assumes door swing is reversed from left to right or right to left as appropriate, this may not be possible in some locations (door would swing into circulation path of stairs in some cases). Cost may vary. Priority is low other than at Level 1 discharge for emergency exit.<br>Federal Guideline: 404.2.4.1 | | |
| Drinking Fountains | | |
| *Provide Compliant Drinking Fountains* | Medium | $1,600 |
| Notes: Only 1 fountain provided (2 min. req'd.) that has bubbler height that meets standing user height. No wheelchair accessible fountain with bubbler at 36" max. and min. 27" knee space below provided. Recessed fixtures meet bubbler height requirement (38-43") for standing user but has low water stream height (less than 4" min.). These existing fixtures original to 1950s construction provide very little headroom for users leaning into the water stream and could be a hazard. Explore options of replacing original fixtures with compliant fountain to meet requirements for number and types. Cost assumes new hi-lo pair of drinking fountains added at existing fountain and existing fountain taken out of service. Cost assumes minimal plumbing/installation issues.<br>Federal Guideline: 211, 602 | | |
| **Level 1** | | |
| Signage | | |
| *Provide Compliant Room Signage* | Medium | $400 |
| Notes: There are several permanent spaces with non-compliant signage. Non-compliance issues typically include lack of tactile letters, lack of Braille, Braille separation from text or bottom of sign of less than 3/8", serif fonts, low contrast visual text, and/or signage in non-compliant location, including non-accessible public and employee restrooms. Signage at these should include tactile and visual letters and Braille, pictogram, and not include the ISA. Each non-accessible restroom should include a directional/informational sign providing the location of accessible restrooms.<br>Federal Guideline: 216.2, 703 | | |
| Common Hallway Circulation Spaces | | |
| *Lower Light Switch or Provide Occupancy Sensor* | Low | N/A |
| Notes: Electrical switches typically over 48" max ht. allowed by ADASAD but up to 54" allowed by 1991 ADAAG. Correct when altered.<br>Federal Guideline: 308.2 | | |
| *Provide Compliant Elevator Hoistway Signage* | Medium | $1,400 |
| Notes: Hoistway signs on Level 1 at all elevators lack a tactile star, which is required on both jambs at the main building entry level. Provide a compliant sign on both jambs of all 7 elevators.<br>Federal Guideline: 407.2.3.1 | | |

| Description | Priority | Estimated Cost |
|---|---|---|
| *Protect Protruding Objects* | Low | $100 |
| Notes: AED cabinet near elevators/security protrudes 6" at 51" (4" max. between 27"-80"). Provide permanent, cane-detectable object below or relocate outside of circulation area.<br>Federal Guideline: 307.2 | | |
| **Doors** | | |
| *Provide Compliant Hardware* | Medium | $900 |
| Notes: Both stairwell doors at this level have non-compliant access hardware but the doors are locked and operable only from the inside. Replace the thumb and handle type opener with type operable with single closed fist (e.g., lever).<br>Federal Guideline: 309.4 | | |
| *Adjust Door Closer - Stairway A & B* | Low | $900 |
| Notes: Closing speed is under 5 second minimum and/or operating force required to open door exceeds 5 lbs. Cost is for new closer, assuming adjustment will not work. Note doors are locked from the outside and only accessed from within the stairwell.<br>Federal Guideline: 404.2.8.1, 404.2.9 | | |
| **Drinking Fountains** | | |
| *Provide Compliant Drinking Fountains* | Medium | $1,600 |
| Notes: Two total drinking fountains provided, one at Room 103 meets bubbler height requirement (38-43") for standing user and other at security checkpoint meets neither standard. There is no wheelchair accessible drinking fountain. These existing fixtures original to 1950s construction provide very little headroom for users leaning into the water stream and could be a hazard. Cost assumes new hi-lo drinking fountains added to Office Tower corridor and existing fountains taken out of service. Cost assumes minimal plumbing/installation issues.<br>Federal Guideline: 211, 602 | | |
| **Level 2** | | |
| **Signage** | | |
| *Provide Compliant Room Signage* | Medium | $1,600 |
| Notes: There are several permanent spaces with non-compliant signage. Non-compliance issues typically include lack of tactile letters, lack of Braille, Braille separation from text or bottom of sign of less than 3/8", serif fonts, low contrast visual text, and/or signage in non-compliant location, including non-accessible public and employee restrooms. Signage at these should include tactile and visual letters and Braille, pictogram, and not include the ISA. Each non-accessible restroom should include a directional/informational sign providing the location of accessible restrooms.<br>Federal Guideline: 216.2, 703 | | |
| **Common Hallway Circulation Spaces** | | |
| *Lower Light Switch or Provide Occupancy Sensor* | Low | N/A |
| Notes: Electrical switches typically over 48" max ht. allowed by ADASAD but up to 54" allowed by 1991 ADAAG. Correct when altered.<br>Federal Guideline: 308.2 | | |

| Description | Priority | Estimated Cost |
|---|---|---|
| *Protect Protruding Objects* | Low | $50 |
| Notes: Hand sanitizer dispenser at Stair B protrudes 5" at 39-1/2" (4" max. between 27"-80"). Relocate dispenser or provide permanent object below. Federal Guideline: 307.2 | | |
| *Protect Protruding Objects* | Low | $100 |
| Notes: Fire extinguisher cabinet protrudes 7" at 40" and 39-1/4" near Stair B and Stair A, respectively. Provide permanent, cane-detectable object below or relocate. Note also that height of access hammer and extinguisher should be at 48" high max. Federal Guideline: 307.2, 308 | | |
| Drinking Fountains | | |
| *Provide Compliant Drinking Fountains* | Medium | $1,600 |
| Notes: Only 1 fountain provided (2 min. req'd) that has bubbler height that meets wheelchair user height at 32-1/2" (36" max.) but has only 26-1/2" high knee space below (27" min. req'd.). Cost assumes new fountain added with bubbler height of 38-43" and existing fountain remounted to provide knee space. Cost assumes minimal plumbing/installation issues. Federal Guideline: 211, 602 | | |
| *Protect Protruding Objects* | Medium | $200 |
| Notes: The wheelchair-accessible drinking fountain is not located in an alcove and protrudes 10". Provide permanent, cane-detectable barriers on both sides of fountain. Federal Guideline: 307.2 | | |
| Doors | | |
| *Adjust Door Closer - Stairway A & B and Access Doors 203 and 205* | Low | $1,800 |
| Notes: Closing speed is under 5 second minimum and/or operating force required to open door exceeds 5 lbs. Cost is for new closer, assuming adjustment will not work. Federal Guideline: 404.2.8.1, 404.2.9 | | |
| *Provide Compliant Hallway Access Doors* | Medium | $400 |
| Notes: Doors 203 and 205 from the hallway to the stairwell access doors both are recessed 23" and provide only 2" clear maneuvering space on the pull side (18" min. req'd.). Explore options, which may include removing doors if allowed by all codes. Closing speed is under 3 or 5 second minimum (spring hinge vs. closer) and/or operating force required to open door exceeds 5 lbs. Cost assumes doors are removed to address both issues. Federal Guideline: 404.2.4.1, 404.2.8, 404.2.9 | | |

| Description | Priority | Estimated Cost |
|---|---|---|
| **Level 3** | | |
| Signage | | |
| *Provide Compliant Room Signage* | Medium | $2,500 |
| Notes: There are several permanent spaces with non-compliant signage. Non-compliance issues typically include lack of tactile letters, lack of Braille, Braille separation from text or bottom of sign of less than 3/8", serif fonts, low contrast visual text, and/or signage in non-compliant location, including non-accessible public and employee restrooms. Signage at these should include tactile and visual letters and Braille, pictogram, and not include the ISA. Each non-accessible restroom should include a directional/informational sign providing the location of accessible restrooms.<br>Federal Guideline: 216.2, 703 | | |
| Common Hallway Circulation Spaces | | |
| *Lower Light Switch or Provide Occupancy Sensor* | Low | N/A |
| Notes: Electrical switches typically over 48" max ht. allowed by ADASAD but up to 54" allowed by 1991 ADAAG. Correct when altered.<br>Federal Guideline: 308.2 | | |
| *Protect Protruding Objects* | Low | $50 |
| Notes: Fire alarm control box protrudes 4-1/4" at 55-1/2" (4" max. between 27"-80") at Stair B. Provide permanent cane-detectable object below.<br>Federal Guideline: 307.2 | | |
| *Protect Protruding Objects* | Low | $100 |
| Notes: Fire extinguisher cabinet protrudes 7" at 41-1/2" and 43-1/2" (4" max. between 27"-80") at Stair A and Stair B, respectively. Provide permanent, cane-detectable object below each or relocate. Note also that height of access hammer and extinguisher should be at 48" high max.<br>Federal Guideline: 307.2, 308 | | |
| Drinking Fountains | | |
| *Provide Compliant Drinking Fountains* | Medium | $1,600 |
| Notes: Only 1 fountain provided (2 min. req'd) that has bubbler height that meets wheelchair user height at 32-1/2" (36" max.) but has only 26-1/2" high knee space below (27" min. req'd.). Cost assumes new fountain added with bubbler height of 38-43" and existing fountain remounted to provide knee space. Cost assumes minimal plumbing/installation issues.<br>Federal Guideline: 211, 602 | | |
| *Protect Protruding Objects* | Medium | $200 |
| Notes: The wheelchair-accessible drinking fountain is not located in an alcove and protrudes 10". Provide permanent, cane-detectable barriers on both sides of fountain.<br>Federal Guideline: 307.2 | | |

