UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JILL BABCOCK, MARGUERITE
MADDOX and ASHLEY JACOBSON, on
behalf of themselves and all others similarly
situated,

No. 2:22-cv-12951

       Plaintiffs,

HON. JONATHAN J.C. GREY

v

STATE OF MICHIGAN, COUNTY OF
WAYNE, CITY OF DETROIT, WAYNE
COUNTY BUILDING AUTHORITY,
DETROIT BUILDING AUTHORITY AND
DETROIT-WAYNE JOINT BUILDING
AUTHORITY,

**DEFENDANT STATE OF
MICHIGAN'S
MOTION TO DISMISS
PLAINTIFF'S SECOND
AMENDED COMPLAINT**

       Defendants.

_____

Michael W. Bartnik (P32534)
Attorney for Plaintiffs
41000 Woodward Avenue, Ste 350
Bloomfield Hills, Michigan 48304
248.608.3660
michaelbartnik@protonmail.com


Elizabeth K. Abdnour (P78203)
Attorney for Plaintiffs
500 E. Michigan Avenue, Ste 130
Lansing, Michigan 48912
517.292.0067
elizabeth@abdnou.com

Kimberly Pendrick (P60348)
Assistant Attorney General
Attorney for Defendant State of
Michigan
3030 West Grand Blvd
Detroit, Michigan 48202
313.456.0200
pendrickk@michigan.gov


Cassandra Drysdale-Crown (P64108)
Assistant Attorney General
Attorney for Defendant State of Michigan
P.O. Box 30736
Lansing, Michigan 48909
517.335.7659
drysdalecrownc@michigan.gov

Jesse Halfon (P66936)
Attorney for Defendant
City of Detroit
2 Woodward Avenue, Suite 500
Detroit, Michigan 48226
313.237.5244
jesse.halfon@detroitmi.gov

Monica N. Hunt (P68838)
Counsel for Detroit Building Authority
3011 West Grand Boulevard
2500 Fisher Building
Detroit, Michigan 48202
313.871.5500
mhunt@alglawpc.com

Charles N. Raimi (P29746)
Deputy Corporation Counsel,
City of Detroit
Attorney for Defendant City of Detroit
2 Woodward Ave, Suite 500
Detroit, Michigan 48226
313.237.5037
raimic@detroitmi.gov

James Heath (P65419)
James M. Jernigan (P57035)
Attorneys for Defendants Wayne Co &
Wayne Co Building Authority
400 Monroe, Suite 290
Detroit, Michigan 48226
313.202.7188
jjernigan@waynecounty.com
jheath@waynecounty.com

Gregory N. Longworth (P49249)
Paul S. Magy (P34423)
Attorneys for Defendant DWJBA
151 South Old Woodward, Suite 200
Birmingham, Michigan 48009
248.988.5844
pmagy@clarkhill.com
glongworth@clarkhill.com

E. Powell Miller (P39487)
Sharon S. Almonrode (P33938)
Melvin B. Hollowell (P37834)
Angela L. Baldwin (P81565)
Attorneys for Defendants Wayne
County & Wayne County Building
Authority
211 W. Fort Street, Suite 705
Detroit, Michigan 48226
313.483.0880
248.841.2200
epm@millerlawpc.com
mbh@millerlawpc.com
ssa@millerlawpc.com
alb@millerlawpc.com

Richard W. Warren (P63123)
Kimberly M Coschino (P83086)
Co-Counsel for Defendant
City of Detroit
150 W. Jefferson, Suite 150
Detroit, MI 48226
313.963-.6420
coschino@millercanfield.com
warren@millercanfield.com

**DEFENDANT STATE OF MICHIGAN'S
MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

Cassandra Drysdale-Crown (P64108)
Assistant Attorney General
Attorney for Defendant State of Michigan
P.O. Box 30736
Lansing, MI 48909
517.335.7659
drysdalecrownc@michigan.gov

Kimberly K. Pendrick (P60348)
Assistant Attorney General
Attorney for Defendant State of Michigan
3030 W. Grand Blvd., Suite 10-666
Detroit, Michigan 48202
517.930.8842
pendrickk@michigan.gov

Dated:  July 6, 2023

**DEFENDANT STATE OF MICHIGAN'S**
**MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

Defendant State of Michigan (State Defendant), through counsel and under

Fed. R. Civ. P. 12(b)(1) and 12(b)(6), moves this Court to dismiss Plaintiffs'

Second Amended Complaint.  State Defendant states in support:

1.     On December 6, 2022, Plaintiffs filed their initial complaint. (ECF

No. 1).

2.     On March 14, 2023, State Defendant filed its Correction Motion to

Dismiss.  (ECF No. 29).

3.     On April 28, 2023, Plaintiffs filed their First Amended Complaint

alleging the State of Michigan violated various federal and state laws relative to

the accessibility of 26 buildings in at least 8 different counties.  (ECF No. 41.)

4.     On June 7, 2023, State Defendant filed its Corrected Motion to

Dismiss.  (ECF No. 72.)

5.     On June 26, 2023, Plaintiffs filed their Second Amended Complaint.

(ECF No. 79.)

6.     This is Plaintiffs' third attempt to state plausible federal Title II of

the Americans with Disabilities Act (ADA) and Rehabilitation Act claims upon

which relief may be granted, and this third attempt against the State of

Michigan also fails.

7.      Plaintiffs fail to allege facts identifying a violation of their Fourteenth Amendment rights and, as a result, fail to demonstrate the State of Michigan's Eleventh Amendment sovereign immunity was properly abrogated relative to their ADA claim.

8.      Plaintiffs fail to establish Article III standing to bring their federal claims against the State of Michigan.

9.      Plaintiffs fail to state plausible State statutory claims against the State of Michigan.

10.     Further, Plaintiffs' state law claims are barred by Eleventh Amendment immunity.

11.     Plaintiffs again fail to state a claim for the imposition of punitive damages against the State of Michigan.

12.     In accord with Local Rule 7.1(a), the undersigned counsel certifies that counsel communicated by email on June 29, 2023, with Plaintiffs' counsel, explaining the nature of the relief to be sought by way of this motion and seeking concurrence in the relief, and more than three business days have lapsed without opposing counsel responding to this email and without opposing counsel expressly agreeing to the relief, orally or in writing.

For these reasons and the reasons stated more fully in the accompanying brief in support, Defendant State of Michigan respectfully requests that this

Honorable Court enter an order dismissing Plaintiffs' Second Amended Complaint

pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), in addition to any other relief this

court deems just and equitable.

Respectfully submitted,

*s/ Cassandra Drysdale-Crown*
Cassandra Drysdale-Crown (P64108)
Assistant Attorney General
Attorney for Defendant
State of Michigan
P.O. Box 30736
Lansing, Michigan 48909
517.335.7659
drysdalecrownc@michigan.gov
P64108

Kimberly K. Pendrick (P60348)
Assistant Attorney General
Attorney for Defendant State of
Michigan
3030 W. Grand Blvd., Suite 10-666
Detroit, Michigan 48202
517.930.8842

Dated:  July 6, 2023                    pendrickk@michigan.gov

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JILL BABCOCK, MARGUERITE
MADDOX, and ASHLEY JACOBSON, on
behalf of themselves and all others similarly
situated,

No. 2:22-cv-12951

HON. JONATHAN J.C. GREY

      Plaintiffs,

v

STATE OF MICHIGAN, COUNTY OF
WAYNE, CITY OF DETROIT, WAYNE
COUNTY BUILDING AUTHORITY,
DETROIT BUILDING AUTHORITY[1], and
DETROIT-WAYNE JOINT BUILDING
AUTHORITY,

      Defendants, Jointly and Severally.

_____/

**BRIEF IN SUPPORT OF DEFENDANT STATE OF MICHIGAN'S
MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

Cassandra Drysdale-Crown (P64108)
Assistant Attorney General
Attorney for Defendant State of Michigan
P.O. Box 30736
Lansing, MI 48909
517.335.7659
drysdalecrownc@michigan.gov

---

[1] Plaintiff's Second Amended Complaint does not list the Wayne County Building Authority or Detroit Building Authority as defendants.  As no order has been entered to amend the caption, the original caption is used herein.

