# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | |
|---|---|
| JILL BABCOCK, JAIME JUNIOR and ASHLEY JACOBSON, on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>STATE OF MICHIGAN, COUNTY OF WAYNE, CITY OF DETROIT, DETROIT-WAYNE JOINT BUILDING AUTHORITY and HINES, out of state corporation authorized to do business in Michigan,<br><br>    Defendants. | Case No. 2:22-cv-12951<br><br>HON. JONATHAN J.C. GREY<br><br><br>**DEFENDANT CITY OF DETROIT'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT** |
| City of Detroit Law Department<br>Charles N. Raimi (P29746)<br>Jesse Halfon (P66936)<br>2 Woodward Avenue, Ste. 500<br>Detroit, MI 48226<br>raimic@detroitmi.gov<br>jesse.halfon@detroitmi.gov<br>(313) 237-5244<br>*Attorneys for Defendant City of Detroit* | Miller, Canfield, Paddock and Stone, P.L.C.<br>Richard W. Warren (P63123)<br>Kimberly M. Coschino (P83086)<br>150 West Jefferson Ave., Suite 2500<br>Detroit, Michigan 48226<br>(313) 963-6420<br>warren@millercanfield.com<br>coschino@millercanfield.com<br>*Attorneys for Defendant City of Detroit* |

## DEFENDANT CITY OF DETROIT'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(1) & 12(B)(6)

Defendant, City of Detroit ("City"), through its attorneys, Miller, Canfield, Paddock and Stone, PLC, respectfully moves to dismiss claims in Plaintiffs' Second Amended Complaint and Jury Demand (the "Second Amended Complaint") against the City under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure for the following reasons:

1.      Consistent with the Local Rules, the undersigned counsel certifies that counsel communicated <u>in writing</u> with opposing counsel, explaining the nature of the relief to be sought by way of this motion, explaining precisely the basis for this Motion and seeking concurrence in the relief.  Opposing counsel thereafter expressly denied concurrence.

2.      On December 6, 2022, Plaintiffs filed a vague, conclusory, and non-specific complaint against Defendant City, along with Defendants state of Michigan, Wayne County, Wayne County Building Authority, Detroit Building Authority and Detroit-Wayne Joint Building Authority alleging intense hodgepodge of claims involving numerous buildings around the state of Michigan. (ECF No. 1.)

3.      In lieu of filing an answer, the Defendant State of Michigan filed a Motion highlighting fatal laws in Plaintiffs' Complaint and asking this Honorable Court to dismiss Plaintiffs' claims for failure to state a claim. (*See* ECF No. 29.)

4.      On March 16, 2023, this Court entered an Order advising Plaintiffs that they could either respond to the State's Motion in the usual course or could instead

file an Amended Complaint addressing any deficiencies identified in the State's motion in an amended complaint. (*See* ECF No. 31.)

5.    On April 28, 2023, Plaintiffs filed their First Amended Complaint alleging, *inter alia*, that Defendants violated Title II of the Americans with Disabilities Act ("ADA"), the Rehabilitation Act and Michigan's Persons with Disabilities Civil Rights Act ("PWDCRA"), as well as various state and local construction standards with respect to over 20 buildings and facilities across the state. (ECF No. 41.)

6.    On June 6, 2023 the City filed an Amended Motion to Dismiss First Amended Complaint (ECF No. 70) because Plaintiffs failed to plead a concrete, particularized injury and, thus, have failed to establish standing. Other Defendants filed similar motions. *See, e.g.*, Detroit Building Authority's Motion to Dismiss (ECF No. 70), State of Michigan's Motion to Dismiss (ECF No. 72); Detroit-Wayne Joint Building Authority's Motion to Dismiss (ECF No. 60); Wayne County and Wayne County Building Authority's Motion to Dismiss (ECF No. 64).

7.    On June 9, 2023, this Court again entered an Order advising Plaintiffs that they could either respond to the motions to dismiss or instead file an Amended Complaint addressing any deficiencies identified in the motions. (*See* ECF No. 77.)

8.     Rather than responding to Defendant's motions, on June 23, 2023 Plaintiffs filed a Second Amended Complaint (ECF No. 79) (the "Second Amended Complaint").

9.     Notwithstanding the foregoing chances to cure their deficiencies, Plaintiffs' Second Amended Complaint still fails to allege that Plaintiffs suffered any cognizable injury and thus does not meet the threshold standing requirement necessary for Plaintiffs to pursue their claims.

10.     Whether a party has standing is an issue of the court's subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). *Allstate Ins. Co. v. Global Med. Billing, Inc.*, 520 Fed. Appx. 409, 410–11 (6th Cir. 2013) (citing *Murray v. U.S. Dep't of Treasury*, 681 F.3d 744, 748 (6th Cir. 2012)).

11.     To establish the "irreducible constitutional minimum of standing" under Article III, a plaintiff must show: (1) that he suffered actual injury; (2) that the injury is traceable to the challenged action of the defendant; and (3) that the injury may be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

12.     As in any other case in federal court, "named plaintiffs who represent a class must allege and show that they" personally have standing under Article III to bring suit; it is not enough to show that "other, unidentified members of the class to

which they belong and which they purport to represent" will eventually have standing. *Lewis v. Casey*, 518 U.S. 343, 357 (1996) (internal quotes omitted).

13.     Plaintiffs do not allege that they themselves were prohibited from participating in any City program, service, or activity and so fail to demonstrate that they suffered a concrete or particularized injury necessary to establish standing. Because Plaintiffs cannot meet the threshold standing requirement necessary to pursue their claims, this Court should dismiss Plaintiffs' claims pursuant to Rule 12(b)(1).

14.     Further, even if Plaintiffs could establish the requisite standing, all of Plaintiffs' claims against the City continue to fall far short of satisfying basic notice-pleading requirements under Federal Rule of Civil Procedure 8(a) and the U.S. Supreme Court's decisions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

15.     Under the four statutes on which Plaintiffs base their claims, Plaintiffs must demonstrate that the City, if it is subject to those statutes, prohibited Plaintiffs from participating in or receiving some benefit because of their disability.

16.     Outside of declaring that Plaintiffs are disabled and broadly alleging that various buildings are noncompliant with state and federal law, Plaintiffs' Second Amended Complaint fails to provide the "when, where, in what or by whom"

4

required to state a claim under Rule 12(b)(6). *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 373 (6th Cir. 2011).

