## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**JILL BABCOCK, et al.,**                    Case No.: 2:22-cv-12951

      **Plaintiffs,**                    **JUDGE JONATHAN J.C. GREY**

**v.**

**STATE OF MICHIGAN, et al.,**

      **Defendants.**

## PLAINTIFFS' OPPOSITION TO DEFENDANT STATE OF MICHIGAN'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

Plaintiffs Jill Babcock, Marguerite Maddox, and Ashley Jacobson, through undersigned counsel, respectfully submit this Opposition to Defendant State of Michigan's Motion to Dismiss Plaintiffs' Second Amended Complaint ("Motion") (ECF No. 82). Plaintiffs' factual allegations properly state claims against the State of Michigan, and the Motion must be denied.

Plaintiffs incorporate by reference their Oppositions to the Motions to Dismiss filed by Defendants County of Wayne (ECF No. 88), City of Detroit (ECF No. 87), and Detroit Wayne Joint Building Authority (ECF No. 80), being filed concurrently with this Opposition.

## **TABLE OF CONTENTS**

**CONCISE STATEMENT OF ISSUES PRESENTED** .........................................3

**CONTROLLING OR MOST APPROPRIATE AUTHORITIES**......................4

**I.    STATEMENT OF FACTS** ...........................................................................5

**II.   PROCEDURAL BACKGROUND** ...............................................................8

**III.  STANDARD OF REVIEW** .........................................................................8

**IV.  LAW AND ARGUMENT**...........................................................................10

     A.  Plaintiffs state plausible claims upon which relief may be granted a against the State ...................................................................................10

        1.  Plaintiffs' ADA claims ...................................................................10

           a.Plaintiffs properly state a claim under the ADA .........................10

           b.Defendant State of Michigan does not enjoy Eleventh Amendment immunity to Plaintiffs' claims.........................................................14

        2.  Plaintiffs state plausible Rehabilitation Act claims against the State . ...........................................................................................................22

     B.  Plaintiffs have standing to bring their federal claims .........................25

     C.  State statutory claims against the State................................................30

        1.  PDCRA claim..................................................................................30

        2.  Other State statutory claims ...........................................................30

     D.  Eleventh Amendment immunity to state law claims against the State ... ...............................................................................................................31

        1.  PDCRA claim..................................................................................31

        2.  Other State statutory claims ...........................................................31

     E.  Punitive damages .................................................................................31

**V.  CONCLUSION**...........................................................................................31

## <u>CONCISE STATEMENT OF ISSUES PRESENTED</u>

1.  Have Plaintiffs sufficiently plead claims upon which relief may granted?

2.  Do Plaintiffs have standing to bring their ADA and Rehabilitation Act claims?

3.  Does the State enjoy Eleventh Amendment immunity to Plaintiffs' claims?

4.  Are Plaintiffs entitled to seek punitive damages?

## **CONTROLLING OR MOST APPROPRIATE AUTHORITIES**

**Statutes:**

- 28 C.F.R. § 35.130
- 28 C.F.R. § 35.149
- 28 C.F.R. § 35.150
- 28 C.F.R. § 35.151
- Michigan Constitution of 1963, Art. 6
- Persons with Disabilities Civil Rights Act, M.C.L. 37.1101 *et seq.*
- Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 *et seq.*
- Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq.*

**Cases:**

- *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)
- *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)
- *Bickerstaff v. Lucarelli*, 830 F.3d 388 (6th Cir. 2016)
- *Biden v. Nebraska*, 600 U.S. ___ (2023)
- *Carney v. Adams*, 592 U.S. ___ (2020)
- *Conley v. Gibson*, 355 U.S. 41 (1957)
- *Directv, Inc. v. Treesh*, 487 F.3d 471 (6th Cir. 2007)
- *G.C. v. Owensboro Pub. Sch.*, 711 F.3d 623 (6th Cir. 2013)
- *In re Lafayette Towers*, 200 Mich. App. 269 (1993)
- *Landefeld v. Marion Gen. Hosp. Inc.*, 994 F.2d 1178, 1180-1181 (6th Cir. 1993)
- *Livingston City v. Livingston Circuit Judge*, 393 Mich. 265, 279 (1975)
- *Mote v. City of Chelsea*, 252 F. Supp. 3d 642 (E.D. Mich. 2017)
- *Shotz v. Cates,* 256 F.3d 1077 (11th Cir. 2001)
- *Skaff v. Meridien North America*, 506 F.3d 832 (9th Cir. 2007)
- *Tennessee v. Lane*, 541 U.S. 509 (2004)
- *Vest v. Resolute FP US Inc.*, 905 F.3d 985 (6th Cir. 2018)
- *Wayne Circuit Judges v. Wayne Co.*, 383 Mich. 10; 172 N.W.2d 436 (1969)

## I.   STATEMENT OF FACTS

Plaintiffs filed this action to enforce civil rights of persons with disabilities against Defendants which have repeatedly and continuously harmed Plaintiffs by denying them their fundamental civil rights of due process and equal protection, to equal access to the State's court and public buildings and facilities. As to the State, these include public buildings at the Supreme Court Hall of Justice, the "Capitol Loop" and Kelly Executive Office Plaza in Lansing, and multiple deficient court facilities in Wayne County and several other counties located throughout Michigan. Sec. Am. Compl., ECF No. 79, ¶¶ 1-4,105-106,108-110,128-140,146-159.

