# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

JILL BABCOCK, et al.,                    Case No.: 2:22-cv-12951

     Plaintiffs,                    JUDGE JONATHAN J.C. GREY

v.

STATE OF MICHIGAN, et al.,

     Defendants.

## PLAINTIFFS' OPPOSITION TO DEFENDANT DETROIT-WAYNE JOINT BUILDING AUTHORITY'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

Plaintiffs Jill Babcock, Marguerite Maddox, and Ashley Jacobson, through undersigned counsel, respectfully submit this Opposition to Defendant Detroit-Wayne Joint Building Authority's ("DWJBA") Motion to Dismiss Plaintiffs' Second Amended Complaint ("Motion") (ECF No. 80). Plaintiffs' factual allegations properly state claims against DWJBA, and the Motion must be denied.

Plaintiffs incorporate by reference their Oppositions to the Motions to Dismiss filed by Defendants State of Michigan (ECF No. 82), County of Wayne (ECF No. 88), and City of Detroit (ECF No. 87), being filed concurrently with this Opposition.

## **TABLE OF CONTENTS**

**CONCISE STATEMENT OF ISSUES PRESENTED** ..........................................3

**CONTROLLING OR MOST APPROPRIATE AUTHORITIES**.....................4

**I.    STATEMENT OF FACTS** ........................................................................5

**II.   PROCEDURAL BACKGROUND** ...........................................................9

**III.  STANDARD OF REVIEW** ....................................................................10

**IV.  LAW AND ARGUMENT**.......................................................................11

      A.  Count IV claims...................................................................................11

      B.  Rehabilitation Act claims against DWJBA ........................................11

      C.  Plaintiffs have properly plead ADA claims upon which relief may be
          granted ..................................................................................................12

      D.  Plaintiffs Babcock and Maddox's claims were timely filed...............19

      E.  Plaintiffs state plausible PDCRA claims upon which relief may be
          granted against DWJBA .......................................................................27

      F.  Plaintiffs' ELCRA claim ....................................................................27

      G.  Punitive damages.................................................................................27

**V.   CONCLUSION**........................................................................................27

## <u>CONCISE STATEMENT OF ISSUES PRESENTED</u>

1.  Have Plaintiffs sufficiently plead claims upon which relief may granted?

2.  Do Plaintiffs have standing to bring their Rehabilitation Act claims?

3.  Are Plaintiffs' claims barred by statutes of limitations?

## <u>CONTROLLING OR MOST APPROPRIATE AUTHORITIES</u>

**Statutes:**

- 28 C.F.R. § 35.130
- 28 C.F.R. § 35.149
- 28 C.F.R. § 35.150
- 28 C.F.R. § 35.151
- Persons with Disabilities Civil Rights Act, M.C.L. 37.1101 *et seq.*
- Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 *et seq.*
- Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq.*

**Cases:**

- *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)
- *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)
- *Bickerstaff v. Lucarelli*, 830 F.3d 388 (6th Cir. 2016)
- *Biden v. Nebraska*, 600 U.S. ___ (2023)
- *Carney v. Adams*, 592 U.S. ___ (2020)
- *Conley v. Gibson*, 355 U.S. 41 (1957)
- *Directv, Inc. v. Treesh*, 487 F.3d 471 (6th Cir. 2007)
- *Layton v. Elder,* 143 F.3d 469 (8th Cir. 1998)
- *Shotz v. Cates,* 256 F.3d 1077 (11th Cir. 2001)
- *Skaff v. Meridien North America*, 506 F.3d 832 (9th Cir. 2007)
- *Township of Fraser v. Haney*, 509 Mich. 18, 983 N.W.2d 309 (2022)
- *Tucker v. Tennessee*, 539 F.3d 526 (6th Cir. 2008)
- *Vest v. Resolute FP US Inc.*, 905 F.3d 985 (6th Cir. 2018)

## I.    STATEMENT OF FACTS

Plaintiffs filed this action to enforce civil rights of persons with disabilities against Defendants which have repeatedly and continuously harmed Plaintiffs by denying them their fundamental civil rights of due process and equal protection, to equal access to their buildings and facilities, services, amenities, programs, activities, and civic responsibilities, including DWJBA. Sec. Am. Compl., ECF No. 79, ¶¶ 1-8 and 111-127.

