# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

JILL BABCOCK, MARGUERITE
MADDOX, and ASHLEY
JACOBSON, on behalf of
themselves and others similarly
situated,

Case No. 22-cv-12951
Hon. Jonathan J.C. Grey

        Plaintiffs,

v.

STATE OF MICHIGAN, COUNTY OF
WAYNE, CITY OF DETROIT, and
DETROIT-WAYNE JOINT BUILDING
AUTHORITY, jointly and severally,

        Defendants.

_____/

## ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS FILED BY STATE OF MICHIGAN (ECF No. 82), COUNTY OF WAYNE (ECF NO. 88), CITY OF DETROIT (ECF No. 87), AND DETROIT-WAYNE JOINT BUILDING AUTHORITY (ECF No. 80)

## I.    INTRODUCTION

On December 6, 2022, plaintiffs Jill Babcock, Marguerite Maddox, and Ashley Jacobson[1] filed this lawsuit on behalf of themselves and

---

[1] Jaime Junior also was a named plaintiff. Junior withdrew her claim on December 27, 2022 (ECF No. 5) and was dismissed on December 29, 2022. (ECF No. 6.)

others similarly situated, alleging defendants[2] were violating: Title II of the Americans with Disabilities Act of 1990, as amended (the "ADA") (Count I); §504 of the Rehabilitation Act of 1973 ("Rehabilitation Act") (Count II); the Michigan Persons With Disabilities Civil Rights Act ("PWDCRA") (Count III); the Michigan Barrier Free Design Act, the Michigan Uniform Construction Code and applicable International Building Codes, the Michigan Sidewalks: Persons With Disabilities Act (Count IV); and sex discrimination, in violation of the Elliott-Larsen Civil Rights Act ("ELCRA") (Count V). (*See* ECF No. 1, PageID.43.) Counts I-IV are against all defendants, and Count V is against the County, the City, and the Authority, but not the State. Plaintiffs also seek damages and punitive damages. (*Id.* at PageID.44–45.)

After defendant State of Michigan (the "State") filed a motion to dismiss, the original judge randomly assigned to this case (United States District Judge Mark Goldsmith) entered an order allowing plaintiffs to file an amended complaint. (ECF No. 31.) Plaintiffs filed an amended complaint on April 28, 2023. (ECF No. 41.)

---

[2] Three other entities originally named as defendants in this matter have been dismissed: Wayne County Building Authority (ECF No. 84); Detroit Building Authority (ECF No. 86); and Hines Company (ECF No. 39).

The State and defendant City of Detroit (the "City") then filed motions to dismiss the amended complaint. (*See* ECF Nos. 72 and 70, respectively). Judge Goldsmith entered a second order authorizing plaintiffs to file a second amended complaint. (ECF No. 77.) On June 23, 2023, plaintiffs filed their second amended complaint (hereinafter, "the complaint"). (ECF No. 79.)[3] Pursuant to Administrative Order 23-AO-022, this case was reassigned from Judge Goldsmith to the undersigned on June 26, 2023.

Each of the remaining defendants, the State (ECF No. 82), the City (ECF No. 87), defendant County of Wayne (the "County") (ECF No. 88), and defendant Detroit-Wayne Joint Building Authority (the "Authority") (ECF No. 80), timely filed a motion to dismiss the second amended complaint. The four motions to dismiss are fully briefed. The Court concludes that oral arguments would not aid in the disposition of the motion, and it rules on the briefs alone. *See Kloss v. RBS Citizen*, 996 F. Supp. 2d 574, 590 (E.D. Mich. 2014) (courts may determine motions on

---

[3] Plaintiffs allege violations of the Federal Architectural Barriers Act, 42 U.S.C. § 4151 et seq., in several paragraphs in the second amended complaint (ECF No. 79, ¶¶ 9, 20.d, 115, and 126), but they do not identify the Federal Architectural Barriers Act or include any allegations related to it in any of the five specified counts. Accordingly, the Court concludes that plaintiffs have abandoned any claim for violation of the Federal Architectural Barriers Act.

the briefs without a hearing) (citing Fed. R. Civ. P. 78(b)); *Mohlong v. Long Beach Mortg.*, No. 12-10120, 2013 WL 827221, at *2 (E.D. Mich. Mar. 6, 2013) (stating that the Eastern District of Michigan L.R. 7.1(f)(2) gives discretion to the Court to decide motions without hearings).

For the reasons set forth below, the Court **GRANTS IN PART and DENIES IN PART** each of the defendant's motion to dismiss.

## II.   BACKGROUND

Plaintiffs filed this action to enforce the civil rights of persons with disabilities because defendants allegedly have repeatedly and continuously harmed plaintiffs by denying them due process, equal protection, and equal access to their buildings and facilities, services, amenities, programs, activities, and civic responsibilities. (ECF No. 95, PageID.1645 (citing ECF No. 79 at ¶¶ 1–8 and 111–127).) The complaint is 138 pages, with 259 paragraphs; it contains many general and overly broad allegations and, at times, is unwieldy. Within those pages and paragraphs, however, plaintiffs include some specific allegations regarding defendants' facilities, services, programs, and activities, as well as identify some instances describing plaintiffs' efforts to access or participate in the same.

4

The primary facility identified by plaintiffs is the Coleman A. Young Municipal Center (the "CAYMC") in Detroit, Michigan. The Authority, established and owned by the City and the County, constructed, owns, and manages the CAYMC. (*Id.* at ¶ 88.) The CAYMC is a building with two towers (a 14-story office tower and a 20-story court tower). It allegedly serves thousands of people each day, has only two toilets available for men who need an accessible toilet–in the basement multi-person toilet rooms, and has only one toilet for women who need an accessible toilet–in the basement multi-person toilet room, on one side of the building.

