**Exhibit C-2**

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN

Marquitta Stanton,

                  Plaintiff,

v                                            Civil Action No.:

                                              Judge:

City of Detroit,                         **JURY TRIAL**

                    Defendant.            **DEMANDED**

/

Ashley B. Jacobson (P83481)
Attorney for Plaintiff
*Jacobson Law & Advocacy,
PLLC*
455 E. Eisenhower Pkwy. Ste.
300
Ann Arbor, MI 48108
(248) 878-6940
Ashley@JLAPLLC.com

Brad H. Sysol (P58138)
Attorney for Plaintiff
*Sysol Law PLLC*
P.O. Box 353
Mattawan, MI  49071
(269) 569-5649
BHSysol@bhslaw.net

<u>**VERIFIED COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF**</u>

Plaintiff, through her attorneys Ashley B. Jacobson of Jacobson Law & Advocacy, PLLC, and

Brad H. Sysol of Sysol Law, PLLC, states the following:

**INTRODUCTORY STATEMENT**

**Exhibit C-2**

1. This is an action to enforce the civil rights of a woman with a disability against the City of Detroit and, as a subset of the City of Detroit, the Detroit Board of Police Commissioners (BOPC).

2. Plaintiff, at times relevant to this Complaint, worked as a qualified and devoted civilian investigator charged with evaluating misconduct within the City of Detroit's Police Department for the Office of the Chief Investigator.

3. Her case closure and performance reviews clearly demonstrated she was qualified to perform her duties. For nearly eight (8) years, prior to the disclosure of her disability to Supervising Investigator Ainsley Cromwell, her access to the building, resources, and opportunities for advancement were comparable to that of her non-disabled peers.

4. However, upon Plaintiff's disclosure of her disabilities to Mr. Cromwell, which include but are not limited to Attention Deficit Hyperactivity Disorder (ADHD) and Major Depressive Disorder, beginning in August 2020, Defendant took swift and severe action against Plaintiff.

5. In July 2020, Plaintiff filed a union grievance against Mr. Cromwell and Interim Chief Akbar for adverse treatment without merit, stemming from his finding of her as ineligible for COVID-19 pandemic telework. The very next day, Mr. Akbar issued a written reprimand for "insubordination" and transferred her to the supervision of Mr. Cromwell.

6. When asked why Plaintiff was issued a written reprimand, Mr. Akbar admitted in the presence of witnesses that Plaintiff did nothing wrong.

7. Then in October of 2020, Mr. Cromwell began modifying the conditions of Plaintiff's employment in ways that were inconsistent with her nondisabled peers.

**Exhibit C-2**

8. Mr. Cromwell, as an employee of Defendant, limited Plaintiff's physical access to the building, denied her advancement opportunities, ostracized her in front of colleagues and leadership, and harassed her in a manner that created a consistently hostile work environment.

9. Plaintiff's hours were cut from 40 hours per week to 32 hours per week beginning July 2020. At that time, her colleagues' hours were also cut, but her colleagues remained allowed to access the building, resources, and overtime hours in ways Plaintiff was restricted by her supervisor.

10. Plaintiff was also not allowed access to the building after 4 p.m., yet Defendant maintained the same timeline expectations for completion of her work.

11. Mr. Cromwell also insisted that she receive "prior authorization" to be in the building on the weekends or after 4 p.m., despite no policy at the time requiring that of her or any employee, and that she only be allowed in the building when a supervisor was also present.

12. Plaintiff was instructed by Defendant that she needed to request accommodations to receive the same access to the workplace as her nondisabled peers—a barrier created only for her. Yet her supervisor, Mr. Cromwell, responded by threatening her with disciplinary action if she failed before accommodations were approved.

13. When accommodations were requested by Plaintiff, they were ignored for months.

14. Repeatedly, Plaintiff inquired with the appropriate individuals about her ADA accommodations, asked for the proper forms, and spoke with other leadership and the Office of Inclusion.

**Exhibit C-2**

15. Upon Plaintiff notifying her union, UAW Local 212/UAW Region #1, in January 2021, of the discrimination she experienced based on her disability and gender, her union did not pursue necessary actions to protect her rights.

