UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JILL BABCOCK, *et al.*,

     No. 2:22-cv-12951

     Plaintiffs,

v                         HON. JONATHAN J.C. GREY

STATE OF MICHIGAN, *et al.*,       MAG. ANTHONY P. PATTI

     Defendants.

                                             /

## DEFENDANT STATE OF MICHIGAN'S MOTION TO DISMISS, OR ALTERNATIVELY FOR SUMMARY JUDGMENT, AS TO ITS NON-LIABILITY FOR LOCAL COURT FACILITIES

Cassandra A. Drysdale-Crown
Assistant Attorney General
Attorney for Defendant State of Michigan
P.O. Box 30736
Lansing, MI 48909
517.335.7659
drysdalecrownc@michigan.gov
P64108

Kimberly K. Pendrick
Marla Linderman Richelew
Assistant Attorneys General
Attorneys for Defendant State of Michigan
3030 W. Grand Blvd., Suite 10-666
Detroit, Michigan 48202
517.335.7659
pendrickk@michigan.gov
P60348

Dated: October 4, 2024

Defendant State of Michigan (State Defendant) moves this Court for dismissal or summary judgment regarding Plaintiffs' Second Amended Complaint under Fed. R. Civ. P 12(b)(1), (6) or 56(c).  State Defendant states in support:

1.  On June 26, 2023, Plaintiffs filed their Second Amended Complaint. (ECF No. 79.)

2.  On July 6, 2023, State Defendant filed a Motion to Dismiss Plaintiffs' Second Amended Complaint.  (ECF No. 82.)

3.  On March 30, 2024, this Court entered an Order granting in part State Defendant's Motion to Dismiss.  (ECF No. 103.)

4.  The March 30, 2024, Order dismissed all of Plaintiffs' claims except for the Americans with Disabilities Act and the Michigan Persons With Disabilities Civil Rights Act claims, and dismissed allegations as to all state-owned buildings.  (*Id.*)  As a result, the only remaining issue for the State is its liability for the local court facilities.  (*Id.*)

5.  Plaintiffs lack standing to sue the State regarding the local courthouse facilities where they cannot show that their injuries were caused by the State or that a judicial decision will redress their injury because the counties and local political subdivisions are responsible for those facilities.

6.  Dismissal is also appropriate where Plaintiffs have failed to join indispensable parties pursuant to Fed. R. Civ. P. 19.

7.     Plaintiffs' state-law claim under the Michigan Persons With Disabilities Civil Rights is subject to dismissal where the State has not waived its Eleventh Amendment Sovereign Immunity and that immunity has not been abrogated.

8.     In accord with Local Rule 7.1(a), the undersigned counsel certifies that counsel communicated by email on October 2, 2024, with Plaintiffs' counsel, explaining the nature of the relief to be sought by way of this motion and seeking concurrence in the relief.  On October 4, 2024, Plaintiffs' counsel responded that Plaintiffs do not concur with the relief sought by State Defendant.

For these reasons and the reasons stated more fully in the accompanying brief in support, State Defendant respectfully requests that this Honorable Court dismiss Plaintiffs' Second Amended Complaint or grant summary judgment in the State's favor, in addition to any other relief this Court deems just and equitable.

Respectfully submitted,

/s/ *Cassandra A. Drysdale-Crown*
Cassandra Drysdale-Crown
Assistant Attorney General
Attorney for Defendant State of Michigan
Civil Rights & Elections Division
P.O. Box 30736
Lansing, Michigan 48909
517.335.7659
drysdalecrownc@michigan.gov
P64108

3

Kimberly K. Pendrick
Marla Linderman Richelew
Assistant Attorney General
Attorney for Defendant State of Michigan
3030 W. Grand Blvd., Suite 10-666
Detroit, Michigan  48202
517.335.7659
pendrickk@michigan.gov
P60348

Dated:  October 4, 2024

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JILL BABCOCK, *et al.*,

No. 2:22-cv-12951

    Plaintiffs,

HON. JOHNATHAN J.C. GREY

v

MAG. ANTHONY P. PATTI

STATE OF MICHIGAN, *et al.*,

    Defendants.

_____/

**BRIEF IN SUPPORT OF DEFENDANT STATE OF MICHIGAN'S MOTION TO DISMISS, OR ALTERNATIVELY FOR SUMMARY JUDGMENT, AS TO THE REMAINING LOCAL COURT FACILITIES**

Cassandra Drysdale-Crown
Assistant Attorney General
Attorney for Defendant State of Michigan
P.O. Box 30736
Lansing, Michigan 48909
517.335.7659
drysdalecrownc@michigan.gov
P64108

Kimberly K. Pendrick
Marla Linderman Richelew
Assistant Attorneys General
Attorneys for Defendant State of Michigan
3030 W. Grand Blvd., Suite 10-666 Detroit, Michigan 48202
517.930.8842
pendrickk@michigan.gov
P60348

Dated:  October 4, 2024

# TABLE OF CONTENTS

Page

Table of Contents ................................................................................. i

Index of Authorities ........................................................................... iii

Concise Statement of Issues Presented ............................................ viii

Controlling or Most Appropriate Authorities ....................................... ix

Introduction ......................................................................................... 1

Statement of Facts ............................................................................... 2

Argument ............................................................................................. 4

I.    Plaintiffs lack standing to sue the State of Michigan where they cannot demonstrate their alleged injuries were caused by the State or that a judicial decision against it would redress the alleged injuries. ............. 4

    A.    Standard of Review ................................................................. 4

    B.    Principles of Standing. ............................................................ 5

    C.    Plaintiffs cannot show that their injuries were caused by the State, or that a decision against the State would redress their alleged injuries. ............................................................ 5

        1.    Plaintiffs alleged injuries are not traceable to the State. ............. 8

        2.    Plaintiffs cannot show that a judicial decision against the State would redress their injuries. ............................................ 18

II.   Plaintiffs' claims against the State under Michigan's Persons with Disabilities Civil Rights Act should be dismissed under the Eleventh Amendment, or alternatively, for lack of standing. ...................... 25

    A.    Standard of Review ............................................................... 25

    B.    Immunity Analysis ................................................................ 25

    C.    Standing Analysis ................................................................. 30

III.   The counties and local political subdivisions responsible for the local courthouses are necessary parties, and dismissal is appropriate where Plaintiffs failed to join them to this lawsuit....................................31

    A.   Standard of Review ...........................................................31

    B.   Joinder Analysis ...............................................................32

        1.   The local political subdivisions responsible for the remaining local courthouses are necessary to the action under Rule 19(a)..........................................................32

        2.   Failure to join deprives this Court of subject matter jurisdiction. ..............................................................34

        3.   This Court should dismiss the claims against the State where in equity and good conscience the local political subdivisions with authority over the local courthouses are indispensable...........................................................34

Conclusion and Relief Requested ...........................................................36

Local Rule Certification...........................................................................37

Certificate of Service ..............................................................................37

# INDEX OF AUTHORITIES

Page

**Cases**

*Ability Ctr. of Greater Toledo v. City of Sandusky*, 385 F.3d 901 (6th Cir. 2004) ..................................................................................................... 10

*Anderson v. City of Blue Ash*, 798 F.3d 338 (6th Cir. 2015) ..................................... 8

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ............................................... 4

*Babcock v. State of Michigan, et al.*, 812 F.3d 531 (6th Cir. 2016) ............. 5, 11, 26

*Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356 (2001) ........................... 26

*Changizi v. Dep't of Health & Hum. Servs.*, 82 F.4th 492 (6th Cir. 2023) ......... 9, 14

*Christie v. Wayne State University*, 993 N.W.2d 203 (Mich. 2023) .... 27, 28, 29, 30

*Coast-to-Coast Produce, LLC v. Lakeside Produce USA, Inc.*, No. 23-10408, ___ F. Supp.3d ___, 2023 WL 9018375 (E.D. Mich. Dec. 29, 2023) ................. 31

*Davis v. Flexman*, 109 F. Supp. 2d 776 (S.D. Ohio 1999) ...................................... 20

*Donald v. Sybra, Inc.,* 667 F.3d 757 (6th Cir. 2012) ............................................... 30

*Douglas v. Muzzin*, 2022 WL 3088240 (6th Cir. August 3, 2022) ......................... 20

