# EXHIBIT B

# THE MICHIGAN COURTHOUSE

## A Planning and Design Guide for Trial Court Facilities





# THE MICHIGAN COURTHOUSE

## A Planning and Design Guide for Trial Court Facilities

*Produced by:*

**Michigan Court Facilities Standards Project Advisory Committee**

*In Conjunction with:*

**State Court Administrative Office
Carter Goble Associates, Inc.
Court Works, Inc.**

*Produced For:*

**The Michigan Supreme Court**

On the Cover:
*The 52nd District Court - 4th Division, Troy, MI and the 42nd District Court - 1st Divisic
Photos Courtesy of Thomas Strat & Associates*



# TABLE OF CONTENTS
### The Michigan Courthouse

**THE MICHIGAN COURTHOUSE**



# INTRODUCTION
## STUDY PURPOSE

I.1    **Michigan Court Facilities Standards Project Advisory Committee Membership** . . . . I-1

I.2    **Consultants to the Project** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . I-1

I.3    **Study Purpose** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . I-1

I.4    **Study Scope** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . I-2

I.5    **Court Organization** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . I-3
       I.5.1    **Michigan Supreme Court** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . I-3
       I.5.2    **Michigan Court of Appeals** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . I-4
       I.5.3    **Circuit Court** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . I-4
       I.5.4    **Michigan Court of Claims** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . I-5
       I.5.5    **Probate Court** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . I-5
       I.5.6    **District Court** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . I-5
       I.5.7    **Municipal Court** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . I-6

# SECTION 1
## THE PLANNING PROCESS

1.1    **FACILITY PLANNING AND DESIGN PROCESS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1-1
       1.1.1    **Getting Organized** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1-3
       1.1.2    **Who Should Participate** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1-3
              1.1.2.1   *Project Manager* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1-4
              1.1.2.2   *Functions of the Committee* . . . . . . . . . . . . . . . . . . . . . . . . . 1-4
              1.1.2.3   *Selecting Consultants and Creating the Project Team* . . . . . . . . 1-4
       1.1.3    **Preparing the Request for Proposal and Selecting an Architect** . . . . . . 1-5

1.2    **Needs Assessment** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1-7
       1.2.1    **Forecasting and Determining Needs** . . . . . . . . . . . . . . . . . . . . . . . . . 1-7
       1.2.2    **Methodology** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1-8
       1.2.3    **Master Planning and Determination of Alternative Solutions** . . . . . . . . . 1-9
              1.2.3.1   *Assessment of Short and Long Term Needs* . . . . . . . . . . . . . . 1-10
              1.2.3.2   *Evaluation of Existing Space* . . . . . . . . . . . . . . . . . . . . . . . . 1-10
              1.2.3.3   *Alternatives to Address Space Needs* . . . . . . . . . . . . . . . . . . 1-11
              1.2.3.4   *Development of the Implementation Plan* . . . . . . . . . . . . . . . . . 1-11

1.3    **The Program Statement** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1-12
       1.3.1    **Step 1 – Operational Framework** . . . . . . . . . . . . . . . . . . . . . . . . . . . 1-13
       1.3.2    **Step 2 – Spatial Framework** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1-14
       1.3.3    **Step 3 – Financial Framework** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1-19

1.4    **The Design Steps** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1-25
       1.4.1    **Step 1 – Schematic Design** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1-25
       1.4.2    **Step 2 - Design Development** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1-26



| | | |
|---|---|---|
| **1.4.3** | **Step 3 – Construction Documents** | 1-28 |
| | 1.4.3.1 *Conduct Detailed Reviews of the Construction Documents* | 1-29 |
| | 1.4.3.2 *Final Cost Estimate* | 1-29 |
| | 1.4.3.3 *Coordination of the Construction Bidding Process* | 1-29 |
| | 1.4.3.4 *Conduct Pre-Construction Conference* | 1-29 |
| **1.4.4** | **Step 4 – Construction Administration** | 1-29 |

| | | |
|---|---|---|
| **1.5** | **Construction Methods** | **1-30** |
| **1.5.1** | **Building Approaches** | 1-30 |
| **1.5.2** | **Building Techniques** | 1-31 |
| **1.5.3** | **Life Cycle Considerations** | 1-32 |
| **1.5.4** | **Project Organization** | 1-32 |
| | 1.5.4.1 *Description of Construction Phase Services* | 1-33 |
| | 1.5.4.2 *Construction Communication Procedures* | 1-34 |
| | 1.5.4.3 *Conduct Final Inspection* | 1-35 |
| | 1.5.4.4 *Identify and Coordinate All Construction Warranty Provisions* | 1-35 |

| | | |
|---|---|---|
| **1.6** | **The Project Management Cycle** | **1-35** |
| **1.6.1** | **Construction Manager (CM)** | 1-37 |
| **1.6.2** | **Program Manager (PM)** | 1-38 |
| **1.6.3** | **Construction Manager/General Contractor (CM/GC)** | 1-38 |