| Description | Priority | Estimated Cost |
|---|---|---|
| Doors | | |
| *Adjust Door Closer - Stairway A & B and Access Doors 303 and 305* | Low | $1,800 |
| Notes: Closing speed is under 5 second minimum and/or operating force required to open door exceeds 5 lbs. Cost is for new closer, assuming adjustment will not work. Federal Guideline: 404.2.8.1, 404.2.9 | | |
| *Provide Compliant Hallway Access Doors* | Medium | $400 |
| Notes: Doors 303 and 305 from the hallway to the stairwell access doors both were partially obstructed by adjacent doors in the hallway that were propped open. Door 303 has only 17-1/2" clear maneuvering space on the latch pull side and that space is partially obstructed by a FEC (18" min. req'd.). Explore options, which may include removing doors if allowed by all codes. Closing speed is under 3 or 5 second minimum (spring hinge vs. closer) and/or operating force required to open door exceeds 5 lbs. Cost assumes doors are removed to address both issues. Federal Guideline: 404.2.4.1, 404.2.8, 404.2.9 | | |
| *Provide Kick Plate on Push Side of Door* | Low | $440 |
| Notes: The two sets of double doors in the hallway near Room 300 and Room 305 provide only 6" to glazing (10" min. smooth req'd.) on door. Provide kick plate with filler on push side of both doors. Federal Guideline: 404.2.10 | | |
| **Level 4** | | |
| Signage | | |
| *Provide Compliant Room Signage* | Medium | $2,000 |
| Notes: There are several permanent spaces with non-compliant signage. Non-compliance issues typically include lack of tactile letters, lack of Braille, Braille separation from text or bottom of sign of less than 3/8", serif fonts, low contrast visual text, and/or signage in non-compliant location, including non-accessible public and employee restrooms. Signage at these should include tactile and visual letters and Braille, pictogram, and not include the ISA. Each non-accessible restroom should include a directional/informational sign providing the location of accessible restrooms. Federal Guideline: 216.2, 703 | | |
| Common Hallway Circulation Spaces | | |
| *Lower Light Switch or Provide Occupancy Sensor* | Low | N/A |
| Notes: Electrical switches typically over 48" max ht. allowed by ADASAD but up to 54" allowed by 1991 ADAAG. Correct when altered. Federal Guideline: 308.2 | | |
| *Protect Protruding Objects* | Low | $100 |
| Notes: Fire extinguisher cabinet protrudes 7" at 42-3/4" and 41" (4" max. between 27"-80") at Stair A and Stair B, respectively. Provide permanent, cane-detectable object below each or relocate. Note also that height of access hammer and extinguisher should be at 48" high max. Federal Guideline: 307.2, 308 | | |

| Description | Priority | Estimated Cost |
|---|---|---|
| Drinking Fountains | | |
| *Provide Compliant Drinking Fountains* | Medium | $1,800 |
| Notes: Only 1 fountain provided (2 min. req'd.) that has bubbler height that meets standing user height at 38" (38-43"). These existing fixtures original to 1950s construction provide very little headroom for users leaning into the water stream and could be a hazard. Cost assumes new hi-lo drinking fountains added to Court Tower corridor and existing fountain taken out of service. Cost assumes minimal plumbing/installation issues.<br>Federal Guideline: 211, 602 | | |
| Doors | | |
| *Adjust Door Closer - Stairway A & B and Access Doors 403 and 405* | Low | $1,800 |
| Notes: Closing speed is under 5 second minimum and/or operating force required to open door exceeds 5 lbs. Cost is for new closer, assuming adjustment will not work.<br>Federal Guideline: 404.2.8.1, 404.2.9 | | |
| **Level 5** | | |
| Signage | | |
| *Provide Compliant Room Signage* | Medium | $2,100 |
| Notes: There are several permanent spaces with non-compliant signage. Non-compliance issues typically include lack of tactile letters, lack of Braille, Braille separation from text or bottom of sign of less than 3/8", serif fonts, low contrast visual text, and/or signage in non-compliant location, including non-accessible public and employee restrooms. Signage at these should include tactile and visual letters and Braille, pictogram, and not include the ISA. Each non-accessible restroom should include a directional/informational sign providing the location of accessible restrooms.<br>Federal Guideline: 216.2, 703 | | |
| Common Hallway Circulation Spaces | | |
| *Lower Light Switch or Provide Occupancy Sensor* | Low | N/A |
| Notes: Electrical switches typically over 48" max ht. allowed by ADASAD but up to 54" allowed by 1991 ADAAG. Correct when altered.<br>Federal Guideline: 308.2 | | |
| *Protect Protruding Objects* | Low | $50 |
| Notes: Fire alarm control box protrudes 7" at 44" (4" max. between 27"-80") at Stair B. Provide permanent cane-detectable object below.<br>Federal Guideline: 307.2 | | |
| *Protect Protruding Objects* | Low | $100 |
| Notes: Fire extinguisher cabinet protrudes 7" at 40-1/2" and 39-3/4" (4" max. between 27"-80") at Stair A and Stair B, respectively. Provide permanent, cane-detectable object below each or relocate. Note also that height of access hammer and extinguisher should be at 48" high max.<br>Federal Guideline: 307.2, 308 | | |

| Description | Priority | Estimated Cost |
|---|---|---|
| Drinking Fountains | | |
| *Provide Compliant Drinking Fountains* | Medium | $1,800 |
| Notes: Only 1 fountain provided (2 min. req'd.) that has bubbler height that meets standing user height at 38" (38-43"). This fountain also has a very low water stream height. These existing fixtures original to 1950s construction provide very little headroom for users leaning into the water stream and could be a hazard. Cost assumes new hi-lo drinking fountains added to Court Tower corridor and existing fountain taken out of service. Cost assumes minimal plumbing/installation issues. Federal Guideline: 211, 602 | | |
| Doors | | |
| *Adjust Door Closer - Stairway A & B and Access Doors 503 and 505* | Low | $1,800 |
| Notes: Closing speed is under 5 second minimum and/or operating force required to open door exceeds 5 lbs. Cost is for new closer, assuming adjustment will not work. Federal Guideline: 404.2.8.1, 404.2.9 | | |
| **Level 6** | | |
| Signage | | |
| *Provide Compliant Room Signage* | Medium | $1,700 |
| Notes: There are several permanent spaces with non-compliant signage. Non-compliance issues typically include lack of tactile letters, lack of Braille, Braille separation from text or bottom of sign of less than 3/8", serif fonts, low contrast visual text, and/or signage in non-compliant location, including non-accessible public and employee restrooms. Signage at these should include tactile and visual letters and Braille, pictogram, and not include the ISA. Each non-accessible restroom should include a directional/informational sign providing the location of accessible restrooms. Federal Guideline: 216.2, 703 | | |
| Common Hallway Circulation Spaces | | |
| *Lower Light Switch or Provide Occupancy Sensor* | Low | N/A |
| Notes: Electrical switches typically over 48" max ht. allowed by ADASAD but up to 54" allowed by 1991 ADAAG. Correct when altered. Federal Guideline: 308.2 | | |
| *Protect Protruding Objects* | Low | $50 |
| Notes: Fire alarm control box protrudes 4-1/4" at 56-1/4" (4" max. between 27"-80") at Stair B. Provide permanent cane-detectable object below. Federal Guideline: 307.2 | | |