Kimberly K. Pendrick (P60348)
Assistant Attorney General
Attorney for Defendant State of Michigan
3030 W. Grand Blvd., Suite 10-666
Detroit, Michigan 48202
517.930.8842
Dated:  July 6, 2023                     pendrickk@michigan.gov

# TABLE OF CONTENTS

Page

Table of Contents ................................................................... i

Index of Authorities ............................................................ iii

Concise Statement of IssueS Presented ................................ vii

Controlling or Most Appropriate Authorities ....................... viii

Introduction ........................................................................... 1

Statement of Facts .................................................................. 2

     Ashley Jacobson .............................................................. 3

     Jill Babcock ..................................................................... 4

     Marguerite Maddox ......................................................... 5

Standard of Review ................................................................ 6

Argument ............................................................................... 7

I.    Plaintiffs Second Amended Complaint fails to state plausible federal claims upon which relief may be granted against the State of Michigan. ...................................................... 7

    A.    Plaintiffs fail to state a viable ADA claim. ........................... 7

        1.    Failure to state a claim. ............................................... 7

        2.    Eleventh Amendment immunity .............................. 16

    B.    Plaintiffs fail to state a plausible Federal Rehabilitation Act claim against the State. ........................................................... 19

    C.    Plaintiffs lack standing to bring their federal claims. ......................... 22

II.    Plaintiffs fail to state plausible State statutory claims against the State. ...... 27

    A.    The Persons With Disabilities Civil Rights Act ................................. 27

i

B.      The Barrier Free Design Act ...................................................................28

C.      The Sidewalks:  Persons With Disabilities Act...................................29

D.      The Stille-Derossett-Hale Single State Construction Code Act .........29

E.      Plaintiffs state law claims are barred by the Eleventh
        Amendment. .......................................................................................31

III.    Plaintiffs fail to state a claim for punitive damages against State
        Defendants. .........................................................................................33

Conclusion and Relief Requested ..........................................................................33

Local Rule Certification...........................................................................................35

Certificate of Service ..............................................................................................35

# INDEX OF AUTHORITIES

Page

**Cases**

*Alabama v. Pugh*, 438 U.S. 781 (1978) ...................................................................32

*Anderson v. City of Blue Ash*, 798 F.3d 338 (6th Cir. 2015) .....................................8

*Angel v. Kentucky,* 314 F.3d 262 (6th Cir. 2002) ......................................................6

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009) ...................................................... 6, 7, 9, 27

*Babcock v. State of Mich., et al.* (*Babcock I*), 812 F.3d 531(6th Cir. 2016) .. 8, 9, 14

*Barnes v. Gorman*, 536 U.S. 181 (2002) .................................................................33

*Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356 (2001) ...........................32

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................... 7, 27

*Dorsey v. City of Detroit*, 157 F. Supp.2d 729 (ED of Mich., June 6, 2001) ..........33

*Ernst v. Rising*, 427 F.3d 351 (6th Cir. 2005) ..........................................................32

*Fieger v. Ferry*, 471 F. 3d 637 (6th Cir. 2006) ........................................................26

*Grand Traverse Co. v. State*, 538 N.W.2d 1 (Mich. 1995) .....................................10

*Jim C. v. United States,* 235 F.3d 1079 (8th Cir. 2000).............................. 20, 21, 22

*Koslow v. Pennsylvania,* 302 F.3d 161 (3rd Cir. 2002).............................. 20, 21, 22

*Laird v. Tatum*, 408 U.S. 1 (1972).............................................................................24

*Landefeld v. Marion Gen. Hosp. Inc.*, 994 F.2d 1178 (6th Cir. 1993) ............. 20, 22

*Lane v. KinderCare Learning Centers, Inc.*, 588 N.W.2d 715 (Mich. App. 1998).....................................................................................................................28

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ....................................... 23, 24

*Mingus v. Buter,* 591 F.3d 474 (6th Cir. 2010)...........................................................8

*Mote v. City of Chelsea*, 284 F. Supp.3d 863 (E.D. Mich. 2018)..................... 15, 25

*Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89 (1984) ................32

*Peoples Rights Org., Inc. v. City of Columbus*, 152 F.3d 522 (6th Cir. 1998)........27

*Plunderbund Media LLC v. DeWindek*, 312 F. Supp. 3d 654 (E.D. Mich., 2018)......................................................................................................................24

*Rakowski v. Sarb*, 713 N.W.2d 787 (Mich. 2006)....................................................30

*Rosen v. Tenn. Comm'r of Fin. & Admin.*, 288 F.3d 918 (6th Cir. 2002)..............23

*Ross v. City of Gatlinburg*, 327 F Supp 2d 834 (E.D. Tenn. 2003)........................25

*Schroeder v. City of Chicago*, 927 F.2d 957 (7th Cir. 1991)..................................20

*Spokeo, Inc. v. Robins*, 136 U.S. 1540 (2016) ........................................................24

*Tennessee v. Lane*, 541 U.S. 509 (2004) .................................................... 16, 18, 29

*Tucker v. Tennessee*, 539 F.3d 526 (6th Cir. 2008)..................................................8

*United States v. Georgia,* 546 U.S. 151 (2006) .......................................... 16, 17, 32

*United States v. Hays*, 515 U.S. 737 (1995) ...........................................................24

*United States v. Menasche,* 348 U.S. 528 (1955) ...................................................21

*Vansteenkiste v. Lakeside Mall, LLC*, ___ F. Supp. 3d ___; 2014 U.S. Dist. LEXIS 82134 (E.D. Mich, June 17, 2014)..........................................................29

*Vt. Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765 (2000)......................................................................................................................24

*Ward v. Alternative Health Delivery Sys., Inc.*, 261 F.3d 624 (6th Cir. 2001) .......23

*Wayside Church v. Van Buren County,* 847 F.3d 812 (6th Cir. 2017) ......................6

**Statutes**

29 U.S.C. § 794(a) ........................................................................................... 19, 20

29 U.S.C. § 794(b)(1)........................................................................................ 19, 20

42 U.S.C. § 12101 ..................................................................................................7

42 U.S.C. § 12132 ............................................................................................ 8, 26

42 U.S.C. § 12133 ................................................................................................33

Mich. Comp. Laws § 125.1351 ............................................................................28

Mich. Comp. Laws § 125.1352(1) ......................................................................28

Mich. Comp. Laws § 125.1352(2) ......................................................................28

Mich. Comp. Laws § 125.1353 (1) ......................................................................29

Mich. Comp. Laws § 125.1361 ............................................................................29

Mich. Comp. Laws § 125.1501 ............................................................................29

Mich. Comp. Laws § 125.1502a ..........................................................................29

Mich. Comp. Laws § 125.1503a ..........................................................................30

Mich. Comp. Laws § 125.1504(2) ......................................................................30

Mich. Comp. Laws § 125.1508b(1) .....................................................................30

Mich. Comp. Laws § 125.1514(1) .......................................................................30

Mich. Comp. Laws § 125.1516(1) .......................................................................30

Mich. Comp. Laws § 37.1302 ..............................................................................27

Mich. Comp. Laws § 37.1606 ..............................................................................33

Mich. Comp. Laws § 600.151a ............................................................................11

Mich. Comp. Laws § 600.151b ............................................................................11

Mich. Comp. Laws § 600.9947 ............................................................................11

Mich. Comp. Laws § 600.9947(1) .......................................................................11

Mich. Comp. Laws § 600.9947(2)(b) ..................................................................11

**Rules**

Fed. R. Civ. P. 12(b)(1) ............................................................................... 33

Fed. R. Civ. P. 12(b)(6) ........................................................................... 6, 33

**Regulations**

28 C.F.R. § 35.150(a)-(b) ............................................................................... 8

**Constitutional Provisions**

Mich. Const. 1963, art. VI, § 3 ................................................................... 10

Mich. Const. 1963, art. VI, §18 ................................................................... 10

U.S. Const., Amend. XI ............................................................................... 31

## CONCISE STATEMENT OF ISSUES PRESENTED

1.    Are Plaintiffs' federal and state claims subject to dismissal where Plaintiffs' fail to state plausible claims upon which relief may granted?