17.    Plaintiffs do not allege that they were prohibited from participating in any City of Detroit program, service, or activity and so fail to provide the "when, where, in what or by whom" necessary to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6).

18.    For the City to properly defend this matter, Plaintiffs  must be able to identify the background and nature of the claim(s) against the City; in essence, what exactly the City did wrong and why Plaintiffs are entitled to the legal recourse they claim.  Despite multiple chances to provide this basic information, Plaintiffs have failed.  Accordingly, dismissal of their claims against the City is warranted.

19.    Defense counsel sought concurrence in the relief requested in this Motion by explaining the legal basis for it to counsel for Plaintiffs.  After taking time to consider the legal basis, Plaintiffs denied that request for concurrence.

For the foregoing reasons, as more fully set forth in its supporting brief, the City respectfully requests that this Honorable Court dismiss Plaintiffs' Second Amended Complaint against the City for either (a) lack of subject matter jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(1) or (b) failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6). In the alternative, Plaintiffs should be compelled to provide a

more definitive statement as to all of their claims so the City can be appropriately apprised of the allegations against it and defend this matter appropriately.

LOCAL RULE CERTIFICATION:  I, <u>Richard W. Warren</u>, certify that this document complies with Local Rule 5.1(a), including: double-spaced (except for quoted materials and footnotes); at least one inch margins on the top, sides, and bottom; consecutive page numbering; and type size of all text and footnotes that is no smaller than 10-1/2 characters per inch (for non-proportional fonts) or 14 point (for proportional fonts). I also certify that it is the appropriate length. Local Rule 7.1(d)(3).

Respectfully submitted,
**MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.,**

By:  /s/ Richard W. Warren
Richard W. Warren (P63123)
Kimberly M. Coschino (P83086)
*Attorneys for Defendant City of Detroit*
150 West Jefferson, Suite 2500
Detroit, Michigan 48226
Telephone: (313) 963-6420
Fax: (313) 496-7500
warren@millercanfield.com
coschino@millercanfield.com

By: s/*Charles N. Raimi*
City of Detroit Law Department
Charles N. Raimi (P29746)
Jesse Halfon (P66936)
2 Woodward Avenue, Ste. 500
Detroit, MI 48226
raimic@detroitmi.gov

6

jesse.halfon@detroitmi.gov
(313) 237-5244

Dated: July 14, 2023                          *Attorneys for Defendant City of Detroit*

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

| | |
|---|---|
| JILL BABCOCK, JAIME JUNIOR and ASHLEY JACOBSON, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> STATE OF MICHIGAN, COUNTY OF WAYNE, CITY OF DETROIT, WAYNE COUNTY BUILDING AUTHORITY, DETROIT BUILDING AUTHORITY, DETROIT-WAYNE JOINT BUILDING AUTHORITY and HINES, out of state corporation authorized to do business in Michigan, <br><br> Defendants. | Case No. 2:22-cv-12951 <br><br> HON. JONATHAN J.C. GREY <br><br><br> **BRIEF IN SUPPORT OF DEFENDANT CITY OF DETROIT'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT** |
| City of Detroit Law Department <br> Charles N. Raimi (P29746) <br> Jesse Halfon (P66936) <br> 2 Woodward Avenue, Ste. 500 <br> Detroit, MI 48226 <br> raimic@detroitmi.gov <br> jesse.halfon@detroitmi.gov <br> (313) 237-5244 <br> *Attorneys for Defendant City of Detroit* | Miller, Canfield, Paddock and Stone, P.L.C. <br> Richard W. Warren (P63123) <br> Kimberly M. Coschino (P83086) <br> 150 West Jefferson Ave., Suite 2500 <br> Detroit, Michigan 48226 <br> (313) 963-6420 <br> warren@millercanfield.com <br> coschino@millercanfield.com <br> *Attorneys for Defendant City of Detroit* |

**BRIEF IN SUPPORT OF DEFENDANT CITY OF DETROIT'S MOTION
TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT
PURSUANT TO FED. R. CIV. P. 12(B)(1) & 12(B)(6)**

**ORAL ARGUMENT REQUESTED**

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................ iii

STATEMENT OF ISSUES PRESENTED ............................................................ 1

INTRODUCTION ................................................................................................ 3

STATEMENT OF MATERIAL FACTS ............................................................. 4

LEGAL STANDARD .......................................................................................... 6

ARGUMENT ....................................................................................................... 9

   I.    Plaintiffs Lack Standing to Maintain Their Claims Against the City ........... 9

   II.   Plaintiffs Fail to State Claims Against the City Under the ADA, the Rehabilitation Act, or the PWDCRA. ...................................................... 12

       A.   Plaintiffs Fail to State a Claim under Title II of the ADA ................... 14

       B.   Plaintiffs Fail to State a Claim under Michigan's PWDCRA .............. 17

       C.   Plaintiffs Fail to State a Claim Under the Rehabilitation Act .............. 18

   III.  The Statutes Identified in Count IV Lack a Private Right of Action and Must Be Dismissed ........................................................................... 20

   IV.  Plaintiffs Fail to State a Claim for Sex Discrimination Under ELCRA ...... 22

CONCLUSION ................................................................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*,
  727 F.3d 502 (6th Cir. 2013) ................................................................7

*Allstate Ins. Co. v. Global Med. Billing, Inc.*,
  520 Fed. Appx. 409 (6th Cir. 2013) ...............................................3, 6

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ......................................................................4, 7

*Babcock v. Michigan*,
  812 F.3d 531 (6th Cir. 2016) ....................................................15, 16

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................4, 7, 12

*Brintley v. St. Mary Mercy Hosp.*,
  904 F. Supp. 2d 699 (E.D. Mich. 2012), aff'd, 545 F. App'x 484
  (6th Cir. 2013) ............................................................................23

*Center for Bio-Ethical Reform v. Napolitano*,
  648 F.3d 365 (6th Cir. 2011) .....................................................8, 13

*Claire-Ann Co. v. Christenson and Christenson, Inc.*,
  566 N.W.2d 4 (Mich. App. 1997) ...................................................20

*Cohan v. California Pizza Kitchen, Inc.*,
  No. 18-CV-12080-VAR, 2019 WL 4189482 (E.D. Mich. Sept. 4,
  2019) ........................................................................................12