With the other Defendants, the State is also responsible for Court facilities located in the  Coleman A. Young Municipal Center ("CAYMC"). ECF No. 79, ¶¶ 111-127. *See* Opposition to DWJBA's Motion to Dismiss, Sec. I, incorporated herein by reference.

### A. Plaintiff Jill Babcock

Plaintiff Jill Babcock is an attorney with disabilities who lives and works in the City of Detroit ("City"). Sec. Am. Compl., ECF No. 79, ¶¶ 22-26.  She is also employed by the City at the Coleman A. Young Municipal Center, but not as an attorney.  *Id*. at ¶ 26. State's failure to make its courts accessible has deprived her of jury duty in the 36th District Court and the Frank Murphy Hall of Justice, full

participation in a ceremony at the 54B District Court, and in general, the full development of her legal profession. *Id*. at ¶¶ 27-30.

### B. Plaintiff Marguerite Maddox

Plaintiff Marguerite Maddox resides in Detroit, and has Cerebral Palsy, cervical dystonia, hearing impairment, speech impairment, and some vision decline, and relies on her service animal, Scarlett. *Id*. at ¶¶ 37-39. She is and has been a disability advocate for decades, and due to State's accessibility violations at the "Capitol Loop" and CAYMC, in which the State has shared authority with the other defendants with 3rd Circuit Court having operations in both of its towers, like Jill Babcock, she has been deterred or prevented from visiting and fully participating in these activities. *Id*. at ¶¶ 42, 44-47, 49, 67, 80, 109-110.

### C. Plaintiff Ashley Jacobson

Plaintiff Ashley Jacobson has several physical disabilities and impairments including inter alia impairments of her bladder, spine, joints, and immune system. *Id*. at ¶ 51. Her impairments affect her strength, balance, restroom needs, dexterity, fine and gross motor skills, and her ability to stand for long periods of time, which often requires her to use a cane or wheelchair. *Id*. She also consistently utilizes other medical devices, catheters for personal use and bladder treatments, equipment, and mobility aids as her symptoms necessitate. *Id*. Like Plaintiff Babcock, she must also have immediate access to fully compliant toilet facilities for her personal health and to engage in her profession. *Id*. at ¶¶ 59, 65, 91-95.

6

Plaintiff Jacobson is an attorney licensed by the State of Michigan to practice law anywhere in the State. *Id.* at ¶¶ 51, 65.  However, she has had to turn down business and endure countless delays and inconveniences not experienced by able-bodied attorneys due to the State's discriminatory refusal to make their buildings accessible, which in turn impairs or interferes with her ability to be as efficient as her peers and competitors in the private licensed practice of law, thereby interfering with her ability to earn a living or make a profit. *Id.* at ¶¶ 52-57, 65-66, 68.  For at least the past two years, Jacobson has represented clients in the Forty Fourth Judicial Circuit and Juvenile Court and Fifty Third Judicial District Court, both located at its 204 S. Highlander Way building in Howell, Michigan.  *Id.* at 79, ¶ 53. In this building, she serves as a court-appointed juvenile court attorney representing juveniles and adults in delinquency and child protective proceedings. She also has clients who privately retained her and have pending cases in this building in both the District and Circuit courts. *Id.* The 204 S. Highlander Way building is not fully accessible. *Id.* For example, the most convenient, centrally located accessible toilet is closed to the public anytime there is a jury, so when it is necessary for her to use the toilet, she must interrupt or delay her appearance or consultations and literally hobble with her cane or other device to either end of the building. *Id.* at ¶ 54. This is often, including as recently April 2023. *Id.*

7

## II.   **PROCEDURAL BACKGROUND**

On December 6, 2022, Plaintiffs filed this action (ECF No. 1). In response, Defendant filed a Motion to Dismiss the Complaint on March 10, 2023 (ECF No. 26). This Court struck the Motion to Dismiss on March 13, 2023 (ECF No. 28). Defendant filed an Amended Motion to Dismiss on March 14, 2023 (ECF No. 29). Plaintiffs filed an Amended Complaint on April 28, 2023 (ECF No. 41). This Court filed an Order Denying without Prejudice Defendant's 29 Motion to Dismiss as Moot on May 2, 2023 (ECF No. 43). Defendant filed a Motion to Dismiss Amended Complaint on June 2, 2023 (ECF No. 61). This Court filed an Order Striking Documents (Dkts. 61, 62, 63, 65, 66) on June 6, 2023 (ECF No. 69). Plaintiffs filed a Second Amended Complaint on June 23, 2023 (ECF No. 79). Defendants filed a Motion to Dismiss second Amended Complaint on July 6, 2023 (ECF No. 82). Plaintiffs file this Opposition in response to that Motion.