DWJBA is responsible for the Coleman A. Young Municipal Center ("CAYMC") in Detroit, which houses numerous municipal functions, including courtrooms and city offices. *Id*. at ¶ 88. At 745,000 square feet serving over 4,000 visitors per day, approximately daily 760 visitors statistically have a recognized disability. *Id*. at  ¶ 1, 111-127.  This summary Statement of Facts pertains to CAYMC, a public facility. *Id*. at ¶ 113. Although it is included here specifically in opposition to the DWJBA Motion to Dismiss, the discussion necessarily includes all four defendants, because all four either own or occupy some or all portions of it as discussed below. *Id*. at ¶ 114, to wit, City and County offices in both towers, and State and County as to the court system, also located in both towers, but primarily in the Court tower.

By statute cited in the Second Amended Complaint, *id*. at ¶ 88, DWJBA was established and is owned by co-defendants City of Detroit and County of Wayne to

construct and own the complex, which, according to the DLZ report attached to the

Complaint as Exhibit 1-3, is:

> … comprised of two 'towers'- a 14-story office tower and a 20-story court tower. The primary tenants include the executive and legislative branches . . . share a common lobby . . . connected by common corridors on several levels. A skywalk on Level 2 of the Office Tower bridges over Randolph Street to the east to the Millender Center, People Mover Station, and the Renaissance Center. Access from the public sidewalk is provided on all four sides of the building, with public entrances from Woodward (west) E. Jefferson (south) and Larned (north). . . .

ECF No. 1-3, PageID. 55, 57-59, 64. Schematics of each floor, except the lower level

or basement, were provided by DLZ. *Id*., PageID.163 to 198. *See also* Sec. Am.

Compl., ECF No. 79, ¶ 114.  That report

> . . . was limited to public areas of the CAYMC, including exterior pedestrian access routes to public and employee entrances, the lower level accessible restrooms, building entrances, interior hallways and other circulations spaces, drinking fountains, elevators, stairways, Auditorium, and signage. *The decision to exclude areas of the facility that are either open to the public (e.g., service lobbies) or restricted to employees does not obviate the need of the respective responsible parties (City of Detroit or Wayne County) to ensure full accessibility is provided, consistent with the requirements of Title I and/or Title II of the ADA.*

ECF No. 1-3, PageID.55 (emphasis added).  Beginning at ECF No. 1-3 PageID.64,

the report details a thorough inspection ADA violations, a summary at PageID.104,

detailed compliance review schedules of estimated costs at PageID.105 to 161, and

the above-described schematics at PageID.165 to 198.

Many of these defects are also discussed in the Second Amended Complaint. There are few, if any, accessible jury boxes in any court room, accessible jury deliberation rooms, accessible toilets in the jury deliberation rooms, and upon information and belief no accessible toilets in the jury assembly room. ECF No. 79, ¶ 115. This is despite multiple alterations to the interior and exterior of the CAYMC after enactment of applicable disability laws, *id*. at ¶ 115, including original courtrooms that have been modified, reduced, enlarged, or eliminated to make room for other court uses such as the local bar association attorney conference lounge, an administrative and chief judge's area dedicated to the chief's administrative roles, and one or more courts reduced in size with no jury boxes. *Id*. at ¶ 115, 119.

Additionally, except for the basement, all toilet rooms in the Office tower are locked in public halls from ground to the top floors, most or all toilet rooms on public halls of the Court tower are locked from ground to the eighth floor whether used by City, County, or Court offices, and some but not all of the women's toilet rooms are closed to the public in the Court tower from the ninth floor to the top. *Id*. at ¶ 115. The public can only move between the two towers in the basement, or on certain floors; *see* shaded areas of Court tower schematic: for example, ground floor (no public), second and eighth floors (City, men's and women's locked), ninth floor (men's room) without stairs, tenth floor (women's room) and twelfth floor Office

(men's and women's room) but with several steps up or down. ECF No. 1-3, PageID.174-189.

None of these large multi-person toilet rooms above the ground floor (nor the detention area on the twentieth floor) are compliant for accessibility under federal or state laws. ECF No. 79, ¶ 115. In this entire 34-story complex, serving thousands each day, there are only two accessible men's toilets in the basement multi-person toilet rooms, and only one accessible women's toilet in the basement multi-person toilet room on the city side of the complex. *Id.*

If Plaintiff Maddox with her guide dog Scarlett; Plaintiff Jacobson with her cane, walker, or wheelchair; or Plaintiff Babcock in her wheelchair need to relieve themselves from any of the court rooms or jury rooms in the County tower, they cannot just go up or down one or two flights in the County tower. *Id.* at ¶ 47. They must take the elevator as many as twenty stops to the basement of the County tower, and then wheel themselves several hundred yards through the tunnel to the Office tower basement toilet room and hope that no one else is using the one and only publicly unlocked accessible stall in the entire complex. *Id.* at ¶ 115(e).