Plaintiffs allege that the tenants at the CAYMC consist of executive and legislative branches of government, including certain elected officials for the City and the County, as well as some of the State's circuit and probate courts. (*Id.*) The CAYMC also houses other City and County offices and at least one retail food and sundries shop. (*Id.*) Plaintiffs allege that all four defendants are responsible for the court facilities located in the CAYMC. (*Id.* at ¶¶ 111–127.) Plaintiffs claim there are few, if any, accessible jury boxes in any court room, accessible jury deliberation rooms, accessible toilets in the jury deliberation rooms, and

upon information and belief no accessible toilets in the jury assembly room, even though there have been multiple alterations to the interior and exterior of the CAYMC after enactment of applicable disability laws, including original courtrooms that have been modified, reduced, enlarged, or eliminated. (*Id.* at ¶ 115.) Plaintiffs claim that the public can move between the towers only in the basement, all toilet rooms in the office tower are locked in public halls and some of the women's toilet rooms are closed to the public above the eighth floor of the court tower.

Plaintiffs also complain of similar deprivations of rights at buildings that house Michigan courts in seven other counties, including Delta, Ingham, Livingston, Mackinac, Macomb, Oakland, and Washtenaw. Plaintiffs further allege accessibility issues pertaining to sidewalks, curb cuts, streets, and building entrances in various locations, including at the Plaza and Capitol Loop in Lansing and Hart Plaza in Detroit.

Plaintiff Jill Babcock is an attorney with disabilities who lives and works in the City. (ECF No. 79, ¶¶ 22–26.) She is employed by the City at the CAYMC but not as an attorney. (*Id.* at ¶ 26.) She alleges that the defendants' failure to make its courts accessible has deprived her of: (a)

the ability to fulfill jury duty in the 36th District Court and the Frank Murphy Hall of Justice; (b) full participation in a ceremony at the 54B District Court; and (c) in general, the full development of her legal profession. (*Id.* at ¶¶ 27–30.) She also alleges that she has needed to access the public areas of CAYMC for personal business matters in such offices as the ombudsman, building and safety, department of public works, public assessors' office, and the elections bureau. (*Id.* at ¶ 31.)

Plaintiff Marguerite Maddox resides in Detroit and has cerebral palsy, cervical dystonia, hearing impairment, speech impairment, and some vision decline, and she relies on her service animal, Scarlett. (*Id.* at ¶¶ 37–39.) Maddox is and has been a disability advocate for decades. She claims that, due to accessibility violations at the "Capitol Loop" in Lansing, maintained by the State, and the CAYMC, where the State allegedly has shared authority with the other defendants, she has been deterred or prevented from visiting and fully participating in disability advocacy activities. (*Id.* at ¶¶ 42, 44–47, 49, 67, 80, 109–110.)

Plaintiff Ashley Jacobson is an attorney licensed by the State. (*Id.* at ¶¶ 51, 65.) She has several physical disabilities and impairments including impairments of her bladder, spine, joints, and immune system.

(*Id.* at ¶ 51.) Her impairments affect her strength, balance, restroom needs, dexterity, fine and gross motor skills, and her ability to stand for long periods of time, so she often must use a cane or wheelchair. (*Id.*) Jacobson also consistently utilizes other medical devices, catheters for personal use and bladder treatments, equipment, and mobility aids, as her symptoms necessitate. (*Id.*) She alleges that she must have immediate access to fully compliant toilet facilities for her personal health and to engage in her profession. (*Id.* at ¶¶ 59, 65, 91–95.)

Jacobson alleges that she has had to turn down business and endure countless delays and inconveniences not experienced by "able-bodied"[4] attorneys due to the State's discriminatory refusal to make State buildings accessible. This inaccessibility allegedly, in turn, impairs or interferes with her ability to be as efficient as her peers and competitors in the private licensed practice of law, thereby affecting her ability to earn a living or make a profit. (*Id.* at ¶¶ 52–57, 65–66, 68.)

Jacobson states that when she started her law practice, she sought to become a court-appointed juvenile court attorney in the 22nd Circuit

---

[4] This is the term used by plaintiffs in the complaint (*see* ECF No. 79 at ¶¶ 52, 60, 62, 141, 182, 196, 219, 247, and "RELIEF REQUESTED," part D.); thus, the Court uses the same term in this Order.

Court, located in Washtenaw County. (*Id.* at ¶ 57.) Due to the alleged lack of close or accessible parking, lack of accessibility in the building, and lack of accessible entrances, Jacobson claims she had to eliminate that practice and pursue her work elsewhere. (*Id.*) She alleges that, within the past three years, the route for ingress and egress to the facility has been repeatedly inaccessible because the buttons for the automatic doors were blocked by the garbage containers both inside and outside the building on two occasions, preventing her ready entrance and exit. (*Id.*) If accessibility changes to and adjacent to that building were made, Jacobson states that she would pursue appointments and private clients in that court. (*Id.*)

For at least the two years preceding this action, Jacobson represented clients in the 44th Circuit and Juvenile Court and 53rd District Court, both located at its 204 S. Highlander Way building in Howell, Michigan (the "Howell building"). (*Id.* at ¶ 53.) In the Howell building, she serves as a court-appointed attorney representing juveniles and adults in delinquency and child protective proceedings. She also has clients who privately retained her and have pending cases in both the district and circuit courts in that building. (*Id.*)

The Howell building allegedly is not fully accessible. (*Id*.) Jacobson claims, for example, that the most convenient, centrally located accessible toilet is closed to the public anytime there is a jury. (*Id*. at ¶ 54.) As a result, when it is necessary for Jacobson to use the toilet, she must interrupt or delay her appearance or consultations and literally hobble with her cane or other device to either end of the building. Plaintiffs allege that his has happened often, including as recently April 2023. (*Id*.) Jacobson further alleges that she has incurred emotional and financial injury caused by inefficient practice of law and the stress of having to turn away business within the past three years, due to her inability to represent clients in defendants' inaccessible buildings. (*Id*. at ¶ 63.)