16. For months, Defendant's mistreatment of Plaintiff continued without accountability, and Plaintiff remained without proper accommodations or equal access.

17. Recognizing this mistreatment as constructive discharge, Plaintiff suffered chronic workplace induced anxiety so severe that she exhausted nine (9) weeks of banked paid time off for FMLA. The City compounded her anxiety by refusing to engage in the ADA interactive process until her FMLA leave concluded.

18. Finally, in April 2021, most of her requested accommodations were denied, with the exception of "accommodations" which still gave her less access to the building than her nondisabled, and male, peers.

19. Upon appealing this denial in August 2021, Plaintiff was exposed to an egregious grievance process where the Board of Police Commissioners' two-person panel mocked her disability, arguing that perhaps Plaintiff just needed therapy, before denying her request to address discrimination and retaliation in the workplace.

20. The 11-member Board of Police Commissioners never took appropriate action on Plaintiff's grievance, and never notified Plaintiff or her union of any remedial actions or preventative measures taken to address, discourage, or prevent the ongoing discrimination and retaliation the Plaintiff alleged.

21. In September 2021, Plaintiff was denied a promotion to the position of Senior Investigator. A white, female Office of the Chief Investigator (OCI) employee was instead selected for the position by the BOPC, for which she was permitted to perform

**Exhibit C-2**

the duties of the position for at least six (6) months prior to the submission of applications in direct violation of the UAW contract.

22. After over a year of fighting to gain equal access and opportunity, and address the discrimination and harassment she experienced as a woman with a disability, Plaintiff filed a complaint with the Equal Employment Opportunity Commission (EEOC) on March 16, 2022.

23. With each passing day, the discrimination faced by Plaintiff became impossible to withstand. She was forced to endure unreasonable work demands and job evaluations, continued to have her access to the building restricted, and was criticized for performing at the same level as her colleagues.

24. Mr. Akbar greatly contributed to this discrimination after his sexual advances were denied by Plaintiff as described below—ultimately preventing her promotion to the position of Senior Investigator, despite 8 years of Plaintiff's service, commitment, and success in her role.

25. Throughout her time in this role, Plaintiff was exposed to sexual harassment in the workplace by Supervisor Akbar.

26. On at least one occasion, Mr. Akbar approached Plaintiff from behind, placed his hands on Plaintiff's shoulders, and began rubbing them in front of her colleagues. One colleague remarked on how inappropriate the behavior was and suggested that action should be taken to address this behavior.

27. On at least one occasion, Mr. Akbar commented about how he was sexually attracted to Plaintiff to one of her colleagues.

**Exhibit C-2**

28. On one occasion, Mr. Akbar claimed work needed to be done with Plaintiff out of the office, but used this as an excuse to lead Plaintiff to his home during the workday. Plaintiff never reciprocated any romantic or other non-professional conduct, and never engaged in an unprofessional relationship with Mr. Akbar, but her lack of response to his advances fueled his retaliation against her in any manner he could pursue.

29. At the same time, Supervising Investigator Ainsley Cromwell continued his years-long pattern of incivility and harassment of female OCI staff, this time retaliating against Plaintiff to create the appearance of incompetence or poor work performance.

30. Plaintiff endured such hostility that it led to the approval of her request for leave under the Family Medical Leave Act (FMLA), which was approved for intermittent use in March 2022, and utilized as needed by Plaintiff due to stressors her doctors specifically attributed in writing to workplace harassment.

31. Nonetheless, the discrimination persisted. When Plaintiff attempted to use her FMLA, she received emails from her workplace changing the rules about when, where, and how she could use it.

32. On June 16, 2022, Plaintiff was constructively forced out of the workplace, and took a position as a harassment and retaliation investigator for a major corporation—but the harm she withstood during her time as an investigator for the City of Detroit, and the harm she continues to experience when confronted with the long-term effects of her discrimination was never remedied.

33. On March 16, 2021, Plaintiff timely filed charges of disability and sex discrimination and retaliation with the EEOC. On September 19, 2022, after over one year of waiting for action on the EEOC charge, the EEOC issued Plaintiff a Notice of Right to Sue. This

**Exhibit C-2**

Complaint has been filed within 90 days of receipt of that notice, as calculated in accordance with the Federal Rules of Civil Procedure 6(a)(1).