*Elia Cos., LLC v. University of Michigan Regents*, 993 N.W.2d 392 (Mich. 2023) .................................................................................................... 28, 29

*Ernst v. Rising*, 427 F.3d 351 (6th Cir. 2005) ................................................... 26, 27

*Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC) Inc.,* 528 U.S. 167 (2000) ............................................................................................. 19

*Glancy v. Taubman Crs., Inc.,* 373 F.3d 656 (6th Cir. 2004) .................................. 32

*Grand Traverse Co. v. State*, 538 N.W.2d 1 (Mich. 1995) ..................................... 15

*Gray v. Hakenjos*, 115 N.W.2d 411 (Mich. 1962) ................................................. 16

*Hill v. Bradley Cnty. Bd. of Educ.*, 295 F. App'x 74 (6th Cir. 2008)......................20

*Hrdlicka v. Gen. Motors, LLC*, 63 F.4th 555 (6th Cir. 2023)..................................30

*Judges for the Third Judicial Circuit v. Wayne County*, 190 N.W.2d 228
    (Mich. 1971) ......................................................................................................11

*Judicial Attorneys Ass'n v. State of* Michigan, 586 N.W.2d 894 (Mich. 1998)......16

*Judicial Atty's Ass'n v. State*, 597 N.W.2d 113 (Mich. 1999)................................11

*Kovatsenko v. Kentucky Community and Technical College*, 2023 WL
    3346108 (May 10, 2023, E.D. Kentucky) ............................................................19

*Lapeer Cnty. Clerk v. Lapeer Cir. Ct.*, 665 N.W.2d 452 (Mich. 2003) .................15

*Larson v. Valente,* 456 U.S. 228 (1982) ...................................................................19

*Lee Testing & Eng'g Inc. v. Ohio DOT*, 855 F. Supp. 2d 722 (S.D. Ohio
    2012)....................................................................................................................25

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014).........9

*Local 670 v. Int. Union, United Rubber, Cork, Linoleum and Plastic
    Workers of America*, 822 F.2d 613 (6th Cir. 1987)..............................................31

*Lujan v. Defenders of Wildlife,* 504 U.S. 555 (1992) .................................................5

*Lyshe v. Levy*, 854 F.3d 855 (6th Cir. 2017)............................................................25

*Manion v. State Hwy Comm'r,* 5 N.W.2d 527 (Mich. 1942)...................................27

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) ...............5

*McCahan v. Brennan*, 822 N.W.2d 747 (Mich. 2012) .............................................27

*Meagley v. City of Little Rock*, 639 F.3d 384 (8th Cir. 2011) .................................20

*Meyers v. Cincinnati Bd. of Educ.*, 983 F.3d 873 (6th Cir. 2020)...........................30

*Parsons v. United States D.O.J.,* 801 F.3d 701 (6th Cir. 2015) ..............................19

*Penhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984)............................26

*Pohutski v. City of Allen Park,* 641 N.W.2d 219 (Mich. 2002)...............................27

*Powers v. MJB Acquisition Corp.*, 184 F.3d 1147 (10th Cir. 1999) ......................20

*Provident Tradesmens Bank & Tr. Co. v. Patterson*, 390 U.S. 102 (1968) ..... 32, 35

*S.H. ex rel. Durrell v. Lower Merion Sch. Dist.*, 729 F.3d 248 (3d Cir. 2013) .......20

*Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26 (1976) .........................................9

*Smith v. United Brotherhood of Carpenters and Joiners of America*, 685
   F.2d 164 (6th Cir. 1982) ...........................................................................................31

*Tennessee v. Lane*, 541 U.S. 509 (2004) .........................................................7, 10

*Tucker v. Tennessee*, 539 F.3d 526 (6th Cir. 2008) ...................................................8

*Vermont Agency of Nat. Res. v. U.S. ex rel. Stevens,* 529 U.S. 765 (2000) .............5

*Warth v. Seldin*, 422 U.S. 490 (1975) .......................................................................9

*Wayside Church v. Van Buren County*, 847 F.3d 812 (6th Cir. 2017) .....................4

*Williams v. Univ. of Mich.*, No. 22-cv-10296, 2022 U.S. Dist. LEXIS
   203712 (E.D. Mich. Nov. 8, 2022) .........................................................................29

**Statutes**

42 U.S.C. § 12101 ......................................................................................................8

42 U.S.C. § 12131(2) ...............................................................................................10

42 U.S.C. § 12132 ......................................................................................................8

Mich. Comp. Laws § 37.1101 ..................................................................................28

Mich. Comp. Laws § 37.2101 ..................................................................................28

Mich. Comp. Laws § 45.16 .............................................................. 12, 21, 22, 25

Mich. Comp. Laws § 46.7 ................................................................ 12, 21, 22, 25

Mich. Comp. Laws § 47.7 .........................................................................................33

Mich. Comp. Laws § 600.6431 ................................................................................28

Mich. Comp. Laws § 600.6431(1) ...........................................................................27

Mich. Comp. Laws § 600.6431(2) ................................................... 28, 30

Mich. Comp. Laws § 600.8261 ............................................................. passim

Mich. Comp. Laws § 600.8262 ........................................... 13, 22, 25, 33

Mich. Comp. Laws § 600.8263 ............................................ 13, 21, 25, 33

Mich. Comp. Laws § 600.9947(2)(b) ...................................................12

## Rules

Fed. R. Civ. P 12(b)(7) ......................................................... viii, 31

Fed. R. Civ. P. 12(b)(1) ...............................................................4, 36

Fed. R. Civ. P. 19(a) ......................................................................32

Fed. R. Civ. P. 19(b)(1) ...............................................................35

Fed. R. Civ. P. 56 ........................................................................36

## Regulations

28 C.F.R. § 35.150 ........................................................................10

28 C.F.R. § 35.151 ........................................................................10

## Constitutional Provisions

Mich. Const. 1963, Art. III, § 2. ......................................................15

Mich. Const. 1963, Art. IV, § 1 .................................................. 11, 16

Mich. Const. 1963, Art. IV, § 31 ....................................................16

Mich. Const. 1963, Art. V, § 1 .......................................................15

Mich. Const. 1963, Art. VI, § 1 .............................................. 7, 11, 14

Mich. Const. 1963, Art. VI, § 15 ....................................................11

Mich. Const. 1963, Art. VI, § 18 ....................................................11

Mich. Const. 1963, Art. VI, § 3 ........................................................................14

Mich. Const. 1963, Art. VI, § 5 ........................................................................14

Mich. Const. 1963, Art. VI, § 7 ....................................................................7, 11

## CONCISE STATEMENT OF ISSUES PRESENTED

1.     To establish standing, Plaintiffs have to show (1) that they suffered an injury in fact, (2) that was caused by the State of Michigan, (3) and that a judicial decision could redress the injury.  Can Plaintiffs establish standing where they cannot demonstrate that their alleged injuries were caused by the State or that a judicial decision could redress those injuries where the State does not have responsibility for local court facilities?

2.     While this court has ruled that Eleventh Amendment immunity was abrogated for Plaintiffs' Americans with Disabilities Act claims, that immunity has not been abrogated for Plaintiffs' Michigan Persons With Disabilities Act claims.  Should Plaintiffs' Persons With Disabilities Civil Rights Act claims be dismissed where the State has Eleventh Amendment immunity?

3.     A complaint is subject to dismissal where a plaintiff fails to join an indispensable party.  Fed. R. Civ. P 12(b)(7) and 19.  Should Plaintiffs' complaint be dismissed as to the State where Plaintiffs have failed to join the counties or local political subdivisions that are responsible for the local court facilities?

## CONTROLLING OR MOST APPROPRIATE AUTHORITIES

<u>*Authorities*</u>:

*Lujan v. Defenders of Wildlife,* 504 U.S. 555 (1992)

*Changizi v. Dep't of Health & Hum. Servs*., 82 F.4th 492 (6th Cir. 2023)

*Parsons v. United States D.O.J.,* 801 F.3d 701 (6th Cir. 2015)

*Douglas* v. *Muzzin*, 2022 WL 3088240 (6th Cir. August 3, 2022)

*Ernst v. Rising*, 427 F.3d 351 (6th Cir. 2005)

*Penhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984)

*Hrdlicka v. Gen. Motors*, *LLC*, 63 F.4th 555 (6th Cir. 2023)

*Coast-to-Coast Produce, LLC v. Lakeside Produce USA, Inc.*, No. 23-10408, ___ F. Supp.3d ___, 2023 WL 9018375 (E.D. Mich. Dec. 29, 2023)

*Glancy v. Taubman Crs., Inc.,* 373 F.3d 656 (6th Cir. 2004)

**INTRODUCTION**

Plaintiffs' second amended complaint broadly seeks to require a multitude of buildings to come into compliance with technical requirements of the Americans with Disabilities Act (ADA).  However, they have brought their claims under Title II of the ADA, which does not compel technical ADA compliance—but instead requires public entities to ensure disabled individuals have the opportunity to participate in or benefit from available services, programs, or activities.