| | | |
|---|---|---|
| **1.7** | **Financing Options** | **1-39** |
| **1.7.1** | **Public Financing** | 1-39 |
| | 1.7.1.1 *Bonds (pay-as-you-use)* | 1-39 |
| | 1.7.1.2 *General Obligation Bonds* | 1-40 |
| | 1.7.1.3 *Non-guaranteed Bonds (Revenue Bonds)* | 1-40 |
| **1.7.2** | **Taxes** | 1-40 |
| | 1.7.2.1 *Property Tax* | 1-41 |
| **1.7.3** | **Private Financing** | 1-42 |
| | 1.7.3.1 *Lease-Purchase* | 1-42 |
| | 1.7.3.2 *Certificates of Participation (COPS)* | 1-42 |

| | | |
|---|---|---|
| **1.8** | **Conclusion** | **1-43** |

## SECTION 2
### GENERAL COURT DESIGN ISSUES

| | | |
|---|---|---|
| **2.1** | **Issues of Court Organization and Administration** | **2-1** |
| **2.1.1** | **Function vs. Jurisdiction** | 2-1 |
| **2.1.2** | **Judicial Assignments and Calendaring Systems** | 2-2 |
| **2.1.3** | **Court Divisions and Jurisdiction Specialization** | 2-2 |
| **2.1.4** | **Ratio of Courtrooms to Judges** | 2-3 |
| **2.1.5** | **Specialized Courtrooms** | 2-3 |

| | | |
|---|---|---|
| **2.2** | **Renovation or New Courthouse** | **2-4** |
| **2.2.1** | **When to Renovate and When to Build New** | 2-4 |
| **2.2.2** | **Problems Usually Encountered** | 2-5 |
| **2.2.3** | **Types of Facilities** | 2-6 |
| **2.2.4** | **Phasing of the Project** | 2-6 |



**2.3**     **Site Location** ...................................................... 2-7
    **2.3.1**     **Site Size** ...................................................... 2-7

**2.4**     **Image of the Court** ................................................. 2-8
    **2.4.1**     **Accessibility** ................................................. 2-10
    **2.4.2**     **Parking** ...................................................... 2-10
    **2.4.3**     **Vehicular Traffic** ............................................. 2-11
    **2.4.4**     **Exterior Lighting** ............................................. 2-11
    **2.4.5**     **Building Circulation and Zoning** ............................... 2-11
    **2.4.6**     **Public Zone** .................................................. 2-12
    **2.4.7**     **Private Zone** ................................................. 2-13
    **2.4.8**     **Secure Zone** ................................................. 2-13
    **2.4.9**     **Interface Zone** ............................................... 2-14
    **2.4.10**    **Service Zone** ................................................. 2-14

**2.5**     **User Requirements** ............................................... 2-14
    **2.5.1**     **Public Accessibility** .......................................... 2-14
    **2.5.2**     **Support Services** ............................................. 2-15

**2.6**     **Security** ......................................................... 2-15
    **2.6.1**     **Entrance Screening** .......................................... 2-16
    **2.6.2**     **Alarm Systems** .............................................. 2-16
    **2.6.3**     **Intrusion Sensors** ............................................ 2-17
    **2.6.4**     **Fire Detection** ............................................... 2-17
    **2.6.5**     **Access Control** .............................................. 2-17
    **2.6.6**     **Video Surveillance** ........................................... 2-18
    **2.6.7**     **Secure Circulation** ........................................... 2-18
    **2.6.8**     **Public Address** .............................................. 2-18
    **2.6.9**     **General Security Measures** .................................... 2-18

**2.7**     **Growth Management - Planning for Flexibility and Growth** .................... 2-18

**2.8**     **Court Technology and Implications for Courtroom Design** ................ 2-22
    **2.8.1**     **Building Infrastructure** ....................................... 2-22
        *2.8.1.1*     *Computer Systems* .................................. 2-22
        *2.8.1.2*     *Telephone/Data* ................................... 2-22

**2.9**     **Common Areas** ................................................... 2-23
    **2.9.1**     **Lobby** ....................................................... 2-23
    **2.9.2**     **Court Support Areas** .......................................... 2-23
    **2.9.3**     **Workspaces** ................................................. 2-23
    **2.9.4**     **Conference/Meeting Rooms** .................................... 2-24
    **2.9.5**     **Courtroom** ................................................... 2-24

**2.10**    **Overall Design Considerations** ...................................... 2-26
    **2.10.1**    **Video Evidence** .............................................. 2-26
    **2.10.2**    **Video Appearance** ............................................ 2-26
    **2.10.3**    **Sound Amplification** .......................................... 2-27
    **2.10.4**    **Audio Evidence** .............................................. 2-27
    **2.10.5**    **Lighting** ..................................................... 2-27


2.10.6    **Temperature Controls** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2-27
2.10.7    **Bench** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2-28
2.10.8    **Litigant / Counsel Tables** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2-28
2.10.9    **Jury Box** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2-28
2.10.10   **Witness Stand** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2-28
2.10.11   **Clerk/Reporter Station** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2-28
2.10.12   **Bailiff Station** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2-29