| Description | Priority | Estimated Cost |
|---|---|---|
| *Protect Protruding Objects* | Low | $100 |
| Notes: Fire extinguisher cabinet protrudes 7" at 41-1/4" and 43-1/2" (4" max. between 27"-80") at Stair A and Stair B, respectively. Provide permanent, cane-detectable object below each or relocate. Note also that height of access hammer and extinguisher should be at 48" high max. Note that movable 5 gallon water bottles within space blocked FEC at time of evaluation. Federal Guideline: 307.2, 308 | | |
| Drinking Fountains | | |
| *Provide Compliant Drinking Fountains* | Medium | $1,600 |
| Notes: Only 1 fountain provided (2 min. req'd.) that has bubbler height that meets wheelchair user height at 32-1/2" (36" max.) but has only 26-1/2" high knee space below (27" min. req'd.). Cost assumes new fountain added with bubbler height of 38-43" and existing fountain remounted to provide knee space. Cost assumes minimal plumbing/installation issues. Federal Guideline: 211, 602 | | |
| *Protect Protruding Objects* | Medium | $200 |
| Notes: The wheelchair-accessible drinking fountain is not located in an alcove and protrudes 10". Provide permanent, cane-detectable barriers on both sides of fountain. Federal Guideline: 307.2 | | |
| Doors | | |
| *Adjust Door Closer - Stairway A & B and Access Doors 603 and 605* | Low | $1,800 |
| Notes: Closing speed is under 5 second minimum and/or operating force required to open door exceeds 5 lbs. Cost is for new closer, assuming adjustment will not work. Federal Guideline: 404.2.8.1, 404.2.9 | | |
| *Provide Kick Plate on Push Side of Door* | Low | $220 |
| Notes: The double doors in the hallway near Room 611 provide only 6" to glazing (10" min. smooth req'd.) on door. Provide kick plate with filler on push side of both doors. Federal Guideline: 404.2.10 | | |
| **Level 7** | | |
| Signage | | |
| *Provide Compliant Room Signage* | Medium | $1,900 |
| Notes: There are several permanent spaces with non-compliant signage. Non-compliance issues typically include lack of tactile letters, lack of Braille, Braille separation from text or bottom of sign of less than 3/8", serif fonts, low contrast visual text, and/or signage in non-compliant location, including non-accessible public and employee restrooms. Signage at these should include tactile and visual letters and Braille, pictogram, and not include the ISA. Each non-accessible restroom should include a directional/informational sign providing the location of accessible restrooms. Federal Guideline: 216.2, 703 | | |

| Description | Priority | Estimated Cost |
|---|---|---|
| Common Hallway Circulation Spaces | | |
| *Lower Light Switch or Provide Occupancy Sensor* | Low | N/A |
| Notes: Electrical switches typically over 48" max ht. allowed by ADASAD but up to 54" allowed by 1991 ADAAG. Correct when altered.<br>Federal Guideline: 308.2 | | |
| *Protect Protruding Objects* | Low | $150 |
| Notes: Fire extinguisher cabinet protrudes 7" at 44-1/2", 45", and 45-1/4" (4" max. between 27"-80") at Stair B, near hallway to Office Tower, and Stair A, respectively. Provide permanent, cane-detectable object below each or relocate. Note also that height of access hammer and extinguisher should be at 48" high max.<br>Federal Guideline: 307.2, 308 | | |
| Drinking Fountains | | |
| *Provide Compliant Drinking Fountains* | Medium | $1,800 |
| Notes: Only 1 fountain provided (2 min. req'd.) that has bubbler height that meets standing user height at 38-1/4" (38-43"). This fountain also has a very low water stream height. These existing fixtures original to 1950s construction provide very little headroom for users leaning into the water stream and could be a hazard. Cost assumes new hi-lo drinking fountains added to Court Tower corridor and existing fountain taken out of service. Cost assumes minimal plumbing/installation issues.<br>Federal Guideline: 211, 602 | | |
| Doors | | |
| *Adjust Door Closer - Stairway A & B and Access Doors 703 and 705* | Low | $1,800 |
| Notes: Closing speed is under 5 second minimum and/or operating force required to open door exceeds 5 lbs. Cost is for new closer, assuming adjustment will not work.<br>Federal Guideline: 404.2.8.1, 404.2.9 | | |

| Description | Priority | Estimated Cost |
|---|---|---|
| **Level 8** | | |
| Signage | | |
| *Provide Compliant Room Signage* | Medium | $2,000 |
| Notes: There are several permanent spaces with non-compliant signage. Non-compliance issues typically include lack of tactile letters, lack of Braille, Braille separation from text or bottom of sign of less than 3/8", serif fonts, low contrast visual text, and/or signage in non-compliant location, including non-accessible public and employee restrooms. Signage at these should include tactile and visual letters and Braille, pictogram, and not include the ISA. Each non-accessible restroom should include a directional/informational sign providing the location of accessible restrooms. Federal Guideline: 216.2, 703 | | |
| Common Hallway Circulation Spaces | | |
| *Lower Light Switch or Provide Occupancy Sensor* | Low | N/A |
| Notes: Electrical switches typically over 48" max ht. allowed by ADASAD but up to 54" allowed by 1991 ADAAG. Correct when altered. Federal Guideline: 308.2 | | |
| *Protect Protruding Objects* | Low | $50 |
| Notes: Fire alarm control box protrudes 7" at 45-1/2" (4" max. between 27"-80") at Stair B. Provide permanent cane-detectable object below. Federal Guideline: 307.2 | | |
| *Protect Protruding Objects* | Low | $50 |
| Notes: Fire extinguisher cabinet protrudes 7" at 41-1/2" at Stair B. Provide permanent, cane-detectable object below each or relocate. Note also that height of access hammer and extinguisher should be at 48" high max. Federal Guideline: 307.2, 308 | | |
| Drinking Fountains | | |
| *Provide Compliant Drinking Fountains* | Medium | $1,800 |
| Notes: Only 1 fountain provided (2 min. req'd.) that has bubbler height that meets standing user height at 38" (38-43"). This fountain also has a very low water stream height. These existing fixtures original to 1950s construction provide very little headroom for users leaning into the water stream and could be a hazard. Cost assumes new hi-lo drinking fountains added to Court Tower corridor and existing fountain taken out of service. Cost assumes minimal plumbing/installation issues. Federal Guideline: 211, 602 | | |
| Doors | | |
| *Adjust Door Closer - Stairway A & B and Access Door 805* | Low | $1,350 |
| Notes: Closing speed is under 5 second minimum and/or operating force required to open door exceeds 5 lbs. Cost is for new closer, assuming adjustment will not work. Federal Guideline: 404.2.8.1, 404.2.9 | | |

| Description | Priority | Estimated Cost |
|---|---|---|
| **Level 9** | | |
| Signage | | |
| *Provide Compliant Room Signage* | Medium | $2,100 |
| Notes: There are several permanent spaces with non-compliant signage. Non-compliance issues typically include lack of tactile letters, lack of Braille, Braille separation from text or bottom of sign of less than 3/8", serif fonts, low contrast visual text, and/or signage in non-compliant location, including non-accessible public and employee restrooms. Signage at these should include tactile and visual letters and Braille, pictogram, and not include the ISA. Each non-accessible restroom should include a directional/informational sign providing the location of accessible restrooms. Federal Guideline: 216.2, 703 | | |
| Common Hallway Circulation Spaces | | |
| *Lower Light Switch or Provide Occupancy Sensor* | Low | N/A |
| Notes: Electrical switches typically over 48" max ht. allowed by ADASAD but up to 54" allowed by 1991 ADAAG. Correct when altered. Federal Guideline: 308.2 | | |
| *Protect Protruding Objects* | Low | $100 |
| Notes: Fire extinguisher cabinet protrudes 7" at 45-3/4" and 40-1/2" (4" max. between 27"-80") at Stair A and Stair B, respectively. Provide permanent, cane-detectable object below each or relocate. Note also that height of access hammer and extinguisher should be at 48" high max. Note that movable 5 gallon water bottles within space blocked FEC at time of evaluation. Federal Guideline: 307.2, 308 | | |
| Drinking Fountains | | |
| *Provide Compliant Drinking Fountains* | Medium | $1,600 |
| Notes: Only 1 fountain provided (2 min. req'd.) that has bubbler height that meets wheelchair user height at 32-3/4" (36" max.) but has only 26-3/4" high knee space below (27" min. req'd.). Cost assumes new fountain added with bubbler height of 38-43" and existing fountain remounted to provide knee space. Cost assumes minimal plumbing/installation issues. Federal Guideline: 211, 602 | | |
| *Protect Protruding Objects* | Medium | $200 |
| Notes: The wheelchair-accessible drinking fountain is not located in an alcove and protrudes 10". Provide permanent, cane-detectable barriers on both sides of fountain. Federal Guideline: 307.2 | | |
| Doors | | |
| *Adjust Door Closer - Stairway A & B and Access Doors 903 and 905* | Low | $1,800 |
| Notes: Closing speed is under 5 second minimum and/or operating force required to open door exceeds 5 lbs. Cost is for new closer, assuming adjustment will not work. Federal Guideline: 404.2.8.1, 404.2.9 | | |