2.    To establish standing, a party must show injury in fact, not just a generalized grievance against governmental conduct. Here, Plaintiffs' have not alleged any denial of or denied access to State Defendant's services, programs, or activities.  Have Plaintiffs met the standing requirements to bring their federal ADA and Rehabilitation Act claims?

3.    The Eleventh Amendment is a bar to lawsuits against states, state agencies or state departments unless specifically overridden by an act of Congress, or unless the state has consented to be sued.  Plaintiffs' fail to demonstrate that Congress abrogated the State's Eleventh Amendment immunity for an ADA claim where they do not allege any constitutional  violations based on the State Defendant's conduct and where they do not allege the State Defendant has abrogated its Eleventh Amendment immunity for the state claims.  Have Plaintiffs sufficiently pleaded in the avoidance of immunity to maintain their claims in this Court?

4.    Punitive damages are not provided in suits brought under section 202 of the ADA, section 504 of the Rehabilitation Act, or the Michigan Persons with Disabilities Civil Rights Act.  Has Plaintiffs' complaint set forth any claim which provides for an award of punitive damages?

## CONTROLLING OR MOST APPROPRIATE AUTHORITIES

<u>*Authorities*</u>:

*Alabama v. Pugh*, 438 U.S. 781 (1978)
*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)
*Babcock v. State of Mich., et al.*, 812 F.3d 531 (6th Cir. 2016)
*Barnes v. Gorman*, 536 U.S. 181 (2002)
*Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356 (2001)
*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)
*Ernst v. Rising*, 427 F.3d 351 (6th Cir. 2005)
*Landefeld v. Marion Gen. Hosp. Inc.*, 994 F.2d 1178 (6th Cir. 1993)
*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)
*Mote v. City of Chelsea*, 284 F. Supp. 3d 863 (E.D. Mich. 2018)
*Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89 (1984)
*Ross v. City of Gatlinburg*, 327 F Supp 2d 834 (E.D. Tenn. 2003)
*Tennessee v. Lane*, 541 U.S. 509 (2004)
*United States v. Georgia,* 546 U.S. 151 (2006)
*Vt. Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765 (2000)

## INTRODUCTION

Plaintiffs Jill Babcock, Ashley Jacobson, and Marguerite Maddox bring their Second Amended Complaint as a third attempt to purport a class action against Defendant State of Michigan (State or State Defendant) alleging violations of Title II of the Americans with Disabilities Act's (ADA) and Section 504 of the Rehabilitation Action of 1973.  Plaintiffs again allege violations of several Michigan laws, including the Persons With Disabilities Civil Rights Act (PWDCRA).  In addition to the State, Plaintiffs also sue Wayne County, City of Detroit, and the Detroit-Wayne Joint Building Authority.[2]

The State of Michigan is a proponent and supporter of the disability community and works to ensure that State-owned buildings meet federal and state requirements relative to accessibility, including reasonable modifications to existing buildings.  However, Plaintiffs' Second Amended Complaint fails to cure the deficiencies raised in State Defendant's previous two motions to dismiss by failing to allege or identify any specific facts demonstrating that the State's conduct denied them access to or receipt of services, programs, or activities. Instead, Plaintiffs' Second Amended Complaint is replete with allegations regarding various facility and structure noncompliance with the ADA, the

---

[2] Plaintiffs previously named the Wayne County Building Authority and the Detroit Building authority, but these defendants appear to have been abandoned based upon the caption of the Second Amended Complaint.

Rehabilitation Act, and other federal and state laws—again without any factual or legal basis to establish the State of Michigan is liable for the services provided in each building and without regard to whether the various statutes alleged provide for a cause of action.

Plaintiffs' claims should thus be dismissed where they continue to fail to state a claim upon which relief may granted, where certain claims are barred by immunity, and where they continue to lack standing to sue.

## STATEMENT OF FACTS

Jill Babcock (Babcock), Ashley Jacobson (Jacobson), and Marguerite Maddox (collectively Plaintiffs), bring this action on behalf of themselves, as members of the disabled community, and as a purported class action. Plaintiffs identify 31 buildings in at least eight different counties with various alleged disability accessibility violations that are allegedly "owned, leased, and operated jointly and severally by the Defendants for the Defendant governments' executive, legislative, judicial and administrative review functions." (ECF No. 79, ¶ 1, PageID.1265.) Plaintiffs allege these facility issues interfere with their barrier-free access (*id*., ¶ 74, PageID.1304; ¶ 92, PageID.1317; ¶¶ 103-104, PageID.1326; ¶ 126, PageID.1343-1344), ability to access restrooms (*id*., ¶ 2, PageID.1265; ¶ 31, PageID.1276; ¶ 36, PageID.1282; ¶ 41, PageID.1284; ¶ 94, PageID.1320), ability to access parking spaces (*id*., ¶ 3, PageID.1266; ¶ 30, PageID.1274-1276; ¶ 62,

PageID.1297-1298; ¶ 65, PageID.1299-1301; ¶ 96, PageID.1321-1322; ¶¶ 109-110, PageID.1328-1332; ¶ 161, PageID.1363), and ability to work or to work effectively (*id.*, ¶ 46, PageID.1294-1295; ¶ 57, PageID.1295-1296; ¶ 68, PageID.1302).

**Ashley Jacobson**

Plaintiffs allege Jacobson resides in Washtenaw County and is a licensed attorney.  (*Id.*, ¶ 52, PageID.1291.)  Plaintiff Jacobson "has several physical disabilities" (*id.*, ¶ 51, PageID.1291), and "must have immediate, in-person physical access, in the same extent as any other attorney licensed by the State of Michigan, to all services, programs, and activities.  (*Id.*, ¶ 90, PageID.1313-1314.) Jacobson alleges that because Defendants fail to comply with disability laws, she has lost work and continuing business opportunities because she is unable to or has additional difficulties accessing Defendants' buildings and thus the services, programs, and activities within these buildings.  (*Id.*, ¶ 52, PageID.1291-1292; ¶¶ 56-57, PageID.1294-1296; ¶ 63, PageID.1298; ¶ 68, PageID.1302; ¶ 94, PageID.1320.)  Plaintiff Jacobson generally alleges she "has had to turn down business," "has had to turn down cases in these buildings," and that generally "she must spend time considering and compensating for building inaccessibility in ways her nondisabled peers do not."  (*Id.*, ¶ 52, PageID.1291; ¶ 94, PageID.1320-1321.)

3

Plaintiffs allege "as recently as during COVID-19 pandemic, the buttons for [Washtenaw County's 22nd Circuit Court's] automatic doors have been blocked by garbage containers." (*Id.*, ¶ 57, PageID.1295.) Further, that Jacobson "sought*"* to become a court-appointed attorney in the 22nd Circuit Court yet had to "eliminate that practice" due to her experiences with alleged lack of parking and lack of building accessibility. (*Id.*) Also, Jacobson alleges she attended many hearings and meetings in Defendants' courts and offices but she cannot provide specific information because it is purportedly protected by client confidentiality. (*Id.*, ¶ 56, PageID.1294.) But the Second Amended Complaint—like the first two—contains no allegations of Jacobson being denied a service or any attempted entry to any of State Defendant's buildings.

**Jill Babcock**

Plaintiffs allege Babcock resides in Wayne County, Michigan, and is an attorney licensed in Michigan. (*Id.*, ¶ 22, PageID.1271; ¶ 25, PageID.1271.) She is employed with the City of Detroit. (*Id.*, ¶ 26, PageID.1271-1272.) Plaintiff Babcock asserts that she "has several physical disabilities and impairments . . . [that] require her to use a manual wheelchair, an electric scooter or wheelchair, or other mobility device." (*Id.*, ¶ 23, PageID.1271.) Like Plaintiff Jacobson, Babcock generally claims "[t]he lack of access described in [their] [Second Amended] Complaint illegally discriminates against [her] due to her disabilities

including as an attorney by interfering with her ability to . . . enjoy the benefits and personal satisfaction of achieving her goals to serve within her profession fully and effectively." (*Id*., ¶ 27, PageID.1272.)  Also, like Plaintiff Jacobson, Babcock generally and broadly avers the State is responsible for purported denial of her access to services, programs, or activities.  But the Second Amended Complaint—like the first two—contains no allegations that Babcock was denied service, let alone entered, any of State Defendant's buildings.