*Compuware Corp. v. International Business Machines*,
  259 F.Supp.2d 597 (E.D.Mich.2002) ...............................................8

*Consolidated Rail Corp. v. Darrone*,
    465 U.S. 624 (1984)..............................................................................................19

*Donald v. Sybra, Inc.*,
    667 F.3d 757 (6th Cir. 2012) ...............................................................................17

*Farah v. Martin*,
    122 F.R.D. 24 (E.D. Mich. 1988) ...........................................................................8

*Gallagher v. Pontiac Sch. Dist.*,
    807 F.2d 75 (6th Cir. 1986) .................................................................................19

*Keller v. Chippewa Cnty., Michigan Bd. of Commissioners*,
    860 F. App'x 381 (6th Cir. 2021), *cert. denied sub nom. Keller v.
    Chippewa Cnty. Bd. of Commissioners*, 211 L. Ed. 2d 476, 142 S.
    Ct. 761 (2022) .....................................................................................................13

*Landefeld v. Marion Gen. Hosp. Inc.*,
    994 F.2d 1178 (6th Cir. 1993) .............................................................................18

*Lane v. KinderCare Learning Centers, Inc.*,
    588 N.W.2d 715 (Mich. App., 1998).....................................................................20

*Lleras-Rodriguez v. Geo Grp., Inc.*,
    No. 1:21-CV-787, 2022 WL 2951530 (W.D. Mich. July 26, 2022) ....................14

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)................................................................................................9

*Maat v. Cnty. of Ottawa*,
    No. 1:12-CV-1194, 2014 WL 1255981 (W.D. Mich. Mar. 26,
    2014), *aff'd sub nom. Maat v. Cnty. of Ottawa, Michigan*, 657 F.
    App'x 404 (6th Cir. 2016) ....................................................................................19

*Mahon v. Crowell*,
    295 F.3d 585 (6th Cir. 2002) ...............................................................................18

*Mote v. City of Chelsea*,
    252 F. Supp. 3d 642 (E.D. Mich. 2017) ...............................................................16

*New Albany Tractor v. Louisville Tractor*,
    650 F.3d 1046 (6th Cir. 2011) ...............................................................................8

*Rakowski v. Sarb*,
  713 N.W.2d 787 (Mich. Ct. App. 2006)............................................................22

*Schroeder v. City of Chicago*,
  715 F. Supp. 222 (N.D. Ill. 1989), aff'd, 927 F.2d 957 (7th Cir.
  1991) ................................................................................................................19

*Simpson-Vlach v. Michigan Dep't of Educ.*,
  616 F. Supp. 3d 711 (E.D. Mich. 2022), aff'd, No. 22-1724, 2023
  WL 3347497 (6th Cir. May 10, 2023) .................................................................7

*Steger v. Franco, Inc.*,
  228 F.3d 889 (8th Cir. 2000) ...........................................................................11

*Tennessee v. U.S. Dep't of State*,
  329 F. Supp. 3d 597 (W.D. Tenn. 2018) .............................................................7

*Vansteenkiste v. Lakeside Mall, LLC*,
  No. 12-CV-15055, 2014 WL 2744172 (E.D. Mich. June 17, 2014).................21

**Statutes**

29 U.S.C. § 794(a)(b)(1) ......................................................................18, 19

42 U.S.C. § 12132 .......................................................................................14

Americans with Disabilities Act (ADA)...........................................................*passim*

Civil Rights Act .......................................................................................4, 5

Claim Under the Rehabilitation Act ..............................................................18, 20

Michigan Elliott-Larsen Civil Rights Act (ELCRA).................................2, 5, 22, 23

MCL 37.1302 ...............................................................................................17

MCL 37.2302 ...............................................................................................22

MCL 125.1353 .............................................................................................21

MCL 125.1356 .............................................................................................21

MCL 125.1361 .............................................................................................21

Michigan Barrier Free Act ........................................................................2, 4

Michigan Barrier Free Act, the Michigan Sidewalks Act ........................................20

Michigan Barrier Free Design Act, MCL 125.1351 et seq......................................21

Michigan Sidewalks Act ..................................................................................2, 4, 20

Persons With Disabilities Act (PWDCRA) .....................................................*passim*

Rehabilitation Act .............................................................................................*passim*

Rehabilitation Act and Michigan's Persons with Disabilities Civil
    Rights Act ......................................................................................................3

State Construction Code Act, MCL 125.1501 *et seq*..............................................22

**Court Rules**

Federal Rule of Civil Procedure 8(a) ...................................................................4, 12

Federal Rule of Civil Procedure 12(e) ........................................................................8

Federal Rule of Civil Procedure 12(b)(1)(6) .................................................1, 6, 24

Rule 12(b)(6)............................................................................................................7, 24

**Other Authorities**

28 C.F.R. § 35.104 .....................................................................................................15

28 C.F.R. § 35.150(a)(1) ...........................................................................................14

28 C.F.R. § 35.150(b)(1).............................................................................................14

## <u>STATEMENT OF ISSUES PRESENTED</u>

I.      Whether Plaintiffs' Second Amended Complaint should be dismissed for lack of subject matter jurisdiction pursuant to FRCP 12(b)(1) where Plaintiffs' Second Amended Complaint does not allege that Plaintiffs were prohibited from participating any City of Detroit program, service, or activity and so fails to demonstrate that they themselves suffered a concrete or particularized injury necessary to establish standing?

Defendant City Answers: Yes

Plaintiffs Answer: No

This Court Should Answer: Yes

II.     Where Plaintiffs do not allege that they themselves were prohibited from participating any City program, service, or activity, should this Court dismiss Plaintiffs' claims under the ADA (Count I), the Rehabilitation Act, (Count II) and PWDCRA (Counts III) against Defendant City because the Second Amended Complaint fails to put the City on fair notice of what Plaintiffs' claims are against it and the grounds upon which they rest, and therefore fails to state a claim for relief?

Defendant City Answers: Yes

Plaintiffs Answer: No

This Court Should Answer: Yes

III.     Should this Court dismiss Plaintiffs' claims under the Michigan Barrier Free Act, Michigan Sidewalks Act, Michigan Construction Code, Detroit Construction Code, and applicable International Building and Plumbing Codes (Count IV) against Defendant City because the none of the cited statutes provide a private cause of action, and therefore Plaintiffs fail to state a claim for relief?