## III.   **STANDARD OF REVIEW**

To survive a motion to dismiss, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The United States Supreme Court has held that a complaint is only properly dismissed under Rule 12(b)(6) when it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This plausibility standard is more than a sheer possibility, but it is not a

probability requirement. *See Twombly*, 550 U.S. at 556. A complaint states a plausible claim for relief, "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Vest v. Resolute FP US Inc*., 905 F.3d 985, 987 (6th Cir. 2018) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

In reading the alleged facts, the court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Bickerstaff v. Lucarelli*, 830 F.3d 388, 396 (6th Cir. 2016) (citing *Directv, Inc. v. Treesh*, 487 F.3d 471 (6th Cir. 2007)). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Therefore, "a well-pleaded complaint may proceed even if it strikes a savvy judge that the actual proof of the facts alleged is improbable and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal citations omitted).

## IV.   LAW AND ARGUMENT

### A. Plaintiffs state plausible claims upon which relief may be granted against the State

#### 1. *Plaintiffs' ADA claims*

##### a.   Plaintiffs properly state a claim under the ADA

The Michigan Constitution invests the judicial power of the State "exclusively in one court of justice, divided into one Supreme Court, one Court of Appeals, one trial court of general jurisdiction known as the circuit court, one probate court, and courts of limited jurisdiction that the Legislature may establish by a two-thirds vote of the members elected to, and serving in, each house." Const. 1963, Art. 6, § 1. The State contends that, despite clear and direct guidance and direction provided to the courts on their obligations under civil rights acts, including the Americans with Disabilities Act, it cannot be held individually or jointly liable for claims related to the services, programs, or benefits provided by every state trial court in each of its buildings or facilities and that it cannot be held liable for claims related to services, programs, or benefits it provides in state buildings or facilities.  The State contends that the holding in *Grand Traverse Co. v. State of Michigan*, 450 Mich. 457, 538 N.W.2d 1 (Mich. 1995), and subsequent cases give it authority for its erroneous position that Plaintiffs must file a claim against every single county in the State separately and individually, rather than the State as a whole.

While *Grand Traverse* and subsequent cases have analyzed the legislative intent of the "one court of justice" phrase and confirmed that its intent was not to give authoritative control over the funding at issue in that case in the Michigan court system, the Michigan Supreme Court distinguished that its conclusion did "not address whether certain constitutional provisions require the state to pay *some* components of trial court operations....Because plaintiffs are only seeking total funding, discussion of specific funding requests or mandates is not necessary." *Id.* at 459 n.1 (citing Const. 1963, art. 6, § 18, which addresses "the salaries of the justices of the Supreme Court, the judges of the Court of Appeals, the circuit judges, and the probate judges"). Plaintiffs, through their Second Amended Complaint, request a discussion of a specific funding request for ADA compliance; a discussion to which *Grand Traverse* would not apply.

Even if this Court accepts the State's analysis of *Grand Traverse* to be correct, Article VI, Section 4 of the Michigan Constitution nonetheless states that "the supreme court shall have general *superintending control* over all courts; power to issue, hear and determine prerogative and remedial writs; and appellate jurisdiction as provided by rules of the supreme court" (emphasis added). Const. 1963, Art. 6, § 4. "Superintending control is the proper vehicle to challenge the general practices of an inferior court." *In re Lafayette Towers*, 200 Mich. App. 269, 272 (1993) (citing *Detroit v. Recorder's Court Judge*, 85 Mich. App. 284, 289; 271 N.W.2d 202

(1978)). "The State Supreme Court has general superintending control over all inferior courts.... The Supreme Court's rulemaking power is constitutionally supreme in matters of practice and procedure." *Id.* at 275 (citing *Kirby v. Larson*, 400 Mich. 585, 598; 256 N.W.2d 400 (1977); M.C.L. 600.219; and M.S.A. 27A.219).

> The Supreme Court is charged with "the preclusive responsibility for efficient all-over-the-State judicial service." Wayne Circuit Judges v Wayne Co, 383 Mich. 10, 33; 172 NW2d 436 (1969) (opinion of Black, J., adopted by the Court on rehearing at 386 Mich. 1; 190 NW2d 228 [1971]). MCR 8.103 creates the office of State Court Administrator [("SCAO")][1], one of whose duties is to "approve and publish forms as required by these rules, and such other recommended forms as the administrator deems advisable." MCR 8.103(9). The form for "Demand and Order for Removal" in small claims divisions, on which plaintiff's counsel relied, was approved by the SCAO. Consistency of practice throughout Michigan regarding this matter is a desirable goal. Statewide use of a SCAO-approved form is preferable to conflicting practices in the various districts. See *In re Macomber*, 176 Mich. App 131, 136-137; 439 NW2d 307 (1989), rev'd on other grounds 436 Mich. 386; 461 NW2d 671 (1990) (probate court should use SCAO forms in compliance with MCL 600.855; MSA 27A.855 "for purposes of achieving uniformity of forms throughout the state").