### A. Plaintiff Jill Babcock

Plaintiff Jill Babcock is an attorney who lives and works in the City of Detroit. *Id.* at ¶ 22. She is also employed by the City at the Coleman A. Young Municipal Center, but not as an attorney. *Id.* at ¶ 26.

### B. Plaintiff Marguerite Maddox

Plaintiff Marguerite Maddox resides in Detroit.  *Id*. at ¶ 37. She has Cerebral

Palsy, cervical dystonia, hearing impairment, speech impairment, and some vision

decline. *Id*. at ¶ 39. She requires the use of a service animal for mobility and other

assistance. *Id*. at ¶ 38. She is a disability advocate and has been active in local

disability political action for decades. *Id*. at ¶ 42.

### C. Plaintiff Ashley Jacobson

Plaintiff Ashley Jacobson has several physical disabilities and impairments

including inter alia impairments of her bladder, spine, joints, and immune system.

*Id*. at ¶ 51.  Her impairments affect her strength, balance, restroom needs, dexterity,

fine and gross motor skills, and the ability to stand for long periods of time, which

often requires her to use a cane or wheelchair. *Id*.  She also consistently utilizes other

medical devices, catheters for personal use and bladder treatments, equipment, and

mobility aids as her symptoms necessitate. *Id*.  Like Plaintiff Babcock, she must also

have immediate access to fully compliant toilet facilities for her personal health and

to engage in her profession. *Id*. at ¶¶ 59, 65, 91-95.

## II.   PROCEDURAL BACKGROUND

On December 6, 2022, Plaintiffs filed this action (ECF No. 1). In response,

Defendant filed two Answers to the Complaint with Affirmative Defenses on March

10, 2023 (ECF Nos. 22 and 24).  Plaintiffs filed an Amended Complaint on April

28, 2023 (ECF No. 41). Defendant filed a Motion to Dismiss Amended Complaint

and a Motion to Dismiss First Amended Complaint on June 2, 2023 (ECF Nos. 60 and 64).  This Court filed an Order Striking Documents (Dkts. 61, 62, 63, 65, 66) on June 6, 2023 (ECF No. 69).  Plaintiffs filed a Second Amended Complaint on June 23, 2023 (ECF No. 79).  Defendants filed a Motion to Dismiss Second Amended Complaint on July 6, 2023 (ECF No. 80).  Plaintiffs file this brief in response to that Motion.

## III.   STANDARD OF REVIEW

To survive a motion to dismiss, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The United States Supreme Court has held that a complaint is only properly dismissed under Rule 12(b)(6) when it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This plausibility standard is more than a sheer possibility, but it is not a probability requirement. *See Twombly*, 550 U.S. at 556. A complaint states a plausible claim for relief, "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Vest v. Resolute FP US Inc.*, 905 F.3d 985, 987 (6th Cir. 2018) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

In reading the alleged facts, the court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable

inferences in favor of the plaintiff." *Bickerstaff v. Lucarelli*, 830 F.3d 388, 396 (6th Cir. 2016) (citing *Directv, Inc. v. Treesh*, 487 F.3d 471 (6th Cir. 2007)). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Therefore, "a well-pleaded complaint may proceed even if it strikes a savvy judge that the actual proof of the facts alleged is improbable and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal citations omitted).

## IV.   LAW AND ARGUMENT

### A. Count IV claims

*See* Opposition to the City of Detroit's Motion to Dismiss, Sec. IV(C), incorporated herein by reference.

### B. Rehabilitation Act claims against DWJBA

Based on DWJBA's assertion that it does not receive federal funding, Plaintiffs concede that there is no statutory basis for them to pursue their Rehabilitation Act claims against DWJBA and withdraw those claims. Should evidence come to light indicating that DWJBA does receive federal funding, Plaintiffs respectfully request that this Court allow them to revive this claim against DWJBA.