## III.   LEGAL STANDARD

The Court may grant a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) if the complaint fails to allege facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). When assessing a motion to dismiss under Rule 12(b)(6), the Court must give the plaintiff the benefit

of the doubt and must accept all the complaint's factual allegations as true. *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012).

But the Court will not presume the truth of any legal conclusions stated in the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If the pleaded facts do not raise a right to relief, the Court must grant the motion to dismiss. *Winnett v. Caterpillar*, *Inc.*, 553 F.3d 1000, 1005 (6th Cir. 2009).

## IV.   ANALYSIS

### A.    Claims Withdrawn by Plaintiffs

In response to the motions to dismiss, plaintiffs concede that they have no viable claims with respect to, and therefore withdraw: (a) Count IV, as to all four defendants; (b) Count V, as to the City, the County, and the DWJBA (the State was not a named defendant as to Count V); and (c) plaintiffs' request for punitive damages. (*See* ECF No. 79, PageID.1397–1398.) Accordingly, the motions to dismiss are **GRANTED** with respect to Counts IV and V, and plaintiffs' request for punitive damages is **DISMISSED**.

### B.    Standing

Plaintiffs must establish Article III standing before the Court can

address the merits of the case. *Ward v. Alternative Health Delivery Sys., Inc.*, 261 F.3d 624, 626 (6th Cir. 2001) ("Standing is thought of as a 'jurisdictional' matter, and a plaintiff's lack of standing is said to deprive a court of jurisdiction.") (citations omitted). "The burden of establishing standing is on the party seeking federal court action." *Rosen v. Tenn. Comm'r of Fin. & Admin.*, 288 F.3d 918, 927 (6th Cir. 2002) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–561 (1992)).

> [A] plaintiff must meet three requirements in order to establish Article III standing. First, [s]he must establish an injury in fact—a harm that is both concrete and actual or imminent, not conjectural or hypothetical. Second, [s]he must establish causation—a fairly traceable connection between the alleged injury in fact and the alleged conduct of the defendant. And third, [s]he must demonstrate redressability—a substantial likelihood that the requested relief will remedy the alleged injury in fact.

*Vt. Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 771 (2000) (internal quotation marks and citations omitted); *see also Lujan*, 504 U.S. 560; *Davis v Colerain Twp.*, 51 F.4th 164, 171 (6th Cir. 2022). As defendants argue, "[t]hat a suit may be a class action...adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members

12

of the class to which they belong and which they purport to represent.'" *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976) (quoting *Warth v. Seldin*, 422 U.S. 490, 502 (1975). The same threshold for standing applies to Rehabilitation Act and PWDCRA claims. *See Mote v. City of Chelsea*, 284 F. Supp. 3d 863, 887 (E.D. Mich. 2018).

Plaintiffs' ADA claims are limited to alleged violations of Title II of the ADA. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. *See also Mingus v. Buter*, 591 F.3d 474, 481-82 (6th Cir. 2010). "'Public entity' includes 'any state or local government and 'any department, agency, special purpose district, or other instrumentality of a State or States or local government.'" *Ability Cntr. of Greater Toledo v. City of Sandusky*, 385 F.3d 901, 904 (6th Cir. 2004) (quoting 42 U.S.C. § 12131(1)(A)&(B)).

To state a claim under Title II, plaintiffs must show that: (1) they are qualified individuals with a disability; (2) the entity is subject to the ADA; and (3) plaintiffs were denied the opportunity to participate in or

benefit from services, programs, or activities provided by the entity. *See Tucker v. Tennessee*, 539 F.3d 526, 532–33 (6th Cir. 2008), *abrogated on other grounds by Anderson v. City of Blue Ash*, 798 F.3d 338 (6th Cir. 2015); *Lleras-Rodriguez v. Geo Grp., Inc.*, 2022 WL 2951530, at *5 (W.D. Mich. July 26, 2022). For purposes of the motions to dismiss, it is undisputed that plaintiffs are qualified individuals with a disability and that each defendant is a covered entity under Title II.

### 1. Injury in Fact

Defendants first contend that plaintiffs allege only "[a] generalized grievance against governmental conduct[, which] is insufficient to confer standing upon a party." *United States v. Hays*, 515 U.S. 737, 743 (1995). Defendants assert that plaintiffs have failed to allege that they suffered a concrete or particularized injury, such that they were "excluded from participation in or . . . denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity" based on their disabilities. 42 U.S.C. § 12132. If defendants are correct, plaintiffs lack standing. *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547 (2016); *Lujan*, 504 U.S. at 560–561. The Court finds that defendants are not correct.

Defendants argue that plaintiffs' allegations challenge the design defects of buildings and surrounding infrastructure, i.e., "facility-related issues," not any defendant "service, program, or activity." *Babcock v. Michigan*, 812 F.3d 531, 538–539 (6th Cir. 2016) ("*Babcock I*"). This distinction matters because, to maintain a Title II cause of action under 42 U.S.C. § 12132, a plaintiff must allege a denial of access to a service, program, or activity; it is insufficient to merely plead that a facility, in isolation, is inaccessible. *Babcock I*, 812 F.3d at 535 (citing 42 U.S.C. § 12132) ("there is a distinction between access to a specific facility and access to a public service, program, or activity under Title II's private cause of action.").

The Court finds that portions of the present complaint do not suffer from the same deficiency as that in *Babcock I*. Although "facility accessibility is not, standing alone, a cognizable claim under Title II's private right of action," a cognizable claim exists if "that facility's inaccessibility interferes with access to public services, programs, or activities." *Mote v. City of Chelsea*, 252 F. Supp. 3d 642, 650 (E.D. Mich. 2017) (quoting *Babcock I*, 812 F.3d at 536).

Significantly, the ADA's phrase "services, programs, or activities" is broad enough to encompass "virtually everything that a public entity does." *See Michigan Paralyzed Veterans of Am., Inc. v. Michigan Dep't of Transp.*, 2017 WL 5132912, at *28 (E.D. Mich. Nov. 6, 2017) (quoting *Johnson v. City of Saline*, 151 F.3d 564, 569 (6th Cir. 1998)). Of course, to the extent defendants dispute the veracity of plaintiffs' allegations "at this pleading stage[,] the Court must credit the Plaintiffs' factual allegations which assert otherwise – these are matters to be addressed on a more developed evidentiary record." *Id*.