34. Defendant and its employees, agents, and leaders repeatedly discriminated against Plaintiff, in a palpable, egregious manner after the disclosure of Plaintiff's disability in the workplace and after Plaintiff turned down Mr. Akbar's advances. Plaintiff is a qualified individual with a disability unrelated to her ability to do her job, and she faced clear and persistent discrimination and harassment because of her disability.

35. Defendant had knowledge of its duty to accommodate and not discriminate against Plaintiff based on the Rehabilitation Act of 1973, the Michigan Persons with Disabilities Civil Rights Act, Mich. Comp. Laws 31.1102, and the Americans with Disabilities Act under several sections, including but not limited to Title II addressing nondiscrimination on the basis of disability in State and Local Government Services.

36. Defendant also had knowledge of their duty to not discriminate against Plaintiff as a woman under the Elliott-Larsen Civil Rights Act, the Civil Rights Act of 1964, the Family Medical Leave Act, and Paid Family Medical Leave Act.

37. Defendants violated these duties to not discriminate and inflicted an aggressive campaign to harass and discriminate against Plaintiff until she was forced out of her position.

**FEDERAL JURISDICTION**

38. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, because this is a civil action arising under federal law, including the Americans with Disabilities Act, the Rehabilitation Act, and Title VII of the Civil Rights Act of 1964.

39. Defendant does not have governmental immunity in these matters based on statutory language and the discrimination alleged.

**Exhibit C-2**

40. This Court has supplemental jurisdiction over Plaintiff's related claims arising under state law pursuant to 28 U.S.C. section 1367(a), including violations of the Persons with Disabilities Civil Rights Act, and the Elliot-Larsen Civil Rights Act.

## VENUE

41. Plaintiff resides in Detroit, Michigan, which is located in Wayne County, Michigan.

42. Plaintiff therefore resides in the Eastern District of Michigan.

43. Defendant is the City of Detroit, which oversees the Board of Police Commissioners (BOPC) and the Office of the Chief Investigator, which are located within the Eastern District of Michigan.

44. Venue is proper in the United States District Court for the Eastern District of Michigan under 28 U.S.C. § 1391.

## PARTY PLAINTIFF

45. Plaintiff has standing as a "qualified individual with a disability" under the Americans with Disabilities Act. Americans with Disabilities Act, 42 U.S.C. § 12131 (1990).

46. Plaintiff also has standing as "a person with a disability," under the Michigan Persons with Disabilities Civil Rights Act, Mich. Comp. Laws § 37.1103 (1996).

47. Plaintiff additionally has standing as a female "individual employed by an employer" under Title VII of the Civil Rights Act of 1964. 42 U.S.C. 2000(e) et seq (1964).

48. Plaintiff has standing as a female under the Elliot-Larsen Civil Rights Act, Mich. Comp. Laws § 37.2101.

49. As an employee, Plaintiff was fully and equally entitled to accommodations in the workplace.

**Exhibit C-2**

50. As an employee, Plaintiff had the right to not face sexual harassment and other forms of gender- or sex-based discrimination in the workplace.

51. As a resident and citizen, Plaintiff additionally was entitled to equal access to the services, programs, buildings, and activities contained or conducted in the building by the City of Detroit.

52. As a direct result of Defendant not complying with the laws at issue, Plaintiff has been deprived of her rights to equal protection under the law.

53. Plaintiff is entitled, qualified, and otherwise able to perform the essential functions of her job, unrelated to her disability, with reasonable accommodations.

54. Plaintiff was denied rights, services or accommodations by Defendant because of her disability.

55. Defendant treated Plaintiff adversely due to Plaintiff's disability and/or sex.

56. Plaintiff is a "person with a disability" and is "guaranteed...as a civil right" to obtain employment, utilize public accommodations, public services, and facilities without discrimination because of a disability. Michigan Persons with Disabilities Civil Rights Act, Mich. Comp. Laws § 37.1102(1).

57. Defendant was mandated to accommodate Plaintiff, as a person with a disability for the purposes of employment, public service, and public accommodation unless the person demonstrates that the accommodation would impose an undue hardship. Michigan Persons with Disabilities Civil Rights Act, Mich. Comp. Laws § 37.1102(2).