Regarding the State of Michigan, this Court dismissed all state-owned buildings in its March 30, 2024 order.  Nevertheless, Plaintiffs claim the State of Michigan is responsible for the local courthouses[1] that remain in this suit despite the fact that the State does not own or lease these facilities or have the authority to renovate these buildings or compel the local political subdivisions to do so.

Where Plaintiffs have named the State of Michigan (State or State Defendant), instead of the appropriate local political subdivisions, their complaint as to the State should be dismissed for lack of standing where they cannot demonstrate the State caused their alleged access issues or that this Court can

---

[1] The Coleman A. Young Municipal Center (CAYMC), the Frank Murphy Hall of Justice, the Ingham County 54-B District Court, the Livingston County 53rd District Court and 44th Circuit Court, the Washtenaw County 22nd District Court, Wayne County 3rd Circuit Court and 36th District Court.

fashion a judicial remedy to redress their injuries where the State has no authority to make or compel any changes to the physical structures.

Further, this Court lacks subject-matter jurisdiction over Plaintiffs' state law Persons With Disabilities Civil Rights Act (PWDCRA) claim under the Eleventh Amendment where Plaintiffs failed to comply with the provisions of Michigan's Court of Claims Act. Alternatively, Plaintiffs' PWDCRA claims must be dismissed for lack of standing for the same reasons their Title II claims fail.

Finally, should Plaintiffs' Title II and PWDCRA claims survive dismissal, Plaintiffs have failed to join the necessary parties who are physically and financially responsible for the local courthouses.

## STATEMENT OF FACTS

After the State filed a motion to dismiss Plaintiffs' initial complaint, this Court advised that if Plaintiffs filed an amended complaint, the Court would deny the motion to dismiss. (ECF Nos. 29 and 31, respectively.) Plaintiffs filed an amended complaint and the motion to dismiss was rendered moot. (ECF Nos. 41 and 43.)

On June 7, 2023, the State filed a motion to dismiss Plaintiffs' amended complaint. (ECF No. 72.) This second motion was also denied as moot when Plaintiffs then filed a second amended complaint. (ECF No. 79.)

On July 6, 2023, the State filed a motion to dismiss Plaintiffs' second amended complaint, raising three principal arguments.[2]  First, Plaintiffs failed to state plausible claims against the State alleging violations of Title II of the ADA, federal and state law, and alleging punitive damages.  (ECF No. 82, PageID.1456–1465, 1468–1471, 1476–1480, 1482.)  Second, Plaintiffs' state and federal law violation claims against the State are barred by Eleventh Amendment immunity.  (*Id.*, PageID.1465–1467, 1480–1481.)  Last, Plaintiffs lack Article III standing to bring their federal law claims against the State.  (*Id.*, PageID.1471–1476.)

On March 30, 2024, this Court entered an order granting in part and denying in part the State's and the local Defendants' motions to dismiss Plaintiffs' second amended complaint.  (ECF No. 103.)  This order limited Plaintiffs' remaining claims to those under Title II of the ADA and the Michigan PWDCRA.  (*Id.* PageID.1721, 1728, 1751-1756, and 1758.)  Since all State-owned buildings were dismissed under this order, the only remaining claims against the State are relative to Plaintiffs' argument that the State is liable for the local court facilities.

---

[2] Motions to dismiss were also filed by Defendants DWJBA (ECF No. 80), City of Detroit (ECF No. 87), and Wayne County (ECF No. 88).

## ARGUMENT

**I.    Plaintiffs lack standing to sue the State of Michigan where they cannot demonstrate their alleged injuries were caused by the State or that a judicial decision against it would redress the alleged injuries.**

### A.    Standard of Review

Dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction is appropriate where Plaintiffs' claims are barred due to a lack of standing.  The standard of review for a 12(b)(1) motion depends on whether the defendant makes a facial or factual challenge to subject matter jurisdiction.  *Wayside Church v. Van Buren County*, 847 F.3d 812, 816–17 (6th Cir. 2017).  Here, the State is making a factual attack where "the district court must weigh the conflicting evidence to arrive at the factual predicate that subject-matter does or does not exist."  *Id.* Where the defendant brings a factual attack on subject matter jurisdiction, "no presumptive truthfulness applies to the allegations" of the complaint and the court may consider documentary evidence in conducting its review.  *Id.*

Alternatively, if this Court considers this motion to more appropriately be brought as a Rule 56(c) summary judgment motion, summary judgment will be granted where there exists no genuine issue of material fact.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  No genuine issue of material fact exists where "the record taken as a whole could not lead a rational trier of fact to find for

the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475

U.S. 574, 587 (1986).

> **B.    Principles of Standing.**

To establish standing, Plaintiffs must show three things: (1) that they

suffered an injury in fact, (2) that was caused by the State, (3) and that a judicial

decision will redress the injury.  *Babcock v. State of Michigan, et al*., 812 F.3d 531,

539 (6th Cir. 2016) (citing *Vermont Agency of Nat. Res. v. U.S. ex rel. Stevens,* 529

U.S. 765, 771 (2000)).  *See also Lujan v. Defenders of Wildlife,* 504 U.S. 555,

560–61 (1992).  The burden of establishing standing rests with the Plaintiffs.

*Lujan,* 504 U.S. at 561.

This Court, in its opinion and order, determined that Plaintiffs sufficiently

alleged an injury in fact for purposes of standing.  (ECF No. 103, PageID.1732-

1739.)  While the State does not agree with this determination, it accepts the ruling

for purposes of this motion.  However, Plaintiffs cannot meet the second and third

prongs of the standing requirements.

> **C.    Plaintiffs cannot show that their injuries were caused by the State, or that a decision against the State would redress their alleged injuries.**

With respect to the local court facilities that remain at issue, Babcock alleges

with respect to the 54-B District Court in Lansing, that in January 2023, she had to

use a different and less convenient accessible exit than others in her party in order to leave the building after a swearing-in event.  (ECF No. 79, PageID.1274, ¶ 29).

Regarding the Third Circuit Court (Criminal Division), located in the Frank Murphy Hall of Justice, Babcock alleges that in late 2019 or early 2020 she could not access the building for jury duty using the accessible ramp without additional assistance, and that there was no adjacent accessible parking.  (ECF No. 79, PageID.1274-75, ¶30(a); *see also*, *id*., PageID.1344, ¶¶ 128-29.)

Turning to the Thirty Sixth District Court in Detroit, Babcock alleges that she was summoned twice for jury duty in March and April of 2023 but was told not to appear, which she believes was due to an unwritten policy to decline jury service to disabled persons.  (*Id*., PageID.1275, ¶ 30(b).)  She further alleges she observed deficiencies in the building related to accessibility and parking.  (*Id*.; *see also*, PageID.1346, ¶ 130.)

Plaintiff Jacobson alleges that for the past two years she has represented clients in the Forty Fourth Circuit and Juvenile Court, as well as in the Fifty Third District Court in Howell, Michigan (Livingston County). (*Id*., Page.ID.1292-93, ¶53.)  She alleges the court building only has one accessible toilet stall in each toilet room, and two toilet rooms are at the end of a long hallway, which she has trouble getting to, and that a third more centrally located toilet room is frequently closed when jurors are present.  (*Id*., ¶ 54; *see also,* PageID.1356, ¶¶ 150-51.)

6

Regarding the Twenty Second District Court in Washtenaw County, Jacobson alleges that when she started her practice,[3] she sought to become a court-appointed advocate in the court but the lack of close accessible parking and the lack of accessible entrances, including entrances where automatic door buttons have frequently been blocked during the last three years, led her to eliminate that practice and pursue work elsewhere.  (*Id.*, PageID.1295, ¶ 57; s*ee also,* PageID.1361, ¶¶ 158-59.)