**2.11**    **Conclusion** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2-29

## SECTION 3
COURTHOUSE DESIGN CRITERIA

**3.1**    **The Judicial Set** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-1
         3.1.1    **Jury Trial Courtrooms** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-2
                  3.1.1.1    *Imagery and Function* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-2
                  3.1.1.2    *Shape* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-2
                  3.1.1.3    *Size* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-3
                  3.1.1.4    *Environment* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-5
                  3.1.1.5    *Adjacencies and Circulation* . . . . . . . . . . . . . . . . . . . . . . . 3-6
                  3.1.1.6    *Accessibility* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-6
                  3.1.1.7    *Security* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-7
                  3.1.1.8    *Furnishings and Finishes* . . . . . . . . . . . . . . . . . . . . . . . . . 3-7
         3.1.2    **Courtroom Technology** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-7
                  3.1.2.1    *Court Reporting - Audio and Video Equipment* . . . . . . . . . . . . 3-8
                  3.1.2.2    *Video and Tele-communications* . . . . . . . . . . . . . . . . . . . . . . 3-8
                  3.1.2.3    *Office Automation and Case Management Systems* . . . . . . . . . 3-8
                  3.1.2.4    *Legal Research* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-9
                  3.1.2.5    *Presentation Systems* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-9
                  3.1.2.6    *Accessibility Systems* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-9
                  3.1.2.7    *Lighting Controls* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-10
                  3.1.2.8    *Security* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-10
                  3.1.2.9    *Other Equipment* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-10
         3.1.3    **The Judge's Bench** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-10
         3.1.4    **Clerk's Station** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-12
         3.1.5    **Witness Stand** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-13
         3.1.6    **Jury Box** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-14
         3.1.7    **Litigant / Counsel Tables** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-16
         3.1.8    **Lectern** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-17
         3.1.9    **The Bailiff's Station** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-18
         3.1.10   **Spectator Seating** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-18
         3.1.11   **Witness Waiting Rooms** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-20
         3.1.12   **Attorney/Client Conference Rooms** . . . . . . . . . . . . . . . . . . . . . . . 3-20
         3.1.13   **Entry Vestibule** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-21
         3.1.14   **Jury Deliberation Rooms** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-21
         3.1.15   **Judges' Chambers** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-23
                  3.1.15.1   *Security* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-23
                  3.1.15.2   *Environment* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-24
                  3.1.15.3   *Furnishings and Finishes* . . . . . . . . . . . . . . . . . . . . . . . . . 3-25
                  3.1.15.4   *Circulation and Adjacency* . . . . . . . . . . . . . . . . . . . . . . . . 3-25


|  |  |  |  |
|---|---|---|---|
| *3.1.15.5* | *Technological Applications* | | 3-25 |
| *3.1.15.6* | *Support Spaces* | | 3-25 |

**3.2**     **Court Administration** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-26

**3.3**     **Clerk of Court** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-27
     **3.3.1**       **Circulation and Adjacency** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-27
     **3.3.2**       **Handicapped Access** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-27
     **3.3.3**       **Administrative Offices** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-28
     **3.3.4**       **Organization and Layout** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-28
     **3.3.5**       **Security** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-33
     **3.3.6**       **Information Desk** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-33
     **3.3.7**       **Public Counter** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-33
     **3.3.8**       **Case Processing** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-35
     **3.3.9**       **Data Processing** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-35
     **3.3.10**      **Records Management** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-36
     **3.3.11**      **Records Storage** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-37
     **3.3.12**      **Vaults** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-39
     **3.3.13**      **Staff Lounge** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-39
     **3.3.14**      **General Guidelines for Clerk's Office** . . . . . . . . . . . . . . . . . . . . . . . 3-39

**3.4**     **Family Division (including friend of the court)** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-40

**3.5**     **The Prosecuting Attorney (optional)** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-42

**3.6**     **Magistrates and Referee Hearing Rooms** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-45
     **3.6.1**       **Regional Diagnostic Hearing Room** . . . . . . . . . . . . . . . . . . . . . . . . 3-45

**3.7**     **Probation Offices** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-45

**3.8**     **Judicial Support Functions** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-46
     **3.8.1**       **Jury Assembly** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-46
     **3.8.2**       **Grand Jury** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-47
     **3.8.3**       **Law Library** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-47
     **3.8.4**       **Attorney Lounge (optional area)** . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-49
     **3.8.5**       **Law Enforcement Waiting (optional area)** . . . . . . . . . . . . . . . . . . . . 3-50
     **3.8.6**       **Press and Media Support Facilities (optional area)** . . . . . . . . . . . . . 3-50