| Description | Priority | Estimated Cost |
|---|---|---|
| *Provide Maneuvering Space on Pull Side of Door* | Medium | $400 |
| Notes: Doors 903 and 905 from the hallway to the stairwell access doors both are recessed and provide only 2" clear maneuvering space on the pull side (18" min. req'd.). Explore options, which may include removing doors if allowed by all codes. Cost assumes doors are removed to address both issues.<br>Federal Guideline: 404.2.4.1 | | |
| **Level 10** | | |
| Signage | | |
| *Provide Compliant Room Signage* | Medium | $2,100 |
| Notes: There are several permanent spaces with non-compliant signage. Non-compliance issues typically include lack of tactile letters, lack of Braille, Braille separation from text or bottom of sign of less than 3/8", serif fonts, low contrast visual text, and/or signage in non-compliant location, including non-accessible public and employee restrooms. Signage at these should include tactile and visual letters and Braille, pictogram, and not include the ISA. Each non-accessible restroom should include a directional/informational sign providing the location of accessible restrooms.<br>Federal Guideline: 216.2, 703 | | |
| Common Hallway Circulation Spaces | | |
| *Lower Light Switch or Provide Occupancy Sensor* | Low | N/A |
| Notes: Electrical switches typically over 48" max ht. allowed by ADASAD but up to 54" allowed by 1991 ADAAG. Correct when altered.<br>Federal Guideline: 308.2 | | |
| *Protect Protruding Objects* | Low | $100 |
| Notes: Fire extinguisher cabinet protrudes 7" at 41" and 44-1/2" (4" max. between 27"-80") at Stair A and Stair B, respectively. Provide permanent, cane-detectable object below each or relocate. Note also that height of access hammer and extinguisher should be at 48" high max. Note that movable 5 gallon water bottles within space blocked FEC at time of evaluation.<br>Federal Guideline: 307.2, 308 | | |
| *Provide Compliant Handrails (when stairs are altered)* | Low | TBD |
| Notes: Handrail extensions are less than 12" as required at the top and bottom landings. Handrail height varies and is typically 31-1/2" to 33" (34-38" req'd.). Since the stairs are the emergency egress route, they are required to comply. Explore options, including adding extensions.<br>Federal Guideline: 210.1, 505 | | |
| *Consider Modifications to Stair Nosings (when stairs are altered)* | Low | TBD |
| Notes: The stair nosings project 90 degrees from the riser, which creates a potential trip hazard due to the high angle catching the trailing toe of persons ascending the stair. Nosings that project beyond risers are required to have the underside of the leading edge curved or beveled at 30 degree max. slope. Since the stairs are the emergency egress route, they are required to comply. Least costly and least impacting alternative would be stair nosing covers.<br>Federal Guideline: 210.1, 504 | | |

| Description | Priority | Estimated Cost |
|---|---|---|
| Drinking Fountains | | |
| *Provide Compliant Drinking Fountains* | Medium | $1,800 |
| Notes: Only 1 fountain provided (2 min. req'd.) that has bubbler height that meets standing user height at 38" (38-43"). This fountain also has a very low water stream height. These existing fixtures original to 1950s construction provide very little headroom for users leaning into the water stream and could be a hazard. Cost assumes new hi-lo drinking fountains added to Court Tower corridor and existing fountain taken out of service. Cost assumes minimal plumbing/installation issues. Federal Guideline: 211, 602 | | |
| Doors | | |
| *Adjust Door Closer - Stairway A & B and Access Door 1003 & 1005* | Low | $2,200 |
| Notes: Closing speed is under 5 second minimum and/or operating force required to open door exceeds 5 lbs. The door at Room 1005 that provides access to Stair B rubs on the floor badly and requires a large amount of force to open. Cost is for new closer, assuming adjustment will not work and adjustments to Door 1005 to address rubbing on the floor. Federal Guideline: 404.2.8.1, 404.2.9 | | |
| *Provide Maneuvering Space on Pull Side of Door* | Medium | $400 |
| Notes: Doors 1003 and 1005 from the hallway to the stairwell access doors both are recessed 21-1/2" and provide only 2" clear maneuvering space on the pull side (18" min. req'd.). Explore options, which may include removing doors if allowed by all codes. Cost assumes doors are removed to address both issues. Federal Guideline: 404.2.4.1 | | |
| **Level 11** | | |
| Signage | | |
| *Provide Compliant Room Signage* | Medium | $2,100 |
| Notes: There are several permanent spaces with non-compliant signage. Non-compliance issues typically include lack of tactile letters, lack of Braille, Braille separation from text or bottom of sign of less than 3/8", serif fonts, low contrast visual text, and/or signage in non-compliant location, including non-accessible public and employee restrooms. Signage at these should include tactile and visual letters and Braille, pictogram, and not include the ISA. Each non-accessible restroom should include a directional/informational sign providing the location of accessible restrooms. Federal Guideline: 216.2, 703 | | |
| Common Hallway Circulation Spaces | | |
| *Lower Light Switch or Provide Occupancy Sensor* | Low | N/A |
| Notes: Electrical switches typically over 48" max ht. allowed by ADASAD but up to 54" allowed by 1991 ADAAG. Correct when altered. Federal Guideline: 308.2 | | |

| Description | Priority | Estimated Cost |
|---|---|---|
| *Protect Protruding Objects* | Low | $100 |
| Notes: Fire extinguisher cabinet protrudes 7" at 47-3/4" and 38-3/4" (4" max. between 27"-80") at Stair B and Stair A, respectively. Provide permanent, cane-detectable object below each or relocate. Note also that height of access hammer and extinguisher should be at 48" high max. Note that movable 5 gallon water bottles within space blocked FEC at time of evaluation. Federal Guideline: 307.2, 308 | | |
| Drinking Fountains | | |
| *Provide Compliant Drinking Fountains* | Medium | $1,600 |
| Notes: Only 1 fountain provided (2 min. req'd.) that has bubbler height that meets wheelchair user height at 33" (36" max.). Cost assumes new fountain added with bubbler height of 38-43". Cost assumes minimal plumbing/installation issues. Federal Guideline: 211, 602 | | |
| *Protect Protruding Objects* | Medium | $200 |
| Notes: The wheelchair-accessible drinking fountain is not located in an alcove and protrudes 10". Provide permanent, cane-detectable barriers on both sides of fountain. Federal Guideline: 307.2 | | |
| Doors | | |
| *Adjust Door Closer - Stairway A & B, Doors at Office Tower, and Access Door 1103 & 1105* | Low | $2,250 |
| Notes: Closing speed is under 5 second minimum and/or operating force required to open door exceeds 5 lbs. Cost is for new closer, assuming adjustment will not work. Federal Guideline: 404.2.8.1, 404.2.9 | | |
| *Provide Maneuvering Space on Pull Side of Door* | Medium | $400 |
| Notes: Doors 1103 and 1105 from the hallway to the stairwell access doors both provide only 1-1/2" and 2" clear maneuvering space on the pull side (18" min. req'd.), respectively, and Door 1105 is recessed 22". Explore options, which may include removing doors if allowed by all codes. Cost assumes doors are removed to address both issues. Federal Guideline: 404.2.4.1 | | |
| **Level 12** | | |
| Signage | | |
| *Provide Compliant Room Signage* | Medium | $2,100 |
| Notes: There are several permanent spaces with non-compliant signage. Non-compliance issues typically include lack of tactile letters, lack of Braille, Braille separation from text or bottom of sign of less than 3/8", serif fonts, low contrast visual text, and/or signage in non-compliant location, including non-accessible public and employee restrooms. Signage at these should include tactile and visual letters and Braille, pictogram, and not include the ISA. Each non-accessible restroom should include a directional/informational sign providing the location of accessible restrooms. Federal Guideline: 216.2, 703 | | |