**Marguerite Maddox**

Plaintiff Maddox is a disability rights activist residing in Wayne County. (*Id*., ¶ 41, PageID.1285; ¶ 37, PageID.1283.)  Maddox has cerebral palsy, hearing and speech impairments, and declining vision.  (*Id*., ¶ 39, PageID.1283-1284.)  She is dependent upon specialized walkers and requires a service animal for mobility and other assistance.  (*Id*., ¶ 40, PageID.1284; ¶ 38, PageID.1283.)  Similar to the other Plaintiffs' general averments, Maddox purports that "due to Defendants' lack of accessible buildings and facilities . . . [she] has been precluded access or difficulty accessing the community and events . . . facilities, programs, and services." (*Id*., ¶ 41, PageID.1284.)  Maddox alleges inaccessibility claims involving a voting precinct building (*id*., ¶ 43, PageID.1285-1286), the meeting sites of Detroit City Council and other public meetings (*id*., ¶¶ 44-48, PageID.1286-1290), public transportation, sidewalk and curb cut violations (*id*.,

¶ 41, PageID.1284), and restroom violations (*id.*, ¶ 47, PageID.1288-1289).

Maddox also does not allege she was denied service, let alone entered, any of State

Defendant's buildings.

## STANDARD OF REVIEW

Dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction is

appropriate where Plaintiffs' claims are barred by lack of standing or by the State's

Eleventh Amendment immunity. The standard of review for a 12(b)(1) motion

depends on whether the defendant makes a facial or factual challenge to subject

matter jurisdiction. *Wayside Church v. Van Buren County,* 847 F.3d 812, 816–17

(6th Cir. 2017). Plaintiffs' complaint is insufficient on its face and, as a result, this

motion presents a facial attack and requires the Court to "take[] the allegations in

the complaint as true." *Id.* The plaintiff bears the burden of proving jurisdiction

when subject matter is challenged. *Angel v. Kentucky,* 314 F.3d 262, 264 (6th Cir.

2002).

Plaintiffs' claims are also subject to dismissal under Rule 12(b)(6) for failure

to state a claim upon which relief can be granted. "To survive a motion to dismiss,

a complaint must contain sufficient factual matter, accepted as true, to state a claim

to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(cleaned up). This "plausibility" review is "a context-specific task" that requires

the reviewing court to determine whether the plaintiff has not just "alleged," but

pleaded facts sufficient to "show[]," an entitlement to relief that is actually

plausible, and not merely "conceivable" or "possible." *Id.* at 679, 680. And in

making this assessment, courts are only to consider facts that are truly well

pleaded: they are not to take as true "legal conclusions," including when "couched

as a factual allegation," nor "mere conclusory statements" or "naked assertions

devoid of further factual enhancement." *Id.* at 678-79 (cleaned up).

A claim is plausible on its face "when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Id.* The complaint must contain "more than labels and

conclusions, and a formulaic recitation of the elements of a cause of action will not

do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## ARGUMENT

I.   **Plaintiffs' Second Amended Complaint fails to state plausible federal claims upon which relief may be granted against the State of Michigan.**

   A.   **Plaintiffs fail to state a viable ADA claim.**

In Count I, Plaintiffs allege a claim under Title II of the ADA, 42 U.S.C.

§§ 12101, *et seq*. But Plaintiffs fail to state a claim upon which relief may be

granted and their claim is otherwise barred by Eleventh Amendment immunity.

   1.   **Failure to state a claim.**

Title II of the ADA provides, in pertinent part, that no qualified individual

with a disability shall, because of that disability, "be denied the benefits of the

7

services, programs, or activities of a public entity, or be subjected to discrimination

by any such entity." *Mingus v. Buter,* 591 F.3d 474, 481-82 (6th Cir. 2010).  In

order to state a claim under Title II, Plaintiffs must show: (1) that they are qualified

individuals with a disability; (2) that the State is subject to the ADA; and (3) that

Plaintiffs were denied the opportunity to participate in or benefit from services,

programs, or activities provided by the State.  *See Tucker v. Tennessee*, 539 F.3d

526, 532–33 (6th Cir. 2008) *abrogated on other grounds by Anderson v. City of

Blue Ash*, 798 F.3d 338 (6th Cir. 2015).

     The State does not contest for purposes of this motion that Plaintiffs are

qualified individuals with a disability or that the State is a covered entity under

Title II.  But here, Plaintiffs fail to allege or identify sufficient, specific facts

demonstrating that either Babcock, Jacobson, or Maddox have been excluded from

participation in, or denied the benefits of, services, programs, or activities provided

by the State of Michigan, as a governmental unit, in relation to buildings or

facilities in which the State provides benefits or services and over which the State

exercises control.  42 U.S.C. § 12132.

     Importantly, "there is a distinction between access to a specific facility and

access to a public service, program, or activity under Title II's private cause of

action." *Babcock v. State of Mich., et al*. (*Babcock I*), 812 F.3d 531, 535 (6th Cir.

2016) (citing 42 U.S.C. § 12132).  Further, 28 C.F.R. § 35.150(a)-(b) "strongly

suggest that a private cause of action exists to remedy the exclusion from participating in or deriving benefit from public services, programs, or activities, but not remedy the lack of certain design features of a facility." *Id*. at 536. Thus, alleging building defects or design flaws does not, on its own, establish a violation of Title II, which requires access to services, programs, and activities versus structural issues alone.

Here, Plaintiffs' ADA claims against the State appear to be predicated on two theories: (1) that the State is individually or jointly liable for claims related to services, programs, or benefits provided by every state trial court in each of their buildings or facilities, and (2) the State is liable for claims related to services, programs, or benefits provided by the State in state buildings or facilities.

The first theory is without legal merit. Plaintiffs generally allege the State of Michigan is "specifically charged" with providing "fully accessible courts for all judicial proceedings." (ECF No. 79, ¶ 85, PageID.1308.) While this Court generally must take all factual allegations in a complaint as true when ruling on a motion to dismiss, it is not "bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal,* 556 U.S. at 678. The authority upon which Plaintiffs rely does not provide that the State of Michigan owns, is responsible for, or controls every courthouse in Michigan or is the provider of services, programs, or activities in every court building.

9

Article VI, § 1 of the Michigan Constitution provides that "the judicial power of the state is vested exclusively in one court of justice which shall be divided into one supreme court, one court of appeals, one trial court of general jurisdiction known as the circuit court, one probate court, and courts of limited jurisdiction that the legislature may establish [*e.g.*, the district courts] . . . ." Article VI goes on to provide for the creation of each of these courts, and other matters, but it does not make the State of Michigan or even the Michigan Supreme Court responsible for how or where services are provided by every state court facility.

In *Grand Traverse Co. v. State*, 538 N.W.2d 1 (Mich. 1995), the Michigan Supreme Court found that the "one court of justice" provision of Michigan's Constitution was not to "change the traditionally local character of the courts to one totally controlled and funded by the state." It cited to an "unbroken line of cases stretching back 130 years recogniz[ing] the practice of imposing the costs of operating the courts on local funding units." *Id.* at 474.

At best, § 3 provides that the Michigan Supreme Court must appoint an "administrator" to "aid in the administration of the courts of this state," and §18 provides for the State's payment of judicial salaries. Mich. Const. 1963, art. VI, §§ 3, 18. Similarly, § 7 provides the Michigan Supreme Court's authority relative to

its own staffing and budget; but, again, not the responsibility for control over how or where each court facility operates or provides services.