Defendant City Answers: Yes

Plaintiffs Answer: No

This Court Should Answer: Yes

IV.     Should this Court dismiss Plaintiffs' claims for sex discrimination under the Michigan Elliott-Larsen Civil Rights Act (Count V) against Defendant City because Plaintiffs fail to allege that City denied them access to any place of public accommodation or public service on the basis of sex, and therefore Plaintiffs fail to state a claim for relief?

Defendant City Answers: Yes

Plaintiffs Answer: No

This Court Should Answer: Yes

**INTRODUCTION**

Plaintiffs Jill Babcock ("Babcock"), Ashley Jacobson ("Jacobson") and Marguerite ("Maddox," collectively "Plaintiffs") bring this purported class action against Defendant City of Detroit ("City") alleging that the City owns, leases, and operates various buildings and facilities that allegedly prevent or create difficulties in accessibility in violation of federal and state disability laws.

But Plaintiffs' claims fail because they pled no cognizable injury attributable to the City and cannot meet the threshold statutory standing requirement to pursue their claims. This case represents an attempt to artificially expand the provisions of the Americans with Disabilities Act ("ADA"), the Rehabilitation Act and Michigan's Persons with Disabilities Civil Rights Act ("PWDCRA") to allow suits based upon generalized assertions of failure to comply with construction standards without identifying the particularized injury suffered by the plaintiff, or exactly how the City allegedly caused those injuries.  Instead, the Second Amended Complaint makes 138 pages of scattershot allegations against all Defendants generally, never specifying how the City is responsible for their alleged injuries.

Notably, the Second Amended Complaint does not assert that Plaintiffs themselves sought and were denied access to any City program, service, or activity. Consequently, they have failed to plead a concrete, particularized injury and, thus, have failed to establish standing. Further, even if Plaintiffs had standing, the Second

Amended Complaint does not state a cognizable claim under the ADA, the Rehabilitation Act, or PWDCRA as a matter of law because the threadbare factual allegations are so unparticular that they violate the dictates of *Twombly/Iqbal* and cannot survive a motion to dismiss. Plaintiffs fail to allege that they were denied access to or receipt of services, programs, or activities. For all these reasons, Plaintiffs' claims fail as a matter of law and this Court should dismissed them with prejudice.

## STATEMENT OF MATERIAL FACTS

Plaintiffs' Second Amended Complaint asserts claims against four defendants—the City, the state of Michigan, Wayne County, and Detroit-Wayne Joint Building Authority.[1] Plaintiffs allege that these Defendants violated various state and federal statutes with respect to numerous buildings around the City of Detroit and elsewhere throughout the State of Michigan. Specifically, Plaintiffs' Second Amended Complaint asserts violations of: (1) Title II of the Americans with Disabilities Act ("ADA") (Count I); (2) Section 504 of the Rehabilitation Act (Count II); (3) Michigan's Persons with Disabilities Civil Rights Act ("PWDCRA") (Count III); (4) various state-law construction statutes including the Michigan Barrier Free Act, Michigan Sidewalks Act, Michigan Construction Code, Detroit Construction

---

[1] Plaintiffs' Second Amended Complaint does not list the Wayne County Building Authority or Detroit Building Authority as defendants.

Code, and applicable International Building and Plumbing Codes (Count IV); and

(5) Michigan's Elliott-Larsen Civil Rights Act ("ELCRA") (Count V).

Among other things, Plaintiffs allege non-compliance based on: (a) access to

toilets; (b) sidewalks and ramps; (c) service counters; (d) parking and drop off areas;

(e) stairways; (f) "emergency protocols;" (g) voting registrations and polling places;

and (g) interior doors at over 20 different buildings across the state. (*See* Second

Am. Compl., ECF No. 79, PageID.1328-62 , at ¶¶ 109-158). Specifically, Plaintiffs

point to alleged violations at the Coleman A. Young Municipal Center ("CAYMC")

(*id*. at ¶¶ 111-127); the Guardian Building (*id*. at ¶ 141); the Frank Murphy Hall of

Justice (*id*. at ¶ 128); the State of Michigan 36th Judicial District Court-Detroit

Courthouse (*id*. at ¶ 130); the Lincoln Hall of Juvenile Justice (*id*. at ¶ 132); the State

of Michigan Third Judicial Circuit Court Family Court and Friend of the Court

Division Offices and Courtrooms located in the Penobscot Building (*id*. at ¶ 146);

the Wayne County Register of Deeds and the Wayne County Treasurer's Office

located at 400 Monroe, Detroit (*id*. at ¶ 144); and the Wayne County Criminal Justice

Center under construction at 1301 East Warren Avenue, Detroit (*id*. at ¶ 134).

Plaintiffs allege that "[u]nlike able-bodied persons," Plaintiffs "are not able to

'get around' within the community," and are unable to "gain simple access into these

buildings" or "maneuver or navigate within the buildings." (Second Am. Compl.,

ECF No. 79, PageID.1299, at ¶ 65.) However, Plaintiffs do not assert that they have

been denied access to any particular program, benefit, or service. Further, while Plaintiffs allege design flaws to facilities, sidewalks,[2] etc., they fail to allege sufficient facts to demonstrate these issues are a result of the City's conduct or that the purported defects prevented Plaintiffs from availing themselves of the City's services, programs, and activities.

## LEGAL STANDARD

The City seeks dismissal of Plaintiffs' Amended Complaint under Rule 12(b)(1) and (6) of the Federal Rules of Civil Procedure.

Whether a party has standing is an issue of the Court's subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). *Allstate Ins. Co. v. Global Med. Billing, Inc.*, 520 Fed. Appx. 409, 410–11 (6th Cir. 2013) (citing *Murray v. U.S. Dep't of Treasury*, 681 F.3d 744, 748 (6th Cir. 2012)). "Proper jurisdiction is a requirement in determining the validity of a claim, and as such, Rule 12(b)(1) motions must be considered prior to any other challenges." *Tennessee v.*

---

[2] On August 31, 2006, a Settlement Order was entered in the Eastern District of Michigan case titled *Center for Community Access and Michigan Paralyzed Veterans of America v. City of Detroit*; case number 2:05-cv-73475, addressing the City's obligations to construct curb ramps for sidewalks when doing road work in the vicinity. After 16 years of compliance, the case was ultimately dismissed with prejudice on April 29, 2022. (*See Center For Community Access v. City of Detroit*; case number 2:05-cv-73475, ECF No. 131, PageID.1876.) The Court should order Plaintiffs to provide a more definite statement so the Court and parties can better assess whether Plaintiffs are attempting to attack what amounts to dismissed claims regarding the City's sidewalks.