*Id.* at 275-76. *Wayne Circuit Judges* creates an important holding that emphasizes the importance of efficiency of statewide judicial service. Statewide, courts are currently insufficient for persons with disabilities. Even if the State does not provide direct funding the courts for building renovations, the State still can approve and publish rules requiring the lower courts to comply with their rules as well as authoritative oversight of the inferior courts through the SCAO. The State has the

duty to ensure that their court services are sufficient to Plaintiffs and other individuals with disabilities. The State has failed both in its ability and its duty.

Moreover, "*Wayne Circuit Judges* has been read by some as an assertion of 'inherent power' in the judiciary to determine the day-to-day budgetary needs of the One Court of Justice and to require the other branches of government to fund those needs." *Livingston City v. Livingston Circuit Judge*, 393 Mich. 265, 279 (1975). "Courts do not possess inherent power to appropriate money or require expenditures for whatever needs the judge, the Court Administrator, and this Court on review, determine are reasonable. Inherent power exists only for true emergencies." *Id.* at 293. Courts do, however, possess "inherent power in cases of emergency, urgency, or necessity to compel appropriation of funds necessary to preserve the operation of the court." *Id.* at 289. In *Livingston*, the Court held that courts "can intervene under the legislative mandate on the counties or under inherent power and require the payment of...amounts as may be necessary to hire and retain the services of competent personnel." *Id.*

*Livingston* cautions that "[h]owever desirable or beneficial the sought-for change may be, it does not create an emergency justifying invocation of inherent power." *Id.* at 292. In these cases, although "the present system of local financing supplemented by state financing may not be optimally efficient and may allocate and distribute revenue in a less than satisfactory manner, it has enabled the one court of

13

justice to function 'serviceably as a co-equal branch of Michigan's government' for 138 years." However, in the present case, Plaintiffs have alleged that the State courts have not "operated" for persons with disabilities for several decades, and that Michigan's "one court of justice" is not "functioning serviceably" as it is excluding an entire population of citizens. Thus, the State must use its inherent powers to require the payment of funds necessary to "preserve the operation of the court."

For these reasons, Plaintiffs have stated a viable claim under the ADA and Defendant's Motion should be denied.

        b.   <u>Defendant State of Michigan does not enjoy Eleventh Amendment immunity to Plaintiffs' claims</u>

Pursuant to Title II of the ADA:

> A State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in Federal or State court of competent jurisdiction for a violation of this chapter. In any action against a State for a violation of the requirements of this chapter, remedies (including remedies both at law and in equity) are available for such a violation to the same extent as such remedies are available for such a violation in an action against any public or private entity other than a State.

42 U.S.C. § 12202.  In *Tennessee v. Lane*, 541 U.S. 509 (2004), the Supreme Court analyzed whether Congress had exceeded its power to enforce substantive guarantees of the Fourteenth Amendment to the United States Constitution under § 5 of the Constitution with respect to claims under Title II of the ADA.  In that case, as here, the respondents, who were paraplegic, sought to hold the State of Tennessee

14

accountable for its denial of physical access to courts in the state.  The Court held: "[W]e conclude that Title II, as it applies to the class of cases implicating the fundamental right of access to the courts, constitutes a valid exercise of Congress' § 5 authority to enforce the guarantees of the Fourteenth Amendment." *Id.* at 533-534.

Strangely, in its Brief in Support of its Motion to Dismiss Plaintiffs' Second Amended Complaint, the State cites to *Lane* to support its assertion that it is entitled to Eleventh Amendment immunity.  Def. State of Michigan's Brief in Support of Mot. to Dismiss, ECF No. 82 at 16.  In fact, the holding in *Lane* is both crystal clear and exactly the opposite: states <u>do not</u> enjoy Eleventh Amendment immunity to claims under Title II of the ADA.  The State then goes on to argue that Plaintiffs have not identified any ADA-violating conduct in their Second Amended Complaint.  This is a different argument, addressed in the previous section of this Brief and in the other concurrently filed Briefs.

The State then cites to *United States v. Georgia*, 546 U.S. 151, 159 (2006). This case has no applicability to the present matter.  In *Georgia*, a prison inmate who was paraplegic sued the State of Georgia under both 42 U.S.C. § 1983 due to asserted Eighth Amendment violations and under Title II of the ADA.  *Id*. at 153.  The inmate's *pro se* complaint was confusing and included several "frivolous" claims, such as demanding a "steam table" for his housing unit.  *Id*. at 159.  The questions before the Court were:

1.  Whether Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. 12131 to 12165, is a proper exercise of Congress's power under Section 5 of the Fourteenth Amendment, as applied to the administration of prison systems. *04-1203 United States v. Georgia*, U.S. Supreme Court, https://www.supremecourt.gov/qp/04-01203qp.pdf (last visited Aug. 18, 2023); and

2.  Whether, and to what extent, Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12131 *et seq*., validly abrogates state sovereign immunity for suits by prisoners with disabilities challenging discrimination by state-operated prisons, a question on which the courts of appeals are in conflict. *04-1236 Goodman v. Georgia*, U.S. Supreme Court, https://www.supremecourt.gov/qp/04-01236qp.pdf (last visited Aug. 18, 2023).