### C. Plaintiffs have properly plead ADA claims upon which relief may be granted

DWJBA argues that Plaintiffs lack standing under Title II of the ADA because, among other arguments, many of the alleged defects identified in the Second Amended Complaint involve areas accessible only for employees in the building, wrongly asserting that the alleged defects raise issues under Title I instead. Title II of the ADA provides "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity," 42 U.S.C. § 12132. To state a claim under Title II, Plaintiffs must show: (1) that they are qualified individuals with a disability; (2) that Defendants are subject to the ADA; and (3) that Plaintiffs were denied the opportunity to participate in or benefit from services, programs, or activities provided by the State. *See Tucker v. Tennessee*, 539 F.3d 526, 532–33 (6th Cir. 2008).

Plaintiffs have alleged standing including as: (1) a "qualified individual with a disability," 42 U.S.C. § 12131(2) and (2) a "person with a disability (or disabilities," M.C.L. 37.1103(h). Sec. Am. Compl., ECF No. 79, ¶ 20,73-76.

Plaintiffs have also alleged that DWJBA is a public body corporate established by the City of Detroit and the County of Wayne pursuant to State law, M.C.L. 123.952 and M.C.L. 123.957, to construct, own and manage CAYMC.

Plaintiffs allege DWJBA has authority over approval, design, construction, operation, and maintenance of all the space, building(s), structure(s), improved areas, and public facility occupied, owned, or leased as either lessor or lessee within CAYMC, which is a public entity. 42 U.S.C. § 12131(1)(B); Sec. Am. Compl., ECF No. 79, ¶ 88.

Each Plaintiff has alleged that she has been denied the opportunity to participate in or benefit from services, programs, or activities provided by the DWJBA. *Id.* at 79, ¶ 21, 58-77. Plaintiff Jacobson has alleged that:

> Defendants' refusal to comply with the laws on disability-accessible restrooms causes physical demands on Plaintiff Ashley Jacobson, as she is required to travel quite far to find the next accessible restroom stall. She risks falling and is unable to use necessary equipment because of the lack of physical space and mobility bars in the stalls. Ashley has had to turn down cases in these buildings, which not only affects her financially, but emotionally as she must consider the inequality she faces as a disabled attorney and explain it to clients who seek her services in those buildings.

*Id.* at ¶ 94. This is just one example of an allegation by Plaintiff Jacobson of denial of access to a specific program listed within the Second Amended Complaint, including as to DWJBA in the CAYMC. *Id.* at ¶¶ 52-58, 60-77, 89-93, 96-102.

Plaintiff Babcock has alleged that:

> On April 11, 2023, Plaintiff Jill Babcock was scheduled to give an in-person public presentation with two other disability rights activists to a mixed audience of disabled and non-disabled persons in the 13th Floor Public Auditorium of CAYMC. There is only one accessible entrance to the auditorium, and it is all the way around to the far backside of the two-story auditorium. There are no accessible toilet rooms in the

auditorium, nor in the public hallways leading into the auditorium. It is not possible, or very difficult for a person in a wheelchair to make such presentation because there are at least two steps up to both aisles of the speaker dais. Additionally, for the audience and speakers, a speaker in a wheelchair at the lectern is not visible to persons on the dais due to the location and height of the lectern. The auditorium does not have captioning and is not wired for auditory aids for persons with hearing loss. There are insufficient accessible seats or seating areas for the audience members in wheelchairs, a serious disadvantage when one is making a presentation on disability issues which presumably would have more than four or five audience members in mobility devices. Other deficiencies as to this auditorium are noted in the DLZ report attached as Exhibit B. Plaintiff Jill Babcock was informed the presentation would be by remote zoom because the auditorium was under construction, however, after giving the remote presentation, upon viewing the auditorium several days later in April 2023, no such construction had ever occurred, and all the above defects remain in place.

*Id.* at ¶ 28. Again, this is one of many disturbing allegations of Defendants' intentional denial of access to programs and services to Plaintiff Babcock, including as to DWJBA in the CAYMC. *Id.* at ¶¶ 24-27, 31-32, 36, 58-62, 64-66, 69-77, 89, 91-93, 95-102.

Plaintiff Maddox has further alleged that:

Since 2008, Plaintiff Marguerite Maddox has been asking the Detroit City Council to resolve issues relating to persons with hearing impairments. For example, she has been asking City Council to install proper closed captioning for the public meeting spaces. This issue was not addressed until the pandemic, and the resolution is still inadequate for her needs or the needs of other persons with hearing impairments.

*Id.* at ¶ 45. And:

Additionally, the City Council meeting space and main audience area is behind two heavy glass doors. Both the main and the overflow

audience areas do not have sufficient seating for persons with walkers
or wheelchairs or service dogs. Plaintiff Marguerite Maddox has been
denied proper seating on numerous but not all occasions. This
inconsistent access indicates poor training and poor supervision
because her access depends upon which security personnel happen to
be on duty at the time.