Defendants assert that plaintiffs do not identify: (1) any services, programs, or activities afforded by defendants of which plaintiffs were deprived; (2) when the alleged deprivations occurred, (3) the building in which the deprivations occurred; and (4) the defendants' conduct that allegedly denied meaningful access. *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 373 (6th Cir. 2011). The Court agrees that many of plaintiffs' allegations are unacceptably vague, however, several allegations are sufficiently specific.

Ironically, in *Babcock I*, the court arguably set forth a roadmap for the plaintiffs to plead a viable ADA claim in this case. *See Babcock I*, 812

F.3d at 539 ("The district court held that Babcock lacked standing to raise such a [Title II] claim because she did not allege that she sought to observe court proceedings, that her employment required access to the courts, or that she was otherwise denied a concrete opportunity to engage in the judicial process."). In this action, Babcock and Jacobson specify numerous instances of being denied or impaired access to the courts within the three years before the complaint was filed. They allege such violations occurred at the CAYMC (Detroit) (Babcock denied jury duty in Third Circuit Court (ECF No. 79 at ¶ 30a)), the Frank Murphy Hall of Justice (Detroit) (Babcock denied jury duty in Thirty-sixth District Court (*id*. at ¶ 30b)), the 54th District Court (Ingham County) (Babcock attended a judge's swearing-in (*id*. at ¶ 29)); the 44th Circuit Court and 53rd District Court (Livingston County) (Jacobson had to turn down business due to accessibility challenges (*id*. at ¶ 53)); the Twenty-second District Court (Washtenaw County) (Jacobson had to turn down business due to accessibility challenges (*id*. at ¶ 52)). (*See also* ¶¶ 36, 54, 57, 59–60, 65, 90, 91, 94, 98, 181, 182, 195, 196, 218, 219, 246, 247 (plaintiffs describe how inaccessibility to the buildings and rooms therein allegedly

require Babcock and Jacobson to turn down clients who because the case proceedings would occur in those buildings).)

Plaintiffs also sufficiently allege being denied or having impaired access to other services, programs, or activities provided by defendants within the three years before the complaint was filed. Babcock alleges that she was denied the ability to present at a disability presentation in the CAYMC on April 11, 2023 because it was under construction, yet when she visited the location shortly afterward, no construction had occurred. (*Id.* at ¶ 28.) Babcock claims she has tried to visit municipal offices in the CAYMC (including the Office of Disability Affairs) for a variety of purposes but could not due to heavy doors and inaccessible toilets. (*Id.* at ¶¶ 31, 36.) Babcock further alleges that she was denied or had significantly challenging or impeded full and equal access to Spirit Plaza, and she includes specific details regarding the same. (*Id.* at ¶¶ 32, 36 (however, ¶¶ 33–35 are vague and not actionable).) With respect to Spirit Plaza, and unlike many of the vague allegations in the complaint, plaintiffs explain where and how the sidewalks and curbs are not all accessible and are inconsistently accessible and poorly maintained:

> [O]n June 16, 2023, for the Juneteenth Freedom Day events in Spirit Plaza immediately adjacent to CAYMC, she

volunteered to attend the Disability Rights booth, but was hindered due to the City's failure to remove the entire curb on Woodward running north and south on the east edge of the Plaza, failure to remove other barriers to this permanent plaza, and failure to maintain the curb cut along Jefferson nearest CAYMC, to the point that the pavement had settled resulting in a large gap: she and her wheelchair were stuck in that gap until a passer-by pushed her out of it.

(*Id.* at ¶ 36.)

Maddox alleges that her ability to vote in person has repeatedly been denied or impeded, and her access to City Council meetings at the CAYMC has been denied, limited, or impaired by the lack of overflow seating, especially for persons with disabilities; faulty close captioning for the hearing impaired who participate remotely; heavy glass doors; inaccessible toilet rooms; and inaccessibility to the Skywalk entrance to the CAYMC. (*Id.* at ¶¶ 43–49). Maddox also claims that various exterior and interior defects at the Rosa Parks Transit Center (including restricted access to the building and surrounding sidewalks, as well as toilet rooms without accessible sinks) denied her the ability to meaningfully access that facility to use the bus system. (*Id.* at ¶ 48.)

The County argues that plaintiffs must allege at least a "plausible intent to return" to one of its buildings or that they were "deterred from visiting . . . because of alleged accessibility barriers." *Gaylor v. Hamilton*

*Crossing CMBS*, 582 F. App'x 576, 580 (6th Cir. 2019). The Court finds that all plaintiffs have done so, as Maddox has attended or attempted to attend City Council meetings for almost 25 years, including during the Covid-19 pandemic, and she has not indicated that she intends to stop attending those meetings or the other disability activism events she frequents. Babcock and Jacobson have both alleged a desire to continued access to the courts, as well as Babcock indicating an intent to continue patronizing cultural events and patronizing restaurants in Detroit and Wayne County.

In some, but not all, of the foregoing allegations, plaintiffs specify a date on which the defendants' conduct denied or impaired plaintiffs' access to defendants' services, programs, or activities. At this stage of the proceedings, between the paragraphs cited above and other paragraphs in the complaint, the Court determines that plaintiffs have adequately afforded defendants notice of the "when."

As set forth above, plaintiffs also have identified the building or location where each alleged deprivation occurred. For clarity, however, the Court notes the actionable barriers to meaningful access exist in, at, or on the buildings or locations related to plaintiffs' injuries noted in this

section: the CAYMC (Detroit) (*see especially* ECF 79, at ¶¶ 111-127); the 54B district court (Lansing) (*id.* at ¶ 29); the 22nd Circuit Court (Washtenaw) (*id.* at ¶ 158); the Howell building (Livingston) that houses the 44th Circuit Court  and the 53rd District Court (*id.* at ¶ 150); the Frank Murphy Hall of Justice (Detroit) (Third Circuit Court (*id.* at ¶¶ 128-129) and the 36th District Court (*id.* at ¶ 130); Spirit Plaza (Detroit) (*id.* at ¶ 32, 36); and the Rosa Parks Transit Center (*id.* at ¶ 48).