58. Plaintiff's requested accommodations did not and would not have imposed an undue hardship on Defendant. In fact, many of the requested accommodations were being provided to Plaintiff's nondisabled colleagues.

**Exhibit C-2**

## PARTY DEFENDANT

59. The City of Detroit is a governmental entity, that is not immune to suit under the federal and state laws at issue in this case.

60. The City of Detroit and its subsets, the Board of Police Commissioners (BOPC) and the Office of the Chief Investigator (OCI) are also "Employers" as each has one or more employees—in fact, employing over 50 employees—and those employees qualify for coverage under the Americans with Disabilities Act, the Rehabilitation Act of 1973, the Michigan Persons with Disabilities Civil Rights Act, Title VII of the Civil Rights Act of 1964, the Elliot-Larsen Civil Rights Act, the Family Medical Leave Act, and Michigan's Paid Medical Leave Act.

61. Defendant under Federal law, is a "public entity" as defined by Title II of the Americans with Disabilities Act, 42 USC 12131(1)(A) and (B). The City of Detroit is an incorporated municipality and political subdivision of the State of Michigan, with an elected mayor, city council, city clerk, police commissioner, and city treasurer. Const. 1963, Art. VII § 21, Eff. Jan. 1, 1964.

62. Defendant under Michigan law is an "agency of state and local government" with "persons" or "entities" which "shall accommodate a person with a disability for the purposes of employment, public accommodation, public service, education, or housing unless the person demonstrates that the accommodation would impose an undue hardship." Michigan Persons with Disabilities Civil Rights Act, Mich. Comp. Laws § 37.1102(2); 37.1103(g) and (i).

## DEFENDANT HAS INJURED THE PLAINTIFF

**Exhibit C-2**

63. Plaintiff was injured by and as a result of the discrimination she endured by Defendant for past and future lost wages, court and reasonable attorneys' fees, pain and suffering, emotional distress, and loss or denial of benefits. This harm occurred from violations of federal and state statutes.

64. Pursuant to the Federal and State Constitutions applicable, Plaintiff is entitled to, and in need of the services and participation in the programs or activities provided by the Defendant as described, including by way of example and not by limitation, the right to not face discrimination in employment as well as:

a. to be engaged in, be integrated into, and be part of the community, including for example and not by limitation, per 28 CFR § 35.130, general prohibitions against discrimination.

b. to lobby, instruct, and meet with her representatives and the other officers and employees of Defendant.

c. to petition for redress of grievances.

d. to be provided, as a qualified individual with a disability, the aid, benefit, or service that is not as effective in affording equal opportunity to obtain the same result or to reach the same level of achievement as that provided to others.

e. to not experience a public entity that, directly or through contractual or other arrangements, utilizes criteria or methods of administration that have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability, or that has the purpose or effect of defeating or substantially impairing

**Exhibit C-2**

accomplishment of the objectives of the public entity's program with respect to people with disabilities. CFR § 35.130(3).

## COUNT I: Disability Discrimination and Retaliation in Violation of the Americans with Disabilities Act

65. Plaintiff was working successfully as an Investigator for the Detroit Board of Police Commissioners (BOPC) and the Office of the Chief Investigator (OCI) for several years without issue.

66. During that time, Plaintiff and her coworkers were given substantial access to the building and resources to complete their job tasks.

67. Then, in the fall of 2020, after disclosing her disabilities, Plaintiff was told that only she would be prohibited from accessing the building, located at 900 Merrill Plaisance, during certain time periods, and that the rules would change for her alone. Plaintiff's colleagues continued to be allowed access to the building and employment resources in the evenings and weekends.

68. Wanting to proactively address her concerns with the new barriers put only in her way, Plaintiff submitted a written request for accommodations for her disability on November 28, 2020 via email to Supervising Investigator Cromwell.

a. In that email, Plaintiff wrote, "Could you please authorize me to go to OCI today and/or tomorrow, Sunday, Nov. 29, 2020, so I can start working on the corrections you requested for the [name redacted] case?" Plaintiff's Exhibit 1.