Plaintiffs' theory of the case is that the State is "jointly and severally liable" with the local political subdivisions responsible for providing court facilities and services.  (*Id.*, PageID.1265, ¶¶ 1, 85 101, 106, 108; PageID.1399, ¶ A.)  Plaintiffs ground their theory on the Michigan Constitution's creation of a "one court of justice."  (*Id.*, PageID.1308, ¶ 84) (citing Mich. Const. 1963, Art. VI, § 1.)

They allege that the State is:

> [S]pecifically charged under the United States Constitution, Amend. XIV, § 1 and § 5, *Tennessee v. Lane*, 541 U.S. 509 (2004), and the Constitution of the State of Michigan, Mich. Const. 1963, Art. VI, § 1, Art VI, § 7, with ultimate responsibility for providing fully accessible courts for all judicial proceedings and other manifestations of that process including the courtrooms, chambers, clerk's offices, the jury assembly rooms, the jury boxes, the jury rooms, lock-ups and detention areas, and all ancillary facilities[.]

---

[3] According to the State Bar of Michigan, Jacobson became licensed in 2019.  See https://sbm.reliaguide.com/lawyer/49024-MI-Ashley-Jacobson-352040 (last accessed October 2, 2024.)

(*Id.* at ¶ 85.)  Plaintiffs further allege that the State, Wayne County, and the City of

Detroit, the only local political subdivisions named, "are all severally and jointly

responsible for funding all expenses, maintenance, maintenance reserves, capital

improvements, and all other necessary costs of state and federal requirements

established by state and federal laws, of the Third Judicial Circuit Court . . . and

the Thirty Sixth District Court of the City of Detroit."  (*Id.,* PageID.1309, ¶ 86).

### 1.    Plaintiffs alleged injuries are not traceable to the State.

Plaintiffs allege claims under Title II of the ADA, 42 U.S.C. §§ 12101, *et

seq.*  Under Title II of the ADA, "no qualified individual with a disability shall, by

reason of their disability, be excluded from participation in or be denied the

benefits of the services, programs, or activities of a public entity, or be subjected to

discrimination by any such entity."  42 U.S.C. § 12132.  In order to state a prima

facie Title II claim, Plaintiffs must show: (1) that they are qualified individuals

with a disability; (2) that the State is subject to the ADA; and (3) that Plaintiffs

were denied the opportunity to participate in or benefit from services, programs, or

activities provided by the public entity.  *See Tucker v. Tennessee*, 539 F.3d 526,

532–33 (6th Cir. 2008) abrogated on other grounds by *Anderson v. City of Blue

Ash*, 798 F.3d 338 (6th Cir. 2015).  *See* 42 U.S.C. § 12132.

Regarding the third element, Plaintiffs have not, and cannot, demonstrate

that the State of Michigan caused any of the Plaintiffs to be denied the opportunity

to participate in or benefit from services, programs, or activities provided at the local courts.  The traceability prong of standing "looks to whether a defendant's actions have a causal connection to a plaintiff's injuries." *Changizi v. Dep't of Health & Hum. Servs.*, 82 F.4th 492, 497 (6th Cir. 2023).  "Causation need not be proximate, so an indirect injury can support standing." *Id*. (citing *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014)).  But indirect harms generally fail to meet this element, *see Warth v. Seldin*, 422 U.S. 490, 505 (1975), because harms "result[ing] from the independent action of some third party not before the court" are generally not traceable to the defendant.  *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 42, 96 (1976).

In *Changizi*, the Sixth Circuit addressed traceability when the injury is caused by a third party, observing:

> "'an injury that results from [a] third party's voluntary and independent actions does not establish traceability.' *Turaani v. Wray*, 988 F.3d 313, 317 (6th Cir. 2021) (quoting *Crawford v. U.S. Dep't of Treasury*, 868 F.3d 438, 457 (6th Cir. 2017)).  Thus, a plaintiff must show that the defendant's actions had a 'determinative or coercive effect' on the third party such that the actions of the third party can be said to have been caused by the defendant.  *See Bennett v. Spear*, 520 U.S. 154, 169 [ ] (1997); *see also Turaani*, 988 F.3d at 316 (explaining '[a]n indirect theory of traceability requires that the government cajole, coerce, [or] command')."

*Id*. at 497.  Here, Plaintiffs have not, and cannot, show that the State directly harmed the Plaintiffs, nor can they show that any action by the State had an indirect determinative and coercive effect on the local courts that remain at issue.

9

This is because the State has no physical, financial, or administrative control over the local court facilities.

> **a.    The State of Michigan does not have physical or financial control of local court facilities.**

The crux of Plaintiffs' claim is that Defendants have jointly failed to make the courts, and thus the services available within them, reasonably accessible.

"Recognizing that failure to accommodate persons with disabilities will often have the same practical effect as outright exclusion, Congress required the States to take reasonable measures to remove architectural and other barriers to accessibility." *Tennessee v. Lane*, 541 U.S. 509, 532 (2004) (citing 42 U.S.C. § 12131(2)); *Ability Ctr. of Greater Toledo v. City of Sandusky*, 385 F.3d 901, 907 (6th Cir. 2004) (Title II "requires that public entities make reasonable accommodations for disabled individuals so as not to deprive them of meaningful access to the benefits of the services such entities provide.")  The Attorney General has thus adopted several architectural and design standards to ensure that the facilities and services of public entities are "readily accessible and usable by individuals with disabilities."  28 C.F.R. §§ 35.150 (existing facilities) & 35.151 (newly constructed and altered facilities).  However, the Sixth Circuit has clarified that "[f]acility accessibility is not, standing alone, a cognizable claim under Title II's private right of action," rather, a plaintiff must also demonstrate that the

"facility's inaccessibility interferes with her access to public services, programs, or activities." *Babcock*, 812 F.3d at 536.

Here, the State is not the cause of any interference Plaintiffs have encountered in accessing the public services, programs, or activities available at the local courts. Article VI, § 1 of the Michigan Constitution provides that "the judicial power of the state is vested exclusively in one court of justice which shall be divided into one supreme court, one court of appeals, one trial court of general jurisdiction known as the circuit court, one probate court, and courts of limited jurisdiction that the legislature may establish [e.g., the district courts] . . . ." Mich. Const. 1963, Art. VI, § 1. The constitution does not address funding of the courts, other than providing that salaries of the justices and judges will be provided by law. Mich. Const. 1963, Art. VI, §§ 7, 15, 18. The Michigan Legislature, pursuant to its authority, Mich. Const. 1963, Art. IV, § 1, has provided that the relevant local units of government are principally responsible for appropriating money to fund the operation of the circuit and district courts, other than judicial salaries. *See generally*, *Judicial Atty's Ass'n v. State*, 597 N.W.2d 113, 121–23 (Mich. 1999) (recognizing responsibility of local units of government to fund court operations, apart from judicial salaries). *See also*, *Judges for the Third Judicial Circuit v. Wayne County*, 190 N.W.2d 228 (Mich. 1971).

Plaintiffs cannot demonstrate that their injuries are traceable to the State where the State is not physically or financially responsible for the local court facilities at issue.  (Def's Ex. A, Turnquist Declaration; See also attachment 1 to the declaration which consists of state-owned and state-leased buildings lists).  Nor does it provide funding for facility maintenance or renovation.  (*Id.*)  Although the Michigan Legislature must appropriate sufficient funds for trial court "operational expenses," the legislature did not provide that the State has ownership or control of each local court facility and specifically excludes provision of funds for "facilities."  Mich. Comp. Laws § 600.9947(2)(b) ("Operational and maintenance expenses other than expenses for facilities, utilities, telephones, and courtroom security.").