**3.9**     **Building Support Functions** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-51
     **3.9.1**       **Loading Dock** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-51
     **3.9.2**       **Custodial and Maintenance Services** . . . . . . . . . . . . . . . . . . . . . . . 3-52
     **3.9.3**       **Service Elevator** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-52
     **3.9.4**       **Trash and Recycle Removal** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-53
     **3.9.5**       **Building Communication Backbone** . . . . . . . . . . . . . . . . . . . . . . . . . 3-53
     **3.9.6**       **Telecommunications and Data Entry Rooms** . . . . . . . . . . . . . . . . . . 3-53
     **3.9.7**       **Telecommunications Systems and Information Technology Room** . . . . 3-54
     **3.9.8**       **Telecommunications Closets** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-54
     **3.9.9**       **Electrical Power and Electrical Closets** . . . . . . . . . . . . . . . . . . . . . . 3-55
     **3.9.10**      **Vending and Food Service** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-55
     **3.9.11**      **Shared Conference Facilities** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-55
     **3.9.12**      **Building Management and Storage** . . . . . . . . . . . . . . . . . . . . . . . . . 3-55

**3.9.13**    **Lobby** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-56
**3.9.14**    **Public Circulation, Elevators, and Escalators** . . . . . . . . . . . . . . . . . . . . 3-56
**3.9.15**    **Public Restrooms** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-57
**3.9.16**    **Day and Child Care** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-57
**3.9.17**    **Mail Room** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-58
**3.9.18**    **Security Office and Fire Control Center** . . . . . . . . . . . . . . . . . . . . . . . 3-58
**3.9.19**    **Central Security Control and Security Stations** . . . . . . . . . . . . . . . . . . 3-58
**3.9.20**    **Central Prisoner Holding and Transport** . . . . . . . . . . . . . . . . . . . . . . 3-59
**3.9.21**    **Court Floor Holding Areas** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-60

**3.10**    **Conclusion** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-61

**3.11**    **Summary of <u>Minimum</u> Space Requirements** . . . . . . . . . . . . . . . . . . . . . . . . . . 3-62

## APPENDIX
SECTIONS A1 - A10

**Sec. A1**    **Glossary of Terms** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A1-1

**Sec. A2**    **Selected Michigan Statutes, Court Rules, and Supreme Court
Administrative Orders Concerning Court Facilities** . . . . . . . . . . . . . . . . . . . A2-1

**Sec. A3**    **Attorney General Opinion #5980** . . . . . . . . . . . . . . . . . . . . . . . . . . . . A3-1

**Sec. A4**    **Courthouse Facility Checklist** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A4-1

**Sec. A5**    **ADA Title II Self Evaluation** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A5-1

**Sec. A6**    **Request for Qualifications (RFQ's) and Request for Proposals (RFP's)
Process and Examples** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A6-1

**Sec. A7**    **Sample Standard Forms 254 and 255** . . . . . . . . . . . . . . . . . . . . . . . . . A7-1

**Sec. A8**    **American Institute of Architects Contract Information** . . . . . . . . . . . . . . . . A8-1

**Sec. A9**    **Resource List** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A9-1

**Sec. A10**    **Bibliography** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A10-1



# INTRODUCTION
## The Study Purpose

THE MICHIGAN COURTHOUSE

# INTRODUCTION
### STUDY PURPOSE

**I.1**    **Michigan Court Facilities Standards Project Advisory Committee Membership** . . . . **I-1**

**I.2**    **Consultants to the Project** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **I-1**

**I.3**    **Study Purpose** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **I-1**

**I.4**    **Study Scope** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **I-2**

**I.5**    **Court Organization** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **I-3**
      **I.5.1**    **Michigan Supreme Court** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **I-3**
      **I.5.2**    **Michigan Court of Appeals** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **I-4**
      **I.5.3**    **Circuit Court** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **I-4**
      **I.5.4**    **Michigan Court of Claims** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **I-5**
      **I.5.5**    **Probate Court** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **I-5**
      **I.5.6**    **District Court** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **I-5**
      **I.5.7**    **Municipal Court** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **I-6**



## I.1 MICHIGAN COURT FACILITIES STANDARDS PROJECT ADVISORY COMMITTEE MEMBERSHIP

Mr. Dave Benda
Midland County Administrator
Michigan Association of Counties

Hon. Peter D. Houk
30th Circuit Court

Mr. Edmund M. Brady, Jr.
Plunkett & Cooney, PC
State Bar of Michigan

Mr. Dan Matson
DeWitt City Attorney
Michigan Municipal League

Hon. Freddie G. Burton, Jr.
Wayne County Probate Court

Hon. Patricia A. Morse
87th District Court

Mr. Jerry Celmer, Jr.
Court Administrator
31st Circuit Court & 72nd District Court

Mr. Jack R. Plakke
Family Division Administrator
20th Circuit Court

Mr. Elgin L. Cleckley
Assistant Professor of Architecture
University of Michigan

Mr. Clifford Snyder
Harley Ellington Design
America Institute of Architect's

Mr. Lance Dexter
Trial Court Administrator
Isabella County Trial Court

Ms. Karen Woodside
Northville Township Supervisor
Michigan Township Association

Mr. Thomas Edmonds
Kalamazoo County Sheriff
Michigan Sheriff's Association

Ms. Diane Zuker
Clinton County Clerk
Michigan County Clerks Association

## I.2 CONSULTANTS TO THE PROJECT

Mr. Stephen A. Carter, AICP
Carter Goble Associates, Inc.