| Description | Priority | Estimated Cost |
|---|---|---|
| Common Hallway Circulation Spaces | | |
| *Lower Light Switch or Provide Occupancy Sensor* | Low | N/A |
| Notes: Electrical switches typically over 48" max ht. allowed by ADASAD but up to 54" allowed by 1991 ADAAG. Correct when altered.<br>Federal Guideline: 308.2 | | |
| *Protect Protruding Objects* | Low | $100 |
| Notes: Fire extinguisher cabinet protrudes 7" at 40-1/2" and 42-1/2" (4" max. between 27"-80") at Stair A and Stair B, respectively. Provide permanent, cane-detectable object below each or relocate. Note also that height of access hammer and extinguisher should be at 48" high max. Note that movable 5 gallon water bottles within space blocked FEC at time of evaluation.<br>Federal Guideline: 307.2, 308 | | |
| *Consider Modifications to Stair Nosings (when stairs are altered)* | Low | TBD |
| Notes: The stair nosings project 90 degrees from the riser, which creates a potential trip hazard due to the high angle catching the trailing toe of persons ascending the stair. Nosings that project beyond risers are required to have the underside of the leading edge curved or beveled at 30 degree max. slope. Since the stairs are the emergency egress route, they are required to comply. Least costly and least impacting alternative would be stair nosing covers.<br>Federal Guideline: 210.1, 504 | | |
| Drinking Fountains | | |
| *Provide Compliant Drinking Fountains* | Medium | $1,800 |
| Notes: Only 1 fountain provided (2 min. req'd.) that has bubbler height that meets standing user height at 38-1/4" (38-43"). This fountain also has a very low water stream height. These existing fixtures original to 1950s construction provide very little headroom for users leaning into the water stream and could be a hazard. Cost assumes new hi-lo drinking fountains added to Court Tower corridor and existing fountain taken out of service. Cost assumes minimal plumbing/installation issues.<br>Federal Guideline: 211, 602 | | |
| Doors | | |
| *Adjust Door Closer - Stairway A & B and Access Door 1203 & 1205* | Low | $2,200 |
| Notes: Closing speed is under 5 second minimum and/or operating force required to open door exceeds 5 lbs. Cost is for new closer, assuming adjustment will not work.<br>Federal Guideline: 404.2.8.1, 404.2.9 | | |
| *Provide Maneuvering Space on Pull Side of Door* | Medium | $400 |
| Notes: Doors 1203 and 1205 from the hallway to the stairwell access doors both are recessed 21-22" and provide only 1-3/4-2" clear maneuvering space on the pull side (18" min. req'd.). Explore options, which may include removing doors if allowed by all codes. Cost assumes doors are removed to address both issues.<br>Federal Guideline: 404.2.4.1 | | |

| Description | Priority | Estimated Cost |
|---|---|---|
| **Level 13** | | |
| Signage | | |
| *Provide Compliant Room Signage* | Medium | $2,000 |
| Notes: There are several permanent spaces with non-compliant signage. Non-compliance issues typically include lack of tactile letters, lack of Braille, Braille separation from text or bottom of sign of less than 3/8", serif fonts, low contrast visual text, and/or signage in non-compliant location, including non-accessible public and employee restrooms. Signage at these should include tactile and visual letters and Braille, pictogram, and not include the ISA. Each non-accessible restroom should include a directional/informational sign providing the location of accessible restrooms.<br>Federal Guideline: 216.2, 703 | | |
| Common Hallway Circulation Spaces | | |
| *Lower Light Switch or Provide Occupancy Sensor* | Low | N/A |
| Notes: Electrical switches typically over 48" max ht. allowed by ADASAD but up to 54" allowed by 1991 ADAAG. Correct when altered.<br>Federal Guideline: 308.2 | | |
| *Protect Protruding Objects* | Low | $100 |
| Notes: Fire extinguisher cabinet protrudes 7" at 40-1/2" and 48-1/2" (4" max. between 27"-80") at Stair A and Stair B, respectively. Provide permanent, cane-detectable object below each or relocate. Note also that height of access hammer and extinguisher should be at 48" high max.<br>Federal Guideline: 307.2, 308 | | |
| *Protect Protruding Objects* | Low | $50 |
| Notes: Card reader protrudes more than 4" between 27"-80" at the wheelchair lift at Room 1307. Provide permanent, cane-detectable object below each or relocate. Note also that height of access hammer and extinguisher should be at 48" high max.<br>Federal Guideline: 307.2, 308 | | |
| *Provide Compliant Handrails (when stairs are altered)* | Low | TBD |
| Notes: Handrail extensions are less than 12" as required at the top and bottom landings. Handrail height varies and is typically 31-1/2" to 33" (34-38" req'd.). Since the stairs are the emergency egress route, they are required to comply. Explore options, including adding extensions.<br>Federal Guideline: 210.1, 505 | | |
| *Consider Modifications to Stair Nosings (when stairs are altered)* | Low | TBD |
| Notes: The stair nosings project 90 degrees from the riser, which creates a potential trip hazard due to the high angle catching the trailing toe of persons ascending the stair. Nosings that project beyond risers are required to have the underside of the leading edge curved or beveled at 30 degree max. slope. Since the stairs are the emergency egress route, they are required to comply. Least costly and least impacting alternative would be stair nosing covers.<br>Federal Guideline: 210.1, 504 | | |

| Description | Priority | Estimated Cost |
|---|---|---|
| Drinking Fountains | | |
| *Provide Compliant Drinking Fountains* | Medium | $1,600 |
| Notes: Only 1 fountain provided (2 min. req'd.) that has bubbler height that meets wheelchair user height at 32-3/4" (36" max.) but has only 26-3/4" high knee space below (27" min. req'd.). Cost assumes new fountain added with bubbler height of 38-43" and existing fountain remounted to provide knee space. Cost assumes minimal plumbing/installation issues.<br>Federal Guideline: 211, 602 | | |
| *Protect Protruding Objects* | Medium | $200 |
| Notes: The wheelchair-accessible drinking fountain is not located in an alcove and protrudes 10". Provide permanent, cane-detectable barriers on both sides of fountain.<br>Federal Guideline: 307.2 | | |
| Doors | | |
| *Adjust Door Closer - Stairway A & B and Access Doors 1303* | Low | $1,350 |
| Notes: Closing speed is under 5 second minimum and/or operating force required to open door exceeds 5 lbs. Cost is for new closer, assuming adjustment will not work.<br>Federal Guideline: 404.2.8.1, 404.2.9 | | |
| *Provide Maneuvering Space on Pull Side of Door* | Medium | $200 |
| Notes: Door 1303 from the hallway to the stairwell access door is recessed 20-3/4" and provides only 2" clear maneuvering space on the pull side (18" min. req'd.). Explore options, which may include removing doors if allowed by all codes. Cost assumes doors are removed to address both issues.<br>Federal Guideline: 404.2.4.1 | | |
| **Level 14** | | |
| Signage | | |
| *Provide Compliant Room Signage* | Medium | $1,800 |
| Notes: There are several permanent spaces with non-compliant signage. Non-compliance issues typically include lack of tactile letters, lack of Braille, Braille separation from text or bottom of sign of less than 3/8", serif fonts, low contrast visual text, and/or signage in non-compliant location, including non-accessible public and employee restrooms. Signage at these should include tactile and visual letters and Braille, pictogram, and not include the ISA. Each non-accessible restroom should include a directional/informational sign providing the location of accessible restrooms.<br>Federal Guideline: 216.2, 703 | | |
| Common Hallway Circulation Spaces | | |
| *Lower Light Switch or Provide Occupancy Sensor* | Low | N/A |
| Notes: Electrical switches typically over 48" max ht. allowed by ADASAD but up to 54" allowed by 1991 ADAAG. Correct when altered.<br>Federal Guideline: 308.2 | | |