Plaintiffs also loosely allege the State of Michigan "individually or with applicable county or municipality, controls, owns, leases, operates, and funds or supervises as to all court buildings and operations" and has "ultimate responsibility for providing fully accessible courts for all judicial proceedings and other manifestations of that process." (ECF No. 79, ¶ 105, PageID.1327; ¶¶ 85, 86, PageID.130-10.) But Plaintiffs fail to cite to Michigan statutes that support State funding is tied in any way to the ownership or control of the facilities. Although Mich. Comp. Laws § 600.9947 provides for the Michigan legislature to appropriate sufficient funds for trial court "operational expenses," it does not provide the State of Michigan has ownership or control of each trial court and specifically excludes provision of funds for "facilities." Mich. Comp. Laws § 600.9947(2)(b). Regardless, this statute has limited application after 1996. Mich. Comp. Laws § 600.9947(1). The court funding mechanisms now generally appear in Mich. Comp. Laws §§ 600.151a, 600.151b.

Thus, Plaintiffs' legal claims that the State of Michigan is somehow on the hook for ADA violations arising out of the deprivation of services, programs, or benefits provided at buildings or facilities operated by and under the control of the trial courts and/or their local funding units, and that the State of Michigan has

"control over the design, layout construction, and maintenance of the streets and highways, sidewalks and curbs, public parks, and improved areas adjacent to and leading to the buildings and facilities and public parks at issue" lack factual and legal support and are thus without merit.  (ECF No. 79, ¶ 87, PageID.1309.)  This leaves Plaintiffs without a viable defendant in relation to their claims concerning trial court facilities and buildings outside of Wayne County.  (*See* ECF No. 79, ¶¶ 3, 29-30, 54-57, 65, PageID.1266, 1274-1276, 1292-1296, 1299-1301.)

Turning to Plaintiffs other theory, Plaintiffs allege various accessibility issues related to buildings or facilities in which one or more of the branches of State government provide various services.  (*See* ECF No. 79, ¶ 1, PageID.1265; ¶ 96, PageID.1321-1322.)  First and foremost, Plaintiffs' Second Amended Complaint remains deficient by failing to properly identify who is responsible for or controls the streets and sidewalks in and around the "complex," the "State's complex in Lansing," the "Capitol loop," and the "[Lansing] Plaza," and other areas of which Plaintiffs complain.  (*Id*., ¶ 96, PageID.1321-1322; ¶¶ 109-110, PageID.1228-1332.)  For example, Plaintiffs allege "various crosswalk curb cuts and crosswalks on the surrounding streets of Ottawa, Washington, Walnut, Allegan, Townsend, and Capitol are not proper width, grade, or slope . . . and/or cut at dangerous angles into the street or other cross walks." (*Id*., ¶ 110, PageID.1330.)  Further, Plaintiffs purport that "[c]ertain transit stops on the

12

surrounding streets are not compliant" and there are an "insufficient number of accessible parking spaces for the public on the streets." (*Id.*, ¶¶ 109-110, PageID.1328-1332.)

Next, Plaintiffs purport vague facility accessibility issues. Here, Plaintiffs allege accessible parking issues—and signage—for buildings in the Capitol Complex,[3] including the Michigan Hall of Justice, the Capitol, and the George W. Romney Building. (*Id.*, ¶¶ 109-110, PageID.1229-1332.) They also allege pedestrian access issues related to ramps, accessible parking or drop-off zones, and signage regarding the Hall of Justice. (*Id.*) With respect to the Romney Building, they allege defects in curb cuts and crosswalks, insufficient accessible parking for these buildings, and a lack of drop-of areas. (*Id.*, ¶ 110, PageID.1330-1332.) Next, Plaintiffs complain that the Capitol Plaza and the plaza between the Capitol and the Hall of Justice lacks signage for accessible routes, lacks drop-off areas, has nominally accessible parking spaces, has parking too far from buildings, has too long of a distance between the Capitol and the Hall of Justice, etc. (*Id.*) And they complain that there is poorly marked and inaccessible parking, insufficient

---

[3] These buildings in relation to each other can be seen on a map provided by the Michigan Department of Management and Budget, available at  DTMB - Downtown Lansing Visitor Parking (michigan.gov).

directional signage to accessible parking, etc., for the Michigan Library/Michigan Historical Museum building. (*Id*.)

Despite these allegations, Plaintiffs fail to identify any denial of services at a State of Michigan building.  Although Plaintiff Jacobson vaguely alleges she has had multiple cases, hearings, and meetings with and on behalf of her clients in many of the Defendants' buildings and courts, she proclaims—without providing any legal or professional conduct standards in support—that she cannot disclose the specifics of these unidentified incidents "due to client confidentiality."  (*Id.,* ¶ 56, PageID.1294.)  Yet, State Defendant is hampered in responding to this allegation since it is unknown what—if any—accessibility issues Plaintiffs complain of, or what accessibility issues allegedly violate state and/or federal laws and regulations, or whether Plaintiff Jacobson was deprived of a service, program, or benefit, in a State building.

Other than Plaintiff Jacobson's insufficient allegations, the complaint simply alleges generalized grievances by the Plaintiffs directed at accessibility of the various buildings and facilities.  As a result, Plaintiffs' amended complaint suffers from similar deficiencies as *Babcock I*.  Plaintiffs allege that all the buildings at issue have various architectural and facility barriers—*e.g*., poorly marked, inaccessible, or insufficient parking, no or insufficiently visible directional signs, insufficient accessible street parking, the distance along the Capitol plaza, and

14

sidewalk and curb cut deficiencies—that prevent Plaintiffs access to services and programs. (*Id.*, ¶¶ 109-110, PageID.1328-1332.) Moreover, Plaintiffs' allegations of denial of services are mere recitations of the services purportedly available at various buildings, such as voting and observing and participating in judicial branch services, and access to "basic and necessary government functions and services." (*Id.*, ¶ 7, PageID.1267.) But cataloguing available services and alluding to a denial of services and injury within the instant complaint does not state a cognizable claim under Title II. *Babcock,* 812 F.3d at 536.

Despite being given two opportunities to amend their complaint, Plaintiffs yet again fail to provide any factual support for their claims against the State. Specifically, they fail to specifically identify (1) what services, programs, or activities they have been deprived; (2) when these alleged deprivations occurred, (3) the building or facility where these deprivations occurred; and (4) the State's conduct that allegedly denied Plaintiffs meaningful access to the services or programs. The failure to identify the specific incidents of alleged denial of services, programs, or benefits, especially when such incidents occurred, is significant since the applicable statute of limitations bars claims older than three years. *See Mote v. City of Chelsea*, 284 F. Supp.3d 863, 886 (E.D. Mich. 2018) (accepting that statute of limitations applicable to ADA claims is three years).

For these reasons, Plaintiffs fail to plead sufficient facts identifying State Defendant's conduct that violated Title II of the ADA.  Although Plaintiffs name several activities, programs, and services they were purportedly excluded or denied benefit from, they fail to specify which services, activities, and programs they were denied access to or benefit from, or when the denial of access to or participation to these occurred.

### 2.    Eleventh Amendment immunity

The State of Michigan is entitled to Eleventh Amendment immunity with respect to Plaintiffs' Title II claim.  *See, e.g., Tennessee v. Lane*, 541 U.S. 509 (2004).  In *Babcock I*, the Sixth Court held "[t]hat Babcock failed to identify conduct that violates the ADA is dispositive of her claim under the Eleventh Amendment immunity analysis set forth by the Supreme Court."  812 F.3d at 539 (citing to *United States v. Georgia,* 546 U.S. 151, 159 (2006)).  The Court further held that "[w]ithout identifying ADA-violating conduct, [the Court] cannot hold that Congress abrogated the states' sovereign immunity by a valid exercise of its power under § 5 of the Fourteenth Amendment." *Id*.  The same is true here where Plaintiffs fail to specifically identify State Defendant's conduct that violated the ADA or any specific services, activities, or programs Plaintiffs were denied access to or the benefit of.  Thus, dismissal of Plaintiffs claims against State Defendant is appropriate under the Eleventh Amendment.