*U.S. Dep't of State*, 329 F. Supp. 3d 597, 609–10 (W.D. Tenn. 2018), *aff'd, sub nom*

*State by & through Tennessee Gen. Assembly v. United States Dep't of State*, 931

F.3d 499 (6th Cir. 2019). "If a plaintiff cannot establish constitutional standing, his

or her claim must be dismissed for lack of subject matter jurisdiction." *Simpson-*

*Vlach v. Michigan Dep't of Educ.*, 616 F. Supp. 3d 711, 724 (E.D. Mich. 2022),

aff'd, No. 22-1724, 2023 WL 3347497 (6th Cir. May 10, 2023) (citations omitted).

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim upon

which relief can be granted, Plaintiffs must assert sufficient factual allegations to

establish that her claims are "plausible on [their] face." *Bell Atlantic Corp. v.*

*Twombly*, 550 U.S. 544, 556 (2007). Following the two-step process set forth in

*Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009), courts first disregard "mere recitals

of the elements of a cause of action, supported by mere conclusory statements."

Thus, allegations based upon "information and belief" are insufficient because they

"are precisely the kinds of conclusory allegations that *Iqbal* and *Twombly*

condemned and thus told [courts] to ignore when evaluating a complaint's

sufficiency." *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502,

506 (6th Cir. 2013). Second, courts review any remaining allegations to determine

whether they "plausibly" entitle the plaintiff to relief. *Iqbal*, 556 U.S. at 680 (quoting

*Twombly*, 550 U.S. at 567). "[W]here the well-pleaded facts do not permit the court

to infer more than the mere possibility of misconduct, the complaint has alleged—

but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id*. at 679 (quoting FRCP 8(a)(2)).

The Sixth Circuit has explained that "the combined effect of *Twombly* and *Iqbal* require [a] plaintiff to have greater knowledge now of factual details in order to draft a 'plausible complaint.'" *New Albany Tractor v. Louisville Tractor*, 650 F.3d 1046, 1051 (6th Cir. 2011). In other words, a "plaintiff may not use the discovery process to obtain these facts after filing suit." *Id*. Accordingly, a Complaint that does not provide the "when, where, in what or by whom" to support conclusory allegations fails to state a claim. *Center for Bio-Ethical Reform v. Napolitano*, 648 F.3d 365, 373 (6th Cir. 2011).

Federal Rule of Civil Procedure 12(e) allows a defendant to file a motion for a more definite statement if a pleading "is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading." Fed. R. Civ. P. 12(e). A motion for a more definite statement is appropriate where "there is a major ambiguity or omission in the complaint that renders it unanswerable." *Farah v. Martin*, 122 F.R.D. 24, 25 (E.D. Mich. 1988). However, "[p]olishing the pleadings by means of motion practice is rarely worth the effort." *Compuware Corp. v. International Business Machines*, 259 F.Supp.2d 597, 600 (E.D.Mich.2002).

## ARGUMENT

### I. Plaintiffs Lack Standing to Maintain Their Claims Against the City

As a preliminary matter, despite the cosmetic changes made in Plaintiffs' Second Amended Complaint and the numerous chances they have had to fix the defects in their various Complaints, Plaintiffs still fail to identify precisely how they suffered any concrete or particularized injury sufficient to establish Article III standing. Thus, Plaintiffs' claims must be dismissed due to lack of subject matter jurisdiction. The United States Constitution's "central mechanism of separation of powers depends largely upon common understanding of what activities are appropriate to legislatures, to executives, and to courts." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559 (1992). One of the hallmarks of "setting apart the 'Cases' and 'Controversies' that are of the justiciable sort referred to in Article III…is the doctrine of standing" and its "core component…is an essential and unchanging part of the case-or-controversy requirement." *Id*.

To satisfy the "irreducible constitutional minimum of standing," a plaintiff must establish that: (1) they have suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent rather than conjectural or hypothetical; (2) that there is a causal connection between the injury and the defendant's alleged wrongdoing; and (3) that the injury can likely be redressed. *Lujan*, 504 U.S. at 560–61 (1992). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Id*. "Since they are not merely pleading requirements but rather an

indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive states of the litigation." *Id*.

Here, Plaintiffs lack Article III standing because they fail to identify an injury in fact. The statutes at issue —the ADA, the Rehabilitation Act and the PWDCRA— if applicable, prohibit the City from denying or preventing Plaintiffs from participating in or receiving benefits or services because of their disability. But the City has never denied such opportunities to Plaintiffs and they, therefore, do not have an injury to be redressed.  More importantly, Plaintiffs never allege that they were denied the opportunity to participate in or benefit from services, programs, or activities provided by the City. Further, not only do Plaintiffs fail to allege facts demonstrating that they themselves suffered a concrete or particularized injury but Plaintiffs also fail to allege what the City (or any other Defendant) did that caused them to suffer any injury in fact.

For example, Plaintiffs allege that "the City's failure to remove the entire curb on Woodward running north and south on the east edge of the Plaza, failure to remove other barriers to this permanent plaza, and failure to maintain the curb cut along Jefferson nearest CAYMC," allegedly hindered Plaintiff Babcock's ability to attend the Juneteenth Freedom Day events on June 16, 2023. But Plaintiff admits

that she was nevertheless still able to attend the Juneteenth Freedom Day events. (Second Am. Compl., ¶ 32, PageID.1277.)    Accordingly, by Plaintiff's own admission, there was no denial of her ability to participate or benefit from a service or program.    This pattern of a failure to demonstrate such denials is replete throughout Plaintiffs' Second Amended Complaint, as it relates to the City.

Although Plaintiffs cite to various structural problems in broad terms—e.g., "decrepit, or poorly designed or maintained ramps and curb cuts" (*id.*, ECF No. 79, PageID.1322 ) or "doors which are heavy or lack openers" (*id.*) —Plaintiffs never allege that they sought and were denied access to a particular program, service, or activity. Instead, Plaintiffs broadly cite to the need to participate in several governmental functions, such as participating in judicial proceedings and paying taxes; but they fail to identify when, which buildings, and what specific services, programs, and activities of the City they were unable to access. (Second Am. Compl., ¶ 89-90, PageID.1312-13.)