On these questions, the Court held as follows: "[I]nsofar as Title II creates a private cause of action for damages against the States for conduct that actually violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity. The Eleventh Circuit erred in dismissing those of Goodman's Title II claims that were based on such unconstitutional conduct." *Georgia*, 546 U.S. at 159. The Court went on to order Goodman to amend his complaint to clarify what conduct

the inmate alleged violated the Constitution and what conduct he alleged violated

Title II of the ADA. *Id*. The Court then wrote:

> Once Goodman's complaint is amended, the lower courts will be best
> situated to determine in the first instance, on a claim-by-claim basis, (1)
> which aspects of the State's alleged conduct violated Title II; (2) to
> what extent such misconduct also violated the Fourteenth Amendment;
> and (3) insofar as such misconduct violated Title II but did not violate
> the Fourteenth Amendment, whether Congress's purported abrogation
> of sovereign immunity as to that class of conduct is nevertheless valid.

*Id*. This is not, as the State wrongly asserts, "a three-part test to determine whether

a state maintains its Eleventh Amendment immunity in Title II cases." Def. State of

Michigan's Brief in Support of Mot. to Dismiss, ECF No. 82 at 17. Rather, this was

a three-part test created for lower courts involved in that particular matter to use to

analyze whether the State of Georgia engaged in conduct that violated inmate

Goodman's rights under Title II of the ADA. Even if this Court were to somehow

find that the Supreme Court intended for this test to be applied more broadly than to

the scope of inmate Goodman's claims in *U.S. v. Georgia*, it would still be

inapplicable in the present matter, as Plaintiffs have not made any constitutional

claims under 42 U.S.C. § 1983 against any of the Defendants in this matter.

The State also argues that Plaintiffs "have not alleged facts to demonstrate

that the State's Eleventh Amendment Sovereign immunity was properly abrogated

without identifying any Fourteenth Amendment denial of access." This argument

makes no sense, as there is no right to "access" guaranteed by the Fourteenth

17

Amendment to the Constitution.  Rather, the Fourteenth Amendment promises, in relevant part: "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.  Plaintiffs do not assert that they were deprived of any Fourteenth Amendment rights, and the rights guaranteed by the Fourteenth Amendment are very different from those guaranteed by Title II of the ADA.  Regardless, if this Court finds that Plaintiffs must also assert Fourteenth Amendment violations to assert Title II violations under the ADA, Plaintiffs respectfully request an opportunity to amend their Complaint to include such.

Finally, the State wrongly argues that "[p]laintiffs fail to plead facts sufficiently alleging conduct by State Defendant that violated Title II of the ADA." *Id*. at 17.  In fact, Plaintiffs' Second Amended Complaint is very clear and specific on this point.  Title II's applicable regulations prohibit public entities from, in relevant part:

   a.  Deny[ing] a qualified individual with a disability the opportunity to participate in or benefit from the aid, benefit, or service, 28 C.F.R. § 35.130(b)(i);

b. Afford[ing] a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others, 28 C.F.R. § 35.130(b)(ii);

c. Provid[ing] different or separate aids, benefits, or services to individuals with disabilities or to any class of individuals with disabilities than is provided to others unless such action is necessary to provide qualified individuals with disabilities with aids, benefits, or services that are as effective as those provided to others, 28 C.F.R. § 35.130(b)(iv); and

d. Otherwise limit[ing] a qualified individual with a disability in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others receiving the aid, benefit, or service, 28 C.F.R. § 35.130(b)(vi).

The Second Amended Complaint includes examples of the State's failures in these respects, including but not limited to:

a. In March and April 2023, Plaintiff Babcock was summoned for jury duty to the State of Michigan 36th Judicial District Court, but she was told twice not to appear. However, she is informed and believes the 36th District Court has an unwritten policy to decline jury service to citizens with mobility impairments because the jury assembly room and possibly the jury boxes are not accessible. In checking the building in advance of her anticipated jury duty, she has also observed that the main entrance to the building is not

accessible and inadequately marked with no or with improper directional signs for persons with mobility impairments.  There is no accessible on-street parking and the drop-off area on Madison is not accessible. The public instead is directed to park in the private, City-licensed parking lot across Madison. However, that lot does not have any spaces for accessible parking, and there are no accessible curb cuts or mid-block, marked crosswalk with crossing island and crossing warning signals from that licensed lot to the courthouse across Madison even though almost all pedestrians cross at the driveway of that parking lot to take the shortest route to the entrance to the courthouse. There is no such available shortest route free and clear across Madison to the courthouse for Plaintiffs.  *Id.* at ¶ 30.

b. For at least the past two years, Plaintiff Jacobson has represented and continues to represent at least fifteen clients and cases in the State of Michigan 44th  Judicial Circuit and Juvenile Court and the 53rd  Judicial District Court, located at its 204 S. Highlander Way building in Howell, Michigan.  In this building, she serves as a court-appointed juvenile court attorney representing juveniles and adults in delinquency and child protective proceedings. She also has clients who privately retained her and have pending cases in this building in both the District and Circuit courts.  *Id.* at ¶ 53.