*Id.* at ¶ 46. These are just two denials in the CAYMC. As to Maddox in the CAYMC

and elsewhere.  *Id.* at ¶¶ 37-44, 47-49, 58, 61-62, 64-67, 69-77, 89, 92-93, 95-102.

Each Plaintiff has sufficiently plead at least one occasion in which the DWJBA

denied her access to their programs.

Plaintiffs have properly plead concrete injuries. These include denial of

fundamental rights under the Federal and Michigan Constitutions and laws, as well

as physical and economic injury.  *Id*. at ¶¶ 65, 89, 91-95, 96-102, 178-183, 189-197,

199-224, 233-235, 249-251. For example, Plaintiffs' freedom of speech and

assembly are compromised when defendants do not have accessible entrances into

the CAYMC and Guardian buildings where the City and County legislative bodies

conduct public hearings, when they do not have assistive hearing devices or proper

closed captioning screens in any of the assembly rooms, and when they do not have

nearby publicly accessible toilet rooms and toilets. *Id.* at ¶ 65. Plaintiffs' rights to sit

on a jury or to be judged by a jury of their peers are denied when the 36th District

Court and 3rd Circuit Court (in CAYMC as to DWJBA, and Frank Murphy Hall as

to the other Defendants) have jury boxes with steps and narrow aisles, jury assembly

and jury deliberation rooms without accessible toilets, building entrances which are

not accessible, and (as to the non-DWJBA Defendants) implicit policies to deter or deny jury service to persons with disabilities, including for example, failing to call them back into the jury pool purportedly so the citizen with a disability is not "inconvenienced" by having to return to a building which is not accessible in the first place. *Id.* at ¶¶ 30, 130.

Separately, Defendants do not really deny that they have ignored their obligations under the relevant disability laws for decades, asserting that they support disability rights but are simply unable to comply with the relevant requirements due to the cost and the historical status of some of the buildings. This argument is unsupported by facts or law.

First, governments were required beginning in 1991 under the ADA, and earlier under the Michigan Barrier Free Act and the PDCRA, to develop transition plans identifying the physical barriers within six months of the regulation and the necessary steps to complete the necessary structural changes within three years. 28 C.F.R. § 35.150(a)(1) (7-1-2022). Per 28 C.F.R. § 35.150 (b)(1), the plans were to include: "methods including equipment redesign…alteration of existing facilities, construction of new facilities" to eliminate discrimination. Additionally, the plans were required to (a) specifically identify those physical barriers thwarting the accessibility of the facilities, (b) provide a detailed description of the planned methods to effect the changes, (c) specify the expected timetables for the completion

of various stages of the project, and (d) indicate the official charged with the responsibility for the implementation of the plan. 28 C.F.R. §§ 35.150(d)(3)(i)-(iv). Given that over 30 years have passed since the ADA was enacted, it is highly unlikely that any defendant except DWJBA ever even attempted this.[1]

After 30 years of neglect, this Court is certainly authorized to affirmatively enjoin Defendants to finally make alterations to prevent Plaintiffs from suffering continued, irreparable harm traceable to the multiple architectural barriers denying access to their courts and other governmental office buildings, as well as the other multiple barriers specified in the complaint. *See Layton v. Elder,* 143 F.3d 469 (8th Cir. 1998).  Defendants cannot rely on cost, age, or so-called "historic" building defenses unless they successfully prove such costs would result in "undue financial" or administrative burdens, or "fundamentally alter" the very nature of the government's service, program, or activity. 28 C.F.R. § 35.150(a)(d) (7-1-2022 edition). And in the case of duly registered historic structures, Defendants would have to prove the modifications truly would "threaten or destroy the historic significance of an historic property." 28 C.F.R. § 35.150(a)(2).