2. *Causation*

The Court finds that plaintiffs have satisfied the causation element with respect to each of alleged violations, at least at this stage of the proceedings. Plaintiffs allege that all four defendants are liable for the violative conditions at the CAYMC, citing: (a) the Authority's ownership and management of the building, as well as its responsibility for common space; (b) the City's and County's lease of significant portions of the building; and (c) the State's operation and responsibility for the Michigan state courts that are housed in the building.

The Court acknowledges the State's arguments that state courts are operated locally, but the Court also notes that the legal authority and statutory provisions cited by State do not demonstrate as a matter of law

that the State has no role in the design, operation, and accessibility of state courts.

The Court further acknowledges that plaintiffs have not specifically alleged which defendant is responsible for some of the alleged violative conduct described above, however, this is a motion on the pleadings and it is a defendant's burden to establish that it is entitled to dismissal. *See, e.g., Marcure v. Lynn*, 992 F.3d 625, 631 (7th Cir. 2021) ("every circuit court to address this issue—this Court included—has interpreted Rule 12(b)(6) as requiring the movant to show entitlement to dismissal. . . .); Charles Alan Wright & Arthur R. Miller, 5A *Federal Practice and Procedure* § 1357 (3d ed. 2019) ("All federal courts are in agreement that the burden is on the moving party to prove that no legally cognizable claim for relief exists.").

Therefore, except as set forth below, none of the defendants has established as a matter of law that it is not liable for alleged violative conduct at the buildings and locations described above.

*3. Redressability*

Finally, the Court finds that plaintiffs have demonstrated that it is likely, not just speculative, that a favorable decision will redress the

injury. *Larson v. Valente*, 456 U.S. 228, 243 (1982) (a favorable decision will redress the injury with "substantial and meaningful relief" if the court imposes obligations). If a decision favoring plaintiffs is rendered, numerous physical barriers will be altered or removed: plaintiffs will then have improved accessibility to locations, buildings, courts, toilet rooms, and public offices where defendants' services, programs, and activities are provided that they have been unable to meaningfully access and participate in.

### C.    Sovereign Immunity

The State contends that it is entitled to sovereign immunity pursuant to the Eleventh Amendment.

> The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Although by its terms the Amendment applies only to suits against a state by citizens of another state, the Supreme Court has extended it to suits by citizens against their own states. *See, e.g., Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001). "The ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private individuals in federal court." *Id.*

*Babcock I*, 812 F.3d at 533–534. "Congress may abrogate the states' Eleventh Amendment sovereign immunity . . . [and] Congress has expressed an unequivocal desire to abrogate Eleventh Amendment immunity for violations of the ADA." *Id.* at 534 (citing *Carten v. Kent State Univ.*, 282 F.3d 391, 394 (6th Cir. 2002)).

As the *Babcock I* court clarified, however, that abrogation is valid only in limited instances. *Babcock I*, 812 F.3d at 534. Some Title II ADA claims fall within those limited instances. For example, a Title II claim under the ADA is not barred when it is based on a denial of "the fundamental right of access to the courts," *Tennessee v. Lane*, 541 U.S. 509, 533–534 (2004), or when the ADA-violating conduct, at least in part, violates the Fourteenth Amendment. *United States v. Georgia*, 546 U.S. 151, 159 (2006). An alleged violation of the Equal Protection Clause, however, "cannot serve as a basis for Title II liability." *Babcock I*, 812 F.3d at 534 (citing *Popovich v. Cuyahoga Cty. Court of Common Pleas, Domestic Relations Div.*, 276 F.3d 808, 812 (6th Cir. 2002) (en banc)).

In evaluating whether the Eleventh Amendment bars an ADA Title II claim, the court applies a three-part to test to:

> determine ... on a claim-by-claim basis, (1) which aspects of the State's alleged conduct violated Title II; (2) to what extent

24

> such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid.

*Babcock I*, 812 F.3d at 534–535 (quoting *Georgia*, 546 U.S. at 159). Accordingly, the Court first must decide if any of defendants' alleged conduct violated Title II. As the Court concluded when addressing standing, plaintiffs have sufficiently alleged that some of defendants' alleged conduct violated Title II. Next, pursuant to *Tennessee* and *Georgia*, the Court concludes that plaintiffs' claims based on access to the courts are not barred by the Eleventh Amendment. Likewise, a Title II claim for access to activities such as voting, programs such as City Council meetings, services offered at municipal offices, and access to public spaces is not barred by the Eleventh Amendment. *Mote*, 284 F. Supp. 3d at 878–880.

### D.   Babcock's and Maddox's Claims not Barred by Statute of Limitations

Defendants argue that Babcock's and Maddox's claims are barred by a three-year statute of limitations because they have been aware of the conditions and alleged violations of the ADA, Rehabilitation Act, and the PWDCRA for many years. The Court notes that:

> "Federal law...governs when the limitations period begins to run, that is, when a claim accrues." *Helm v. Eells*, 642 Fed.Appx. 558, 561 (6th Cir. 2016) (citing *Johnson v. Memphis Light Gas & Water Div.*, 777 F.3d 838, 843 (6th Cir. 2015)). "**Under federal law, a claim accrues 'when the plaintiff knows or has reason to know of the injury which is the basis of his action**.'" *Ibid.* "A plaintiff has 'reason to know' of an injury if he or she 'should have discovered it through the exercise of reasonable diligence.'" *Ibid.* "This is an objective inquiry, which looks 'to what event should have alerted the typical lay person to protect his or her rights.'" *Ibid.*