**Exhibit C-2**

b. In that same email, Plaintiff continued, "Also, I will likely make an ADA Request for Workplace Accommodations to assist me with completing my case investigation reports if the Workshare/BRF arrangement will continue into the new year.  A larger individual caseload, a shorter work week, your prohibition on working weekends and after-hours, combined with your narrower interpretation of the tools in the SOP for administratively or informally closing case investigations when appropriate, are making it increasingly difficult to submit cases within 90 days.  Until now, I have been able to do so.   However, the snowball effect of these factors may soon manifest in delayed report submissions." Pl.'s Exhibit 1.

69. On December 1, 2020, Mr. Cromwell responded, "You may make an ADA request.  All O.C.I. Investigators are subject to work only 32 hours a week under the current circumstances (workshare program), dictated by the City of Detroit.  You are not authorization to work past 32 hours." Plaintiff's Exhibit 2.

a. Mr. Cromwell continued, "Deadlines for assignment completion continue to remain in effect.  Failure to adhere to assignment deadlines and work responsibilities shall result in appropriate disciplinary action and/or removal from the remote work program.  In addition, I find your Saturday 1 p.m. request to work over the weekend very untimely." Pl.'s Exhibit 2.

70. In response to the December 1, 2020, email, Plaintiff wrote, "It would help my continued acclimation to your supervisory expectations if you informed me regarding what you consider a 'timely submission' of a request to access OCI both during business hours and after.  As I have stated to you previously, I have experienced a number of substantive differences in your rules and expectations versus my experience with my previous OCI

Exhibit C-2

team.  Unfortunately, the differences, in some cases, have the practical effect of acting as barriers to submissions of physical reports and case files rather than facilitating the process.  Please continue to patiently bear with me as I continue to learn your expectations.  I look forward to your response." Plaintiff supplied a copy of this email in an Attachment to the City of Detroit (CRIO) with her ADA Reasonable Accommodations Request Form, which Plaintiff attaches here and incorporates into her complaint as Exhibit 3.

71. Importantly, Plaintiff was forced to ask for permission to access the office in this manner, where her colleagues were not.  From the moment she disclosed her disability to her supervisors, she was subjected to unreasonable comments mocking her disability and faced a deprivation of the disability rights to which she is entitled under the ADA.

72. When she requested accommodations, she was initially limited to a strict 8 a.m. to 4 p.m. schedule, yet she was given additional cases with shorter timelines.

73. After much advocating for herself, her hours were later extended after Plaintiff requested accommodations to 5:30 p.m, an hour restriction still not imposed on her colleagues.

74. After more than two months of requesting the necessary forms and processes to be approved for workplace accommodations, Plaintiff received and submitted the paperwork, with medical documentation, on February 18, 2021 and February 23, 2021. Plaintiff's Exhibit 4.

75. In this paperwork, she requested that she be allowed the same time flexibility in accessing the office as was previously afforded to her and was still afforded to her colleagues.  She also requested the ability to use a City-issued laptop to work on the

**Exhibit C-2**

weekend from home, and that her office space allow for minimized visual and audible distractions.

76. On April 16, 2021, a Zoom meeting was held between Plaintiff and Defendant regarding her requests to continue to engage in the ADA interactive process and determine appropriate workplace accommodations in the midst of the changes imposed on her by her supervisor.

77. After this meeting, on April 20, 2021, Defendant confirmed in writing that Plaintiff would receive the following workplace "accommodations:"

A. Plaintiff "will be allowed to work in the current work location Monday through Friday until 5:30 p.m. daily;" and

B. Plaintiff will be allowed to use the "City laptop" she already has to complete assignments at home on Saturday and Sunday if needed. Plaintiff's Exhibit 5.

78. The April 20, 2021, written notice of approved accommodations instructed that Plaintiff "would not be paid" for the extra time allowed to complete assignments. Pl.'s Exhibit 5.

79. Plaintiff's colleagues were not required to seek accommodations to be provided these items or opportunities. In fact, her colleagues were allowed overtime, while Plaintiff's work day was restricted to 8:00 a.m. to 5:30 p.m.

80. At the same time, Mr. Akbar, in the presence of witnesses, advised Plaintiff that she was expected to complete cases at a faster rate than her colleagues who were being paid to work overtime.