In fact, Michigan has a clear statutory scheme that sets forth that the ownership and maintenance of buildings and facilities housing the circuit and district courts lies with the requisite local political subdivision.  For the circuit courts, "[e]ach organized county *shall, at its own cost and expense*, provide at the county seat thereof a suitable courthouse . . . and keep the same in good repair." Mich. Comp. Laws § 45.16 (emphasis added).  It is the county government's "*duty*" "as often as shall be necessary, to cause the courthouse, jail, and all other public buildings and public offices of the county, to be duly repaired at the expense of the county."  Mich. Comp. Laws § 46.7 (emphasis added).  The county can levy

taxes on property and use county collections not raised by taxation as provided to construct and repair buildings. *Id.* The "repair of the courthouse, jail, and all other public buildings and public offices of the county [was] declared to be a current county operating expense . . . ." *Id.*

Relative to the district courts, "[c]ourt facilities shall be provided at those places where the court sits. In districts of the first and second class they shall be provided by the county and in districts of the third class they shall be provided by each political subdivision where the court sits." Mich. Comp. Laws § 600.8261. And the facilities housing magistrates "shall be provided by the district control unit." Mich. Comp. Laws § 600.8262.

The state statutes also contemplate that court and magistrate facilities can be rented from the State. Mich. Comp. Laws § 600.8263. This provision specifies that "[r]ental of court or magistrate facilities constitutes the providing of such facilities and those units of government responsible for providing same may contract with the state, its political subdivisions, corporations or persons for the rental thereof." *Id.* While the statute provides the State can rent a state-owned building for use as a courthouse, Plaintiffs have not alleged the State is renting out any of the local court facilities. Further, the State is *not* renting out any local court facilities to any of the counties at issue. (Def's Ex. A.)

13

Given that the State does not own or have physical or financial control or responsibility for the local court facilities, Plaintiffs cannot establish that the State directly harmed the Plaintiffs, nor can they show that any action by the State had an indirect determinative and coercive effect on the local courts that remain at issue. *Changizi*, 82 F.4th at 497.

### b. The State of Michigan does not have administrative control over the local court facilities.

Plaintiffs may argue, under their "one court of justice" theory, that while the State may not be physically or financially responsible for the local courts, it has authority to administratively compel local governments to make court facilities comply with the ADA.

Again, under Michigan's "one court of justice," the State has a single court "with several divisions, each devoting its attention to a certain level of judicial administration." Mich. Const. 1963, Art. VI, § 1, Convention comment. Under article VI, § 5, the Michigan Supreme Court "*shall* by general rules establish, modify, amend and simplify *the practice and procedure in all courts of this state.*" Mich. Const. 1963, Art. VI, § 5 (emphasis added.) To assist in this function, the Michigan Supreme Court appoints "an administrator of the courts . . . to aid in the administration of the courts of this state[.]" Mich. Const. 1963, Art. VI, § 3. Thus, it is the Michigan Supreme Court that has exclusive authority to provide for the

14

administration related to the operations of the state courts.  *See Lapeer Cnty. Clerk v. Lapeer Cir. Ct*., 665 N.W.2d 452, 460 (Mich. 2003).

But these constitutional provisions still do not extend the Michigan Supreme Court's authority over the local court facilities.  In *Grand Traverse Co. v. State*, the Michigan Supreme Court found that the "one court of justice" provision of Michigan's Constitution does not "change the traditionally local character of the courts to one totally controlled and funded by the state."  538 N.W.2d 1, 8 (Mich. 1995).

Regardless, Plaintiffs cannot rely on their "one court of justice" theory of liability where they have not named as a defendant the head of the "one court of justice"—the Michigan Supreme Court.  Michigan's government is divided into "three branches: legislative, executive and judicial."  Mich. Const. 1963, Art. III, § 2.  Michigan's executive power is vested in the Governor, Mich. Const. 1963, Art. V, § 1, who supervises the state's principal departments, *id*., Art. V, §§ 2, 8, and ensures that the laws are faithfully executed, *id.,* Art. 5, § 8.  Thus, a suit against the "State of Michigan" is a suit against its executive branch, the power of which is reposed in the Governor.  And the Governor cannot invade or exercise powers belonging to another branch, including the judicial branch.  Mich. Const. 1963, Art. III, § 2 ("No person exercising powers of one branch shall exercise powers properly belonging to another branch except as expressly provided in this

constitution."); *Gray v. Hakenjos*, 115 N.W.2d 411, 414 (Mich. 1962) ("The courts cannot be hampered or limited in the discharge of their functions by either of the other 2 branches of government.")  *See also, Judicial Attorneys Ass'n v. State of Michigan*, 586 N.W.2d 894, 896–98 (Mich. 1998).

So, the Governor, as the head of the executive branch, could not compel the judicial branch, led by the Michigan Supreme Court, to take any specific actions in relation to the Supreme Court's administration of the courts.  Thus, in addition to not naming the counties or local political subdivisions possessing physical and financial control of the local courthouses, Plaintiffs have also named the wrong branch of government to pursue a claim under the Michigan Constitution's "one court of justice" provision.[4]

Plaintiffs thus fail to allege an injury traceable to the State.  Plaintiffs merely allege the State has some "ultimate responsibility" over the lower courthouses. (ECF No. 79, ¶ 85, PageID.1308.)  They claim the State of Michigan either has control of or *"supervises"* the local courthouses.  (*Id.,* ¶ 105, PageID.1327.)  But as demonstrated above neither is true.  Otherwise, Plaintiffs' complaint simply

---

[4] The same would be true to the extent Plaintiffs suggest that the "State of Michigan" could be compelled to provide funding for the local courthouses to support alterations to those structures.  The power to appropriate lies solely with the Michigan Legislature.  Mich. Const. 1963, Art. IV, §§ 1, 31.  Meaning, neither the executive branch, *i.e.*, the Governor, nor the judicial branch, *i.e.*, the Michigan Supreme Court, could compel an appropriation, although such could be requested.

contains generalized allegations regarding the collective Defendants' failures to maintain the facilities in compliance with disability laws, which is insufficient to allege an injury traceable to the State for the reasons already stated above.

Where Plaintiffs have failed to sufficiently allege that the State is responsible for the accessibility issues at CAYMC, the Frank Murphy Hall of Justice, the Ingham County 54-B District Court, the Livingston County 53rd District Court and 44th Circuit Court, the Washtenaw County 22nd District Court and Detroit's 36th District Court, Plaintiffs lack standing to bring their Title II claims against the State of Michigan.

### c. The State also does not own or control Spirit Plaza or the Rosa Parks Transit Center.

To the extent Plaintiffs are alleging the State of Michigan is liable for Spirit Plaza or the Rosa Parks Transit Authority, they lack standing for similar reasons.

Regarding Spirit Plaza, Plaintiffs' second amended complaint does not contain any specific allegations as to what the State did related to these areas.  In fact, they allege that the City of Detroit failed to remove curbs and barriers—not the State.  (ECF No. 79, ¶ 32, PageID.1277-1278.)  Further, the City of Detroit's website denotes that it created Spirit Plaza.[5]  Their advertisements reflect at the bottom that Spirit Plaza is "a City of Detroit facility managed by Total Access

---

[5] https://detroitmi.gov/news/spirit-plaza-official-season-opening-weekend-downtown-detroit (last accessed October 2, 2024).

Events, Inc." (*See* fn 5.)  The City of Detroit also voted to invest $800,000.00 in improvements in 2019.[6]  There is no evidence that the State has any involvement that would establish it caused any deficiencies that resulted in injury to the Plaintiffs regarding Spirit Plaza.  In fact, the State of Michigan does not own, lease, or bear financial responsibility for Spirit Plaza.  (Def's Ex. A.)

As to the Rosa Parks Transit Center, Plaintiffs allege Marguerite Maddox had access issues, but they do not allege any factual information that the State is liable for this location.  (ECF No. 79, ¶ 48, PageID.1289.)  The Rosa Parks Transit Center is owned by the City of Detroit, and pursuant to the City of Detroit's 2022-2023 Budget Analysis, it is maintained by the Detroit Department of Transportation.[7]  There is no evidence the State has any involvement that would establish it caused any deficiencies that resulted in injury to the Plaintiffs regarding the Rosa Park Transit Center.  In fact, the State of Michigan does not own, lease, or bear financial responsibility for the Rosa Parks Transit Center.  (Def's Ex. A.)

### 2.    Plaintiffs cannot show that a judicial decision against the State would redress their injuries.

"The third prong of the Article III standing test is redressability, *i.e.* the relief the plaintiff is seeking must provide redress for the injury.  An injury is

---

[6] https://www.cbsnews.com/detroit/news/800k-makeover-coming-to-spirit-plaza-in-september/ (last accessed October 2, 2024).