Mr. Don Hardenbergh
Court Works

## I.3 STUDY PURPOSE

In 1981, the Michigan Courthouse Study was published. This study summarized the results of a two-year inventory and evaluation of state court facilities in Michigan. The project, sponsored by the Judicial Coordinating Committee of the Supreme Court of the State of Michigan, was carried out by the Architectural Research Laboratory of the University of Michigan's College of Architecture and Urban Planning. Through administrative order 1983-2, the Michigan Supreme Court endorsed the use of the study's Design Guidelines for all future construction, remodeling, or renovation of court facilities in the state.

During the nearly two decades that have lapsed since the development of the first guidelines, many advances in design and technology have occurred. Current court facility design standards incorporate advancements in building technologies as well as addressing the impact of the rapid changes in information



technology that effect efficient trial court operations.  Nearly all the functional components of trial court operations have been transformed due to the use modern technology.  Current trial court design guidelines need to address the numerous issues created by technology advancements while fostering and maintaining the traditional relationship of the litigant and the judiciary which serves as a foundation of our democratic society.

The Michigan Court Facilities Standards Project Advisory Committee was appointed to assist the State Court Administrative Office (SCAO) in the review and revision of the prior trial court design guidelines.  The Committee represents a comprehensive cross section of Michigan trial court "stakeholders."  Included in the Committee membership are judges and court administrators at all trial court levels as well as representatives of local government, the county clerk, the county sheriff, the Bar Association, academia, and practicing architects.  Their work was assisted by the consultants to the project, Carter Goble Associates, Inc. and Court Works.

This update of the 1981 Design Guidelines is intended to highlight again those components of a courthouse that require special consideration in designing a new facility or expanding an existing courthouse.  In the State of Michigan, Circuit and Probate Court facilities are the financial responsibility of county government (MCL 45.16; MSA 5.921, MCL 46.7; MSA 5.327).  Depending upon the class type, District Court facilities are the financial responsibility of either the county or the political subdivision(s) where the court sits (MCL 600.8261; MSA 27A.8261; MCL 600.8262; MSA 27A.8262; MCL 600.8263; MSA 27A.8263).  Since local government is the owner, the design process is controlled locally, without State approval of final design documents, budgets, or schedules.  The Supreme Court, through the State Court Administrative Office (SCAO), however, has a substantial experience base that can be used to help localities that are planning court facilities to avoid costly mistakes.  The purpose of this document is to define a process that assures the involvement of appropriate stakeholders in the decision-making process and to illustrate the critical design issues and guidelines that when carefully applied by professionals should yield a cost-effective courthouse with a lengthy useful life.

Examples from operating courthouses have been selected to illustrate some of the important design issues to be considered in planning a new facility.  While several examples are posed photographs provided by architectural firms, other photographs reflect the daily operating realities within courthouses. These Design Guidelines are intended to become the foundation for compiling a notebook of examples of "best practices" that a jurisdiction can augment over time.  The Advisory Committee for these Design Guidelines stated a preference for a simple narrative and examples drawn from operating courthouses rather than reliance upon drawings of hypothetical conditions.  Since the courthouse is a functioning, and often crowded, public building, it is appropriate that Design Guidelines use working examples to appeal to a broad range of users, planners, and designers.

The three chapters suggest guidelines for the design of Michigan court facilities by using examples of court components from Michigan courthouses and others throughout the United States.  These examples are not necessarily "how-to" illustrations but are intended to encourage the reader to research alternative approaches to the resolution of common design challenges.  As with all standards or guidelines, periodic updates will be necessary to account for the rapid expansion of choices that building technology makes available to the owner, user, and designer.

## I.4   STUDY SCOPE

The Design Guidelines address only facilities for the **trial court level** of the Michigan judiciary.  In addition, the Committee excluded juvenile detention facilities from the review due to their unique design requirements and lack of consistent utilization by all counties.  Current state statute [MCL 712A.16(6); MSA 27.3178(598.16)(6)] requires that if a juvenile detention facility is provided in a county, it will be operated by



the county unless the county enters into an agreement for the Circuit Court to direct operations of the facility. As a consequence, there is no consistency across the state in whether a juvenile detention facility is provided by the county, or if provided, whether the court directs the operation the facility.

Throughout this work the terms courthouse and court facility are used interchangeably. The use of the term courthouse denotes all component parts of trial court operations including court agencies, units, or departments.

## I.5   COURT ORGANIZATION

The Michigan Court System is made up of four levels of activity. The courts most citizens deal with are at the first level. These include the Probate Court, the District Court, and the Municipal Court. The second level of court activity includes the Circuit Court and the Court of Claims. Appeals are heard in the third level, at the Court of Appeals and at the fourth level in the Supreme Court of the State of Michigan. The State Court Administrative Office handles administrative duties related to all levels of court activity, under the jurisdiction of the Supreme Court.