| Description | Priority | Estimated Cost |
|---|---|---|
| *Protect Protruding Objects* | Low | $50 |
| Notes: Fire warden phone box handle protrudes 5-1/2" at 45" (4" max. between 27"-80") at Stair B. Consider providing alternate hardware that does not extend into circulation path.<br>Federal Guideline: 307.2 | | |
| *Protect Protruding Objects* | Low | $100 |
| Notes: Fire extinguisher cabinet protrudes 7" at 39-1/2" and 45" (4" max. between 27"-80") at Stair A and Stair B, respectively. Provide permanent, cane-detectable object below each or relocate. Note also that height of access hammer and extinguisher should be at 48" high max. Note that movable 5 gallon water bottles within space blocked FEC at time of evaluation.<br>Federal Guideline: 307.2, 308 | | |
| Drinking Fountains | | |
| *Provide Compliant Drinking Fountains* | Medium | $1,800 |
| Notes: Only 1 fountain provided (2 min. req'd.) that has bubbler height that meets standing user height at 38" (38-43"). This fountain also has a very low water stream height. These existing fixtures original to 1950s construction provide very little headroom for users leaning into the water stream and could be a hazard. Cost assumes new hi-lo drinking fountains added to Court Tower corridor and existing fountain taken out of service. Cost assumes minimal plumbing/installation issues.<br>Federal Guideline: 211, 602 | | |
| Doors | | |
| *Adjust Door Closer - Stairway A & B and Access Door 1403 & 1405* | Low | $2,200 |
| Notes: Closing speed is under 5 second minimum and/or operating force required to open door exceeds 5 lbs. Cost is for new closer, assuming adjustment will not work.<br>Federal Guideline: 404.2.8.1, 404.2.9 | | |
| *Provide Maneuvering Space on Pull Side of Door* | Medium | $400 |
| Notes: Doors 1403 and 1405 from the hallway to the stairwell access doors provide only 4-1/2" and 8-1/4" clear maneuvering space on the pull side (18" min. req'd.), respectively. Explore options, which may include removing doors if allowed by all codes. Cost assumes doors are removed to address both issues.<br>Federal Guideline: 404.2.4.1 | | |

| Description | Priority | Estimated Cost |
|---|---|---|
| **Level 15** | | |
| Signage | | |
| *Provide Compliant Room Signage* | Medium | $1,900 |
| Notes: There are several permanent spaces with non-compliant signage. Non-compliance issues typically include lack of tactile letters, lack of Braille, Braille separation from text or bottom of sign of less than 3/8", serif fonts, low contrast visual text, and/or signage in non-compliant location, including non-accessible public and employee restrooms. Signage at these should include tactile and visual letters and Braille, pictogram, and not include the ISA. Each non-accessible restroom should include a directional/informational sign providing the location of accessible restrooms. Federal Guideline: 216.2, 703 | | |
| Common Hallway Circulation Spaces | | |
| *Lower Light Switch or Provide Occupancy Sensor* | Low | N/A |
| Notes: Electrical switches typically over 48" max ht. allowed by ADASAD but up to 54" allowed by 1991 ADAAG. Correct when altered. Federal Guideline: 308.2 | | |
| *Protect Protruding Objects* | Low | $50 |
| Notes: Fire alarm control box protrudes 4-1/4" at 50" (4" max. between 27"-80") at Stair B. Provide permanent cane-detectable object below. Federal Guideline: 307.2 | | |
| *Protect Protruding Objects* | Low | $100 |
| Notes: Fire extinguisher cabinet protrudes 7" at 41" and 40" (4" max. between 27"-80") at Stair A and Stair B, respectively. Provide permanent, cane-detectable object below each or relocate. Note also that height of access hammer and extinguisher should be at 48" high max. Federal Guideline: 307.2, 308 | | |
| Drinking Fountains | | |
| *Provide Compliant Drinking Fountains* | Medium | $1,600 |
| Notes: Only 1 fountain provided (2 min. req'd.) that has bubbler height that meets wheelchair user height at 32-1/2" (36" max.) but has only 26-1/2" high knee space below (27" min. req'd.). Cost assumes new fountain added with bubbler height of 38-43" and existing fountain remounted to provide knee space. Cost assumes minimal plumbing/installation issues. Federal Guideline: 211, 602 | | |
| *Protect Protruding Objects* | Medium | $200 |
| Notes: The wheelchair-accessible drinking fountain is not located in an alcove and protrudes 10". Provide permanent, cane-detectable barriers on both sides of fountain. Federal Guideline: 307.2 | | |

| Description | Priority | Estimated Cost |
|---|---|---|
| Doors | | |
| *Adjust Door Closer - Stairway A & B and Access Doors 1503 and 1505* | Low | $1,800 |
| Notes: Closing speed is under 5 second minimum and/or operating force required to open door exceeds 5 lbs. Cost is for new closer, assuming adjustment will not work. Federal Guideline: 404.2.8.1, 404.2.9 | | |
| *Provide Maneuvering Space on Pull Side of Door* | Medium | $400 |
| Notes: Doors 1503 and 1505 from the hallway to the stairwell access door are recessed 20-21" and provide only 2" clear maneuvering space on the pull side (18" min. req'd.). Explore options, which may include removing doors if allowed by all codes. Cost assumes doors are removed to address both issues. Federal Guideline: 404.2.4.1 | | |
| **Level 16** | | |
| Signage | | |
| *Provide Compliant Room Signage* | Medium | $1,900 |
| Notes: There are several permanent spaces with non-compliant signage. Non-compliance issues typically include lack of tactile letters, lack of Braille, Braille separation from text or bottom of sign of less than 3/8", serif fonts, low contrast visual text, and/or signage in non-compliant location, including non-accessible public and employee restrooms. Signage at these should include tactile and visual letters and Braille, pictogram, and not include the ISA. Each non-accessible restroom should include a directional/informational sign providing the location of accessible restrooms. Federal Guideline: 216.2, 703 | | |
| Common Hallway Circulation Spaces | | |
| *Lower Light Switch or Provide Occupancy Sensor* | Low | N/A |
| Notes: Electrical switches typically over 48" max ht. allowed by ADASAD but up to 54" allowed by 1991 ADAAG. Correct when altered. Federal Guideline: 308.2 | | |
| *Protect Protruding Objects* | Low | $100 |
| Notes: Fire extinguisher cabinet protrudes 7" at 39-1/2" and 40" (4" max. between 27"-80") at Stair A and Stair B, respectively. Provide permanent, cane-detectable object below each or relocate. Note also that height of access hammer and extinguisher should be at 48" high max. Note that movable 5 gallon water bottles within space blocked FEC at time of evaluation. Federal Guideline: 307.2, 308 | | |
| Drinking Fountains | | |
| *Provide Compliant Drinking Fountains* | Medium | $1,600 |
| Notes: Only 1 fountain provided (2 min. req'd.) that has bubbler height that meets wheelchair user height at 32-3/4" (36" max.) but has only 26-3/4" high knee space below (27" min. req'd.). Cost assumes new fountain added with bubbler height of 38-43" and existing fountain remounted to provide knee space. Cost assumes minimal plumbing/installation issues. Federal Guideline: 211, 602 | | |

| Description | Priority | Estimated Cost |
|---|---|---|
| *Protect Protruding Objects* | Medium | $200 |
| Notes: The wheelchair-accessible drinking fountain is not located in an alcove and protrudes 10". Provide permanent, cane-detectable barriers on both sides of fountain.<br>Federal Guideline: 307.2 | | |
| Doors | | |
| *Adjust Door Closer - Stairway A & B and Access Doors 1603 and 1605* | Low | $1,800 |
| Notes: Closing speed is under 5 second minimum and/or operating force required to open door exceeds 5 lbs. Cost is for new closer, assuming adjustment will not work.<br>Federal Guideline: 404.2.8.1, 404.2.9 | | |
| *Provide Maneuvering Space on Pull Side of Door* | Medium | $400 |
| Notes: Doors 1603 and 1605 from the hallway to the stairwell access door are recessed 21-1/2" and 25", respectively, and provide only 2" clear maneuvering space on the pull side (18" min. req'd.). Explore options, which may include removing doors if allowed by all codes. Cost assumes doors are removed to address both issues.<br>Federal Guideline: 404.2.4.1 | | |
| **Level 17** | | |
| Signage | | |
| *Provide Compliant Room Signage* | Medium | $2,000 |
| Notes: There are several permanent spaces with non-compliant signage. Non-compliance issues typically include lack of tactile letters, lack of Braille, Braille separation from text or bottom of sign of less than 3/8", serif fonts, low contrast visual text, and/or signage in non-compliant location, including non-accessible public and employee restrooms. Signage at these should include tactile and visual letters and Braille, pictogram, and not include the ISA. Each non-accessible restroom should include a directional/informational sign providing the location of accessible restrooms.<br>Federal Guideline: 216.2, 703 | | |
| Common Hallway Circulation Spaces | | |
| *Lower Light Switch or Provide Occupancy Sensor* | Low | N/A |
| Notes: Electrical switches typically over 48" max ht. allowed by ADASAD but up to 54" allowed by 1991 ADAAG. Correct when altered.<br>Federal Guideline: 308.2 | | |
| *Protect Protruding Objects* | Low | $100 |
| Notes: Fire extinguisher cabinet protrudes 7" at 41" and 43" (4" max. between 27"-80") at Stair A and Stair B, respectively. Provide permanent, cane-detectable object below each or relocate. Note also that height of access hammer and extinguisher should be at 48" high max.<br>Federal Guideline: 307.2, 308 | | |