But, even if this Court were to find Plaintiffs sufficiently pleaded an ADA

claim, Plaintiffs still fail to plead in avoidance of immunity.  In *United States v.*

*Georgia*, the Supreme Court provided a three-part test to determine whether a state

maintains its Eleventh Amendment immunity in Title II ADA cases.  The Court

must determine on a claim-by-claim basis:

> (1) which aspects of the State's alleged conduct violated Title II;
>
> (2)  to what extent such misconduct also violated the Fourteenth
>     Amendment; and
>
> (3)  insofar as such misconduct violated Title II but did not violate the
>     Fourteenth Amendment, whether Congress's purported abrogation of
>     sovereign immunity as to that class of conduct is nevertheless valid.

*Id.* at 159.

As discussed above, Plaintiffs fail to plead facts sufficiently alleging conduct

by State Defendant that violated Title II of the ADA.  Plaintiffs also fail to satisfy

the second prong of the test where they have failed to allege that any specified

State conduct violated Plaintiffs' Fourteenth Amendment rights to equal protection

and/or due process, or any other constitutional provision.  Plaintiffs allege that the

State "is not immune" from Plaintiffs' ADA claims.  (ECF No. 79, ¶ 12,

PageID.1268.)  Notably, Plaintiffs' complaint contains no specific allegations that

the State Defendant's conduct also violated the Fourteenth Amendment, despite

this being their third chance to fix the deficits contained in their original complaint.

Plaintiffs' amended complaint instead contains a paragraph that simply indicates

that all of the Defendants disregarded their rights under a host of constitutional

provisions.  (Id., ¶ 69, PageID.1302-1303.)  It includes generalized allegations,

without any factual support, regarding the First, Fifth, Sixth, Seventh, Eighth,

Ninth, Fourteenth, Fifteenth, Nineteenth, and Twenty-Sixth Amendments of the

U.S. Constitution, and the Second, Fifth, Thirteenth, Fourteenth, Seventeen, and

Twenty-Third Amendments of the Michigan Constitution.   (*Id*.)  Such a broad,

generalized paragraph is insufficient to establish that the State Defendant's

engaged in any conduct that violated a constitutional right possessed by Plaintiffs

through the Fourteenth Amendment.  At best, Plaintiffs attempt to allege a

violation of their due process right to access the courts, which is protected by the

Fourteenth Amendment.  *Tennessee*, 541 U.S. at 523.  But as discussed above,

Plaintiffs fail to state a claim against the State with respect to the trial court

facilities.

Again, Plaintiffs' Second Amended Complaint attempts to couch facility

compliance issues as equating to a denial of services in violation of Title II of the

ADA.  And although Plaintiffs allege noncompliant design features, and issues

accessing non-State buildings, they have not alleged facts to demonstrate that the

State's Eleventh Amendment sovereign immunity was properly abrogated without

identifying any Fourteenth Amendment denial of access.

**B.    Plaintiffs fail to state a plausible Federal Rehabilitation Act claim against the State.**

In Count II, Plaintiffs allege a claim under Section 504 of the Rehabilitation Act of 1973.  Notably, Plaintiffs' initial complaint contained a claim under the Architectural Barriers Act (ABA), (ECF No. 1, ¶ 115, PageID.43), but neither the First Amended Complaint nor the Second Amended Complaint contain an ABA count, so it appears the few miscellaneous references to the ABA were left in inadvertently.  (ECF No. 79, ¶ 97, PageID.1323).  Accordingly, State Defendants will only address Plaintiffs' Section 504 claim.  Section 504 provides that "[n]o otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance ...."  29 U.S.C. § 794(a).  The terms "program or activity" are defined in relevant part as all of the operations of:

(A) a department, agency, special purpose district, or other instrumentality of a State or of a local government; or

(B) the entity of such State or local government that distributes such assistance and each such department or agency (and each other State or local government agency) to which the assistance is extended, in the case of assistance to a State or local government[.]

29 U.S.C. § 794(b)(1).  To state a claim under the Rehabilitation Act, a plaintiff must allege facts allowing for the reasonable inference that (1) plaintiff is disabled;

19

(2) plaintiff is otherwise qualified for participation in the program; (3) plaintiff is being excluded from participation in, denied benefits of, or being subjected to discrimination under the program solely due to a disability; and (4) the relevant program or activity is receiving federal financial assistance. *Landefeld v. Marion Gen. Hosp. Inc.*, 994 F.2d 1178, 1180-1181 (6th Cir. 1993).

The plain language of the statute makes clear that the State of Michigan is not an appropriate Defendant. The Rehabilitation Act limits its application to programs or activities receiving federal assistance. 29 U.S.C. § 794(a). The definition of "programs or activities" identifies not the State as a whole, but rather its subordinate components such as agencies or departments. 29 U.S.C. § 794(b)(1). Under this definition, the State as a whole cannot be a "program or activity." Several courts have come to a similar conclusion. *See Jim C. v. United States,* 235 F.3d 1079, 1081 (8th Cir. 2000) (holding that under Section 504's definition, the State itself is not a program or activity and that only the department or agency which receives or distributes the aid is covered); *Koslow v. Pennsylvania,* 302 F.3d 161, 171 (3rd Cir. 2002) (holding that suits against the State as a whole are inappropriate as, pursuant to the statutory definitions in the Rehabilitation Act, the state, as a whole, cannot be a program or activity); *Schroeder v. City of Chicago*, 927 F.2d 957, 962 (7th Cir. 1991) (language of

§ 504 is not intended to sweep in the whole state or local government for purposes of liability).

Moreover, as several of these same courts have noted, if the entire state government were subject to § 504 liability whenever one of its subcomponents received federal funds, subsection 794(b)(1)(B) would be redundant as both the distributing and receiving state entities would already be covered under subsection 794(b)(1)(A) whenever either receives federal funds.  *See Jim C.*, 235 F.3d at 1081 n. 3; *Koslow*, 302 F.3d at 171.  Thus, basic rules of statutory construction also dictate the conclusion that the State of Michigan is an inappropriate defendant. A court should avoid interpreting a statute so as to make portions of it superfluous. *See e.g., United States v. Menasche,* 348 U.S. 528, 538–39 (1955).  For this reason alone, the § 504 claim against the State must be dismissed.

Regardless, Plaintiffs have not sufficiently pleaded the elements of their claim against State Defendant for the same reasons they fail to state an ADA claim. *See Babcock v State of Mich*., 2014 WL 2440065 at *3 (Case No. 12-cv-13010, E.D. Mich.)  Further, Plaintiffs have not established the State Defendant received federal funding that would trigger the Rehabilitation Act's application as to its facilities.  Plaintiffs generally allege the State received federal funding, "including recently COVID-19 economic relief. . . .and/or funding from the American Rescue Plan Act of 2021, the Build Back Better funds, and/or the Inflation Reduction Act

of 2022." (ECF No. 79, ¶ 160, PageID.1362.) But they fail to identify facts demonstrating that the programs, services, and activities from which they were allegedly excluded were receiving federal financial assistance from these federal funds. *See Landefeld,* 994 F.2d at 1180–1181.

Moreover, as discussed above, if the entire state government were subject to § 504 liability whenever one of its subcomponents received federal funds, subsection 794(b)(1)(B) would be redundant as both the distributing and receiving state entities would already be covered under subsection 794(b)(1)(A) whenever either receives any federal funds. *See Jim C.*, 235 F.3d at 1081 n. 3; *Koslow*, 302 F.3d at 171. Merely referring to these federal financial assistance programs is insufficient because no facts have been pleaded establishing that the program or activity from which they were denied access was receiving financial assistance from either of these two federal programs.