Further, Plaintiffs' vague references to "accessibility requirements in the physical environment as to hearing, and vision impairments" (Second Am. Compl., at ¶ 96, PageID.1323 ), are similarly deficient because Plaintiffs have not pled that they themselves are hearing or vision impaired and so they lack standing to assert claims related to violations designed to protect persons with other types of disabilities, such as visually or hearing-impaired persons. *See e.g., Steger v. Franco,*

*Inc.,* 228 F.3d 889, 893 (8th Cir. 2000) (finding that a disabled plaintiff who was not blind "is not 'among the injured' with regard to ADA violations in the building that do not affect the blind," and that he therefore did not have standing as to those violations); *Cohan v. California Pizza Kitchen, Inc.*, No. 18-CV-12080-VAR, 2019 WL 4189482, at *3 (E.D. Mich. Sept. 4, 2019). In addition, Plaintiffs' Second Amended Complaint makes clear that even if Plaintiffs were "delayed or discouraged from attending other cultural activities and various restaurants in Detroit and Wayne County" they still had the opportunity to participate in or benefit from these services, programs, or activities. (Second Am. Compl., at ¶ 35, PageID.1278.)

Given that Plaintiffs fail to allege any concrete injury, they do not demonstrate the necessary standing to bring their claims and their claims must be dismissed as to the City.

## II.   Plaintiffs Fail to State Claims Against the City Under the ADA, the Rehabilitation Act, or the PWDCRA.

Even if Plaintiffs could establish standing, this Court should still dismiss Plaintiffs' Second Amended Complaint for failing to comply with the mandates of Federal Rule of Civil Procedure 8(a) post-*Twombly* and *Iqbal*. Under these cases, the City is entitled to "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 559 (2007). Plaintiff's Second Amended Complaint does not provide such notice.

For example, Plaintiffs have included allegations that they "have lost control of their bladder or bowel due to Defendants' inaccessible toilet facilities within the past three years" but they still fail to identify at which buildings and on what date these incidents allegedly occurred. (Second Am. Compl., ¶ 59.) "But '[c]onclusory statements unadorned with supporting facts are insufficient to establish a factual dispute that will defeat summary judgment." *Keller v. Chippewa Cnty., Michigan Bd. of Commissioners,* 860 F. App'x 381, 387 (6th Cir. 2021), *cert. denied sub nom. Keller v. Chippewa Cnty. Bd. of Commissioners*, 211 L. Ed. 2d 476, 142 S. Ct. 761 (2022) (citing *Alexander v. CareSource*, 576 F.3d 551, 560 (6th Cir. 2009)) (finding that inmates "bare assertion that he had a 'hard time' getting to the toilet" was insufficient to withstand summary judgment).

Under the three main statutes on which Plaintiffs base their claims, Plaintiffs must demonstrate that the City prohibited Plaintiffs from participating in or receiving any benefit or service because of their disability. Plaintiffs do not allege that the City prohibited them from participating in any City program, service, or activity and thus the Second Amended Complaint fails provide the "when, where, in what or by whom" necessary to survive a motion to dismiss. *Center for Bio-Ethical Reform*, 648 F.3d at 373.

## A.    Plaintiffs Fail to State a Claim under Title II of the ADA

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. However, because facilities and services are analytically distinct terms, to maintain a cause of action under 42 U.S.C. § 12132, a plaintiff must allege a denial of access to a service, program, or activity; it is insufficient to merely plead that a facility, in isolation, is inaccessible. While the City must operate each service, program, or activity so that the service, program, or activity, when viewed in its entirety, is readily accessible to and usable by individuals with disabilities, 28 C.F.R. § 35.150(a)(1), the City is not required to make changes to existing facilities where program access requirements are met. 28 C.F.R. § 35.150(b)(1).

Therefore, to state a claim under Title II, Plaintiffs must show: (1) they are qualified individuals with a disability; (2) the City is subject to the ADA; and (3) Plaintiffs were denied the opportunity to participate in or benefit from services, programs, or activities provided by the City. *Lleras-Rodriguez v. Geo Grp., Inc.*, No. 1:21-CV-787, 2022 WL 2951530, at *5 (W.D. Mich. July 26, 2022).

Plaintiffs' continued failure to identify specific City services, programs, or activities they were denied is fatal to their claim. For example, in the Sixth Circuit

case *Babcock v. Michigan*, 812 F.3d 531 (6th Cir. 2016), the plaintiff worked in the Cadillac Place, a building owned and leased by a public entity, and alleged that various design features denied her equal access to her place of employment under Title II of the ADA and the Rehabilitation Act. *Id.* at 532. Like here, the plaintiff's allegations focused on various design features of the building including inadequate disabled parking, obstruction of curb ramps, ramp slopes at accessible building entrances, and lack of handrails at accessible entries. *Id*. at 533 n. 1. Also, like this case, the plaintiff did not allege any facts connecting these alleged design defects to any public services, programs, or activities. *Id.* The court dismissed the plaintiff's Title II claim because she had failed to identify "a service, program, or activity of a public entity" in the building she wanted to access but could not; instead, her complaint "only identifies facility-related issues." *Id*. at 538-39.

The court explained that a "review of the federal regulations promulgating the ADA reveals a distinction between services, programs, or activities and the facilities in which they are administered." *Id*. at 535. Facilities include, among other things, "buildings, structures, sites, complexes, equipment . . .roads, walks, passageways, parking lots . . ." 28 C.F.R. § 35.104. The regulations do not explicitly define the term "services," but in expressly doing so for "facility," they define what a service

is not—parking lots, roads, sidewalks,[3] and buildings are "facilities" and not "services, programs or activities." *Babcock*, 812 F.3d at 537-38. And "the focus of Title II is access to services, programs, and activities." *Id*. at 535.