20

c. The 204 S. Highlander Way building is not fully accessible and has not been within the past three years. For example, two of the toilet rooms are at the very end of each end of the long building making it difficult to get to in time. The third toilet room is located closer in the very center of the long hallway next to the juvenile court referee room in which Plaintiff Jacobson has many cases, with security officers posted at the door.  However, is sectioned off and only jurors are allowed to use this restroom, which means when it is necessary for her to use the toilet, she must interrupt or delay her appearance or consultations and literally hobble with her cane or other device to either end of the building.  This occurs often, including as recently as in April 2023. On multiple occasions within the past three years, Plaintiff Jacobson has called the court's ADA coordinator to discuss this problem and she has never received a return call or message. *Id*. at 54.

d. Plaintiff Jacobson lives in Washtenaw County, and when she started her law practice, she sought to become a court-appointed juvenile court attorney in the State of Michigan 22nd Judicial Circuit Court located in Washtenaw County. But due to her experiences with the lack of close or accessible parking, lack of accessibility in the building, and lack of accessible entrances as described in the Second Amended Complaint, she had to eliminate that practice and pursue her work elsewhere.  She has been unable to practice law as she wishes

21

for these reasons. Within the past three years, the route for ingress and egress have been repeatedly inaccessible because the buttons for the automatic doors were blocked by the garbage containers both inside and outside the building on two occasions, preventing her ready entrance and exit. If accessibility changes to and adjacent to that building were made, Plaintiff Jacobson would pursue appointments and private clients in that court. *Id*. at ¶ 57.

For these reasons, the Court must deny Defendant State of Michigan's Motion to Dismiss Plaintiffs' ADA claim on the basis of Eleventh Amendment immunity.

### 2. *Plaintiffs state plausible Rehabilitation Act claims against the State*

Section 504 of the Rehabilitation Act of 1973 ("Section 504") and its implementing regulations provide, in pertinent part, that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 20 U.S.C. § 794(a); *see also* 34 C.F.R. § 104.4(a).

To survive a motion to dismiss a Section 504 claim, the Sixth Circuit has held that a plaintiff must allege facts allowing for the reasonable inference that (1) the plaintiff is disabled; (2) the plaintiff is otherwise qualified for participation in the program; (3) the plaintiff is being excluded from participation in, denied benefits of, or being subjected to discrimination under the program solely due to a disability; and

(4) the relevant program or activity is receiving federal financial assistance. *Landefeld v. Marion Gen. Hosp. Inc*., 994 F.2d 1178, 1180-1181 (6th Cir. 1993).

While the State cites to several decisions it argues are analogous; in fact, they are not. *Jim C. v. United States*, 235 F.3d 1079 (8th Cir. 2000), involves plaintiffs who sued the State of Arkansas on behalf of their son, diagnosed with autism, alleging that their son did not receive appropriate educational services and accommodations at school. *Id*. at 1080. The court held that the Arkansas Department of Education, not the State of Arkansas, was the appropriate defendant, because the Department of Education accepted federal education funds under Section 504. *Id*. at 1081. *Koslow v. Pennsylvania*, 302 F.3d 161 (3rd Cir. 2002) involved multiple state and federal claims filed by an injured sanitation worker who alleged he was improperly denied disability accommodations. There, the court held that the Pennsylvania Department of Corrections, which was the plaintiff's former employer, was the proper defendant, rather than the State of Pennsylvania. The court held, "[I]f a state accepts federal funds for a specific department or agency, it voluntarily waives sovereign immunity for Rehabilitation Act claims against the department or agency — but only against that department or agency." *Id.* at 171. *Schroeder v. City of Chicago*, 927 F.2d 957 (7th Cir. 1991) involved a claim filed by a plaintiff alleging that his disability benefits had been wrongly delayed by the Retirement Board of the Fireman's Annuity and Benefit Fund of Chicago. *Id*. at 958.

23

Unlike the Arkansas Department of Education, the Pennsylvania Department of Corrections, and the City of Chicago, as explained in Sec. IV(A)(1)(a) of this Brief, the Michigan Constitution invests the judicial power of the State "exclusively in one court of justice, divided into one Supreme Court, one Court of Appeals, one trial court of general jurisdiction known as the circuit court, one probate court, and courts of limited jurisdiction…." Const. 1963, Art. 6, § 1. Therefore, the State of Michigan's inherent responsibility to address legal violations by state courts is explicit in the language of the Michigan Constitution.  Since the language of the Michigan Constitution clearly indicates that the powers of the State are vested in the Supreme Court, the State has ultimate authority over all courts in the state under the one court of justice model.

*See also* Opposition to City of Detroit's Motion to Dismiss, Sec. IV(B)(3), incorporated by reference.

The State's assertion that the Second Amendment Complaint lacks facts sufficiently alleging that the State violated the Rehabilitation Act is without merit. For these reasons, the Court must deny Defendant State of Michigan's Motion to Dismiss Plaintiffs' Rehabilitation Act claim.  Should this Court find that the State of Michigan is not the properly named entity with respect to the Rehabilitation Act claim, Plaintiffs respectfully request that this Court permit them the opportunity to

amend their complaint to name each applicable individual state and local court, court administrator, and county or municipality as defendants.