Further, as a practical reality, the relative costs are not burdensome. The State has a $9.0 billion-dollar surplus. Sec. Am. Compl., ECF No. 79, ¶ 81. The County

---

[1] The County has no such safe harbor to which it alludes in its Brief.  Brief in Support of Def. County of Wayne's Mot. to Dismiss, ECF No. 88, PageID.1546, note 1.

has a $1.86 billion-dollar budget. *Id.* at ¶ 82. It owns the landmark Guardian Building and leases 400 Monroe. Brief in Support of Def. County of Wayne's Mot. to Dismiss, ECF No. 88, PageID.1546-1547 including note 2. The City has a $2.45 billion-dollar budget with a $156 million-dollar surplus. Sec. Am. Compl., ECF No. 79, ¶ 83. DWJBA cut its operating budget in half, from over $15 million to under $8 million. *Id.* at ¶ 88. Compare these resources to the paltry cost estimate of $206,050.00 to remediate twenty-seven pages of defects in the CAYMC Office tower (Compl. Exh. B., ECF No. 1-3, PageID.135) and only $181,760.00 to remediate twenty-six pages of defects in the CAYMC Court Tower (*id.* at PageID.160). If somehow Defendants can document and  substantiate a "cost" defense, there is a specific priority ranking that might apply for budgetary reasons, but the modification must still be made, within three years. 28 C.F.R §§ 35.150 and 151.

For these reasons, Plaintiffs have properly argued injury in fact, traceability, and redressability sufficiently within their Second Amended Complaint.  It is very possible that further evidence may be obtained through discovery which will either support or negate Plaintiffs' claims; for that reason, dismissal of Plaintiffs' ADA claim is premature at this point.

For these reasons, Defendants' argument that Plaintiffs have failed to state a claim under Title II of the ADA fails.

### D. Plaintiffs Babcock and Maddox's claims were timely filed

Defendants DWJBA and County of Wayne contend that Plaintiffs Babcock and Maddox's claims are barred by the statute of limitations. Defendants suggest that Plaintiffs advance a "continuing violations" theory and that such a theory is unavailable to hold Defendant liable for their violations beginning outside the statutory period and continuing within the statutory period, citing *Garg v. Macomb County Community Mental Health Services*, 472 Mich. 263, 278, 696 N.W.2d 646 (Mich. 2005). However, based on Defendant's past violations persisting within the statutory period along with several new violations, *Garg* is distinguishable, and Plaintiffs' Second Amended Complaint is timely filed. *Township of Fraser v. Haney*, *Township of Fraser v. Haney*, 509 Mich. 18, 28-29, 983 N.W.2d 309 (2022)

*Garg* worked for defendant as a staff psychologist. *Id.* at 267. She claimed her promotion denials and poor treatment at work were due to national-origin discrimination and in retaliation for engaging in protected activities. *Garg,* 472 Mich. at 270.  Contrary to the present case, defendant's discriminatory acts occurred outside the statute of limitations and there was no evidence of the defendant's discriminatory acts within the statute of limitations. *Id.* at 286. Accordingly, the court held that "absent evidence of these acts, there is insufficient evidence to establish a causal link between [plaintiff's] grievance and any retaliatory acts occurring within the limitations period." *Id.* at 278.

Here, unlike *Garg*, although some of Defendants' violations began outside the statutory period, those same violations still exist within the statutory period alongside Defendants' new violations. For example, each time Plaintiff Jacobson must decline potential clients due to Defendants' inaccessible courts, a new violation occurs. A new violation additionally occurs each time Plaintiff Maddox is unable to participate in City Council meetings due to Defendants' discriminatory and inaccessible conditions. Therefore, Plaintiffs' claims can be distinguished from *Garg* as they do not rely upon Defendant's violations that occurred outside the statutory period or without evidence of these acts occurring within the statutory period, and the doctrine of "continuing violations" does not apply.

In *Fraser v. Haney*, the Michigan Supreme Court held "[a] plaintiff is free to bring a new action each time a defendant commits a new violation." *Fraser v. Haney*, 509 Mich. 18, 28-29 (Mich. 2022). Moreover, the court held that *Garg* did not operate to immunize defendants from future wrongful conduct. *Id.* at 28. Importantly, *Garg* allowed the claim that accrued within the limitations period to proceed. *Id.* at 29.

In *Fraser,* 509 Mich. at 22, the defendants started raising hogs on the plaintiff's property in violation of a local zoning ordinance beginning in 2006, but the plaintiff did not bring suit until 2016. However, the defendants' use of the plaintiff's property to raise hogs was not a one-time occurrence in 2006. *Id.* at 27.

At the time of the plaintiff's filing, the defendants had maintained at least one hog on the plaintiff's property each day since 2006. *Id.* at 25. The court examined whether the plaintiff's claims were time-barred by the six-year statute of limitations. The court reasoned that because the defendants had hogs on the plaintiff's property within the statute of limitations period, the plaintiff's claims accrued during that period. *Id.* Finally, court held that the plaintiff's action was timely filed because it was commenced while the defendants' unlawful conduct was ongoing. *Id*. at 29-30.