*Mote*, 284 F. Supp. 3d at 886 (emphasis added). As the Fifth Circuit

stated,

> Although we borrow a limitations period from state law, the particular accrual date of a federal cause of action is a matter of federal law.[] Absent unusual circumstances not present in this case,[] the rule is that accrual occurs when a plaintiff has "a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief."[] In other words, accrual occurs "the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured."[]

> Drawing from the text of § 12132, an injury occurs (and a complete and present cause of action arises) under Title II when a disabled individual has sufficient information to know that he has been denied the benefits of a service, program, or activity of a public entity. As applied to this case, the plaintiffs' cause of action accrued when they knew or should have known they were being denied the benefits of the City's newly built or altered sidewalks. This accrual date dovetails with the plaintiffs' standing to sue. As discussed above, **a disabled individual has no standing to challenge an inaccessible sidewalk until he can show "actual," "concrete plans" to use that sidewalk.[] Only then is the**

**individual actually, as opposed to hypothetically, denied the benefits of the sidewalk. But just as a plaintiff may not sue until he is actually deterred from using a newly built or altered sidewalk, so his complete and present cause of action does not accrue until that time**.

*Frame v. City of Arlington*, 657 F.3d 215, 238 (5th Cir. 2011) (emphasis added; footnotes omitted).

Defendants argue that the language in these cases means that the statute of limitations in this case began to run when a plaintiff became aware of a defendant's violative conduct. As to Babcock, defendants assert that was in 2017, when she began working at the CAYMC; for Maddox, defendants assert that was in 2008, when she started attending City Council meetings and complaining about the alleged architectural barriers. The Court disagrees with defendants' interpretation of *Mote* 2018 and *Frame*. The Court finds that the statute of limitations begins to run only "when the plaintiff knows or has reason to know of **the injury which is the basis of his action**." *Mote 2018*, 284 F. Supp. 3d at 886 (emphasis added).

As defendants have consistently argued, plaintiffs cannot recover for injuries that are not concrete or more than three years old. Therefore, it is only when a concrete injury occurs that the statute of limitations

27

begins to run; it cannot when there is a non-specific, generalized alleged violation of a statute. Therefore, it is irrelevant that Babcock has worked at the CAYMC since 2017 and Maddox began attending City Council meetings there in 2008. The instances of defendants' alleged violations that occurred in the three years before the complaint was filed on December 6, 2022, however, are relevant. (*See, e.g.,* ECF No. 79 at ¶¶ 28–32, 36, 41, 43–48, 62, 91–92, 96, and 98.)

For the foregoing reasons, the Court rejects defendants' contention that the statute of limitations bars Babcock's and Maddox's claims.

### E.    Count I – ADA (Title II)

A public entity must provide meaningful access to its buildings in full compliance with the law. *See United Spinal Ass'n v. Bd. of Elections in City of New York*, 882 F. Supp. 2d 615, 623 (S.D.N.Y. 2012), aff'd sub nom. *Disabled in Action v. Bd. of Elections in City of New York*, 752 F.3d 189 (2d Cir. 2014) ("the ADA and its implementing regulations do not require 'equal access' or 'equal results' for individuals with disabilities, those individuals must be provided with "meaningful access" to a public entities programs and activities."). While an entity must operate each service, program, or activity so that the service, program, or activity,

when viewed in its entirety, is readily accessible to and usable by individuals with disabilities, 28 C.F.R. § 35.150(a)(1), the entity is not required to make changes to existing facilities where program access requirements are met. 28 C.F.R. § 35.150(b)(1). In other words, 28 C.F.R. §§ 35.150(a)-(b) "strongly suggest that a private cause of action exists to remedy the exclusion from participating in or deriving benefit from public services, programs, or activities, but not remedy the lack of certain design features of a facility." *Babcock I*, 812 F.3d at 536. Thus, alleging building defects or design flaws does not, in itself, establish a violation of Title II.

Defendants assert that plaintiffs' attempts to invoke compliance with the 2010 ADA Standards for Accessible Design ("ADASAD") (*see, e.g,* ECF No. 79, at ¶¶ 28, 31, 115) are not applicable to many of the buildings at issue based on ADA "safe harbor" provisions. The Court recognizes that ADA safe harbor provisions may exempt the County (and other defendants) from ADA compliance, however, to ascertain whether those provisions will require a determination of fact based on the allegations in the complaint. Specifically, the complaint alleges that there have been recent material alterations to many of the buildings at issue in this case, including the CAYMC. Accordingly, the Court declines

defendant's request to dismiss the ADA claim based on ADA safe harbor provisions.

Defendants next argue that plaintiffs fail to allege the "when, where, in what or by whom" required to state a claim under Rule 12(b)(6). *Ctr. for Bio-Ethical Reform, Inc.*, 648 F.3d at 373. As noted above in the Court's discussion of standing, the Court agrees with defendants that many of plaintiffs' allegations are unacceptably vague and do not satisfy the notice pleading required by *Iqbal* and *Twombly. See, e.g., Twombly*, 550 U.S. at 555, 559 ("a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do;" instead, the allegations must provide defendant with "fair notice of what the . . . claim is and the grounds upon which it rests."). For that reason, the Court concludes that the following allegations fail to state a claim, and plaintiffs shall not be permitted to seek relief with respect to them.

1.     Any claim Jacobson has asserted against the Authority, the County, and the City. These three defendants are not alleged to have engaged in, nor are they subject to liability for, any conduct that occurred outside Wayne County. The only allegation with any arguable connection

of Jacobson to any facility, service, program, or activity in Wayne County

is the following language:

> During the past three years, up to and through the COVID-19
> pandemic to the date of filing, Plaintiff Ashley Jacobson has
> had multiple cases, hearings, and meetings with and on
> behalf of her clients before these and other commissions,
> courts, boards, and offices of each of the various Defendants,
> including but not limited to the CAYMC and many of the
> Defendants' buildings and courts described in this Complaint,
> but which she cannot specifically disclose due to client
> confidentiality.