81. Plaintiff was denied access and opportunity based on a disability that was unrelated to her ability to complete the essential functions of her job.

**Exhibit C-2**

82. Defendant's employees and members of the Board of Police Commissioners openly mocked Plaintiff, stating that she needed therapy, and refused to investigate her charges of disability and gender-based discrimination.

83. Defendant's employees, Plaintiff's supervisors, withheld a promotion and other opportunities from Plaintiff in ways that constitute violations of her civil rights.

84. Additionally, Defendant's employees repeatedly ignored her requests for reasonable accommodations in violation of the Americans with Disabilities Act and other disability rights laws.

85. Defendant's conduct and discrimination against Plaintiff caused her to experience workplace hostility so severe she was constructively terminated from her position and forced out of her position.

86. Defendant cannot demonstrate an "undue hardship" as a defense to the relief requested.

87. Plaintiff suffered damages as a result of Defendant's unlawful discrimination and retaliatory acts, including past and future lost wages and benefits, pain and suffering, emotional distress, and the cost of bringing this action.

**COUNT II: Disability Discrimination in Violation of the Rehabilitation Act of 1973**

88. Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, states, "No otherwise qualified handicapped individual in the United States, as defined in section 7 (6), shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance."

89. Plaintiff qualifies as a "handicapped individual" for the purposes of this Act.

**Exhibit C-2**

90. Plaintiff by reason of her disability, was subjected to discrimination within her employment based on disparate as well as, at times, intentionally-prejudiced treatment which limited her physical access, advancement opportunities, access to software and other technology as afforded to her nondisabled colleagues, and accommodations for her disabilities, as detailed above and incorporated by reference here.

91. The program under which Plaintiff was employed operates within the City of Detroit, which receives federal financial assistance from the United States.

92. Plaintiff suffered damages as a result of Defendant's unlawful discrimination and retaliatory acts, including past and future lost wages and benefits, pain and suffering, emotional distress, and the cost of bringing this action.

## COUNT III: Disability Discrimination in Violation of the Michigan Persons with Disabilities Civil Rights Act (PDCRA)

93. The opportunity to obtain employment and full and equal utilization of public accommodations, public services, and educational facilities without discrimination because of a disability is guaranteed and a civil right in the state of Michigan. Michigan Persons with Disabilities Civil Rights Act, Mich. Comp. Laws § 37.1102(1).

94. As an employer, Defendant was prohibited from failing or refusing to "promote an individual because of a disability that is unrelated to the individual's ability to perform the duties of a particular job or position." Mich. Comp. Laws § 37.1202(1)(a).

95. Plaintiff was refused a promotion because of her disability, though that disability was unrelated to her ability to perform the duties of a particular job or position.

96. Defendant was also prohibited under MCL 37.1202(a)(b) from discriminating against an individual with respect to "compensation or the terms, conditions, or privileges of

**Exhibit C-2**

employment, because of a disability...that is unrelated to the individual's ability to perform the duties of a particular job or position."

97. Plaintiff was discriminated against in the form of restrictions forced on her but not on her nondisabled colleagues, including but not limited to restricting her hours, restricting her physical access to the building, restricting her ability to work from home, and other privileges of employment because of her disability.

98. At one point, Plaintiff was the only employee who did not meet the criteria to return to in-person work who was forced to return to work in person.

99. Defendant was also prohibited from limiting, segregating, or classifying an "employee...for employment in a way which deprives or tends to deprive an individual of employment opportunities or otherwise adversely affects the status of an employee because of a disability...that is unrelated to the individual's ability to perform the duties of a particular job or position." Michigan Persons with Disabilities Civil Rights Act, Mich. Comp. Laws § 37.1202(1)(c).

100.    Plaintiff was limited in the aforementioned manner, segregated from her nondisabled colleagues by restricting her access, and classified in a way that made it known to other employees that she was to be treated differently.

101.    Defendant was prohibited under MCL 37.1202(d) from failing or refusing to hire, recruit, or promote an individual on the basis of physical or mental examinations that are not directly related to the requirements of the specific job.