[7] July 30, 2013 (detroitmi.gov) (last accessed October 2, 2024.)

redressable if a court order can provide 'substantial and meaningful relief.'" *Parsons v. United States D.O.J.,* 801 F.3d 701, 715 (6th Cir. 2015), citing *Larson v. Valente,* 456 U.S. 228, 243 (1982). "[A] plaintiff satisfies the redressability requirement when he shows that a favorable decision will relieve a discrete injury to himself. He need not show that a favorable decision will relieve his *every* injury." *Id.* at 715, citing *Larson,* 456 U.S. at 244 n. 15. "The relevant standard is likelihood—whether it is 'likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *Id.* (citing *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC) Inc.,* 528 U.S. 167, 181 (2000).) "Redressability is typically more difficult to establish where the prospective benefit to the plaintiff depends on the actions of independent actors." *Id.* But Plaintiffs' alleged injuries cannot be redressed through any order against the State.

### a. Plaintiffs would not be entitled to damages against the State.

To remedy their alleged harms, Plaintiffs seek economic and emotional harm damages. (ECF No. 79, PageID.1396-97, ¶¶ 250-51, PageID.1399, ¶ F.) But Plaintiffs cannot obtain emotional damages under a Title II claim because those damages are not available under the Rehabilitation Act. *See Kovatsenko v. Kentucky Community and Technical College*, 2023 WL 3346108 at * 1 (May 10, 2023, E.D. Kentucky) (citing *Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212, 222 (2022).)

19

Compensatory damages are available under the ADA (*Johnson*, 151 F.3d at 572–73), but evidence of intentional discrimination is necessary to obtain them. *Davis v. Flexman*, 109 F. Supp. 2d 776, 790 (S.D. Ohio 1999) (Rice, C.J.); *S.H. ex rel. Durrell v. Lower Merion Sch. Dist.*, 729 F.3d 248, 264 (3d Cir. 2013); *Meagley v. City of Little Rock*, 639 F.3d 384, 389 (8th Cir. 2011); *Powers v. MJB Acquisition Corp.*, 184 F.3d 1147, 1152–53 (10th Cir. 1999); *see also Hill v. Bradley Cnty. Bd. of Educ.*, 295 F. App'x 740, 742 & n.2 (6th Cir. 2008) (assuming without deciding).  The Sixth Circuit has consistently assumed that a showing of deliberate indifference is sufficient to prove discriminatory intent, which standard "requires both (1) knowledge that a harm to a federally protected right is substantially likely, and (2) a failure to act upon that likelihood." *Douglas* v. *Muzzin*, 2022 WL 3088240, at *8 (6th Cir. August 3, 2022) (internal quotations and citation omitted).

Here, even if some knowledge of likely harm could be attributed to the State, which the State does not concede, the State could not have acted to prevent it because the State has no physical, financial, or administrative control over the local courthouses, such that injuries to Plaintiffs caused by accessibility issues could have been prevented by the State.  As a result, compensatory damages are not available against the State, and Plaintiffs injuries could not be redressed by any such award against the State.

**b.      Plaintiffs would not be entitled to declaratory or injunctive relief against the State.**

Plaintiffs further request "declaratory and injunctive relief compelling Defendants to comply with the disability laws by making their buildings and areas barrier-free and equally accessible to both able-bodied and disabled persons." (*Id.*, PageID.1399, ¶ D.)  And they request "continuing injunctive relief" and maintenance of "jurisdiction in this case until such time as all Defendants demonstrate to this Court that they have made the changes needed to fully comply with this Court's orders and the applicable laws." (*Id.*, ¶ E.)  They also sought "a preliminary order compelling [the State] to survey its court locations which are not barrier-free and equally accessible, and, if necessary, join such court locations and counties or jurisdictions as third party Defendants." (ECF No. 79, PageID.1399, ¶ B).

However, this Court cannot grant such relief against the State where, as set forth in Section I.C.1. above, the State of Michigan does not have the authority to make or compel structural changes to the local court facilities where, by law, these facilities are the responsibility of the relevant counties and local political subdivisions.  Mich. Comp. Laws §§ 45.16, 46.7, 600.8261, 600.8262, and 600.8263.  Nor could the Court redress Plaintiffs' injuries through an order against the State under the "one court of justice" provision where they have sued the State of Michigan and not the Michigan Supreme Court.

21

However, the "one court of justice" provision would still not avail Plaintiffs against the Michigan Supreme Court, as its control over the local courts is operational and not related to facility structural issues.  Relative to the Michigan Supreme Court's operational authority over the lower courts, it has acted within its administrative sphere to educate the lower courts regarding their ADA obligations. The Court has issued a planning guide entitled *The Michigan Courthouse: A Planning and Design Guide for Trial Court Facilities* (rev. 2000), which sets forth design guidelines for local courthouses, while recognizing that the Court does not control these facilities.  (Def's Ex. B).[8]  Citing the statutes noted above (Mich. Comp. Laws §§ 45.16, 46.7, 600.8261, 600.8262, and 600.8263) the guidelines indicate "[s]ince local government is the owner, the design process is controlled locally, without State approval of final design documents, budgets, or schedules." (*Id.,* p. I-2.)  However, the guide instructs that access for the disabled or physically impaired must be considered encourages "voluntary compliance" by the local courts with the ADA.  (*Id.,* Appendix 5, p. 1.)

The Michigan Supreme Court also issued Administrative Order (AO) 2015-5, Adoption of Administrative Order Requiring Trial Courts to Comply With

_____

[8] *See* The Michigan Courthouse: A Planning and Design Guide for Trial Court Facilities (rev. 2000) (p. I-2), available at facilitystandards.pdf (michigan.gov) (last accessed October 2, 2024).

Certain ADA-Related Practices.  (Def's Ex. C.)[9]  The order was adopted "to ensure

that persons with disabilities have equal and full access to Michigan courts and that

all trial courts and court-operated programs and services have implemented

procedures in compliance with" the ADA and similar laws.  (*Id.*)  Of note, this

order is related to ensuring individuals have court access by requiring the court to

adopt local administrative orders describing the procedures to be followed for a

person "to request accommodations in that court," [10] designate an ADA

coordinator, and provide ADA training—all operational requirements versus

facility structural requirements.  In addition, the State Court Administrative Office,

which is supervised by the Michigan Supreme Court, created a handbook for

---

[9] AO 2015-5 is available online at Michigan Supreme Court Administrative Orders
(last accessed October 2, 2024).

[10] Here, each of the local courts has adopted a local administrative rule.  See 54-B
District Court, 54B-Request-for-Accommodations-2018-PDF,
(cityofeastlansing.com), Third Circuit Court, 2023-08 ^Requests for
Accommodations by Persons with Disabilities^Rescinds and Replaces LAO 2022-
09^.pdf (3rdcc.org), Thirty Sixth District Court, local-administrative-order-2018-
03-requests-for-accommodations-by-persons-with-disabilities.pdf
(36thdistrictcourt.org). (Last accessed October 2, 2024.)  The local administrative
rules for the 53rd District and 44th District are attached as Def's Exhibit D.

Michigan courts regarding the ADA[11] and hosts an ADA resource page on its website to further assist the courts.[12]

The guidance and direction the Michigan Supreme Court has given concerning ADA compliance satisfies its administrative obligation to oversee the courts operationally and is consistent with the fact that the Court cannot compel counties and political subdivisions to comply with the ADA or to make structural modifications to their buildings.

But here, there is no relief that can be ordered against the State that will redress the Plaintiffs injuries that stem from access issues to buildings the State does not control financially or administratively.  As a result, Plaintiffs lack standing to bring their claims against the State of Michigan.

Finally, should this Court treat this motion as a motion for summary judgment instead of a motion to dismiss, as described above, and as a matter of law, no genuine issue of material fact exists establishing Plaintiffs' standing against the State for local courthouse facility issues.  As noted, the local courthouse facilities are the responsibility of the counties or local political subdivisions where

---

[11] *See* https://www.courts.michigan.gov/48cfa4/siteassets/publications/manuals/ada/ada-handbook.pdf (last accessed October 2, 2024).

[12] *See* https://www.courts.michigan.gov/administration/trial-court/trial-court-operations/americans-with-disabilities/ (last accessed October 2, 2024).

the courts sit.  Mich. Comp. Laws §§ 45.16; 46.7; 600.8261–8263.  Plaintiffs are

unable to state a genuine issue of material fact that the State is responsible for the

buildings, caused their injuries or that this Court can redress their injuries where

there are third-parties responsible for the buildings at issue.[13]  Dismissal is thus

appropriate.