**Figure I-1**
**Michigan State Court System**

### I.5.1   Michigan Supreme Court

The Supreme Court is Michigan's court of last resort. It consists of seven justices who decide the cases that come before the Court during a term that runs from August 1 to July 31 of the following year. The Court



hears oral arguments in Lansing beginning in October of each term. Decisions are released throughout the term following oral arguments.

A Supreme Court justice is an elected official. A full term is eight years. Candidates for the position are nominated by political parties and are elected on a nonpartisan ballot. Two justices are elected every two years (one in the eighth year) in the November election. Supreme Court candidates must be qualified electors, licensed to practice law in Michigan, and at the time of election must be under 70 years of age. The salary of the justices is fixed by the State Officers Compensation Commission and paid by the state. Vacancies are filled by appointment of the governor until the next general election. Every two years, the justices of the Court elect a member of the Court as chief justice.

### I.5.2    Michigan Court of Appeals

The 1963 Michigan Constitution established the Court of Appeals as an intermediate appellate court between the trial courts and the Supreme Court. Jurisdiction of the Court of Appeals is established by state law. Its practice and procedure are governed by Michigan court rules established by the Supreme Court.

Judges of the Court of Appeals are chosen in nonpartisan elections from four districts drawn by the Legislature on county lines. The districts are as nearly as possible of equal population. The Legislature may increase the number of judges and alter the districts from which they are elected by changing the state law. A candidate for the Court of Appeals must be a lawyer, under 70 years of age, a qualified elector, and a resident of the district in which the candidate is running.

Court of Appeals judges are elected for six-year terms. Their salaries are set by the Legislature. Every two years a chief judge is selected by the Supreme Court. In addition to hearing cases, the chief judge performs administrative duties and other assignments required by the Supreme Court.

Panels of Court of Appeals judges hear cases in Lansing, Detroit, Grand Rapids, and Marquette. The panels are rotated to encourage statewide uniformity in rulings by eliminating the likelihood of conflicting legal philosophies developing in specific geographical areas. The procedure for hearing cases is similar to that of the Supreme Court. The decision of a panel of the Court of Appeals is final, unless a special panel is convened to rehear a case for the purpose of resolving a conflict among panels and except for those cases that the Supreme Court reviews.

The Court of Appeals hears civil and criminal cases. Persons convicted of a criminal offense, other than by a guilty plea, have an appeal as a matter of right under the state constitution, if filed in compliance with the court rule.

### I.5.3    Circuit Court

The state is divided into judicial circuits along county lines. The number of judges within a circuit is established by the Legislature to accommodate required judicial activity. In multi-county circuits, judges travel from one county to another to hold court sessions.

The circuit court is the trial court of general jurisdiction in Michigan. The court has jurisdiction over all actions except those given by state law to another court. Traditionally, the circuit court has had original jurisdiction in all civil cases involving more than $10,000, in all criminal cases where the offense involves a felony or certain serious misdemeanors, and in all domestic relations cases, including divorce and paternity actions.



The Legislature raised the civil jurisdiction from $10,000 to $25,000 and created a family division in circuit court effective January 1, 1998.  The family division handles divorces and ancillary matters, custody, parenting time, paternity, juvenile delinquency, and child protective proceedings.  It also handles emancipation of minors, personal protection orders, name changes, adoptions, parental consent waivers, guardianships (ancillary), and mental health commitments (ancillary).  In addition, circuit court hears appeals from district court, probate court and administrative agencies.

Circuit judges are elected for terms of six years in nonpartisan elections.  A candidate must be a qualified elector, a resident of the judicial circuit, a lawyer, and under 70 years of age.  The Legislature sets the salary for circuit judges.


### I.5.4    Michigan Court of Claims

The jurisdiction of the Court of Claims, except as otherwise provided by law, extends over claims and demands against the State of Michigan or any of its departments, commissions, boards, institutions, arms or agencies, except those arising from line-of-duty injuries to state employees.  Claimants may bring suit in the Court of Claims provided the claim is $1,000 or more.  The State Court Administrative Board is vested with discretionary authority in claims under $1,000.  By statute, the Court of Claims is a function of the 30th Judicial Circuit Court of Ingham County.


### I.5.5    Probate Court

There is a probate court in each Michigan county with the exception of ten counties, which have consolidated to form five probate court districts.  Each district has one judge, and each of the remaining counties have one or more judges depending on the population and caseload within the county.

The probate court traditionally has had exclusive jurisdiction in such matters as juvenile delinquency, child protective proceedings, adoptions, administration of estates and trusts, guardianships and conservatorships, and mental commitments.