| Description | Priority | Estimated Cost |
|---|---|---|
| Drinking Fountains | | |
| *Provide Compliant Drinking Fountains* | Medium | $1,600 |
| Notes: Only 1 fountain provided (2 min. req'd.) that has bubbler height that meets wheelchair user height at 32-3/4" (36" max.) but has only 26-3/4" high knee space below (27" min. req'd.). Cost assumes new fountain added with bubbler height of 38-43" and existing fountain remounted to provide knee space. Cost assumes minimal plumbing/installation issues.<br>Federal Guideline: 211, 602 | | |
| *Protect Protruding Objects* | Medium | $200 |
| Notes: The wheelchair-accessible drinking fountain is not located in an alcove and protrudes 10". Provide permanent, cane-detectable barriers on both sides of fountain.<br>Federal Guideline: 307.2 | | |
| Doors | | |
| *Adjust Door Closer - Stairway A & B and Access Doors 1703 and 1705* | Low | $1,800 |
| Notes: Closing speed is under 5 second minimum and/or operating force required to open door exceeds 5 lbs. Cost is for new closer, assuming adjustment will not work.<br>Federal Guideline: 404.2.8.1, 404.2.9 | | |
| *Provide Maneuvering Space on Pull Side of Door* | Medium | $400 |
| Notes: Doors 1703 and 1705 from the hallway to the stairwell access door are recessed 20-1/2" and 22-1/2" and provide only 2" and 4-1/2" clear maneuvering space on the pull side (18" min. req'd.), respectively. Explore options, which may include removing doors if allowed by all codes. Cost assumes doors are removed to address both issues.<br>Federal Guideline: 404.2.4.1 | | |
| **Level 18** | | |
| Signage | | |
| *Provide Compliant Room Signage* | Medium | $2,100 |
| Notes: There are several permanent spaces with non-compliant signage. Non-compliance issues typically include lack of tactile letters, lack of Braille, Braille separation from text or bottom of sign of less than 3/8", serif fonts, low contrast visual text, and/or signage in non-compliant location, including non-accessible public and employee restrooms. Signage at these should include tactile and visual letters and Braille, pictogram, and not include the ISA. Each non-accessible restroom should include a directional/informational sign providing the location of accessible restrooms.<br>Federal Guideline: 216.2, 703 | | |
| Common Hallway Circulation Spaces | | |
| *Lower Light Switch or Provide Occupancy Sensor* | Low | N/A |
| Notes: Electrical switches typically over 48" max ht. allowed by ADASAD but up to 54" allowed by 1991 ADAAG. Correct when altered.<br>Federal Guideline: 308.2 | | |

| Description | Priority | Estimated Cost |
|---|---|---|
| *Protect Protruding Objects* | Low | $50 |
| Notes: Fire extinguisher cabinet protrudes 7" at 39" (4" max. between 27"-80") at Stair A. Provide permanent, cane-detectable object below each or relocate. Note also that height of access hammer and extinguisher should be at 48" high max. Note that movable 5 gallon water bottles within space blocked FEC at time of evaluation. Federal Guideline: 307.2, 308 | | |
| Drinking Fountains | | |
| *Provide Compliant Drinking Fountains* | Medium | $1,600 |
| Notes: Only 1 fountain provided (2 min. req'd.) that has bubbler height that meets wheelchair user height at 32-3/4" (36" max.) but has only 26-3/4" high knee space below (27" min. req'd.). Cost assumes new fountain added with bubbler height of 38-43" and existing fountain remounted to provide knee space. Cost assumes minimal plumbing/installation issues. Federal Guideline: 211, 602 | | |
| *Protect Protruding Objects* | Medium | $200 |
| Notes: The wheelchair-accessible drinking fountain is not located in an alcove and protrudes 10". Provide permanent, cane-detectable barriers on both sides of fountain. Federal Guideline: 307.2 | | |
| Doors | | |
| *Adjust Door Closer - Stairway A & B and Access Doors 1803 and 1805* | Low | $1,800 |
| Notes: Closing speed is under 5 second minimum and/or operating force required to open door exceeds 5 lbs. Cost is for new closer, assuming adjustment will not work. Federal Guideline: 404.2.8.1, 404.2.9 | | |
| *Provide Maneuvering Space on Pull Side of Door* | Medium | $400 |
| Notes: Doors 1803 and 1805 from the hallway to the stairwell access door are recessed 20-1/2" and 20" and provide only 3-1/4" and 2" clear maneuvering space on the pull side (18" min. req'd.), respectively. Explore options, which may include removing doors if allowed by all codes. Cost assumes doors are removed to address both issues. Federal Guideline: 404.2.4.1 | | |
| **Level 19** | | |
| Signage | | |
| *Provide Compliant Room Signage* | Medium | $2,000 |
| Notes: There are several permanent spaces with non-compliant signage. Non-compliance issues typically include lack of tactile letters, lack of Braille, Braille separation from text or bottom of sign of less than 3/8", serif fonts, low contrast visual text, and/or signage in non-compliant location, including non-accessible public and employee restrooms. Signage at these should include tactile and visual letters and Braille, pictogram, and not include the ISA. Each non-accessible restroom should include a directional/informational sign providing the location of accessible restrooms. Federal Guideline: 216.2, 703 | | |

| Description | Priority | Estimated Cost |
|---|---|---|
| Common Hallway Circulation Spaces | | |
| *Lower Light Switch or Provide Occupancy Sensor* | Low | N/A |
| Notes: Electrical switches typically over 48" max ht. allowed by ADASAD but up to 54" allowed by 1991 ADAAG. Correct when altered. Federal Guideline: 308.2 | | |
| *Protect Protruding Objects* | Low | $100 |
| Notes: Fire extinguisher cabinet protrudes 7" at 39" and 39-1/2" (4" max. between 27"-80") at Stair A and Stair B, respectively. Provide permanent, cane-detectable object below each or relocate. Note also that height of access hammer and extinguisher should be at 48" high max. Note that movable 5 gallon water bottles within space blocked FEC at time of evaluation. Federal Guideline: 307.2, 308 | | |
| *Provide Accessible Working Surface* | Medium | $600 |
| Notes: Work surface countertop at payment window at Room 1907 is at 41" (34" max.) above the floor. Explore least costly option to provide 34" high window. Federal Guideline: 226.1, 902.2 | | |
| Drinking Fountains | | |
| *Provide Compliant Drinking Fountains* | Medium | $1,600 |
| Notes: Only 1 fountain provided (2 min. req'd.) that has bubbler height that meets wheelchair user height at 32-1/2" (36" max.) but has only 26-1/2" high knee space below (27" min. req'd.). Cost assumes new fountain added with bubbler height of 38-43" and existing fountain remounted to provide knee space. Cost assumes minimal plumbing/installation issues. Federal Guideline: 211, 602 | | |
| *Protect Protruding Objects* | Medium | $200 |
| Notes: The wheelchair-accessible drinking fountain is not located in an alcove and protrudes 10". Provide permanent, cane-detectable barriers on both sides of fountain. Federal Guideline: 307.2 | | |
| Doors | | |
| *Adjust Door Closer - Stairway A & B and Access Doors 1903 and 1905* | Low | $1,800 |
| Notes: Closing speed is under 5 second minimum and/or operating force required to open door exceeds 5 lbs. Cost is for new closer, assuming adjustment will not work. Federal Guideline: 404.2.8.1, 404.2.9 | | |
| *Provide Maneuvering Space on Pull Side of Door* | Medium | $400 |
| Notes: Doors 1903 and 1905 from the hallway to the stairwell access door are recessed 20-1/2" and 20" and provide only 3-1/2" and 2" clear maneuvering space on the pull side (18" min. req'd.), respectively. Explore options, which may include removing doors if allowed by all codes. Cost assumes doors are removed to address both issues. Federal Guideline: 404.2.4.1 | | |
| | | |
| **Facility Total:** | | $181,760 |
| | | |

| Description | Priority | Estimated Cost |
|---|---|---|

**General Notes:**

1. The only restrooms evaluated within the facility are the accessible public restrooms located in the lower level of the Office Tower. Members of the public in the Court Tower can access the restrooms by taking the elevator to the Lower Level and using the common connecting corridor between the Court Tower and Office Tower. There are additional restrooms within the Office and Court Towers, some of which are open to the public, but have limited accessibility and were not reviewed.