### C.    Plaintiffs lack standing to bring their federal claims.

Plaintiffs also lack standing to bring their claims under the ADA and Rehabilitation Act. Plaintiffs' Second Amended Complaint also cites the Voting Accessibility for the Elderly and Handicapped Act, 52 U.S.C. § 20105(a), *et seq*., and 52 U.S.C. § 20106, *et seq*., in the jurisdictional section. (ECF No. 79, ¶ 9, PageID.1268.) But they appear to have abandoned these as purported counts because Plaintiffs concede that Plaintiff Maddox "voted in 2022" and provides no

22

allegations she was denied access to or participated in voting.  (*Id.*, ¶ 43,

PageID.1285-1286.)  In Plaintiffs federal counts, they allege Defendants—

collectively and individually— knowingly, willfully and or were deliberatively

indifferent to statutorily noncompliant elements or features of Defendants'

facilities that repeatedly and continuously discriminate against Plaintiffs by

denying and excluding Plaintiffs from fully and equally enjoying Defendants'

services, programs, and activities.  (*Id.*, ¶ 125, PageID.1343; ¶¶ 175-176,

PageID.1366; ¶ 178, PageID.1367-1368; ¶¶ 189-201, PageID.1376; ¶¶ 212-215,

PageID.1380-1382.)

Plaintiffs must establish Article III standing before the court can address the

merits of the case.  *Ward v. Alternative Health Delivery Sys., Inc.*, 261 F.3d 624,

626 (6th Cir. 2001) ("Standing is thought of as a 'jurisdictional' matter, and a

plaintiff's lack of standing is said to deprive a court of jurisdiction.") (Citations

omitted).  "The burden of establishing standing is on the party seeking federal

court action." *Rosen v. Tenn. Comm'r of Fin. & Admin.*, 288 F.3d 918, 927 (6th

Cir. 2002) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–561 (1992)).

"[A] plaintiff must meet three requirements in order to establish Article III

standing.  First, he must establish an injury in fact—a harm that is both concrete

and actual or imminent, not conjectural or hypothetical.  Second, he must establish

causation—a fairly traceable connection between the alleged injury in fact and

the alleged conduct of the defendant.  And third, he must demonstrate

redressability—a substantial likelihood that the requested relief will remedy the

alleged injury in fact." *Vt. Agency of Natural Res. v. United States ex rel.*

*Stevens*, 529 U.S. 765, 771 (2000) (internal quotation marks and citations omitted).

Plaintiffs' have not alleged an injury in fact sufficient to support standing.  It

is well-recognized that in establishing an injury in fact, "[a] generalized grievance

against governmental conduct is insufficient to confer standing upon a party."

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (citing *United States v.*

*Hays*, 515 U.S. 737, 743 (1995)).  Standing requires "a 'claim of specific present

objective harm or a threat of specific future harm.'"  *Laird v. Tatum*, 408 U.S. 1,

13–14 (1972); *see also Plunderbund Media LLC v. DeWindek*, 312 F. Supp. 3d

654, 662 (E.D. Mich., 2018).  "To establish injury in fact, a plaintiff must show

that he or she suffered 'an invasion of a legally protected interest' that is 'concrete

and particularized' and "actual or imminent, not conjectural or hypothetical."

*Spokeo, Inc. v. Robins*, 136 U.S. 1540, 1548 (2016), (quoting *Lujan*, 504 U.S. at

560).  "For an injury to be 'particularized,' it must affect the plaintiff in a personal

and individual way."  *Id*.  And a concrete injury "must actually exist."  *Id*.

Turning to the facilities controlled by State Defendant, Plaintiffs purport a

myriad of facility accessibility issues.  (ECF No. 79., ¶ 96a., PageID.1321-1322;

¶¶ 109-110, PageID.1328-1332.)  Plaintiffs vaguely purport that certain accessible

routes to State Defendants' facilities *appear* to be noncompliant with various disability laws—but they fail to allege that they were denied access to State Defendant's services, programs, or activities.  Plaintiffs fail to plead facts demonstrating harms or injuries in violation of Title II of the ADA or Rehabilitation Act that are "concrete and particularized, and actual or imminent" where they have alleged damages without alleging the requisite denial of services. *Ross v. City of Gatlinburg*, 327 F. Supp. 2d 834, 842 (E.D. Tenn. 2003).  Thus, Plaintiffs have not shown they personally suffered or will likely suffer from an actual injury caused by State Defendant's conduct.

"Without satisfying the first element of standing, an injury in fact, the plaintiffs necessarily cannot satisfy the second [causation] and third [redressability] elements of standing." *Ross*, 327 F. Supp at 842.  But assuming arguendo the court finds Plaintiffs properly pleaded actual injury or imminent injury, a plaintiff must next show that the injury is traceable to the defendant's conduct. *Mote v. City of Chelsea*, 284 F. Supp. 3d 863, 887 (E.D. Mich. 2018).  "The plaintiff's injury has to be 'fairly traceable' to the challenged conduct or act of the defendant and not the result of the independent actions of some third party not before the court." *Ross*, 327 F. Supp. 2d at 841.

Plaintiffs appear to misapprehend that any possible existing technical violation of the ADA accessibility guidelines (ADAAG) is actionable, whereas

Title II of the ADA requires that a disabled person not be "excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity… ."  42 U.S.C. § 12132.  Here, Plaintiffs plead no facts that State Defendant excluded them from participation or benefit of a service, program or activity—or that they requested and were denied any accommodation to avail themselves of such activities.  Plaintiffs' Second Amended Complaint wholly fails to identify any such denial that is traceable to State Defendants.

Further, Plaintiffs broadly allege that the State Defendant is responsible for maintaining all facilities and buildings, sidewalks, parking spaces, accessibility ramps, and streets identified within their amended complaint.  Plaintiffs invoke an amorphous position that all named defendants are individually and collectively responsible for compliance with all accessibility laws for maintenance and accessibility to all facilities, public streets, and parking lots identified within the amended complaint.  But again, this fails to establish the requisite requirement that Plaintiffs establish they were denied a public service due to State Defendant's conduct.

Where Plaintiffs have failed to establish an injury (a denial of services) in any of State Defendant's facilities, Plaintiffs are unable to show that "it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Fieger v. Ferry*, 471 F. 3d 637, 643, (citing *Peoples Rights Org., Inc. v.*

*City of Columbus*, 152 F.3d 522, 527 (6th Cir. 1998)). As a result, Plaintiffs lack standing to continue any claims against the State Defendant.

## II. Plaintiffs fail to state plausible State statutory claims against the State.

Count III alleges violations of the PWDCRA (ECF No. 79, ¶¶ 198-224, PageID.1374-1385), and in Count IV Plaintiffs allege violations of Michigan's Barrier Free Design Act, Michigan Sidewalks Act, Michigan Construction Code, Detroit Construction Code, and other international building and plumbing codes (*id.*, ¶¶ 225-238, PageID.1386-1392).

### A. The Persons With Disabilities Civil Rights Act

Michigan's PWDCRA provides a person shall not "[d]eny an individual the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodation or public service because of a disability that is unrelated to the individual's ability to utilize and benefit from the goods, services, facilities, privileges, advantages, or accommodations or because of the use by an individual of adaptive devices or aids." Mich. Comp. Laws § 37.1302. Plaintiffs' Second Amended Complaint is devoid of any allegations, other than citing provisions of the statute, as to how the State has denied Plaintiffs the full and equal enjoyment of a public service, which is insufficient to assert a claim. *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678.

**B.     The Barrier Free Design Act**

The Michigan Barrier Free Design Act, Mich. Comp. Laws §§ 125.1351 *et seq.,* requires that, with certain exceptions, any "public facility" or "facility used by the public" must be constructed so as to permit access by physically limited persons.  The requirements of the Act apply to all new construction of such facilities as well as to those existing facilities which undergo a "change in use group or occupancy load, or an alteration other than ordinary maintenance ...." Mich. Comp. Laws § 125.1352(1) and (2).

But the Act does not provide a private cause of action.  "Where the common law provides no right to relief, but the right to relief is created by statute, a plaintiff has no private cause of action to enforce the right unless (1) the statute expressly creates a private cause of action, or (2) a cause of action can be inferred from the fact that the statute provides no adequate means of enforcement of its provisions." *Lane v. KinderCare Learning Centers, Inc*., 588 N.W.2d 715, 718 (Mich. App. 1998).