Here, Plaintiffs similarly do not identify (1) what services, programs, or activities they have been deprived of; (2) when these alleged deprivations occurred; (3) the building where these deprivations occurred; and (4) the City's conduct that allegedly denied meaningful access. Instead, they simply point to assorted services offered at buildings such as the CAYMC and 36th District Court while failing to assert that they sought and were denied any of the services contained within those

---

[3] While *Mote v. City of Chelsea*, 252 F. Supp. 3d 642, 651 (E.D. Mich. 2017) suggests that providing and maintaining pedestrian sidewalks is itself a public service under the ADA, dismissal is still proper in this case because Plaintiffs do not specifically identify the pedestrian sidewalks at issue. Further, the circumstances here are distinguishable from *Mote* where the City of Chelsea "engaged in substantial construction or reconstruction projects within the city limits in recent years, and they repeatedly have failed or refused to incorporate specific accessibility features mandated by the [ADA Accessibility Guidelines]". *Id*. at 650. In contrast, as noted in the now-settled *Center for Community Access and Michigan Paralyzed Veterans of America v. City of Detroit* lawsuit and the resulting Consent Judgment and settlement (Case No. 2:05-cv-73475, ECF No. 14), the City of Detroit maintains a comprehensive resurfacing program that includes installing and upgrading sidewalks, curb ramps, or intersections in compliance with the ADA. From 2007 to 2022, the City diligently filed written reports with the Court each year listing (a) each street and limits resurfaced during the previous year, (b) each curb ramp altered, constructed, or resurfaced during the previous year, and (c) stating where new curb ramps have been installed as a part of projects to ensure ADA compliance. In light of these corrected issues, there is an even greater need to either dismiss Plaintiffs' claims or require Plaintiffs to clearly articulate precisely how they claim the City violated the ADA, and which sidewalks are in violation.

buildings. To the extent that Plaintiffs' Second Amended Complaint asserts the City denied Plaintiffs access to courts and court-related services, programs, and activities, Plaintiffs do not identify the City's actual conduct, much less  where and when the City's actual conduct denied Plaintiffs specific court or court-related services. Merely cataloguing available services in certain buildings without alleging facts demonstrating a specific denial of services is insufficient to state a claim and this Court should dismiss Plaintiffs' ADA claims against the City.

### B.     Plaintiffs Fail to State a Claim under Michigan's PWDCRA

Similar to the ADA, Michigan's PWDCRA provides that a person shall not "[d]eny an individual the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodation or public service because of a disability that is unrelated to the individual's ability to utilize and benefit from the goods, services, facilities, privileges, advantages, or accommodations or because of the use by an individual of adaptive devices or aids." MCL 37.1302.  The PWDCRA "substantially mirrors the ADA, and resolution of a plaintiff's ADA claim will generally, though not always, resolve the plaintiff's PWDCRA claim." *Donald v. Sybra, Inc.*, 667 F.3d 757, 764 (6th Cir. 2012). Plaintiffs' PWDCRA claim fails here for the same reasons their ADA claim fails— Plaintiffs have not and cannot assert that they sought and were denied meaningful access to a program or activity by the City.

### C.     Plaintiffs Fail to State a Claim Under the Rehabilitation Act

Section 504 of the Rehabilitation Act of 1973 states, that "[n]o otherwise

qualified individual with a disability in the United States . . . shall, solely by reason

of her or his disability, be excluded from the participation in, be denied the benefits

of, or be subjected to discrimination under any program or activity receiving Federal

financial assistance. . .." 29 U.S.C. § 794(a). Analysis of claims made under the

Rehabilitation Act and the ADA run parallel because the statutes contain nearly

identical language. *Mahon v. Crowell*, 295 F.3d 585, 589 (6th Cir. 2002).

To state a claim under the Rehabilitation Act, a plaintiff must allege facts

allowing for the reasonable inference that (1) plaintiff is disabled; (2) plaintiff is

otherwise qualified for participation in the program; (3) plaintiff is being excluded

from participation in, denied benefits of, or being subjected to discrimination under

the program solely due to a disability; and (4) the relevant program or activity is

receiving federal financial assistance. *Landefeld v. Marion Gen. Hosp. Inc.*, 994 F.2d

1178, 1180-1181 (6th Cir. 1993).

However, unlike the ADA, the Rehabilitation Act limits its application to

programs or activities receiving federal assistance. 29 U.S.C. § 794(a). Plaintiffs'

allege that "[e]ach of the public entity Defendants has received Federal funding" in

the form of pandemic relief. (Second Am. Comp. ¶ 160, PageID.1362.) Even so, the

Rehabilitation Act's ban on discrimination does not apply to all activities of every

18

recipient of federal funds; rather, the ban is "program-specific," such that the discrimination must relate to the federally funded program or activity. *Consolidated Rail Corp. v. Darrone*, 465 U.S. 624, 635–636 (1984). It's not enough "simply to show that some aspect of the relevant overall entity or enterprise receives or has received some form of input from the federal fisc"; instead, Plaintiffs must allege "that the program or activity with which he or she was involved, or from which he or she was excluded, itself received or was directly benefited by federal financial assistance." *Gallagher v. Pontiac Sch. Dist.*, 807 F.2d 75, 80 (6th Cir. 1986) (quoting *Brown v. Sibley*, 650 F.2d 760, 769 (5th Cir. 1981)).

Further, the definition of "programs or activities" does not refers to the City as a whole, but its subordinate components such as agencies or departments. 29 U.S.C. § 794(b)(1). Under this definition, the City cannot be a "program or activity." *See Schroeder v. City of Chicago*, 715 F. Supp. 222, 225 (N.D. Ill. 1989), aff'd, 927 F.2d 957 (7th Cir. 1991) ("The City of Chicago does not fit this statutory definition of "program or activity." The City is not a department or instrumentality of a local government. Rather, as a full-blown municipality, the City embodies an entire local government."); *Maat v. Cnty. of Ottawa*, No. 1:12-CV-1194, 2014 WL 1255981, at *7 (W.D. Mich. Mar. 26, 2014), *aff'd sub nom. Maat v. Cnty. of Ottawa, Michigan*, 657 F. App'x 404 (6th Cir. 2016) (explaining that "even in the case of assistance to a state or local government as a whole, § 504 still covers only the governmental

19

entity that distributes the assistance and any governmental entity to which the assistance is extended.").

Thus, the plain language of the statute makes clear that the City is not an appropriate Defendant and Plaintiffs fail to state a claim under the Rehabilitation Act.

## III.   The Statutes Identified in Count IV Lack a Private Right of Action and Must Be Dismissed

Plaintiffs' claims in Count IV are similarly defective and require dismissal because neither the Michigan Barrier Free Act, the Michigan Sidewalks Act, the Michigan Construction Code, the Detroit Construction Code, nor any International Building and Plumbing Codes provide a private cause of action.