### B. Plaintiffs have standing to bring their federal claims

The Supreme Court recently summarized Article III standing as follows:

> Under Article III of the Constitution, a plaintiff needs a "personal stake" in the case. That is, the plaintiff must have suffered an injury in fact—a concrete and imminent harm to a legally protected interest, like property or money—that is fairly traceable to the challenged conduct and likely to be redressed by the lawsuit. If at least one plaintiff has standing, the suit may proceed. Because we conclude that the Secretary's plan harms MOHELA and thereby directly injures Missouri—conferring standing on that State—we need not consider the other theories of standing raised by the States.

*Biden v. Nebraska*, 600 U.S. ___ (2023) (slip op., at 7-8) (internal citations omitted).

Additionally, in *Carney v. Adams*, the Court held that an Independent Party member lacked standing to challenge Delaware's major party formula for judicial offices where he failed to show he was "able and ready" to apply for a vacancy, failing to actually apply for any position either before or after changing his party affiliation, and filing suit after discussing the issue with the author of a pertinent law review article:

> We have long understood that constitutional phrase to require that a case embody a genuine, live dispute between adverse parties, thereby preventing the federal courts from issuing advisory opinions. The doctrine of standing implements this requirement by insisting that a litigant "prove that he has suffered a concrete and particularized injury that is fairly traceable to the challenged conduct, and is likely to be redressed by a favorable judicial decision."

Two aspects of standing doctrine are relevant here. First, standing requires an "'injury in fact'" that must be "concrete and particularized," as well as "'actual or imminent.'" It cannot be ""'conjectural or hypothetical.'"" Second, a grievance that amounts to nothing more than an abstract and generalized harm to a citizen's interest in the proper application of the law does not count as an "injury in fact." And it consequently does not show standing.

But that kind of interest does not create standing. Rather, the question is whether Adams will suffer a "'personal and individual'" injury beyond this generalized grievance—an injury that is concrete, particularized, and imminent rather than "conjectural or hypothetical."

*Carney v. Adams*, 592 U.S. ___ (2020) (slip op., at 4-6) (internal citations omitted).

Defendants cannot seek dismissal of some or all of Plaintiffs' claims by cherry-picking various components of each Plaintiff's allegations. As shown below and in the concurrently filed Oppositions, all Plaintiffs have suffered and will continue to suffer much more than the minimal levels of injury even required for standing purposes, but various Defendants argue for dismissal based on missing disabilities in one or another of the plaintiffs, that one or another plaintiff has not encountered a particular barrier or suffered a particular harm, that one or more plaintiffs are not likely to encounter or visit a deficient facility in the future, or that each of the plaintiffs has only been delayed and ultimately was able to access a facility. These are easily disposed of by *Biden*: ". . . If at least one plaintiff has standing, the suit may proceed. [And if the Court concludes there is] direct injur[y] conferring standing on [one party, the Court] need not consider the other theories of standing raised." *Biden*, 600 U.S. at 7-8.

26

The case at bar relates to longstanding denial of physical access to persons with disabilities to the State's court system, including its Supreme Court Hall of Justice and multiple court facilities in several counties; the case also relates to major executive branch and other public buildings in the "Capitol Loop" area of Lansing with the Hall of Justice at the west end, to the Capitol on the east, and several executive branch buildings between them and further east of the Capitol; as well as CAYMC and numerous County of Wayne buildings.  Title II of the ADA, Section 504 of the Rehabilitation Act, and PDCRA are the three main statutes at issue, but the courts look to other civil rights statutes and cases, including ADA Title III cases. There is a key distinction in Title II: these are public government buildings open to the public; the governments have a higher bar under Title II and under the governing regulations at 28 C.F.R. §§ 35.149, 35.150, and 35.151, and certain standing requirements under Title III "public accommodations" at private businesses are not necessarily applicable. The State and other public entities must remove those barriers which cause discrimination:

> Except as otherwise provided in 35.150, no qualified individual with a disability shall, because a public entity's facilities are inaccessible to or unusable by individuals with disabilities, be excluded from participation in, or be denied the benefits or the services, programs, or activities of a public entity, or be subjected to discrimination by any public entity.

28 C.F.R. § 35.149.

Over twenty years ago, *Shotz v. Cates,* 256 F.3d 1077 (11th Cir. 2001), addressed these and other requirements to find that two plaintiffs who needed a wheelchair, canes, or service animals had stated their cause of action against a county court in Florida. The court held that under Title II of the ADA, it does not matter that a plaintiff ultimately got into the building, or that a particular plaintiff might not intend to go there again, "(i)f the Courthouse's wheelchair ramps are so steep that they impede a disabled person or if its bathrooms are unfit for the use of a disabled person, then it cannot be said that the trial is 'readily accessible,' regardless whether the disabled person manages in some fashion to attend the trial." *Id.* at 1080.  Title II defendants are required to make the architectural changes unless unduly burdensome as to finances or administration or "fundamental" alteration of the program, facility, or service, while a Title III defendant need only make changes that are "readily achievable:" "The County mistakenly points to Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(iv), which applies to 'public accommodations' not 'public entities,' and which requires that the architectural changes be readily achievable." *Id.,* Note 4 at 1082. Also pertinent is the Ninth Circuit's approval of standing as shown by the deterrent effect of barriers known to but not personally encountered by a disabled plaintiff. Contrary to Defendants' arguments:

> Our case law provides guidance on how to determine whether an ADA plaintiff has suffered an injury in fact sufficient to give that plaintiff standing and to give us jurisdiction. In *Pickern v. Holiday Quality Foods Inc*., 293 F.3d 1133, 1138-39 (9th Cir. 2002), we held that a

> plaintiff has standing to challenge barriers in a public accommodation
> under the ADA when he has actually encountered those barriers.
> *Pickern* further held that a plaintiff may challenge barriers not
> personally encountered if those barriers have deterred the plaintiff from
> patronizing the public accommodation.

*Skaff v. Meridien North America*, 506 F.3d 832, 838 (9th Cir. 2007).  Plaintiffs have

sufficiently plead standing to support all federal and state disability claims at issue.

The pleadings specifically describe that (1) Plaintiffs have each suffered and will

continue to suffer "injury in fact—a concrete and imminent harm to a legally

protected interest" to their constitutional rights as well as personal or property

interests, (2) the applicable injuries are "personal and individual,"  "concrete,

particularized and imminent rather than 'conjectural or hypothetical'," and more

than "an abstract and generalized harm to a citizen's interest in the proper application

of the law," (3) Plaintiffs' injuries are "fairly traceable to [Defendants'] challenged

conduct," (4) Defendants are in breach of their duties or requirements under cited

applicable laws, (5) Plaintiffs' injuries can be remedied by the relief requested,

namely (a) injunctive relief as to continuing and future injury, (b) damages as to past,

continuing and prospective injury, or (c) both depending on the particular plaintiff,

cause of action, and defendant. *Biden*, 600 U.S. at 7-8.

Plaintiffs have suffered concrete injuries. These include denial of fundamental

rights under the Federal and Michigan Constitutions and laws, as well as physical

and economic injury.  Defendants berate the "litany" of itemized constitutional rights

at Sec. Am. Compl., ECF No. 79, ¶¶ 69, 89; however, these rights directly relate to Plaintiffs' harm proximately caused by Defendants' actions and inactions to deny Plaintiffs access to justice and other fundamental rights. Defendants' failure to remove architectural barriers in their buildings illegally discriminates against Plaintiffs, including by preventing Plaintiffs from exercising these rights.

Further, Plaintiffs Babcock and Jacobson are attorneys. Their ability to practice law is limited or denied when the chambers' and other "attorney only" areas of these and other courts are sufficient for able-bodied attorneys but cannot be navigated by an attorney with limited mobility. *Id*. at ¶¶ 52 and 57.

For these reasons, the Court must deny Defendants' Motion to Dismiss Plaintiffs' federal claims based on standing.

### C. State statutory claims against the State

#### 1. *PDCRA claim*

*See* Opposition to the City of Detroit's Motion to Dismiss, Sec. IV(B)(2), incorporated herein by reference.

#### 2. *Other State statutory claims*

*See* Opposition to the City of Detroit's Motion to Dismiss, Sec. IV(C), incorporated herein by reference.

**D. Eleventh Amendment immunity to state law claims against the State**

### 1. *PDCRA claim*

Plaintiffs incorporate by reference the arguments made in Sec. IV(A) of this

Brief.

### 2. *Other State statutory claims*

*See* Opposition to the City of Detroit's Motion to Dismiss, Sec. IV(C),

incorporated herein by reference.

**E. Punitive damages**

*See* Opposition to the County of Wayne's Motion to Dismiss, Sec. IV(H),

incorporated herein by reference.

## V.   <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court deny

Defendant's Motion to Dismiss Plaintiffs' Second Amended Complaint.


Respectfully Submitted,

Dated: September 8, 2023          */s/ Michael W. Bartnik*
                                  MICHAEL W. BARTNIK (P32534)
                                  Law For Baby Boomers, PLLC
                                  41000 Woodward Ave., Ste. 350
                                  Bloomfield Hills, Michigan 48304
                                  (248) 608-3660 Telephone
                                  michaelbartnik@protonmail.com

                                  Elizabeth K. Abdnour (P78203)
                                  Abdnour Weiker, LLP
                                  500 E. Michigan Ave., Ste. 130
                                  Lansing, Michigan 48912

(517) 994-1776 Telephone
liz@education-rights.com

Renee A. Stromski (Ohio 0101347)
Abdnour Weiker, LLP
262 South Third St.
Columbus, Ohio 43215
(216) 714-1515 Telephone
renee@education-rights.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I, Elizabeth K. Abdnour, counsel for Plaintiffs, certify that on September 8, 2023, I filed this document by use of this Court's ECF system, which will serve copies to all counsel of record.

*/s/ Elizabeth K. Abdnour*
Elizabeth K. Abdnour