Here, as in *Fraser*, Plaintiffs' Second Amended Complaint is timely filed because the action was commenced while Defendants' violations were ongoing. Plaintiffs hereby reiterate all factual allegations set forth in Plaintiffs' Second Amended Complaint. DWJBA's new violations within the statute of limitations period are highlighted as follows:

a. On April 11, 2023, Plaintiff Babcock was scheduled to give an in-person public presentation with two other disability rights activists to a mixed audience of disabled and non-disabled persons in the thirteenth floor Public Auditorium of CAYMC, which has myriad accessibility issues as described in the Complaint. Plaintiff Babcock was informed that the presentation would be conducted remotely via Zoom due to supposed construction occurring within the auditorium at that time. However, when she attempted to visit the auditorium several days following her presentation, it was clear that no such

construction had ever occurred, that all the defects continued to remain in place, and that she was intentionally and purposefully prevented from accessing the building. Sec. Am. Compl., ECF No. 79, ¶ 28.

b. In January 2023, Plaintiff Babcock attended a swearing-in ceremony for a newly elected Judge of the State of Michigan 54B Judicial District Court in Lansing, Michigan; however, after the event, in order to go to dinner with the rest of the group after the event, she had to leave the building by herself because the accessible entrance/exit was separate and further away from the destination than the entrance/exit used by the other parties who are not mobility impaired. *Id*. at ¶ 29.

c. In March and April 2023, Plaintiff Babcock was summoned for jury duty to the State of Michigan Thirty Sixth Judicial District Court, but she has been told twice not to appear. However, she is informed and believes the Thirty Sixth Judicial District Court has an unwritten policy to decline jury service to citizens with mobility impairments because the jury assembly room and possibly the jury boxes are not all accessible. In checking the building in advance of her anticipated jury duty, she has also observed numerous accessibility issues as described in the Complaint. *Id*. at ¶ 30.

d. On multiple occasions in 2019 through 2023, as a resident and citizen, Plaintiff Babcock has needed to access the public areas of CAYMC for

22

personal business matters in such offices as the ombudsman, building and safety, department of public works, public assessors' office, and the elections bureau. She has been discriminated against due to her disabilities and denied full access to these and many other public areas of the building because they are located on public floors of the building where the toilet rooms are locked and do not have accessible toilets, toilet stalls, lavatories, and other accessibility features. She has been denied full access to these and many other public areas of the building because these public offices and areas lack many basic accessibility modifications. Additionally, even during the 2022 election cycle, the elections bureau office in the building did not have its counter at the proper height, nor did it have an area for privately completing a ballot. *Id*. at ¶ 31.

e.  Plaintiff Babcock has repeatedly been denied full and equal access to the various street festivals such as Hart Plaza, Street Arts at Wayne State, and annually since 2020 through the date of filing at Dally in the Alley, and other such events because the sidewalks and curbs are not all accessible and are inconsistently accessible and poorly maintained. For example, on June 16, 2023, for the Juneteenth Freedom Day events in Spirit Plaza immediately adjacent to CAYMC, she volunteered to attend the Disability Rights booth, but was hindered due to the City's failure to remove the entire curb on

Woodward running north and south on the east edge of the Plaza, failure to remove other barriers to this permanent plaza, and failure to maintain the curb cut along Jefferson nearest CAYMC, to the point that the pavement had settled resulting in a large gap: she and her wheelchair were stuck in that gap until a passer-by pushed her out of it. *Id*. at ¶ 32.

f.  In 2022 in Detroit, Plaintiff Babcock fell out of her wheelchair while attempting to cross a street due to a poorly maintained curb cut with a large hole at the edges of the curb cut and the street. She caught her wheels in the hole which caused the chair to tip, ejecting her from her chair and injuring her mouth and face.  *Id*. at ¶ 33.

g.  Plaintiff Babcock was unable to attend an event in April 2023 at a new restaurant in Detroit on West McNichols between Wyoming and Livernois because it has no elevator to the public banquet area on the second floor. This is a new restaurant in a building which was gutted to the four walls and retrofitted in 2022 and 2023, partially paid with City of Detroit funding. Defendants City of Detroit and Detroit Building Authority issued an occupancy permit and business licenses and approved liquor licenses even though the restaurant blatantly violates accessibility laws by preventing her from equal access to the public second floor and by having separate areas which do not service persons with disabilities. *Id*. at ¶ 35(e)(i).