(ECF No. 79, PageID.1294 at ¶ 56.) The Court finds that this vague

reference to the CAYMC does not satisfy the plausibility standard of

*Iqbal/Twombly*. Plaintiffs also do not adequately allege that Jacobson

attended or even attempted to attend the CAYMC, nor does she represent

an intent to do so in the future.

      2.    Any claims by Babcock and Maddox related to allegations

involving defendants' services, programs, or activities in Washtenaw

County or Livingston County, as there is no allegation that either of them

attempted to access or participate in any service, program, or activity in

those counties.

      3.    Any claims by Maddox and Jacobson related to allegations

involving defendants' services, programs, or activities in Ingham County,

as there is no specific allegation that either of them attempted to access or participate in any service, program, or activity in that county.

4.    All plaintiffs' claims against the Authority as to any event or facility other than CAYMC, the only facility with which the Authority is associated.

5.    All claims stemming from allegations regarding visually impaired persons. The sole allegation that expressly identifies vision impairment indicates that Maddox has "some vision decline." (ECF No. 79, at ¶ 39.) There are, however, no allegations that Maddox was denied any access to or participation in any service, program or activity due to her vision decline.

6.    Any claims tied to counties (and facilities therein) identified in the complaint that no named plaintiff is alleged to have visited or been denied access or participation in any defendant's service, program, or activity; specifically, plaintiffs' claims related to the following counties have no basis: Delta, Mackinac, Macomb, and Oakland.

7.    All claims against the City, the County, and the Authority involving any alleged conduct outside of the City of Detroit. No allegations remain regarding any buildings or locations in Wayne County

outside of the City of Detroit, and all other buildings are located outside Wayne County.

8.   All claims associated with the following buildings in the City of Detroit: the Guardian Building, the Lincoln Hall of Juvenile Justice, the Penobscot Building, the 400 Monroe building, and the Wayne County Criminal Justice Center. (*Id.* at ¶¶ 132–147.) The complaint contains no allegation that any named plaintiff attempted to access or participate in any service, program, or activity in those buildings.

9.   Any claims related to the State Capitol, Michigan Hall of Justice, George W. Romney Building, and other buildings on the Plaza and the Capitol Loop, as these are general allegations and are not connected to any named plaintiff. (*Id.* at ¶¶ 109–110.) Even Maddox's allegation regarding attending events in that area are too vague to be actionable. (*Id.* at ¶ 67.)

10.   Except as expressly stated otherwise in this Order, all claims involving alleged barriers exterior to a building. Although a plaintiff can assert a cognizable Title II claim if a "facility's inaccessibility interferes with access to public services, programs, or activities," *Mote*, 252 F. Supp. 3d at 650 (quoting *Babcock I*, 812 F.3d at 536), the Court finds that

plaintiffs have not alleged with specificity the inaccessibility of facilities, sidewalks, curb cuts, etc., including those related to Hart Plaza and Dally in the Alley.

However, as set forth in Section IV.B.1, the Court finds that not all of plaintiffs' allegations are deficient. With respect to the allegations set forth in Section IV.B.1, the Court holds that plaintiffs have sufficiently pleaded claims for purposes of *Iqbal/Twombly*. Accordingly, those allegations and claims remain viable, and defendants' motions are denied with respect to those claims.

## F.    Count II – Rehabilitation Act

Section 504 of the Rehabilitation Act of 1973 ("Section 504") and its implementing regulations provide, in pertinent part:

> No otherwise qualified individual with a disability . . . shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

20 U.S.C. § 794(a); *see also* 34 C.F.R. § 104.4(a).

To state a claim under Section 504, a plaintiff must allege facts allowing for the reasonable inference that: (1) plaintiff is disabled; (2) plaintiff is otherwise qualified for participation in the program; (3)

plaintiff is being excluded from participation in, denied benefits of, or being subjected to discrimination under the program solely due to a disability; and (4) **the relevant program or activity is receiving federal financial assistance**. *Landefeld v. Marion Gen. Hosp. Inc.*, 994 F.2d 1178, 1180-1181 (6th Cir. 1993) (emphasis added).

With respect to the first three elements, the Court's "analysis of Rehabilitation Act claims 'roughly parallels' ADA claims because the statutes contain similar language and are 'quite similar in purpose and scope.'" *Babcock I*, 812 F.3d at 540 (quoting *McPherson v. Mich. High Sch. Athletic Ass'n, Inc.,* 119 F.3d 453, 459–60 (6th Cir.1997)); *Mahon v. Crowell*, 295 F.3d 585, 589 (6th Cir. 2002). There is one significant difference between the ADA and the Rehabilitation Act: plaintiffs must allege that the relevant program or activity is receiving federal assistance to plead a viable Rehabilitation Act claim. *Landefeld*, 994 F.2d at 1181.

Initially, the definition of "program or activity" under the Rehabilitation Act was interpreted to mean that a plaintiff need to allege how the federal funding supported, was connected to, or related to a particular program, or activity offered by any defendant.  *See, e.g, Cons.*

*Rail Corp. v. Darrone*, 465 U.S. 624, 635–636 (1984); *Gallagher v. Pontiac*

*Sch. Dist.*, 807 F.2d 75, 80 (6th Cir. 1986).

> [I]n the Civil Rights Restoration Act of 1987, Pub. L. No. 100–259, 102 Stat. 28 (1988), Congress amended the definition of "program or activity" to include "*all of the operations* of ... a department, agency, special purpose district or other instrumentality of a State or of a local government." 29 U.S.C. § 794(b)(1)(A) (emphasis added).

*McMullen v. Wakulla Cnty. Bd. of Cnty. Commissioners*, 650 F. App'x

703, 704–05 (11th Cir. 2016).