102.    Plaintiff was denied a promotion, and mocked, on the basis of physical or mental examinations pertaining to her disability that were not directly related to the requirements of the specific job.

**Exhibit C-2**

103.     Her repeated requests for accommodations were often responded to with emails from her supervisor threatening her job, and comments were directly made about her need for therapy.

104.     Defendant was prohibited from discharging or taking other discriminatory action against plaintiff on the basis of physical or mental examinations that are not directly related to the requirements of the job. Michigan Persons with Disabilities Civil Rights Act, Mich. Comp. Laws § 37.1202(e).

105.     Upon Defendant's receipt of information about Plaintiff's disability, discriminatory action was taken against Plaintiff on the basis of the mental examination documented by her physician while seeking accommodations.  Plaintiff was denied reasonable workplace accommodations and opportunities.

106.     Defendant constructively discharged and took several discriminatory actions against Plaintiff on the basis of her disability, which was not directly related to the requirements of her job, including limiting her hours, restricting her access to the building and office resources, ostracizing her in front of coworkers, and denying her a promotion she was qualified to receive.

107.     Additionally, as a member of a union, that union was prohibited under the Michigan Persons with Disabilities Civil Rights Act from failing to fairly and adequately represent a member in a grievance process because of the member's disability. MCL 37.1204.  Plaintiff's union did not represent her fairly and adequately throughout her complaints of discrimination, and did not represent her during the grievance process under which Plaintiff faced inappropriate comments and unjust scrutiny from the panel, because of her disability.

**Exhibit C-2**

108.     Plaintiff suffered damages as a result of Defendant's unlawful discrimination and retaliatory acts, including past and future lost wages and benefits, pain and suffering, emotional distress, and the cost of bringing this action.

**COUNT IV: Discrimination and Retaliation in Violation of Title VII of the Civil Rights Act**

109.     The Civil Rights Act of 1964 allows for, "within 90 days of receipt of notice of final action taken by a department, agency...or by the Equal Employment Opportunity Commission upon an appeal from a decision or order of such department...on a complaint of discrimination based on race, color, religion, sex or national origin...may file a civil action...in which civil action the head of the department, agency, or unit, as appropriate, shall be the defendant." Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(f).

110.     Defendant as an employer is prohibited from discriminatory practices in "all personnel actions affecting employees or applicants for employment, and nothing contained in the Civil Rights Act of 1964 "shall relieve any Government agency or official of its or his primary responsibility to assure nondiscrimination in employment as required by the Constitution and statutes." 42 U.S.C. § 2000e-2.

111.     Defendant instituted and perpetuated discriminatory practices that discriminated against Plaintiff based on her sex.

112.     Mr. Akbar, while acting on behalf of Defendant, made sexually-explicit comments as well as verbal and physical advances towards Plaintiff.

113.     Mr. Akbar also physically touched Plaintiff by approaching her from behind, placing his hand on her shoulders, and rubbing her shoulders. This action was taken in the presence of Plaintiff's colleague, then-OCI Chief Investigator Polly McCalister.

114.    Defendant also retaliated against Plaintiff because she complained about discrimination, filed a charge of discrimination, or participated in an employment discrimination investigation or lawsuit.  Mr. Akbar moved Plaintiff to a different supervisor when his advances were not reciprocated by Plaintiff and once her discrimination grievance was filed.

115.    As amended in 1991, this Civil Rights Act allows a right of recovery in an action brought by a complaining party against a respondent who engaged in unlawful intentional discrimination. 42 U.S.C. § 2000f.

116.    Plaintiff fulfilled all requirements to pursue a civil lawsuit, having filed with the EEOC, received a Right to Sue letter from the EEOC after 180 days had passed from her EEOC discrimination complaint filing, and filed this Complaint within 90 days as dictated by statute and court rules. Plaintiff's Exhibit 6.

117.    Plaintiff suffered damages as a result of Defendant's unlawful discriminatory actions, including pain and suffering, emotional distress, past and future lost wages and benefits, and the costs and all fees associated with enforcing her rights and bringing this action.

118.    Defendant intentionally violated Plaintiff's rights under Title VII, with malice or reckless indifference, and as a result is liable for punitive damages.