II.     **Plaintiffs' claims against the State under Michigan's Persons with Disabilities Civil Rights Act should be dismissed under the Eleventh Amendment, or alternatively, for lack of standing.**

A.     **Standard of Review**

Whether the Eleventh Amendment precludes Plaintiffs' claim is an issue

pertaining to this Court's subject-matter jurisdiction properly raised under Rule

12(b)(1).  *See Lyshe v. Levy*, 854 F.3d 855, 857 (6th Cir. 2017).  *See also, Lee*

*Testing & Eng'g Inc. v. Ohio DOT*, 855 F. Supp. 2d 722, 725 (S.D. Ohio 2012).

See the standard of review as set forth in Section I.A. of this brief.

B.     **Immunity Analysis**

Plaintiffs' Persons with Disabilities Civil Rights Act (PWDCRA) claims

must be dismissed where the State has Eleventh Amendment sovereign immunity

and Plaintiffs have failed to meet the preconditions for waiver of the States'

sovereign immunity.

---

[13] Plaintiffs also cannot establish that the Court could redress their injuries relative to the State where it does not own or control Spirit Plaza or the Rosa Parks Transit Center.

The Supreme Court has broadened the Eleventh Amendment's application to suits by citizens against their own state and held that "the ultimate guarantee of the Eleventh Amendment is that nonconsenting states may not be sued by private individuals in federal court." *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 360 (2001). "States' constitutional immunity from suit prohibits *all* state-law claims filed against a State in federal court, whether those claims are monetary or injunctive in nature." *Ernst v. Rising*, 427 F.3d 351, 368 (6th Cir. 2005). A state-law claim brought in a federal court under pendent jurisdiction is a claim against the state that is protected by the Eleventh Amendment. *Penhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 121 (1984). Neither "pendent jurisdiction nor any other basis of jurisdiction may override the Eleventh Amendment." *Id.*

Title II of the ADA abrogates a state's sovereign immunity where the conduct at issue violates the Fourteenth Amendment. *Babcock*, 812 F.3d at 535. In this Court's March 30, 2024 Order, it held that the State was not entitled to Eleventh Amendment immunity relative to Plaintiffs' ADA Title II claim finding that Plaintiffs sufficiently alleged a Title II violation and that the alleged violation involves the Fourteenth Amendment. (ECF No. 103, 3/30/24 Order, PageID.1741-1742.) But the opinion made no mention of the State's immunity from the state law PWDCRA claim. The abrogation of immunity under the ADA does not abrogate the State's sovereign immunity relative to the state law claims. The

26

PWDCRA does not abrogate the State's Eleventh Amendment immunity. *Ernst,*
427 F.3d at 368.

As a result, the state is immune from Plaintiffs' suit under the PWDCRA
"unless it consents, and… any relinquishment of sovereign immunity must be
strictly interpreted." *Pohutski v. City of Allen Park,* 641 N.W.2d 219, 225 (Mich.
2002), citing *Manion v. State Hwy Comm'r,* 5 N.W.2d 527, 528 (Mich. 1942)
Relevant here, the Michigan Legislature has waived immunity against the State in
the text of the PWDCRA. *Christie v. Wayne State University*, 993 N.W.2d 203,
208 (Mich. 2023). Nevertheless, the State has maintained immunity as to how suit
may be filed against the State. "[B]ecause the government may voluntarily subject
itself to liability, it may also place conditions or limitations on the liability
imposed. One such condition on the right to sue the state is the notice provision of
the Court of Claims Act . . . ." *McCahan v. Brennan*, 822 N.W.2d 747, 750 (Mich.
2012).

Subsection 6431(1) of the COCA provides:

> Except as otherwise provided in this section, a claim may not be
> maintained against this state unless the claimant, within 1 year after
> the claim has accrued, files in the office of the clerk of the court of
> claims either a written claim or a written notice of intention to file a
> claim against this state or any of its departments, commissions,
> boards, institutions, arms or agencies.

Mich. Comp. Laws § 600.6431(1). Further, subsection 6431(2) specifies that:

A claim or notice under subsection (1) must contain all of the following:

> (a) A statement of the time when and the place where the claim arose.
>
> (b) A detailed statement of the nature of the claim and of the items of damage alleged or claimed to have been sustained.
>
> (c) A designation of any department, commission, board, institution, arm, or agency of the state involved in connection with the claim.
>
> (d) A signature and verification by the claimant before an officer authorized to administer oaths.

Mich. Comp. Laws § 600.6431(2).

Two recent Michigan Supreme Court opinions, *Christie v. Wayne State University*, and *Elia Cos., LLC v. University of Michigan Regents*, 993 N.W.2d 392 (Mich. 2023), held that all parties with claims against the State must comply with the Michigan Court of Claims Act's (COCA) notice provision, Mich. Comp. Laws § 600.6431, regardless of forum, and that the failure to do so within the requisite time period is a bar to those claims.

In *Christie*, the plaintiff filed state law claims in the circuit court in August 2019 as authorized by the Elliott-Larsen Civil Rights Act, Mich. Comp. Laws § 37.2101, *et. seq.*, and the PWDCRA, Mich. Comp. Laws § 37.1101 *et. seq*. *Christie*, 993 N.W.2d at 205. The defendant responded by moving for dismissal based on the plaintiff's failure to comply with § 6431(1) as he did not file a verified complaint or notice of intent in the Court of Claims within one year of his

claims' accrual.  Both the trial court and the Michigan Court of Appeals disagreed with the defendant.  (*Id*.)

But the Michigan Supreme Court reversed, holding that "by its terms, [§ 6431] applies categorically to 'a claim' against the state," and "[a]bsent from this section is any language that relieves claimants who choose to file their claims against the state in the circuit courts from complying with" § 6431.  *Id.* at 209.  In addition to the "unambiguous language of" § 6431, the court also explained that its conclusion was supported by the "statutory history of [§ 6431], as well as the history and the purpose of the COCA, including its role in waiving the state's immunity from suit under limited circumstances."  *Id.*  The Court in *Elia* reached the same conclusion on similar facts.  *Elia*, 993 N.W.2d at 393–96.

Those procedures apply to state law claims filed in federal court.  *Christie*, 993 N.W.2d at 209–10; *Elia*, 993 N.W.2d at 396.  *See also Williams v. Univ. of Mich*., No. 22-cv-10296, 2022 U.S. Dist. LEXIS 203712, at *19 (E.D. Mich. Nov. 8, 2022), where prior to Michigan Supreme Court overruling the Michigan Court of Appeals in *Christie*, this Court relied the Michigan Court of Appeals' decision which found these procedural requirements were only required when filing in the Court of Claims.  In *Williams,* the court noted that "[i]In applying state law, federal courts anticipate how the relevant state's highest court would rule in the case and are bound by controlling decisions of that court."  *Id.* at *20–21, quoting *Meyers v.*

*Cincinnati Bd. of Educ.*, 983 F.3d 873, 880 (6th Cir. 2020). But now, the Michigan Supreme Court held in *Christie* held that the procedural requirements must be followed regardless of where the suit is initiated. As a result, Plaintiffs' claims PWCDRA claim against the state is subject to dismiss where they failed to comply.

Here, Plaintiffs have not filed timely notices of intent concerning their PWDCRA claims against the State in the Court of Claims as required by subsection 6431(1). In addition, Plaintiffs' complaint against the State has not been verified by an officer authorized to administer oaths, as required by the Court of Claims Act. Mich. Comp. Laws § 600.6431(2)(d). (ECF No. 79, PageID.1400-1401.) As a result, since the State has not waived its Eleventh Amendment immunity in this case, Plaintiffs cannot maintain their state law PWDCRA claims in this Court.

### C. Standing Analysis

Even if Plaintiffs' PWDCRA claims were not subject to dismissal for failure to comply with the notice and verification requirements of Michigan's COCA, they would still be subject to dismissal for lack of standing. Michigan's PWDCRA "substantially mirrors" the ADA, and these claims are "generally analyzed identically." *Hrdlicka v. Gen. Motors*, *LLC*, 63 F.4th 555, 566 (6th Cir. 2023) (citations omitted); *see also Donald v. Sybra, Inc.,* 667 F.3d 757, 764 (6th Cir. 2012). Because that is so, for the same reason that Plaintiffs lack standing to bring

their Title II ADA claims against the State, Plaintiffs lack standing to bring their

PWDCRA claims against the State.