In 1998, the Legislature created the family division in the circuit court and moved juvenile delinquency, child protective proceedings, adoptions, name changes, emancipation's of minors, waivers of parental consent, and other ancillary family matters from the probate court to the circuit court.  The probate court now hears cases pertaining to guardianships, conservatorships, the commitment for hospital care of the mentally ill, and administration of estates and trusts.

Probate judges are elected on a nonpartisan ballot for six-year terms, subject to the same requirements as other judges.  The Legislature sets the salary for probate judges.


### I.5.6    District Court

Citizens have more contact with district court than any other court in the state.  District court has exclusive jurisdiction of all civil litigation up to $25,000 and handles garnishments, eviction proceedings, land contract and mortgage foreclosures, and other proceedings.  In the criminal field, the district court handles all misdemeanors where punishment does not exceed one year, and other relevant proceedings including arraignment, setting and acceptance of bail, trial, and sentencing.  It also conducts arraignment on the warrant and preliminary examinations in felony cases.



The district court includes a small claims division for civil cases up to $3,000.  In these cases, litigants agree to waive their right to a jury, rules of evidence, representation by a lawyer, and the right to appeal from the district judge's decision.  If either party objects, the case will be heard by the general civil division of the district court.


### I.5.7    Municipal Court

Municipal court jurisdiction is limited to claims not exceeding $1,500 in civil cases.  As of January 1, 1999, municipal courts have civil jurisdiction in cases up to $3,000 if approved by their local funding unit.  Criminal traffic jurisdiction is the same as in district court.  When the district court was created by statute in 1968, pursuant to the 1963 Michigan Constitution, most municipal courts in the state were converted into district courts.  Today, only five municipal courts remain: Eastpointe, Grosse Pointe, Grosse Pointe Park, Grosse Pointe Woods, and Grosse Pointe Farms.

Municipal judges must be lawyers, residents, and electors of their municipalities.  They are paid by the municipalities and are elected for six-year terms.



# APPENDIX A5
## ADA Title II-  Self Evaluation

**THE MICHIGAN COURTHOUSE**



# THE AMERICANS WITH DISABILITIES ACT
## TITLE II

### SELF-EVALUATION

This document provides general information to promote voluntary compliance with the Americans with Disabilities Act (ADA).  It is intended to serve as guidance for use by courts in conducting their ADA Self-Evaluation.  It was prepared under a grant from the U.S. Department of Justice.  While the Department of Justice has reviewed its contents, any opinions or interpretations in the document are those of the National Center for State Courts (NCSC).  They do not necessarily reflect the views of the Department of Justice.  This material is provided by the NCSC as a service to the courts to facilitate their self-evaluation process in compliance with the ADA.  It is not intended to replace or substitute for each courts' judgement about what is needed to comply with ADA.  The NCSC does not warrant, guarantee, or represent that use of this form will insure compliance with the Act.  The NCSC will not indemnify,  hold harmless, or make whole any entity which utilizes this form and is later found liable for damages, injunctive or other relief relative to noncompliance.  Courts and other entities using this form do at their own risk and shall not look to the NCSC for reimbursement of any costs, including attorneys fees, associated with or resulting from its use.  Use of this form signifies that the user agrees to these conditions.  The ADA itself and the Department of Justice's ADA regulations should be consulted for further, more specific guidance.

**The Americans With Disabilities Act of 1990 (ADA)** prohibits discrimination on the basis of physical or mental disabilities in the areas of (1) employment (2) public services (3) public accommodations and services operated by private entities and (4) telecommunications.  It creates significant new obligations for state and local courts as public employers and as providers of public services.  One such obligation is the requirement that courts complete a self-evaluation by January 26, 1993.  The self-evaluation is a tool for management to use to identify and correct potential violations before they occur, thus avoiding future enforcement actions.  Public entities with 50 or more employees are required to maintain a written record of the self-evaluation on file and make it available for public inspection for three years, but there is no requirement that it be submitted to a Federal agency for review.

Public entities are required to provide an opportunity for interested persons, including individuals with disabilities or organizations representing individuals with disabilities to participate by submitting comments, but are strongly encouraged to consult actively with individuals with disabilities in the self-evaluation process.  The experience of such individuals in using court services can be an invaluable aid in identifying problems, and individuals with disabilities are often aware of simple and inexpensive methods for providing access that are not readily apparent to individuals who have not experienced disabilities.  The Self-evaluation and facilities checklist are tools designed to assist courts with development of their own approach to self-evaluation, and should be used only after careful consideration of how the self-evaluation process applies to the court.

Author: Chang-Ming Yeh, Staff Associate
         National Center for State Courts



Part II is a facility accessibility checklist to assist courts in identifying the existing facility barriers and make its services, programs, or activities readily accessible, when viewed in its entirety, to individuals with disabilities.   Should structural changes to facilities be necessary to achieve program accessibility, such changes should be made as expeditiously as possible but no later than January 26, 1995.   A transition plan depicting the steps necessary to complete the changes must be developed by July 26, 1992 for courts that employ 50 or more persons.  New construction and renovation or alteration to existing facilities commenced after January 26, 1992 should be constructed in conformance with ADA Accessibility Guidelines in a manner that the portions of the new construction or alteration are readily accessible to and useable by individuals with disabilities.