2. Room signage tactile letters and Braille, if present, typically includes information about the room number. Many doors include multiple redundant, non-compliant signs. Special signage required at all restrooms that includes all required elements, it is also recommended that gender pictograms be provided and directional signage with the ISA and text description of the location of accessible restrooms at all non-accessible restrooms..

3. Drinking fountains are required to have compliant numbers and types by floor. Even though some levels of the Office and Court Towers are connected, for purposes of this evaluation each Tower will be treated as a separate facility by level. There are 2 typical types, including those original to the building that are recessed partially into the wall and usually have bubbler height compliant for a standing user but there is inadequate depth headroom (only 3-1/2") for ease of use and compliance with 15" min. depth from rear wall to bubbler. The other type are recently added wheelchair user with bottle filler that have been placed in former recessed fountain locations. Several of these fountains have been installed too low and do not provide the min. 27" knee space below. All protrude 10" into the circulation area and need to have an artificial alcove provided to protect them (fountains currently with bottom below 27" will not be protrusions until they are raised but list above includes provision of alcove).

## **Appendix B – Floor plans for the Office and Court Towers with limits of review.**

# First Floor Office Tower



# 2nd Floor,  Office



# 3rd Floor  Office



# 4th  Floor  Office



# 5th Floor  Office



# 6th  Floor  Office



# 7th  Floor  Office



**Aministration Offices**

**Budget  &  Finance**

**Case Processing & Court Reporting Services**

**Building Facility MGMT**

**700**

**700 A**

AHU  5

AHU 6-8

**C**

AHU  7

**V**

**8  9  10  11**

**15  14  13  12**

Women's

Men's

**D**

Rolling  Shelves
Library

**784**
Training

**16**

**E**

**Law
Library**

**Admin Offices**

**Human Resources Services**

**General Councel's Office**

**Law Library**

**General Councel's Office**

**720**

**742**

**752**

**780**

**782**

**786**

**790**

# 8th Floor Office



**9th Floor  Office**



# 10th  Floor Office



# 11th  Floor  Office



# 12th Floor  Office



# 13th Floor Office



**14th  Floor  Office**



# Rooftop  Penthouses



# 1st Floor Court Tower



**Department of**
**Administrative Hearings**
**103**

**Finance Department**
**Revenue Collections**
**105**

**LARNED EXIT**

**WOODWARD EXIT**

**JEFFERSON EXIT**

Area reviewed within the scope of this project

# 2nd  Floor Court  Tower



# 3rd Floor Court  Tower



# 4th Floor Court  Tower



# 5th Floor Court Tower



# 6th Floor Court  Tower



# 7th Floor Court Tower



**Office of the Chief Judge**
**Robert J. Colombo Jr.**

**Third Circuit Court**

**Third Circuit Court Offices**
**Budget & Finance**

**701**

**707**

35 36 37 38 39 40 41 42 43 44 45 46 47 48 49 50 51 52 53 54 55 56 57 58 59 60 61 62 63 64 65 66 67 68

**A**

1 2 3

**B**

**Third Circuit Court**
**Conference Rooms**

B **700** C

Men's 7 6 5 4 Women Break Room

1 2 3 4 5 6 7 8 9 10 11 12 13 14 15 16 17 18 19 20 21 22 23 24 25 26 27 28 29 30 31 32 33 34

**711**

**700 A**

**Office of the Chief Judge**
**Robert J. Colombo Jr.**

**Third Circuit Court Offices**
**Court Administrator**

**Third Circuit Court**
**Conference Rooms**

**Third Circuit Court**

# 8th Floor Court Tower



**Finance Assessment, Records Division**

**805**

**Finance Department**
**Accounts Division, General Accounting**

# 9th Floor Court Tower



**Third Circuit Court**

**Judge Leslie Kim Smith**
**901**

**Judge David J. Allen**
**907**

**Friend of the Court**
**Scheduling Office**
**900**

**Judge John A. Murphy**
**921**

**915**

**913**

**Judge Lita Masini Popke**

**911**

**900**

**Third Circuit Court**

**Friend of the Court**
**Scheduling Office**

# 10th Floor Court  Tower



**Third Circuit Court**

**Judge Eric  W.  Cholack**          **Judge Lynne  A.  Pierce**

**1001**          **1007**

Jury  Room

A          B

1    2    3

Court
1021
Reporter

Women's          7    6    5    4

Detroit
Department of
Administrative Hearings
1004

**1019**          **1011**          **1041**          **1030    1028**

**Judge  Connie  Marie  Kelley**          **Judge   Edward Ewell Jr.**          **Offices**          **Budget**

**Detroit**

**Third Circuit Court**

# 11th Floor Court Tower



**Third Circuit**

**Presiding Civil Division**

**Judge Brian R. Sullivan**

**Judge Maria Lusia Oxholm**

**1101**

**1107**

**1204**

A   B

1  2  3

7  6  5  4

Viewing Room   Jury Room

Men's   Womens

Jury Room

**1101**

**1111**

**Judge Brian R. Sullivan**

**Judge John H. Gillis Jr.**

**Third Circuit Court**

# 12th Floor Court Tower



# 13th Floor Court Tower



# 14th Floor Court Tower



## Third Circuit Court

Judge Muriel D. Hughes

1401

## Probate Court

1405          1407

A     B     C

| 35 | 36 | 37 | 38 | 39 | 40 | 41 | 42 | 43 | 44 | 45 | 46 | 47 | 48 | 49 | 50 | 51 | 52 | 53 | 54 | 55 | 56 | 57 | 58 | 59 | 60 | 61 | 62 | 63 | 64 | 65 | 66 | 67 | 68 |

Jury Room

A

1    2    3

B

1423

Women's     7    6    5    4

| 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 | 32 | 33 | 34 |

1421                                                              1411

Judge Kathleen  MacDonald                          Judge Daphne Means Curtis

## Third Circuit Court

# 15th Floor Court Tower

## Third Circuit Court



**Friend of the Court Parent Time - SC / BW**

Judge Lisa M. Neilson

Judge Susan L. Hubbard

1501

1507

35 36 37 38 39 40 41 42 43 44 45 46 47 48 49 50 51 52 53 54 55 56 57 58 59 60 61 62 63 64 65 66 67 68

A  1  2  3  B

1521

1509

Men's  7  6  5  4

1 2 3 4 5 6 7 8 9 10 11 12 13 14 15 16 17 18 19 20 21 22 23 24 25 26 27 28 29 30 31 32 33 34

1519

1511

Vacant Courtroom

Judge Richard Halloran Jr.

## Third Circuit Court

# 16th Floor Court  Tower



**Third  Circuit  Court**

**Vacant Courtroom**

**Judge  Daniel P. Ryan**

1601

1607

**Judge Kevin J. Cox**

1619

1611

**Judge Daniel A. Hathaway**

**Third  Circuit  Court**

# 17th Floor Court Tower

## Third Circuit Court



Judge Charlene M. Elder

Judge Patricia Perez Fresard

1701

1707

Judge Sheila Ann Gibson

1719

1711

Wayne County Sherriff

Court Division

Judge Fresard

## Third Circuit Court

# 18th Floor Court Tower

## Third Circuit Court

**Domestic Violence Prevention Courtroom**

**Solution Oriented, Domestic Violence**

**PPO**

**1801**

**Judge Annette J. Berry**

**1807**



## Third Circuit Court

**Judge Martha M. Snow**

**Presiding Family Division**

**Judge Kathleen M. McCarthy**

# 19th Floor Court  Tower



**Third  Circuit  Court**

**PPO Advocates - County Clerk**

**Vacant Court Room**

**Friend of the Court Contempt / SC/ BW**

**1901**

**1907**

| 35 | 36 | 37 | 38 | 39 | 40 | 41 | 42 | 43 | 44 | 45 | 46 | 47 | 48 | 49 | 50 | 51 | 52 | 53 | 54 | 55 | 56 | 57 | 58 | 59 | 60 | 61 | 62 | 63 | 64 | 65 | 66 | 67 | 68 |

Jury

Room

**A**   1   2   3   **B**

**1923**

**1909**

Men's   7   6   5   4

| 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 | 32 | 33 | 34 |

**1921**

**1913**

**Judge Charles S. Hegarty**

**Friend of the Court Referee**

**Third  Circuit  Court**

# 20th Floor Court Tower



# Roof Court  Tower