Here, the Act does not expressly provide for a private cause of action, and it adequately provides for the enforcement of its provisions.  The Act specifically states that administration and enforcement of the Act is vested in the Michigan Department of Management and Budget, the Michigan Department of Education, and the Michigan Department of Labor, depending on the type of building

28

involved.  Mich. Comp. Laws § 125.1353 (1)–(3).  Thus, any claim against the State based on this Act must be dismissed.

### C.     The Sidewalks:  Persons With Disabilities Act

Michigan's Sidewalks: Persons With Disabilities Act provides that sidewalks constructed after April 12, 1973, "shall be constructed in a manner that will facilitate use by persons with physical disabilities."  Mich. Comp. Laws § 125.1361.  It provides that at intersections between pedestrian and motorized lines of travel, there will be gradual slopes to provide an uninterrupted line of travel.  *Id.*  However, as with the other state claims alleged, there is no private cause of action under this Act.  *See, e.g., Lane,* 588 N.W.2d at 718.

In *Vansteenkiste v. Lakeside Mall, LLC*, ___ F. Supp. 3d ___; 2014 U.S. Dist. LEXIS 82134, at *30 (E.D. Mich, June 17, 2014), the Court dismissed a claim under the Act noting that "Plaintiff has provided no law holding that a private party may bring a cause of action" under this statute.  *Id.* at *30.  This Court should dismiss this claim for the same reason.

### D.     The Stille-Derossett-Hale Single State Construction Code Act

Plaintiffs' amended complaint refers to the "Michigan Uniform Construction Code" citing to Mich. Comp. Laws § 125.1502a.  However, Mich. Comp. Laws §§ 125.1501, *et seq.,* is known as the Stille-Derossett-Hale Single State

Construction Code Act.  Similar to Michigan's Barrier Free Design Act, this Act does not provide for a private right of action for third parties.

The Act establishes a state construction code commission.  Mich. Comp. Laws § 125.1503a.  The statute specifically provides that the director is responsible for administration and enforcement of the act and the code.  Mich. Comp. Laws § 125.1508b(1).  The code is defined as "the state construction code."  Mich. Comp. Laws § 1502a(1)(l).  It also denotes that the code shall consist of various international building codes as the director deems appropriate.  Mich. Comp. Laws § 125.1504(2).

The Act provides for a construction board of appeals in cases where an enforcing agency refuses to grant a building permit or other decision related to the act or the code, and that decision is appealable to the commission.  Mich. Comp. Laws §§ 125.1514(1), 125.1516(1).  It does not provide a private cause of action.

In *Rakowski v. Sarb*, 713 N.W.2d 787, 794 n 4 (Mich. 2006), the Michigan Supreme Court reviewed a case involving a city hiring the defendant (an inspector) to carry out the duties imposed by the Act.  While assessing whether the Act could be used to establish a legal duty in negligence actions, it noted that nothing in the Act "gives rise to a civil duty to a private third party.  Further the purpose of the construction code act is not to protect the public against harm by establishing construction standards and an inspection regime, but merely to establish the

30

authority of the director of the. . . Department of Labor and Economic Growth. . .

." *Id.*

As a result, Plaintiffs cannot maintain a claim under the Stille-Derossett-Hale Single State Construction Code and, by extension, to other state and international construction and building codes, and these claims must be dismissed. Relative to allegations related to City of Detroit building codes, the State Defendant does not enforce the City's codes nor does it have any responsibility for any of the buildings identified in the amended complaint that are located in Detroit.

### E. Plaintiffs state law claims are barred by the Eleventh Amendment.

In addition to failing to state a claim under the state statutes discussed above, Plaintiffs claims against the State are barred by the Eleventh Amendment.

The Eleventh Amendment to the U.S. Constitution provides that "the judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state."  U.S. Const., Amend. XI.  Accordingly, in most instances, the Eleventh Amendment prevents a state from being sued in federal court without its consent.  Indeed, the Supreme Court has consistently ruled that the Eleventh Amendment is a bar to lawsuits against states, state agencies or state departments unless specifically

overridden by an act of Congress, or unless the state has consented to be sued. *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *United States v. Georgia*, 546 U.S. 151, 159 (2006).

Further, the Supreme Court has broadened the Eleventh Amendment's application to suits by citizens against their own state and held that "the ultimate guarantee of the Eleventh Amendment is that nonconsenting states may not be sued by private individuals in federal court." *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 360 (2001). "States' constitutional immunity from suit prohibits all state-law claims filed against a State in federal court, whether those claims are monetary or injunctive in nature." *Ernst v. Rising*, 427 F.3d 351, 368 (6th Cir. 2005). A state-law claim brought into a federal court under pendent jurisdiction is a claim against the state that is protected by the Eleventh Amendment. *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 121 (1984). Neither "pendent jurisdiction nor any other basis of jurisdiction may override the Eleventh Amendment." *Id*. at 121.

Since the State of Michigan has not waived its Eleventh Amendment immunity in this case, Plaintiffs cannot maintain any causes of action in Counts III and IV based on state law against the State in federal court. This Court should dismiss these claims.

### III.   Plaintiffs fail to state a claim for punitive damages against State Defendants.

Plaintiffs' Second Amended Complaint requests punitive damages.  (ECF No. 79, ¶¶ 252-258, PageID.1397-1398.)  Plaintiffs broadly allege that "Defendants are liable for punitive damages under Federal and State laws, including the Rehabilitation Act of 1973, and MCL 37.1606."  (*Id*., ¶ 258, PageID.1398).

"Title II of the ADA specifically incorporates the remedial provisions of Section 794a of the Rehabilitation Act, 29 U.S.C. § 794a, as its enforcement provision. 42 U.S.C. § 12133.  The relevant provision of section 794a of the Rehabilitation Act incorporates the 'the remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964.' "  *Dorsey v. City of Detroit*, 157 F. Supp.2d 729, 731 (ED of Mich., June 6, 2001).  But punitive damages are not provided in suits brought under § 202 of the ADA or § 504 of the Rehabilitation Act.  *Barnes v. Gorman*, 536 U.S. 181, 190 (2002).  Further, the PWDCRA provision relative to damages contains no remedy of punitive damages.  See Mich. Comp. Laws § 37.1606.  The request for punitive damages should be dismissed.

## CONCLUSION AND RELIEF REQUESTED

For the reasons discussed above, Defendant State of Michigan respectfully asks this Court to dismiss all claims against it under Fed. R. Civ. P. 12(b) (1) and 12(b)(6).

Respectfully submitted,

*s/ Cassandra Drysdale-Crown*
Cassandra Drysdale-Crown
Assistant Attorney General
Attorney for Defendant State of
Michigan
P.O. Box 30736
Lansing, MI 48909
517.335.7659
drysdalecrownc@michigan.gov
Dated:  July 6, 2023                                           P64108

Kimberly K. Pendrick (P60348)
Assistant Attorney General
Attorney for Defendant State of
Michigan
3030 W. Grand Blvd., Suite 10-666
Detroit, Michigan 48202
517.930.8842
Dated:  July 6, 2023                                           pendrickk@michigan.gov

## LOCAL RULE CERTIFICATION

I, Cassandra Drysdale-Crown, certify that this document complies with Local Rule 5.1(a), including: double-spaced (except for quoted materials and footnotes); at least one-inch margins on the top, sides, and bottom; consecutive page numbering; and type size of all text and footnotes that is no smaller than 10-1/2 characters per inch (for non-proportional fonts) or 14 point (for proportional fonts).  The brief is no more than ten pages longer than provided by the local rule, but a companion motion to extend pages is being filed for the Court's consideration.  Local Rule 7.1(d)(3).

*s/Cassandra Drysdale-Crown*
Cassandra Drysdale-Crown (P64108)

## CERTIFICATE OF SERVICE

I hereby certify that on July 6, 2023, I electronically filed the above document(s) with the Clerk of the Court using the ECF System, which will provide electronic copies to counsel of record.

*s/Cassandra Drysdale-Crown*
Cassandra Drysdale-Crown (P64108)
Assistant Attorney General