When a statute creates a new right or imposes a new duty, a plaintiff has a private cause of action if (1) the statute expressly creates a private cause of action, or (2) a private cause of action can be inferred from the fact that the statute provides no adequate means of enforcement of its provisions. *Lane v. KinderCare Learning Centers, Inc.*, 588 N.W.2d 715, 718 (Mich. App., 1998). *See also Claire-Ann Co. v. Christenson and Christenson, Inc.*, 566 N.W.2d 4, 6 (Mich. App. 1997) ("Michigan jurisprudence holds that where a statute creates a new right or imposes a new duty unknown to the common law and provides a comprehensive administrative or other enforcement mechanism or otherwise entrusts the responsibility for upholding the

law to a public officer, a private right of action will not be inferred."). Here, none of the statues cited by Plaintiffs provide for a private cause of action.

For example, the Michigan Barrier Free Design Act, MCL 125.1351 et seq., requires that, with certain exceptions, any "public facility" or "facility used by the public" must be constructed to permit access by physically limited persons. But the Act does not expressly create a private cause of action. Furthermore, the Act contains adequate enforcement mechanisms such that no private cause of action can be inferred. In particular, "administration and enforcement of this act in respect to facilities used by the public are vested in the building and inspection departments or agencies of local administrative authority with the responsibility and duty of issuing building permits." MCL 125.1353. The Act also provides "the barrier free design board or the administrative authority charged with responsibility for enforcement" with the authority to "seek an injunction to halt construction or prevent the use of the public facility or facility used by the public until compliance with this act is obtained." MCL 125.1356.

Michigan's Sidewalks: Persons With Disabilities Act provides that sidewalks constructed after April 12, 1973, "shall be constructed in a manner that will facilitate use by persons with physical disabilities." MCL 125.1361.  However, as with the other claims alleged, there is no private cause of action under this Act. *Vansteenkiste v. Lakeside Mall, LLC*, No. 12-CV-15055, 2014 WL 2744172, at *9 (E.D. Mich.

June 17, 2014) ("Defendant argues that nothing in this provision creates a private cause of action. . .. The Court agrees. Plaintiff has provided no law holding that a private party may bring a cause of action under section 125.1361.")

Similarly, the Michigan State Construction Code, better known as the Stille-Derossett-Hale Single State Construction Code Act, MCL 125.1501 *et seq*., also does not create a private cause of action. "[N]othing in [the State Construction Code] gives rise to a civil duty to a private third party. Further, the purpose of the construction code act is not to protect the public against harm by establishing construction standards and an inspection regime, but merely to establish the authority of the director of the Department of Consumer and Industry Services, now the Department of Labor and Economic Growth, to 'prepare and promulgate' a state construction code consistent with, and protective of, the 'health, safety, and welfare of the occupants and users of buildings and structures.'" *Rakowski v. Sarb*, 713 N.W.2d 787, 794 n.4 (Mich. Ct. App. 2006). The same analysis applies to the local building, construction, and plumbing codes. Accordingly, this Court should dismiss Count IV of Plaintiffs First Amended Complaint for failure to state a claim.

## IV.    Plaintiffs Fail to State a Claim for Sex Discrimination Under ELCRA

Section 302 of Michigan's Elliott-Larsen Civil Rights Act ("ELCRA") prohibits prohibit sex discrimination in public accommodations and public services. *See* MCL 37.2302 (prohibiting the denial of "the full and equal enjoyment of the

goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation or public service because of ... sex ....") "The same requirements for establishing a claim of discrimination under other sections of the ELCRA apply in cases brought under § 37.2302." *Brintley v. St. Mary Mercy Hosp.*, 904 F. Supp. 2d 699, 726 (E.D. Mich. 2012), aff'd, 545 F. App'x 484 (6th Cir. 2013). To state a claim under the ELCRA's public accommodations provision, Plaintiffs "must establish four elements: (1) discrimination based on a protected characteristic (2) by a person, (3) resulting in the denial of the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations (4) of a place of public accommodation." *Brintley*, 904 F. Supp. 2d at 726.

Here, Plaintiffs are unable to state a claim as they fail to demonstrate that they were denied the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations at a place of public accommodation. Plaintiffs' allegation that  Defendants discriminated against Plaintiffs by failing to ensure that the women's restroom in the CAYMC basement was upgraded and made accessible when the men's restroom in the CAMYC basement was upgraded and made accessible is insufficient as a valid claim must be based on denial of access, not denial of upgrades. Because Plaintiffs never allege that the City prohibited them from utilizing the bathroom because of their gender, their claim necessarily fails.

## **CONCLUSION**

Wherefore, the City respectfully requests that this Honorable Court dismiss Plaintiff's Second Amended Complaint against the City in its entirety and with prejudice based on either (a) lack of subject matter jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(1) or (b) failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6). In the alternative, Plaintiff should be compelled to provide a more definitive statement so that the City can be appropriately apprised of the allegations against it and defend this matter appropriately.

**LOCAL RULE CERTIFICATION:** I, Richard W. Warren, certify that this document complies with Local Rule 5.1(a), including: double-spaced (except for quoted materials and footnotes); at least one inch margins on the top, sides, and bottom; consecutive page numbering; and type size of all text and footnotes that is no smaller than 10-1/2 characters per inch (for non-proportional fonts) or 14 point (for proportional fonts). I also certify that it is the appropriate length. Local Rule 7.1(d)(3).

Respectfully submitted,

**MILLER, CANFIELD, PADDOCK,
AND STONE, P.L.C.,**

By:    /s/ Richard W. Warren
Richard W. Warren (P63123)
Kimberly M. Coschino (P83086)
*Attorneys for Defendant City of Detroit*
150 West Jefferson, Suite 2500
Detroit, Michigan 48226
Telephone: (313) 963-6420
Fax: (313) 496-7500
warren@millercanfield.com
coschino@millercanfield.com

By: s/*Charles N. Raimi*
City of Detroit Law Department
Charles N. Raimi (P29746)
Jesse Halfon (P66936)
2 Woodward Avenue, Ste. 500
Detroit, MI 48226
raimic@detroitmi.gov
jesse.halfon@detroitmi.gov
(313) 237-5244
*Attorneys for Defendant City of Detroit*

Dated: July 14, 2023

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 14, 2023, the aforementioned

documents were filed using the court's ECF filing system, which will send

notification of such filing to all counsel of record.

By:    /s/ Richard W. Warren
Richard W. Warren (P63123)