h. Plaintiff Maddox's voting location has not been accessible up to and including the 2022 elections. The entrance door is too narrow, and has a step which is too high, so she must knock on one of the large truck garage doors for it to be opened, so that she can get into the station. She was told in 2020 that this location would be fully accessible in 2022, but when she voted in 2022, she found the conditions had not changed, and the voting location still had the same defects and was not accessible as required. Additionally, the accessible voting machine did not work, and it took an hour for staff to get it to work, in 2020 and again when she voted in 2022. *Id*. at ¶ 43.

i. Plaintiff Maddox does not drive and is otherwise dependent upon the local bus system and the People Mover, which do not fully comply with the law. The doors on the People Mover vehicles close too quickly for her. Plaintiff Maddox has observed staff at the  People Mover who are often untrained and are sometimes verbally abusive to her or other patrons with disabilities. Several of the bus stops adjacent to CAYMC are not always completely accessible. Additionally, with her walker and her service dog Scarlett, Plaintiff Maddox finds that many sidewalks on Woodward near CAYMC at Jefferson are blocked by restaurant outdoor eating areas, that many curb cuts are not wide enough for her, Scarlett, and competing pedestrians and upright scooters and boarders, and that many crossing signals are not timed to allow

sufficient time to safely cross the street and lack audible pedestrian signals. Further, she cannot directly access the Millender Center or the Renaissance Center from CAYMC since she cannot return to CAYMC from the Millender Center Skywalk which have negatively affected her constitution rights with the past three years: the second-floor entrance is for employees only, and there is no elevator from the Skywalk to the ground. For the same reason, on countless occasions, Plaintiff Maddox and other persons with mobility disabilities cannot use the People Mover Station in the Millender Center to access the Skywalk to CAYMC, but instead must go outside to cross the busy streets of Randolph and Jefferson meant to be avoided by the Skywalk. *Id.* at ¶ 48.

The violations listed above, and additional violations outlined in detail in the Second Amended Complaint (*id.* at ¶¶ 28-49), each occurred within the statute of limitations and constitute new violations periods during which Plaintiffs Babcock and Maddox's claims accrued. Therefore, Plaintiffs' claims do not rely on Defendants' past violations outside of the limitation period and the doctrine of "continuing violations" does not apply.

For the above reasons, Plaintiffs' Second Amended Complaint is timely filed, and Plaintiffs respectfully request that the court deny Defendants' Motions to Dismiss.

### E. Plaintiffs state plausible PDCRA claims upon which relief may be granted against DWJBA

*See* Opposition to the City of Detroit's Motion to Dismiss, Sec. IV(B)(2),

incorporated herein by reference.

### F. Plaintiffs' ELCRA claim

*See* Opposition to the City of Detroit's Motion to Dismiss, Sec. IV(D),

incorporated herein by reference.[2]

### G. Punitive damages

*See* Opposition to the County of Wayne's Motion to Dismiss, Sec. IV(H),

incorporated herein by reference.

## V.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny

Defendant DWJBA's Motion to Dismiss Plaintiffs' Second Amended Complaint.


Respectfully Submitted,


Dated: September 8, 2023                    */s/ Michael W. Bartnik*
                                            MICHAEL W. BARTNIK (P32534)
                                            Law For Baby Boomers, PLLC
                                            41000 Woodward Ave., Ste. 350
                                            Bloomfield Hills, Michigan 48304
                                            (248) 608-3660 Telephone
                                            michaelbartnik@protonmail.com

---

[2] Plaintiffs note for the record that the means by which they obtained information about the disparities between the men's and women's toilets was not through improper disclosure of confidential settlement communications but rather through simple visual observation of publicly accessible spaces.

Elizabeth K. Abdnour (P78203)
Abdnour Weiker, LLP
500 E. Michigan Ave., Ste. 130
Lansing, Michigan 48912
(517) 994-1776 Telephone
liz@education-rights.com

Renee A. Stromski (Ohio 0101347)
Abdnour Weiker, LLP
262 South Third St.
Columbus, Ohio 43215
(216) 714-1515 Telephone
renee@education-rights.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I, Elizabeth K. Abdnour, counsel for Plaintiffs, certify that on September 8, 2023, I filed this document by use of this Court's ECF system, which will serve copies to all counsel of record.

*/s/ Elizabeth K. Abdnour*
Elizabeth K. Abdnour

28