As defendants correctly argue, however, the definition of "programs

or activities" does not refer to a public entity as a whole, but rather

specifies a public entity's subordinate components such as agencies or

departments. *See* 29 U.S.C. § 794(b)(1). 29 U.S.C. § 794(b)(1) now

provides:

> (b)    "Program or activity" defined
>
> For the purposes of this section, the term "program or activity" means all of the operations of—
>
> (1)
> (A)    a department, agency, special purpose district, or other instrumentality of a State or of a local government; or
>
> (B)    the entity of such State or local government that distributes    such    assistance    and    each    such

department or agency (and each other State or local government entity) to which the assistance is extended, in the case of assistance to a State or local government;

*Id.*

As several courts have held, a public entity such as city, county, or state does not fall under the definition of "program or activity" according to the plain terms of 29 U.S.C. § 794. *See, e.g, Maat v. Cnty. of Ottawa*, 2014 WL 1255981, at *7 (W.D. Mich. Mar. 26, 2014), aff'd sub nom. *Maat v. Cnty. of Ottawa, Michigan*, 657 F. App'x 404 (6th Cir. 2016) (explaining that "even in the case of assistance to a state or local government as a whole, § 504 still covers only the governmental entity that distributes the assistance and any governmental entity to which the assistance is extended."); *McMullen*, 650 F. App'x at 707 (the "district court correctly found that the relevant unit to consider was the Fire Rescue Department and all of its operations, not the fire services division alone or the County as a whole.").[5]

---

[5] *Arbogast v. Kan., Dep't of Labor*, 789 F.3d 1174, 1184 (10th Cir. 2015) (internal quotation marks, brackets, and citations omitted) ("Generally, courts considering the scope of a state entity's waiver under the Rehabilitation Act acknowledge that the definition of 'program or activity' was not intended to sweep in the whole state or local government whenever one subdivision discriminates. Rather, courts interpret the phrase 'program or activity' to only cover all the activities of the department or the agency receiving federal funds."); *Koslow v. Pennsylvania*, 302 F.3d 161, 171 (3rd Cir.

Plaintiffs have generally alleged that each defendant has received

federal funding:

> Upon information and belief, each of the public entity Defendants has received Federal funding, including COVID-19 economic relief from the U.S. Departments of Treasury, Transportation, Health and Human Services, and/or the State of Michigan; and/or funding from the American Rescue Plan Act of 2021, the Build Back Better Act, and/or the Inflation Reduction Act of 2022.

(*See* ECF No. 79, ¶ 160.) Plaintiffs have not, however, identified any

department or agency of the State, the County, or the City. Therefore,

the Court agrees with defendants' argument that plaintiffs have failed to

state a claim under Section 504 upon which relief can be granted and

**DISMISSES** Count II as to all defendants.

## G.    Count III – Persons with Disabilities Civil Rights Act

The PWDCRA states, in pertinent part, that a person shall not

---

2002) ("Under the statutory definitions in the Rehabilitation Act, the state, as a whole, cannot be a 'program or activity;'" and "if a state accepts federal funds for a specific department or agency, it voluntarily waives sovereign immunity for Rehabilitation Act claims against the department or agency—but only against that department or agency"); *Jim C. v. United States*, 235 F.3d 1079, 1081 (8th Cir. 2000) (citation omitted) (holding that, pursuant to 29 U.S.C. § 794(b)(1), a state is not a program or activity and "only the department or agency which receives [or distributes] the aid is covered."); *Schroeder v. City of Chicago*, 715 F. Supp. 222, 225 (N.D. Ill. 1989), aff'd, 927 F.2d 957 (7th Cir. 1991) ("The City of Chicago does not fit this statutory definition of "program or activity." The City is not a department or instrumentality of a local government. Rather, as a full-blown municipality, the City embodies an entire local government.").

"[d]eny an individual the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodation or public service because of a disability that is unrelated to the individual's ability to utilize and benefit from the goods, services, facilities, privileges, advantages, or accommodations or because of the use by an individual of adaptive devices or aids." M.C.L. § 37.1302.

The PWDCRA "substantially mirrors the ADA, and resolution of a plaintiff's ADA claim will generally, though not always, resolve the plaintiff's PWDCRA claim." *Donald v. Sybra, Inc.*, 667 F.3d 757, 764 (6th Cir. 2012); *Mote v. City of Chelsea*, 391 F. Supp. 3d 720, 740 (E.D. Mich. 2019) (*Mote* 2019).

The entirety of defendants' analysis related to plaintiffs' PWDCRA claims is that the PWDCRA claims should be denied for the same reasons as the ADA claims should be denied—because the PWDCRA claims substantially mirror the ADA and resolution of the ADA claim generally will resolve the PWDCRA claim. *Donald*, 667 F.3d at 764. The Court agrees. Accordingly, the Court holds that plaintiffs' PWDCRA claims are denied or survive to the same extent that their ADA claims do, as set forth in Section IV.E.

## V.   CONCLUSION

Consistent with and for the reasons stated above, **IT IS ORDERED** that:

    A.    the State's motion to dismiss (ECF No. 82) is **GRANTED IN PART and DENIED IN PART**;

    B.    the City's motion to dismiss (ECF No. 87) is **GRANTED IN PART and DENIED IN PART**;

    C.    the County's motion to dismiss (ECF No. 88) is **GRANTED IN PART and DENIED IN PART**; and

    D.    the Authority's motion to dismiss (ECF No. 80) is **GRANTED IN PART and DENIED IN PART**.

**IT IS FURTHER ORDERED** that Counts II, IV, and V of the complaint, as well as plaintiffs' "claim" for punitive damages, are **DISMISSED**.

**IT IS FURTHER ORDERED** that Counts I and III remain before the Court, but only to the extent such allegations and claims are expressly identified as viable in Sections IV.B.1 and IV.E.

**SO ORDERED.**

Date: March 30, 2024        **s/Jonathan J.C. Grey**
                                 Hon. Jonathan J.C. Grey
                                 United States District Judge

## Certificate of Service

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First-Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 30, 2024.

<u>s/</u> **S. Osorio**
Sandra Osorio
Case Manager