119.    Defendant did not make good faith efforts to comply with Plaintiff's employment rights under Title VII of the Civil Rights Act.

**COUNT V: Sex Discrimination in Violation of the Elliott-Larsen Civil Rights Act**

120.    Plaintiff's civil rights include the opportunity to obtain employment and to have the full and equal utilization of public accommodations and public service without

**Exhibit C-2**

discrimination because of sex. Elliot-Larsen Civil Rights Act, Mich. Comp. Laws § 37.2102(1).

121.     The Elliott-Larsen Civil Rights Act expressly provides that "discrimination because of sex includes sexual harassment" and defines "sexual harassment" as "unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct or communication of a sexual nature" under certain conditions.  Elliot-Larsen Civil Rights Act, Mich. Comp. Laws § 37.2103(i).

122.     Under MCL § 37.2103(i) those conditions include:

a. "submission to the conduct or communication is made a term or condition either explicitly or implicitly to obtain employment, public accommodations or public services...;"

b. "submission to or rejection of the conduct or communication by an individual is used as a factor in decisions affecting the individual's employment, public accommodations or public services..." or

c. "the conduct or communication has the purpose or effect of substantially interfering with an individual's employment, public accommodations or public services...or creating an intimidating, hostile, or offensive employment, public accommodations, public services, educational, or housing environment."

123.     Mr. Akbar's conduct and communications constitute sexual harassment, and as such, discrimination on the basis of sex.

124.     Mr. Akbar physically touched Plaintiff, by approaching her from behind and massaging her shoulders.  This occurred in front of Plaintiff's colleague, who expressed

**Exhibit C-2**

her own discomfort having witnessed it, and noted Plaintiff's feeling of discomfort immediately thereafter.

125.     Mr. Akbar also made sexually explicit comments about Plaintiff to her colleagues.

126.     Additionally, Mr. Akbar told Plaintiff they would be working on a case outside of the office, and took her to his home, where he made her watch a movie with him.

127.     Plaintiff feared retribution for reporting this sexual harassment.

128.     This sexual harassment had the purpose or effect of substantially interfering with her employment.

129.     This sexual harassment had the purpose or effect of creating an intimidating, hostile, or offensive employment environment.

130.     Plaintiff was transferred to a different supervisor after she showed disinterest in Mr. Akbar.

131.     Plaintiff's new supervisor also exhibited sexist and ableist behavior that made the workplace hostile and interfered with her employment and employment opportunities.

132.     Plaintiff suffered damages as a result of Defendant's unlawful discriminatory actions, including pain and suffering, emotional distress, past and future lost wages and benefits, and the costs and all fees associated with enforcing her rights and bringing this action.

133.     Pursuant to the Federal and State laws as cited above, Plaintiff is entitled to remedies, including by way of example and not by limitation, to:

a.   Engage in free speech;

b.   Petition for redress of grievances;

c.   Report discrimination based on disability;

**Exhibit C-2**

d.  Report discrimination based on sex;

e.  Be appropriately accommodated for being an individual with a disability in the workplace;

f.  Not experience retaliation after asserting civil rights in the workplace;

g.  Receive damages for the harm she incurred as detailed above;

h.  Not withstand a hostile and/or abusive work environment; and

i.  Not withstand sex discrimination in the workplace.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests judgment as follows:

A.  Award Plaintiff for her past and future loss of wages and benefits, plus interest;

B.  Award Plaintiff compensatory and punitive damages;

C.  Award Plaintiff all costs and reasonable attorneys' fees incurred in connection with this action; and

D.  Grant Plaintiff such additional or alternative relief as the Court deems fair, just, and proper.

**Exhibit C-2**

**JURY DEMAND**

Plaintiff demand a trial by jury on all claims properly triable by a jury.

Respectfully submitted,

JACOBSON LAW AND ADVOCACY, PLLC


s/ _____

Ashley B. Jacobson (P83481)
455 E. Eisenhower Parkway, Suite 300
Ann Arbor, MI 48108
(248) 878-6940
Ashley@JLAPLLC.com

Brad H. Sysol (P58138)
SYSOL LAW, PLLC
P.O. Box 353
Mattawan, MI 49071
*Attorneys for Plaintiff*