**III.    The counties and local political subdivisions responsible for the local courthouses are necessary parties, and dismissal is appropriate where Plaintiffs failed to join them to this lawsuit.**

### A.    Standard of Review

Fed. R. Civ. P 12(b)(7) allows dismissal for failure to join an indispensable

party under Rule 19.  "The joinder rules compel plaintiffs to sue all persons who

are necessary and indispensable to the adjudication of the case."  *Coast-to-Coast*

*Produce, LLC v. Lakeside Produce USA, Inc.*, No. 23-10408, ___ F. Supp.3d ___,

2023 WL 9018375, at *12 (E.D. Mich. Dec. 29, 2023) (citing *Local 670 v. Int.*

*Union, United Rubber, Cork, Linoleum and Plastic Workers of America*, 822 F.2d

613, 618 (6th Cir. 1987).)  "But if an indispensable party cannot be added to the

case because the court has no personal jurisdiction over the person, or joinder

would upset subject-matter jurisdiction, joinder might be excused in some

circumstances."  *Id.* (citing *Local 670*, 822 F.2d at 618).

"The Sixth Circuit employs a three-step analytical framework to engage a

'pragmatic approach' to the question, as 'an entire suit should not be dismissed if

meaningful relief can still be accorded [even in the party's absence].' "  *Id.*

(quoting *Local 670*, 822 F.2d at 618) (quoting *Smith v. United Brotherhood of*

*Carpenters and Joiners of America*, 685 F.2d 164, 166 (6th Cir. 1982)); *see also*

*Provident Tradesmens Bank & Tr. Co. v. Patterson*, 390 U.S. 102, 116 n.12 (1968).

First, the Court must determine whether a person is necessary to the action and should be joined if feasible under Rule 19(a). *Glancy v. Taubman Crs., Inc.,* 373 F.3d 656, 666 (6th Cir. 2004).  Second, if the Court determines the person or entity is a necessary party, it must then decide if joinder of that person or entity will deprive it of subject matter jurisdiction.  *Glancy*, 373 F.3d at 666.  Finally, if joinder is not feasible because it would eliminate this Court's ability to hear the case, then this Court must analyze the Rule 19(b) factors to determine whether it should in equity and good conscience dismiss the case because the absentee is indispensable.  *Id.*

### B.     Joinder Analysis

Despite the State's repeated assertions that it is not a proper party to this lawsuit and that it bears no liability for their claims alleging access violations of the ADA and the PWDCRA as to local court facilities, the Plaintiffs failed to name the local political subdivisions who are responsible for those buildings.

### 1.     The local political subdivisions responsible for the remaining local courthouses are necessary to the action under Rule 19(a).

Rule 19(a) mandates joinder of parties, if feasible, if (1) in that person's absence, the court cannot accord complete relief among existing parties, or (2) the

person claims an interest relating to the subject matter of the action and is so

situated that the disposition of the action in the person's absence may (i) as a

practical matter impair or impede the person's ability to protect that interest or (ii)

leave the parties subject to a substantial risk of incurring double, multiple, or

otherwise inconsistent obligations by reason of the claimed interest.  Fed. R. Civ.

Pro. 19(a).

      As set forth in Section I.C.1.a of this brief, the State is not responsible for

the local courthouses.  Pursuant to Michigan law, the local political subdivisions

are responsible for the local courthouses.  Mich. Comp. Laws §§ 47.7, 47.16,

600.8261, 600.8262, and 600.8263.  Michael Turnquist's attached declaration from

Michigan's DTMB evidences that the State does not own or rent out any of the

local courthouses at issue.  (Def's Ex. A.)  Further, that the State had no

involvement in the design of the local courthouse facilities, and it does not provide

funding for building renovations.  (*Id.*)  This Court cannot accord any substantial

relief to the Plaintiffs herein by allowing them to pursue their claims against the

State instead of joining the necessary counties and political subdivisions.  *See*

Section I.C.1. regarding building responsibility.

      In addition, the counties and political subdivisions that are responsible for

the local courthouses cannot protect their legal interests in this lawsuit that is

requesting that they spend their financial resources to remediate buildings they are

responsible for where they are not parties. The State does not represent the counties and local political subdivisions, nor is it in a position to adequately represent their interests where it does not have unfettered access to its evidence regarding ADA compliance. As a result, the counties and local political subdivisions are necessary parties to this action.

> **2.    Failure to join deprives this Court of subject matter jurisdiction.**

The State is unaware of any subject-matter jurisdiction issue prohibiting the relevant local political subdivisions from being joined as parties to this lawsuit. However, Plaintiffs have not sufficiently identified the third-party local political subdivisions that are liable for the local courthouses at issue, and no motion is currently pending to amend the complaint to include them, despite this Court's deadline for joinder.

> **3.    This Court should dismiss the claims against the State where in equity and good conscience the local political subdivisions with authority over the local courthouses are indispensable.**

To the extent this Court finds the joinder not feasible, and given that Plaintiffs have not undertaken any effort to name the indispensable parties, this case should be dismissed against the State. The Court considers the following factors in determining whether dismissal is appropriate under the "equity and good conscience" standard:

- The extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
- The extent to which any prejudice could be lessened or avoided by protective provisions in the judgment, shaping the relief, or other measures;
- Whether a judgment rendered in the person's absence would be adequate; and
- Whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.  [Fed. R. Civ. P. 19(b)(1)–(4).]

Any judgment issued in this case requiring the local political subdivisions to undertake remediation of their buildings, for which they would by Michigan law bear the cost, would clearly constitute a prejudice to them where they have not been joined as parties to this case.  Further, any judgment against the State in this regard would not be enforceable against the local political subdivisions as "a judgment is not. . . legally enforceable against, a Nonparty."  *Provident Tradesmens Bank & Tr. Co. v. Patterson*, 390 U.S. 102, 110 (1968).  As a result, the State is prejudiced by having to defend a lawsuit where it cannot provide the relief Plaintiffs request nor adequately represent the county and local political subdivisions' interests.

This prejudice could not be lessened, nor could a judgment in their absence be adequate, where the political subdivisions would be wholly responsible for the financing and remediation of any of their local court facilities.

35

As to Plaintiffs' ability to obtain an adequate remedy, they have always had the option to join the proper parties to this lawsuit. They also have the ability to institute a separate lawsuit related to the buildings at issue naming the parties who are actually responsible for those buildings.

## CONCLUSION AND RELIEF REQUESTED

For the reasons discussed above, Defendant State of Michigan respectfully asks this Court to dismiss all claims against it under Fed. R. Civ. P. 12(b)(1) or alternatively under Fed. R. Civ. P. 56.

Respectfully submitted,

*/s/Cassandra A. Drysdale-Crown*
Cassandra A. Drysdale-Crown
Assistant Attorney General
Attorney for Defendant State of Michigan
Civil Rights & Elections Division
P.O. Box 30736
Lansing, MI 48909
(517) 335-7659
drysdalecrownc@michigan.gov
P64108

Dated:  October 4, 2024

36

## LOCAL RULE CERTIFICATION

I, Cassandra Drysdale-Crown, certify that this document complies with Local Rule 5.1(a), including: double-spaced (except for quoted materials and footnotes); at least one-inch margins on the top, sides, and bottom; consecutive page numbering; and type size of all text and footnotes that is no smaller than 10-1/2 characters per inch (for non-proportional fonts) or 14 point (for proportional fonts).  The brief is eleven pages longer than provided by the local rule, but a companion motion to extend pages was filed for the Court's consideration on October 2, 2024.  Local Rule 7.1(d)(3).

*s/Cassandra Drysdale-Crown*
Cassandra Drysdale-Crown (P64108)

## CERTIFICATE OF SERVICE

I hereby certify that on October 4, 2024, I electronically filed the above document(s) with the Clerk of the Court using the ECF System, which will provide electronic copies to counsel of record.

*s/Cassandra Drysdale-Crown*
Cassandra Drysdale-Crown (P64108)
Assistant Attorney General