**PART II      COURT FACILITY ACCESSIBILITY REFERENCE GUIDE IS DIVIDED INTO THREE SECTIONS:**

        Section  A  addresses facility accessibility
        Section  B  addresses facility site accessibility
        Section  C  addresses general building elements accessibility

**Why Is Court Facility Accessibility Required?**

There is nor requirement that all existing court facilities be made accessible.  Instead, courts must ensure that the services, programs, and activities they conduct are readily accessible to and useable by individuals with disabilities.  In many cases, removal of architectural barriers in existing facilities will be the best method of providing program access, but removal of physical barriers is not required if other methods of providing program access are effective.

Even though facility access is not required, it is necessary to identify architectural barriers in existing facilities in order to determine where modifications may be required to ensure that the programs offered in those facilities are accessible.

Although Title II does not require that existing buildings be made accessible, it does establish strict accessibility requirements for new construction and alterations.  Making a facility accessible is relatively simple and inexpensive when accessibility requirements are incorporated in the design of the facility.  (While it may be difficult and costly to remove an existing barrier, it is not difficult to avoid building it in the first place.)  Title II therefore requires that newly constructed facilities, and alterations to existing facilities, conform to strict accessibility standards.

Public entities, including courts and courthouses, may choose from two design standards for new construction and alterations.  They can choose either the Uniform Federal Accessibility Standards (UFAS) or the Americans with Disabilities Act Accessibility Guidelines for Buildings and Facilities (ADAAG), which is the standard that must be used for public accommodations and commercial facilities under Title III of the ADA.  If ADAAG is chosen, however, public entities are not entitled to the elevator exemption (which permits certain buildings under three stories or under 3,000 square feet per floor to be constructed without an elevator).  The Federal Architectural and Transportation Barriers Compliance Board (the Access Board) is drafting architectural accessibility guidelines for state and local government buildings and facilities that will include specific requirements for court facilities.



This Guide uses ADAAG as the basis for identifying courthouse architectural Barriers. (It should not, however, be used as a substitute for ADAAG in designing new facilities or planning alterations. Elements of existing facilities that do not conform to ADAAG may restrict access to services, programs, or activities offered in those facilities. Where such nonconforming elements are identified through this survey, the court should determine whether they restrict program access and, if so, determine how program access can be provided. Methods of providing program access that should be considered include making structural changes, or using nonstructural methods such as acquisition or redesign of equipment, assignment of aides to beneficiaries, and provision of services at alternate accessible sites. (Note that carrying an individual with a disability is not an acceptable method of providing program access except in exceptional cases.)

**What Is The Court Facility Accessibility Reference Guide?**

The court Facility Accessibility Reference Guide is a specific interpretation of ADAAG based on applicable regulations set forth in the Act and on the National Center for State Courts' technical experience in courthouse planning and design. Accessibility requirements of the major architectural elements and functional space most commonly found in court buildings are specified, in terms of the dimensional building design elements and ADAAG code references and are presented in tabular form. The Accessibility Reference Guide contains sections on Court Facility Accessibility, Site Accessibility, and the Accessibility of Common Use Building Elements.

**How  Should The Reference Guide Be Used?**

The Court Facility Reference Guide is designed for use by court employees in conducting the required ADA self-evaluation of court facilities, and for use by courthouse design professionals. Because of the variation in individual courts and the associated accessibility requirements for individuals with disabilities, actual accessibility needs may vary from those included in the Reference Guide, which contains only the ADA-required accessibility features and National Center for State Courts recommendations. Variations of specific regulations with proven equivalent access to the facility are permitted by the ADA. During the assessment process, it is important to have input from persons with disabilities or groups that represent persons with disabilities in order to broaden the accessibility of courthouse utilization by these groups.

The reference guide should be used along with ADAAG to identify courthouse access barriers. The survey results of the identified access barriers can then be used in determining the compliance strategies as required in the Transition Plan for existing facilities. The reference space standard and the accessible installation specifications can also serve as the basis for accessible courthouse design or in achieving access for individuals with disabilities using the courts. Due to the complexity of local building codes and building circulation system (such as corridors, stairs, and other emergency egress systems) and the installations of accessible public restroom stalls should be coordinated with local building code officials.

The court shall identify the existing facility barriers and make each of its services, programs, or activities readily accessible, when viewed in its entirety, to individuals with disabilities. In the event that structural changes to facilities will betaken to achieve program accessibility, such changes shall be made as expeditiously as possible but no later than January 26, 1995, and a transition plan depicting the steps necessary to complete the changes shall be developed by July 26, 1992 for courts that employ 50 or more persons. New Construction and renovation or alteration of existing facilities commenced after January 26, 1992 shall be constructed in conformance to ADA Accessibility Guidelines or UFAS in such manner that the new construction or the alteration are readily accessible to and usable by individuals with disabilities.